**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

CIVIL ACTION NO. _____

GRANITE SOUTHLANDS TOWN CENTER LLC,
          Plaintiff,

v.

ALBERTA TOWN CENTER, LLC and LAND TITLE GUARANTEE COMPANY,
          Defendants.

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Granite Southlands Town Center LLC ("Granite") files this Complaint against Defendants Albert Town Center, LLC ("Alberta") and Land Title Guarantee Company ("Escrow Holder") seeking a judicial declaration that Granite owns and is entitled to receive $650,000 that was placed in escrow when Granite purchased property from Alberta in December 2008.

**PARTIES**

1. Plaintiff Granite Southlands Town Center LLC is a Delaware limited liability company with its principal place of business in New Jersey.

2. Defendant Alberta Town Center, LLC is a Colorado limited liability company with its principal place of business in Denver, Colorado and can be served through its registered agent for service Corporation Service Company, 1560 Broadway, Suite 2090, Denver, Colorado 80202.

3. Defendant Land Title Guarantee Company is a Colorado corporation with its principal place of business in Denver, Colorado and can be served through its registered agent for service John E. Freyer, 3033 E 1st Ave., Suite 600, Denver, Colorado 80206.

## JURISDICTION AND VENUE

4. This Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. § 1332 by virtue of the diversity of citizenship of the parties.  The amount in controversy in this case, exclusive of interest and costs, exceeds $75,000.00.

5. This Court has personal jurisdiction over each of the Defendants because each is a resident of this state and has conducted business in this state.

6. Pursuant to 28 U.S.C. § 1391, venue for this case is proper in this District because the claims affect property located in this District and all Defendants are subject to personal jurisdiction in this District.

## FACTS

7. This is a declaratory judgment lawsuit concerning $650,000 that was reserved in escrow in connection with Granite's purchase of property from Alberta in December 2008.  The property, commonly known as the Southlands Town Center ("Property"), is located in Aurora, Colorado.  The Property is configured in a "town center" format and populated by a wide array of office and retail tenants.

8. As part of the transaction, Alberta was obligated to obtain estoppel certificates from the tenants of the Property, and the certificates were required to conform to a prescribed format that addressed Granite's specific areas of concern ("Approved Tenant Estoppel Certificates").  The general purpose of the certificates was to confirm that the tenant

relationships were as they were reported to be and that there were no outstanding issues between the tenant and the landlord Alberta. The parties' agreements – a Forward Purchase and Sale Agreement and Escrow Instructions ("FPSA")[1] and accompanying Escrow Agreement ("Escrow Agreement") – outline their respective rights and obligations regarding the estoppels and establish a minimum threshold for Alberta to clear with respect to the estoppels ("Required Estoppels"). The FPSA reads, in relevant part:

> Each tenant occupying more than 10% of the rentable square feet in the Buildings shall have executed a Tenant Estoppel Certificate ("Large Tenants"), and, subject to Seller's right to provide landlord estoppel certificates as set forth below, tenants who together occupy at least 75% of the total number of rentable square feet subject to Qualifying Leases at the Closing shall have executed Approved Tenant Estoppel Certificates, as defined below (collectively, the "Required Estoppels").[2]

Consequently, Alberta was required to deliver, to Granite,

- Approved Tenant Estoppel Certificates for tenants making up at least 75% of the total leased square footage for the Property, and

- An Approved Tenant Estoppel Certificate for each tenant whose leased space made up 10% or more of the total leased square footage.

Section 8.1(k)(ii) of the FPSA also provided Granite with the right to reject a tenant estoppel certificate delivered by Alberta under several circumstances:

> Buyer shall be entitled to object to any Tenant Estoppel Certificate if such Tenant Estoppel Certificate is (i) not in the form required under paragraph 7.2(i) or has been materially and adversely modified from that form, or (ii) indicates the continuing existence of an actual material default of landlord under the applicable Lease, or (iii) correctly indicates that the Lease includes terms and provisions which are inconsistent with the Approved Leasing Guidelines or terms and provisions that are inconsistent with the applicable lease.

---

[1] The FPSA is dated September 29, 2005; however, the parties amended the FPSA numerous times, with the final amendment dated December 8, 2008.

