**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 09-CV-00799-ZLW-KLM

GRANITE SOUTHLANDS TOWN CENTER LLC,

        Plaintiff,

v.

ALBERTA TOWN CENTER, LLC,
LAND TITLE GUARANTEE COMPANY,
DONALD G. PROVOST, ALLAN G. PROVOST,
and PETER M. CUDLIP,

        Defendants.

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff/counter-defendant Granite Southlands Town Center LLC ("Granite") files this First Amended Complaint against Defendants Albert Town Center, LLC ("Alberta"), Donald G. Provost, Allan G. Provost, and Peter M. Cudlip (collectively, the "Principals," and, together with Alberta, being referred to herein as the "Alberta Defendants"), and Land Title Guarantee Company ("Land Title") (the Alberta Defendants and Land Title are sometimes collectively referred to herein as the "Defendants"), as follows.

## SUMMARY OF COMPLAINT

This is a fraud and declaratory judgment lawsuit concerning a property known as the Southlands Town Center in Aurora, Colorado (the "Property"). The Principals committed fraud against Granite by failing to disclose a change in condition at the Property, a change that Plaintiff has learned involves material structural defects, which induced Granite to enter into a Release

85201728.4

and Termination Agreement (the "Release") with the Principals. The Principals were aware of these defects prior to execution of the Release in December 2008, had a duty to disclose them, but failed to do so. Granite was not aware of these defects until after signing the Release and justifiably relied on the Principals' silence and misrepresentations by entering into and providing additional consideration for the Release which served, in part, to release the Principals from personal guarantees on a debt of approximately $160 million. The Principals consequently had a significant financial incentive to conceal the defects from Granite. In addition to its claim for damages against the Principals for fraudulently inducing Granite to enter into the Release, Granite requests a judicial declaration that Granite owns and is entitled to receive $650,000 that was placed in escrow with Land Title at closing.

## PARTIES

1.      Plaintiff Granite Southlands Town Center LLC is a Delaware limited liability company with its principal place of business in New Jersey.

2.      Defendant Alberta Town Center, LLC is a Colorado limited liability company with its principal place of business in Denver, Colorado. Defendant Alberta has appeared in this lawsuit and can be served through its counsel of record. On information and belief, Alberta is a limited liability company that has three members (such members being the Principals), two managers (such managers being Donald Provost and Peter Cudlip), no employees, and whose sole asset, prior to the closing, was the Property.

3.      Defendant Land Title Guarantee Company is a Colorado corporation with its principal place of business in Denver, Colorado. Land Title has appeared in this lawsuit and can be served through its counsel of record.

4. Defendant Donald G. Provost is an individual residing in Colorado who may be served with process at his place of business, c/o Alberta Development Partners, 5460 S. Quebec, Suite 100, Englewood, Colorado 80111.

5. Defendant Allan G. Provost is an individual residing in Colorado who may be served with process at his place of business, 1208 Quail Street, Lakewood, Colorado 80215.

6. Defendant Peter M. Cudlip is an individual residing in Colorado who may be served with process at his place of business, Pointe Properties, LLC, 2000 S. Colorado Blvd., Annex Bldg., Suite 405, Denver, Colorado 80222.

## JURISDICTION AND VENUE

7. This Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. § 1332 by virtue of the diversity of citizenship of the parties. The amount in controversy in this case, exclusive of interest and costs, exceeds $75,000.00.

8. This Court has personal jurisdiction over each of the Defendants because each is a resident of this state and has conducted business in this state.

9. Pursuant to 28 U.S.C. § 1391, venue for this case is proper in this District because the claims affect property located in this District and all Defendants are subject to personal jurisdiction in this District.

## FACTS

10. Granite purchased the Southlands Town Center ("Property") from Alberta on December 12, 2008. Alberta served as the developer for the Property and began construction

following execution of a Forward Purchase and Sale Agreement ("FPSA") in September 2005.[1] Alberta needed the FPSA in order to secure financing for construction of the Property in that the FPSA provided assurance to the lender that there would be a buyer to pay off the loan upon completion of the Property, provided certain conditions were met.  The FPSA also outlined Alberta's and Granite's rights and obligations with respect to the Property.