[2] Please note that Alberta, as "Seller," did not submit any landlord estoppel certificates.

9. Alberta did not deliver the Required Estoppels by closing. When it became apparent that Alberta would be unable to deliver the Required Estoppels by closing, Granite agreed, as an accommodation to Alberta, that the sale still could close in December 2008 if Alberta agreed to deliver the Required Estoppels post-closing on or before March 1, 2009. To provide Alberta with an incentive to deliver the Required Estoppels – which were essential to Granite – the parties agreed that $650,000 of the closing funds would be withheld and placed in escrow with the Escrow Holder ("Cash Funds").

10. Alberta would only receive the Cash Funds if it delivered the Required Estoppels by March 1, 2009. On the other hand, the parties agreed that if Alberta failed to deliver the Required Estoppels by this deadline then the Escrow Holder would be required to deliver the Cash Funds to Granite. As with all of the parties' other obligations under the FPSA, time was expressly of the essence for Alberta's delivery of the Required Estoppels to Granite.[3] The relevant portion of the FPSA reads as follows:[4]

> If, prior to the Closing Date, Seller fails to deliver the Required Estoppels, (x) Seller shall be obligated to continue to use commercially reasonable efforts to obtain the Required Estoppels after the Closing, and (y) Escrow Holder shall retain Six Hundred Fifty Thousand and No/100 Dollars ($650,000.00) of the Excess Funds at Closing ("Estoppel Holdback") . . . . [S]hould Seller fail to deliver the Required Estoppels to Buyer on or before 5:00 P.M. (EDT) on March 1, 2009, Buyer and Seller agree Escrow Holder shall deliver the entire Estoppel Holdback to Buyer upon written notice to Escrow Holder from Buyer, and the amount of the Estoppel Holdback shall be deemed to have been forfeited by Seller. The provisions of this Section 8.1(k)(ii) shall survive Closing.

---

[3] Section 14.9 of the FPSA expressly provides that "[t]ime is of the essence of this Agreement."
[4] This excerpt is from paragraph 4.1(c) of the final amendment to the FPSA, which amends Section 8.1(k)(ii) of the FPSA. The final amendment is entitled "Fifteenth Amendment to Amendment and Agreement and Termination Agreement."

60174921.3 - 4 -

The Escrow Agreement reinforced the Escrow Holder's obligation to deliver the Cash Funds to Granite in the event Alberta failed to deliver the Required Estoppels to Granite by March 1, 2009.  The relevant portion of the Escrow Agreement reads:

> If Alberta fails to deliver the Required Estoppels to Granite on or before 5:00 P.M. (EDT) on March 1, 2009, Granite and Alberta agree Escrow Holder shall deliver the Cash Funds to Granite upon written notice to Escrow Holder from Granite and the Cash Funds shall be deemed to have been forfeited by Alberta.

11.  Prior to March 1, 2009, Alberta delivered eighty-five (85) tenant estoppel certificates to Granite.  However, Granite rejected nine (9) of the delivered estoppels ("Rejected Estoppels"), including the tenant estoppel certificate for Colorado Cinema Group, LLC, for the reasons permitted by the parties' agreements, including Section 8.1(k)(ii) of the FPSA.  As such, Alberta only delivered Approved Tenant Estoppel Certificates for seventy-six (76) tenants comprising approximately 70% of the total leased square footage of the Property.  Thus, Alberta did not meet the 75% threshold for Approved Tenant Estoppel Certificates.  Alberta's failure to deliver an Approved Tenant Estoppel Certificate for Colorado Cinema Group, LLC – whose lease makes up approximately 16.5% of the total leased square footage of the Property – means that Alberta also failed to deliver an Approved Tenant Estoppel Certificate for all tenants whose leased space comprises 10% or more of the total leased square footage of the Property.  Because Alberta failed to satisfy either of these conditions provided for in the FPSA, Alberta did not deliver the Required Estoppels to Granite on or before March 1, 2009, and is therefore not entitled to the Cash Funds pursuant to the express terms of the FPSA and the Escrow Agreement.