11. The FPSA and an accompanying Escrow Agreement required Alberta to obtain estoppel certificates from the tenants of the Property, and the certificates were required to conform to a prescribed format that addressed Granite's specific areas of concern ("Approved Tenant Estoppel Certificates").  The general purpose of the certificates was to confirm that the tenant relationships were as they were reported to be and that there were no outstanding issues between the tenant and the landlord Alberta.  The FPSA and Escrow Agreement established a minimum threshold for Alberta to clear with respect to the estoppels ("Required Estoppels"). The FPSA reads, in relevant part:

> Each tenant occupying more than 10% of the rentable square feet in the Buildings shall have executed a Tenant Estoppel Certificate ("Large Tenants"), and, subject to Seller's right to provide landlord estoppel certificates as set forth below, tenants who together occupy at least 75% of the total number of rentable square feet subject to Qualifying Leases at the Closing shall have executed Approved Tenant Estoppel Certificates, as defined below (collectively, the "<u>Required Estoppels</u>").[2]

Consequently, Alberta was required to deliver, to Granite,

- Approved Tenant Estoppel Certificates for tenants making up at least 75% of the total leased square footage for the Property, <u>and</u>

---

[1] The FPSA is dated September 29, 2005; however, the parties amended the FPSA numerous times, with the final amendment dated December 8, 2008.

[2] Please note that Alberta, as "Seller," did not submit any landlord estoppel certificates.

- An Approved Tenant Estoppel Certificate for each tenant whose leased space made up 10% or more of the total leased square footage.

Section 8.1(k)(ii) of the FPSA also provided Granite with the right to reject a tenant estoppel certificate delivered by Alberta under several circumstances:

> Buyer shall be entitled to object to any Tenant Estoppel Certificate if such Tenant Estoppel Certificate is (i) not in the form required under paragraph 7.2(i) or has been materially and adversely modified from that form, or (ii) indicates the continuing existence of an actual material default of landlord under the applicable Lease, or (iii) correctly indicates that the Lease includes terms and provisions which are inconsistent with the Approved Leasing Guidelines or terms and provisions that are inconsistent with the applicable lease.

12. Alberta had secured estoppel certificates from numerous tenants in May 2008, and, in anticipation of the December 2008 closing, attempted in November 2008 to offer these certificates in satisfaction of its obligations under the FPSA and Escrow Agreement. Granite refused to accept the May 2008 certificates because of their age requiring, instead, that Alberta provide new estoppel certificates prior to closing. When it became apparent Alberta would not be able to deliver the Required Estoppels by closing, Granite agreed, as an accommodation to Alberta and in reliance on Alberta's representation in the FPSA that there were no tenant defaults, that the sale still could close in December 2008 if Alberta agreed to deliver the Required Estoppels by a fixed deadline after closing. To provide Alberta with an incentive to deliver the Required Estoppels – which were essential to Granite – the parties agreed that $650,000 of the closing funds would be withheld and placed in escrow with Land Title ("Cash Funds").

13. Alberta would only receive the Cash Funds if it delivered the Required Estoppels by 5:00 PM (EDT) on March 1, 2009. The parties agreed that if Alberta failed to deliver the

Required Estoppels by this deadline then Land Title would be required to deliver the Cash Funds to Granite. As with all the parties' other obligations under the FPSA, time was expressly of the essence for Alberta's delivery of the Required Estoppels to Granite.[3] The relevant portion of the FPSA reads as follows:[4]

> If, prior to the Closing Date, Seller fails to deliver the Required Estoppels, (x) Seller shall be obligated to continue to use commercially reasonable efforts to obtain the Required Estoppels after the Closing, and (y) Escrow Holder shall retain Six Hundred Fifty Thousand and No/100 Dollars ($650,000.00) of the Excess Funds at Closing ("Estoppel Holdback") . . . . [S]hould Seller fail to deliver the Required Estoppels to Buyer on or before 5:00 P.M. (EDT) on March 1, 2009, Buyer and Seller agree Escrow Holder shall deliver the entire Estoppel Holdback to Buyer upon written notice to Escrow Holder from Buyer, and the amount of the Estoppel Holdback shall be deemed to have been forfeited by Seller. The provisions of this Section 8.1(k)(ii) shall survive Closing.

The Escrow Agreement reinforced Land Title's obligation to deliver the Cash Funds to Granite in the event Alberta failed to deliver the Required Estoppels to Granite by March 1, 2009. The relevant portion of the Escrow Agreement reads:

> If Alberta fails to deliver the Required Estoppels to Granite on or before 5:00 P.M. (EDT) on March 1, 2009, Granite and Alberta agree Escrow Holder shall deliver the Cash Funds to Granite upon written notice to Escrow Holder from Granite and the Cash Funds shall be deemed to have been forfeited by Alberta.