12.  The deficiencies in the Rejected Estoppels were numerous and substantive.  The certificates for the following tenants were deficient for reasons including those set forth in Section 8.1(k)(ii) of the FPSA:  Chico's FAS, Inc.; DCC Architects, LLC; American Fidelity

Assurance Company; Colorado Cinema Group, LLC; Noodles & Company; White House | Black Market, Inc.; QualDent, LLC; Family Life Counseling; and Main Street Dental (Brian Laganfeld DDS).  The alleged landlord defaults, and reasons the tenants materially and adversely deviated from the required form, ranged from monetary disputes and drainage problems to serious cracks in the walls and problems with the HVAC.  Perhaps the most serious issues relate to the cracked foundations, walls, and structural defects raised in the tenant estoppel certificates delivered by Colorado Cinema, DCC Architects, LLC, and American Fidelity Assurance Company.

13.     Despite Alberta's failure to deliver the Required Estoppels, the Escrow Holder has refused to release the Cash Funds to Granite.  On March 4, 2009, Granite notified the Escrow Holder of Alberta's failure to deliver the Required Estoppels and requested that the Escrow Holder release the Cash Funds to Granite.  The Escrow Holder responded on March 6, 2009, by advising Granite that it would not deliver the Cash Funds.  According to the Escrow Agreement, the Escrow Holder can only refuse to comply with Granite's demand for the Cash Funds if the parties are in disagreement and the Escrow Holder has a good faith basis for doubting what action should be taken.  There is no good faith basis for the Escrow Holder to doubt what action should be taken here.  The indisputable facts establish that Alberta has failed to deliver the Required Estoppels and the Cash Funds should be delivered to Granite.  Instead of delivering the Cash Funds to Granite, the Escrow Holder provided the parties with notice on March 11, 2009, of its intent to file an action in interpleader.  Granite anticipates the Escrow Holder will file such an action in this lawsuit and interplead the Cash Funds into the registry of this Court.  Granite is entitled to the Cash Funds plus accrued interest, as provided for by the parties' agreement.

**DECLARATORY JUDGMENT**

14. Based upon the facts alleged and documents referenced herein, an actual and justiciable controversy exists between the parties to this lawsuit as to their respective rights and obligations regarding the Cash Funds. To resolve this controversy, Granite seeks judicial declarations that:

- Alberta failed to timely deliver the Required Estoppels;
- Granite is entitled to receive the Cash Funds; and
- The Escrow Holder is entitled and obligated to deliver the Cash Funds to Granite.

Granite requests this relief pursuant to 28 U.S.C. §2201, Rule 57 of the Federal Rules of Civil Procedure, the parties' agreements, and as otherwise provided by law.

**ATTORNEYS' FEES AND COSTS**

15. Granite has been required to retain legal counsel to assist in resolving the disputes set forth herein – disputes which arise from the Escrow Agreement. Paragraph 12 of the Escrow Agreement provides that the prevailing party in any dispute arising from the Escrow Agreement is entitled to recover its reasonable and actual attorneys' fees and expenses, including those incurred in connection with any appeal. Granite seeks to recover its attorneys' and expenses pursuant to paragraph 12 of the Escrow Agreement and as otherwise provided for by law.

WHEREFORE Plaintiff Granite Southlands Town Center LLC respectfully requests that the Court enter a declaratory judgment against Defendants Albert Town Center, LLC and Land Title Guarantee Company as requested herein, order the Escrow Holder to deliver the Cash Funds and accrued interest, award Granite its attorneys' fees and expenses, and award Granite all other and further relief to which it is entitled.

Plaintiff demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

 /s/Osborne J. Dykes, III
OSBORNE J. DYKES, III
BENJAMIN M. VETTER
FULBRIGHT & JAWORSKI L.L.P.
370 Seventeenth Street, Suite 2150
Denver, CO  80202
(303) 801-2700 – Telephone
(303) 801-2777 – Facsimile
jdykes@fulbright.com
bvetter@fulbright.com

PAUL TRAHAN
FULBRIGHT & JAWORSKI L.L.P.
600 Congress Avenue, Suite 2400
Austin, TX  78701
(512) 474-5201 – Telephone
(512) 536-4598 – Facsimile
ptrahan@fulbright.com

**COUNSEL FOR PLAINTIFF**