14. Also, on December 12, 2008, Granite and the Principals entered into the Release which was a separate agreement among Granite, the Principals, Alberta's construction lender, and various other parties which were not party to the FPSA and dealt, in part, with matters unrelated to the FPSA. As consideration for the Release, Granite agreed to pay an additional

---

[3] Section 14.9 of the FPSA expressly provides that "[t]ime is of the essence of this Agreement."
[4] This excerpt is from paragraph 4.1(c) of the final amendment to the FPSA, which amends Section 8.1(k)(ii) of the FPSA. The final amendment is entitled "Fifteenth Amendment to Amendment and Agreement and Termination Agreement."

$2,150,000 ("Additional Consideration") above the purchase price previously provided for in the FPSA. Although the Principals were not the seller, they were parties to the Release. Alberta's construction lender was also a party to the Release, and as part of the Release the lender released the Principals from their obligations as guarantors on the underlying debt of approximately $160,000,000. A true and correct copy of the Release is attached hereto as Exhibit A. Granite paid $1,500,000 of the $2,150,000 upon execution of the Release. The remaining $650,000 is the Cash Funds that were paid into escrow pending timely delivery of the Required Estoppels.

15. Shortly after execution of the Release, a tenant provided Granite with Granite's first notice of what Granite would come to realize were material defects at the Property – defects that the Principals had known about for months before execution of the Release. On January 28, 2009, Granite received a letter from legal counsel for DCC Architects, one of the tenants at the Property. A true and correct copy of the letter from DCC Architects' attorneys is attached hereto as Exhibit B. The correspondence enclosed a copy of a June 25, 2008, letter (the "DCC Letter") to Alberta whereby DCC Architects informed Alberta of defects at the Property, enclosing "photographs and verbal descriptions of damage due to building movement that is by no fault of the tenant or its occupants." A true and correct copy of the June 25, 2008, letter is attached to the January 28, 2009, letter at Exhibit B. Granite would learn the defects were severe enough for Alberta to have previously sought proposals from an engineering firm to investigate the source of the defects – all prior to execution of the Release and without notifying Granite. Attached as Exhibit C (the "WJE Letter") is a true and correct copy of the November 2008 proposal from Wiss, Janney, Elstner Associates, Inc. "to provide engineering services related to the evaluation and remediation of slab and foundation movements affecting the buildings at the Southlands

Mall located in Aurora, Colorado." Granite later received evidence that, also prior to signing the Release, the Alberta's attorneys were in communications with attorneys for the Colorado Cinema, a tenant at the Property, regarding "foundation system movement." A true and correct copy of the letter from Colorado Cinema's counsel, which references a letter from Alberta's counsel, Brownstein Hyatt Farber Schreck, LLP, dated December 8, 2008, is attached hereto as Exhibit D. These communications and events made it shockingly apparent to Granite that the Principals were aware of the defects almost six months before Granite signed the Release and were communicating with tenants about the defects just four (4) days before execution of the Release. Further, the Principals not only concealed the existence of these defects but made affirmative misrepresentations that no such defects existed in order to induce Granite to enter into the Release and to pay the Additional Consideration.

16. The Principals had a duty to disclose these defects to Granite prior to entering into the Release. Not only are the defects of the kind that the Principals, in equity and good conscience, should have disclosed to Granite, but the FPSA clearly created a duty for the Principals to disclose these sorts of defects, including sections 7.2 and 11.2.[5] There does not appear to be any real dispute that the Principals were aware of the defects prior to execution of the Release in December 2008. When confronted with these issues in February 2009, Donald Provost acknowledged to Granite's representatives that he had been working to address the defects prior to execution of the Release. Peter Cudlip was on-site regularly throughout

---

[5] Section 7.2(f) of the FPSA required Alberta, and thereby the Principals, to promptly notify Granite "of any change in any condition with respect to the Property or any portion thereof." Section 11.2(d) of the FPSA likewise required Alberta, and thereby the Principals, to promptly notify Granite of "any event or circumstance of which [Alberta] has knowledge subsequent to the date of [the FPSA] which (a) makes any representation or warranty of [Alberta] to [Granite] under [the FPSA] untrue or misleading." Among the representations and warranties Alberta made to Granite under section 11.2(d) of the FPSA was, "As of the Closing Date, [Alberta], as landlord, is not in default or breach of any material terms, representations, covenants or conditions in any Qualifying Lease."

construction and up through the date the Release was signed and was or should have been aware of the defects. Allan Provost was regularly apprised of the status of the project and Property through execution of the Release and was or should have been aware of the defects. Not only did the Principals fail to disclose the defects, it appears they actively sought to conceal them.

17. For example, the Principals tried to convince Granite to accept the May 2008 estoppel certificates in December 2008. The reason the Principals wanted Granite to accept the May 2008 certificates is because they did not contain evidence of the defects or other landlord defaults and, consequently, gave the mistaken impression that none existed. However, the Principals knew at the time they offered the May 2008 certificates on November 21, 2008, that they were not accurate. In contrast to the May 2008 certificates, the 2009 estoppel certificates reflect numerous and serious defects at the Property which existed prior to execution of the Release. By offering these May 2008 certificates at or near the time the Release was signed, the Principals actively misrepresented the condition of the Property. In addition, on information and belief, one or more of the Principals ordered that cosmetic repairs be made at the Property at times when Granite was scheduled to visit the Property for the purpose of concealing the defects and inducing Granite to enter into the Release.

18. Granite relied on the Principals' silence in that Granite would never have entered into the Release or paid the Additional Consideration if Granite had known of the structural defects with the Property. By withholding this information from Granite, the Principals induced Granite to enter into the Release and pay the Additional Consideration. Given the Principals' duty to disclose any change in the condition, and even more importantly any defects, Granite was justified in relying on their silence. Granite also relied on the affirmative representations made

regarding the condition of the Property such as offering the May 2008 estoppel certificates three weeks before execution of the Release.  Offering the May 2008 certificates three weeks before the Release was signed amounted to an affirmative representation that the condition of the Property had not changed since May 2008, and Granite relied on this and other misrepresentations.

19.     These same defects that existed prior to execution of the Release contributed to Alberta's inability to deliver the Required Estoppels after closing.  Alberta delivered eighty-five (85) tenant estoppel certificates to Granite prior to the March 1, 2009, deadline; however, Granite rejected nine (9) of the estoppels because they were insufficient ("Rejected Estoppels"). The reasons Granite rejected the estoppels, which were numerous and substantive, are covered by section 8.1(k)(ii) of the FPSA.  The reasons included alleged landlord defaults, monetary disputes, drainage problems, serious cracks in the walls, and defects with the HVAC.  Perhaps the most serious issues relate to the cracked foundations, walls, and structural defects raised in the tenant estoppel certificates delivered by Colorado Cinema, DCC Architects, LLC, and American Fidelity Assurance Company.  Taking the Rejected Estoppels into account, Alberta only delivered Approved Tenant Estoppel Certificates for seventy-six (76) tenants, which amounts to approximately 70% of the total leased square footage of the Property.  Thus, Alberta did not meet the 75% threshold for Approved Tenant Estoppel Certificates.  Alberta's failure to deliver an Approved Tenant Estoppel Certificate for Colorado Cinema Group, LLC – whose lease makes up approximately 16.5% of the total leased square footage of the Property – means Alberta also failed to deliver an Approved Tenant Estoppel Certificate for all tenants whose leased space comprises 10% or more of the total leased square footage of the Property.

20.     Given this failure, the Escrow Agreement required Land Title to release the Cash Funds to Granite.  Land Title, however, has refused to release the Cash Funds to Granite.  On March 4, 2009, Granite notified Land Title of Alberta's failure to deliver the Required Estoppels and requested that Land Title release the Cash Funds to Granite.  Land Title responded on March 6, 2009, by advising Granite that it would not deliver the Cash Funds.  According to the Escrow Agreement, Land Title can only refuse to comply with Granite's demand for the Cash Funds if the parties are in disagreement and Land Title has a good faith basis for doubting what action should be taken.  There is no good faith basis for Land Title to doubt what action should be taken here.  The indisputable facts establish that Alberta has failed to deliver the Required Estoppels and the Cash Funds should be delivered to Granite.  Instead of delivering the Cash Funds to Granite, Land Title provided the parties with notice on March 11, 2009, of its intent to file an action in interpleader.  As of September 4, 2009, the Cash Funds remain in escrow with Land Title.  Granite is entitled to the Cash Funds plus accrued interest, as provided for by the parties' agreement.

21.     The defects at the Property, though latent at the time the Release was signed, are serious.  Certain slabs at the Property are sinking into the ground, and the exterior walls, interior walls, and other components of some of the buildings at the Property are failing as a result.  Although the cause of and responsibility for the defects remain unclear, there is no question these defects existed prior to execution of the Release and the Principals were aware of the defects at the time the Release was signed.  Despite having knowledge of the defects, the Principals failed to inform Granite of these defects prior to the December 12, 2008, execution of the Release.

## CAUSES OF ACTION

### FRAUDULENT INDUCEMENT AS TO THE RELEASE
### (against Donald Provost, Allan Provost, and Peter Cudlip)

22.     As alleged herein, the Principals withheld material information from, and made material misrepresentations to, Granite so as to induce Granite to enter into the Release and pay the Additional Consideration – which Granite would not have done but for the Principals' fraudulent concealment and affirmative misrepresentations.  Granite reasonably relied on the Principals' silence and affirmative misrepresentations, and Granite has suffered damages as a result of the Principals' fraudulent conduct in the amount of the Additional Consideration.

### DECLARATORY JUDGMENT REGARDING ESCROW
### (against Alberta and Land Title)

23.     Based upon the facts alleged and documents referenced herein, an actual and justiciable controversy exists between the parties to this lawsuit as to their respective rights and obligations regarding the Cash Funds.  To resolve this controversy, Granite seeks judicial declarations that:

- Alberta failed to timely deliver the Required Estoppels;
- Granite is entitled to receive the Cash Funds; and
- Land Title is entitled and obligated to deliver the Cash Funds to Granite.

Granite requests this relief pursuant to 28 U.S.C. §2201, Rule 57 of the Federal Rules of Civil Procedure, the parties' agreements, and as otherwise provided by law.

### ACTUAL AND EXEMPLARY DAMAGES FOR FRAUD
### (against the Principals)

24.     Granite seeks the actual damages it has suffered as a result of the Principals' fraudulently inducing Granite to enter into the Release, in particular the Additional

Consideration paid in consideration for the Release of $2,150,000.  Granite also seeks exemplary damages against the Principals for the fraud they committed to induce Granite to enter into the Release because the injury complained of by Granite is attended by circumstances of fraud, malice, or willful and wanton conduct on the part of the Principals, as set out above.  The Principals have continued to behave in a willful and wanton manner during the pendency of this lawsuit by refusing to be forthcoming with information relating to the defects, which the Principals knew or should have known would aggravate Granite's damages, which it has.

### ATTORNEYS' FEES AND COSTS UNDER THE ESCROW AGREEMENT
### (against Alberta)

25.     Granite seeks its attorneys' fees and costs against Alberta under the Escrow Agreement pursuant to its declaratory judgment action.  Granite has been required to retain legal counsel to assist in resolving disputes over the Cash Funds – disputes which arise from the Escrow Agreement.  Paragraph 12 of the Escrow Agreement provides that the prevailing party in any dispute arising from the Escrow Agreement is entitled to recover its reasonable and actual attorneys' fees and expenses, including those incurred in connection with any appeal.  Granite seeks to recover those attorneys' fees and expenses incurred in connection with the dispute over the Cash Funds, as provided for in the Escrow Agreement.

WHEREFORE Plaintiff Granite Southlands Town Center LLC respectfully requests that the Court enter a declaratory judgment against Defendants Albert Town Center, LLC and Land Title Guarantee Company as requested herein, order Land Title to deliver the Cash Funds to Granite along with accrued interest, and award Granite its attorneys' fees and expenses.  Granite also requests that the Court enter a judgment against the Principals holding them jointly and severally liable for the Additional Consideration and exemplary damages, along with

prejudgment and post-judgment interest and all other and further relief to which Granite is entitled.

Plaintiff renews its demand for a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

/s/Osborne J. Dykes, III
OSBORNE J. DYKES, III
BENJAMIN M. VETTER
FULBRIGHT & JAWORSKI L.L.P.
370 Seventeenth Street, Suite 2150
Denver, CO  80202
(303) 801-2700 – Telephone
(303) 801-2777 – Facsimile
jdykes@fulbright.com
bvetter@fulbright.com

PAUL TRAHAN
FULBRIGHT & JAWORSKI L.L.P.
600 Congress Avenue, Suite 2400
Austin, TX  78701
(512) 474-5201 – Telephone
(512) 536-4598 – Facsimile
ptrahan@fulbright.com

**COUNSEL FOR PLAINTIFF**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on the 16th day of September, 2009, I electronically filed the foregoing **PLAINTIFF'S FIRST AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to attorneys for the remaining parties at the following e-mail addresses:

> Stephen L. Waters                                swaters@rwolaw.com
> Kimberly A. Bruetsch                          kbruetsch@rwolaw.com
> ROBINSON WATERS & O'DORISIO, P.C.
> 1099 18th Street, Suite 2600
> Denver, CO 80202
>
> Elizabeth A. Starrs                               estarrs@starrslaw.com
> Elizabeth J. Hyatt                                 ehyatt@starrslaw.com
> STARRS MIHM & PULKRABEK LLP
> 707 17th Street, Suite 2600
> Denver, CO 80202

                                                                         */s/ Osborne J. Dykes, III*