IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-CV-00799-ZLW-KLM

GRANITE SOUTHLANDS TOWN CENTER, LLC,

        Plaintiff

v.

ALBERTA TOWN CENTER, LLC,
LAND TITLE GUARANTEE COMPANY,
DONALD G. PROVOST,
ALLAN G. PROVOST,
and PETER M. CUDLIP,

        Defendants.

---

**DEFENDANTS PETER M. CUDLIP, DONALD G. PROVOST AND ALLAN G. PROVOST'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6)**

---

Defendants, Peter M. Cudlip and Donald G. Provost, by and through their attorneys, Lindquist & Vennum, PLLP, and Defendant Allan G. Provost through his attorneys, Holley, Albertson & Polk, PC, hereby move this Court for dismissal of Plaintiff's Claims for Relief Against Defendants Peter M. Cudlip, Donald G. Provost and Allan G. Provost pursuant to F.R.C.P. 12(b)(6). As grounds therefore, Defendants state as follows:

### 1.    INTRODUCTION

Plaintiff, Granite Southlands Town Center, LLC ("Granite") purchased the Southlands Town Center shopping center ("Southlands Town Center" or the "Property") from Alberta Town Center, LLC ("Alberta") for $161,172,662.15 in December 2008. In its First Amended Complaint, Granite added the members and managers of Alberta – Donald Provost, Peter Cudlip,

and Allan Provost ("the Principals") – as defendants. Donald Provost and Peter Cudlip are Alberta's managing members. Allan Provost is a member, but not a manager of Alberta. Granite is a wholly owned subsidiary of BlackRock Realty Advisors, Inc., which is owned by BlackRock, Inc., a global investment firm with $1.37 trillion under management.[1]

Granite now claims Alberta's Principals misrepresented or concealed material facts relating to the condition of two of the fifteen Southlands Town Center buildings Granite purchased. Granite does not claim, however, that the Principals fraudulently induced it to purchase the Southlands Town Center or that the alleged defects diminished the value of the Property. Rather, Granite claims the individual Principals misrepresented the condition of the Property to induce it to pay $2,150,000 as consideration for a Release and Termination Agreement ("Release") through which Granite released any claims it had against the Principals. The documents referenced in Granite's First Amended Complaint reveal that what Granite actually seeks is a partial refund in the amount of $2,150,000 of the purchase price it paid Alberta for the Property. Granite seeks this partial refund of the purchase price from the individual Principals, but not Alberta itself.

Granite's fraud claims against the Principals fail and must be dismissed based upon its contract with Alberta. The very basis of the alleged fraud by the Principals – the existence of alleged defects in the condition of the Property – is specifically negated by the contract. Under the contract, Granite agreed to purchase the Southlands Town Center from Alberta before construction began and specifically agreed it could not disapprove of the Property or terminate the contract due to the condition of the property. The contract also provides that Alberta made

---

[1] http://www2.blackrock.com/global/home/AboutUs/AboutBlackRock/index.htm

Doc# 3097324\9

no warranties or representations concerning the Property's condition. Therefore, two critical elements of the fraudulent inducement claim – materiality of the alleged misrepresentation or omission and reasonable reliance – are specifically precluded by the parties' contract.

Furthermore, Granite has failed to plead properly other elements of a claim for fraudulent inducement. It has not pled that the Principals' allegedly fraudulent conduct induced it to purchase Southlands Town Center or that any misrepresentation or omission actually caused it any damage. Rather, in an apparent recognition of its inability to allege causation, Granite claims it was fraudulently induced to enter into the Release thereby releasing any claims it may have had against Alberta or the individual Principals. This allegation is not borne out by the contract and has no reasonable plausibility. It defies logic that Granite paid $2,150,000 as consideration for its own agreement to release Alberta and the Principals, yet this is precisely what Granite's First Amended Complaint alleges. In addition, Granite has failed to plead with particularity any statements made by any of the individual Principals upon which its fraud claim is based.

Finally, Granite does not seek to rescind the Release despite the fact that the Release expressly forecloses the very claims Granite now asserts against the Principals. By failing to seek rescission of the Release, Granite is bound by its terms and may not bring this action. For these reasons, the First Amended Complaint fails to state a claim against the individual Principals and should therefore be dismissed.

### 2.     STANDARD FOR DISMISSAL

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___

3

U.S. ____, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1995, 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (citations omitted). The "plausibility standard" requires that the plaintiff plead "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citations omitted). Although the court must accept as true the allegations contained in a complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citations omitted). The Court should "draw on its judicial experience and common sense" and conduct a context-specific review to determine whether a complaint states a plausible claim for relief. *Id.* at 1950 (citations omitted).

In determining whether Granite's First Amended Complaint states a claim pursuant to F.R.C.P. 12(b)(6), the Court may consider the factual allegations stated in the complaint but may also consider the documents attached to the complaint as exhibits and indisputably authentic documents referenced in the complaint. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Desert Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). Granite attached the Release to its First Amended Complaint and repeatedly referenced the FPSA and its numerous amendments without attaching these documents. To properly decide this Motion, the Court must review the relationship of the parties in the context of the FPSA and its amendments, copies of which are designated as exhibits to this Motion. The authenticity of the attached FPSA and its amendments is verified by the affidavit of Peter M. Cudlip attached as Exhibit 1. The exhibits related to the FPSA are confidential and will be filed under seal with leave of the Court.

3.  **FACTUAL ALLEGATIONS OF FIRST AMENDED COMPLAINT**

a.  <u>The FPSA</u>

In September 2005, Granite entered into a Forward Purchase and Sale Agreement ("FPSA") with Alberta that obligated Granite to purchase the Southlands Town Center regardless of the Property's condition. (Confidential Exhibit 2, FPSA, § 5.1; 5.3(c)). Under the FPSA, which was executed before construction began, Granite agreed to purchase Southlands Town Center on an "**AS IS, WHERE IS**" basis without any representations or warranties from Alberta as to the condition of the Property. (Conf. Exh. 2, § 5.1). In turn, through the FPSA, Granite purchased from Alberta all warranties and guarantees from the architects, engineers, contractors, subcontractors and other third parties who participated in the construction of the Southlands Town Center. (Conf. Exh. 2, Art. II, (f)). The FPSA also afforded Granite the right to inspect the Property and conduct testing any time from the execution of the FPSA through the closing. (Conf. Exh. 2, § 5.2; 7.2(h)). Similarly, Granite had the right to attend meetings with the general contractor, subcontractors, engineers, and architects regarding the Property's development. (Conf. Exh. 2, § 7.2 (h)). After multiple amendments to the FPSA, on December 12, 2008, Granite and Alberta closed the purchase and sale of the Property under the FPSA, and Alberta transferred title to Southlands Town Center to Granite. (First Amended Complaint, ¶ 10).

b.  <u>Amendments to the FPSA</u>

In the nearly 39 months between the FPSA's execution and the closing, Alberta and Granite entered into sixteen separate amendments to the FPSA. (See Confidential Exhibit 3, Fifteenth Amendment to FPSA, Recital A). Through these amendments, Granite delayed closing on the purchase fifteen times, causing Alberta to incur significant costs, expenses and taxes it

would not have incurred had Granite closed the transaction before March 31, 2007, the date originally contemplated. (*See* Conf. Exh. 2, § 10.2, and Confidential Exhibit 4, Fourteenth Amendment to FPSA, § 2). In the course of extending the closing dates, Granite agreed to share 50% of the operating deficits incurred by Alberta from December 14, 2007 through the closing. (Confidential Exhibit 5, Eighth Amendment to FPSA, § 5). The parties also agreed to alter the sales price of the Southlands Town Center twice. (Conf. Exh. 4, § 4(a); Conf. Exh. 3, § 2(a)).

  c. <u>The 15th Amendment to FPSA & the "Additional Consideration"</u>

In September 2005, Granite agreed to purchase Southlands Town Center for the lesser of $160,000,000 or the construction costs, operating and other costs incurred through closing. (Conf. Exh. 2, § 4.1). In May 2008, Granite and Alberta executed the 14th Amendment and agreed to change the price to a fixed amount of $160,000,000. (Conf. Exh. 4, § 4(a)). On December 8, 2008, Granite, Alberta, and others, including the Principals, executed the 15th Amendment, through which Granite and Alberta amended the purchase price to be $2,150,000 plus the lesser of $160,000,000 or the repayment amount of Alberta's construction loan. (Conf. Exh. 3, § 2 (a)). The 15th Amendment expressly states that Granite agreed to this price "as consideration for the conveyance of the Property to [Granite]." (Conf. Exh. 3, § 2 (a)).

  d. <u>The Release and Termination Agreement</u>

In the 15th Amendment, Granite and the Principals agreed to execute the Release. (Conf. Exh. 3, § 9). Through the Release, Alberta and the Principals agreed to release any and all claims they may have under the FPSA against Granite. (Plaintiff's Exhibit A, § 3). Similarly, Granite agreed to release any and all claims it may have had against Alberta and the Principals. (*Id.*, § 4). Neither the Release nor the 15th Amendment recites their consideration; however, the

6

Doc# 3097324\9

15th Amendment states that Granite agreed to pay $2,150,000 as part of the purchase price for the Property. (Conf. Exh. 3, § 2(a)). Granite did not, therefore, pay $2,150,000 as consideration for the Release, rather the $2,150,000 was part of the consideration for the conveyance of the Southlands Town Center. (Conf. Exh. 3, § 2(a)). Additionally, contrary to Plaintiff's allegation, the construction lender did not release the Principals of anything through the Release. (*Id.*)

### 4. LEGAL ARGUMENT

The FPSA, its Amendments and the Release, show that Granite became obligated to purchase the Southlands Town Center upon execution of the FPSA in September 2005. Granite remained obligated to purchase throughout the life of the contract even if defects existed on the Property. No statements or conduct of the Principals with respect to the condition of the property could alter that obligation. Consequently, the existence of defects and, therefore, statements concerning the condition of the property were legally irrelevant to Granite's execution of the Release or payment of the negotiated purchase price. As a result, the First Amended Complaint fails to state a claim upon which relief can be granted to Granite and should be dismissed.

    a.   <u>Granite Cannot Establish The Elements of Its Fraudulent Inducement Claim as A Matter of Law.</u>

To prevail on its fraudulent inducement claim, Granite must establish: (1) that the Principals failed to disclose a past or present fact that they had a duty to disclose or made a false representation of a past or present fact; (2) the fact was material; (3) Granite entered into the contract relying on the assumption that the undisclosed fact did not exist or was different from what it actually was; (4) Granite's reliance was justified; and (5) Granite's reliance caused

damages or losses. *See M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1382 (Colo. 1994). Granite cannot establish any of the foregoing elements of fraud as a matter of law.

      b.    <u>The Condition of Southlands Town Center Was Not Material</u>

The condition of Southlands Town Center was immaterial to Granite's obligation to purchase the Property and its execution of the Release. Under Colorado law, a "fact is material if a reasonable person under the circumstances would attach importance to it in determining his course of action." *Denberg v. Loretto Heights College*, 694 P.2d 375, 377 (Colo. App. 1984), *citing Wade v. Olinger Life Ins. Co.*, 560 P.2d 446 (Colo. 1977).

An essential term of the FPSA is section 5.1 entitled "**'AS IS, WHERE IS' Sale**." (Conf. Exh. 2, § 5.1, emphasis in original). This section provides that the "Property is being sold to [Granite] on the Closing Date in its then '**AS IS, WHERE IS**' condition, with all faults." (Conf. Exh. 2, § 5.1 (a) (emphasis original)). The FPSA goes on to provide that Alberta disclaimed all warranties and representations concerning the condition of the property and was making no representations concerning the condition of the Property. (Conf. Exh. 2, § 5.1(a)-(f)). The FPSA also contains the following provision by which Granite specifically agreed it could not refuse to close the purchase because of any defect in the Property.

> <u>No Disapproval Right</u>. [Granite's] right to access the Property and perform additional tests and inspections is in no way to be inferred or interpreted as [Granite's] right to disapprove the Property, terminate this Agreement or receive a refund of its Earnest Money Deposit, it being understood that, except as specifically set forth in this Agreement, [Granite] has no right to terminate this Agreement as a result of any matter relating to the condition of the Property, its entitlements status or its marketability.

(Conf. Exh. 2, § 5.3(c)). Because Granite could not "disapprove the Property" or terminate the FPSA as a result of "any matter relating to the condition of the Property," none of its rights were

affected by the existence of defects on the Property. As a result, Granite could not have reasonably attached importance to the condition of the Property in determining whether to purchase the Property.

The immateriality of the Property's condition is further understood by an examination of the protections Granite received in the FPSA. The FPSA afforded Granite rights of inspection, including the right to conduct destructive testing, at any time between the execution of the FPSA and the closing. (Conf. Exh. 2, § 5.2 & 7.2(h)). Granite had the right to attend meetings with the general contractor, subcontractors, engineers, and architects throughout the Southland Town Center's construction and development. (Conf. Exh. 2, § 7.2(h)). Granite was further protected against defects through its purchase of all warranties and guarantees from the general contractor, subcontractors, architects, and engineers related to the construction of the buildings and improvements on the Property. (Conf. Exh. 2, , Art. II, (f); and § 7.2(g)). Granite's claim that it was deceived into paying additional consideration by virtue of its ignorance of alleged defects at Southlands Town Center is without basis.

With its purchase of the Property, Granite also entered into the Release through which it waived all claims it could have asserted against the Principals or Alberta. Granite's allegation that it would not have executed the Release if it had been aware of the allegedly concealed defects is without basis. For the condition of the Property to be material to the execution of the Release, Granite must have had the right to assert legal claims based on the existence of defects at Southlands Town Center against Alberta or the Principals. As demonstrated above, Granite had no such right. Granite's remedy for defects in the Property was (and is) to enforce the construction warranties and guarantees. In short, Granite had no claims against Alberta or the

Principals for defects in the Property to waive. Therefore, the condition of the Property could have had no material effect on Granite's execution of the Release.

      i.    The Principals Had No Duty to Disclose Information Concerning the Condition of Southlands Town Center to Granite

"Whether a defendant has a duty to disclose a particular fact is a question of law. Generally, a person has a duty to disclose to another with whom he deals facts that in equity or good conscience should be disclosed." *Burman v. Richmond Homes Ltd.*, 821 P.2d 913, 918 (Colo. App. 1991). Granite contends that the Principals owed it a duty to disclose the existence of alleged defects at Southlands Town Center based on 1) equity and good conscience, and 2) the provisions of the FPSA.[2] The Principals, as individuals, owed no duty of disclosure to Granite

      a)    The Principals Owed No Contractual Duty of Disclosure To Granite.

The FPSA is an agreement between Granite's predecessor and Alberta. (Conf. Exh. 2). The Principals are not parties to the FPSA. (Conf. Exh. 2). The mere status of the Principals as members and managers of Alberta does not create personal liability for the LLC's obligations or duties. See § 7-80-705, C.R.S. ("Members and managers of limited liability companies are not liable under a judgment, decree, or order of a court, or in any other manner, for a debt, obligation, or liability of the limited liability company."). Accordingly, Sections 7.2 and 11.2 of the FPSA, imposed no duties upon the Principals, as *individuals,* to disclose alleged defects in the condition of the Property.

---

[2] Plaintiff's contentions that the alleged defects were latent and that it was not notified of the alleged defects to the Property are false.

Moreover, the FPSA did not impose a duty on Alberta to disclose the existence of defects at Southlands Town Center. In its First Amended Complaint, Granite selectively references two sections of the FPSA for the false premise that the FPSA imposed a duty to disclose the existence of defects upon Alberta. Section 7.2 (f) of the FPSA states in its entirety:

> **Changes in Condition**. Seller shall promptly notify Buyer of any change in any condition with respect to the Property or any portion thereof or of any event or circumstance of which seller has knowledge subsequent to the date of this Agreement which (a) makes any representation or warranty of Seller to Buyer under this Agreement untrue or misleading, or (b) makes any covenant or agreement of Seller under this Agreement incapable of being performed.

(Conf. Exh. 2, § 7.2(f)). Granite attempts to read Section 11.2(d) of the FPSA as imposing an independent duty to disclose alleged defects upon the Principals. However, Granite selectively omits from its First Amended Complaint the entirety of section 5.1 of the FPSA which negates Granite's interpretation. Where relevant, Section 5.1 of the FPSA provides:

> "As an essential inducement to Seller to sell the Property to [Granite] in the terms and conditions set forth in this Agreement, [Granite] acknowledges, understands and agrees as follows:
>
> (a)     (i) [Granite] is a sophisticated purchaser who is an experienced investor in and owner of property of a type similar to the property, (ii) except as otherwise specifically provided herein or for any warranty that is part of the Intangible Property assigned to [Granite] at Closing pursuant and subject to the terms hereof, neither Seller nor any of their agents, brokers or employees has made and does not make any representations or warranties of any kind whatsoever, whether oral or written, express or implied, with respect to the Property; and (iii) except as expressly set forth herein and except for those warranties expressly set forth, or implied by law, in the Deed or other documents delivered at the Closing, the Property is being sold to [Granite] on the Closing Date in its then "AS IS, WHERE IS" condition, with all faults.

11

Doc# 3097324\9

> (b) ...[N]either Seller nor any of its agents, brokers, attorneys or employees has made and does not make any representation or warranty, whether oral or written, express or implied, with respect to ... the physical condition . . .of the Property.
>
> (c) ... Seller, at the Closing, expressly disclaims and negates, as to the Property ... (iii) any implied warranty by Seller with respect to the condition of the Property ...."

(Conf. Exh. 2, § 5.1 (a)-(c)). Even if the Principals were parties to the FPSA, section 7.2 does not mandate disclosure of alleged defects because no express or implied warranties concerning the condition of the Property were made by Alberta.

### b) The Principals owed no common law duty of disclosure to Granite

The Principals owed no duty to disclose information to Granite other than that imposed on Alberta. "A party to a business transaction has a duty to disclose to the other party facts basic to the transaction if (1) he knows that the other is about to enter into it under a mistake as to them and (2) the other party, because of the relationship between them, the customs of the trade, or other objective circumstances, would reasonably expect a disclosure of those facts." *Burman*, 821 P.2d at 918.

Given Granite and Alberta's relationship, equity and good conscience do not require the Principals to make a personal disclosure of information Alberta would not have been required to disclose under the terms of the FPSA. Granite's specific agreement that the condition of the property was immaterial negates any claim that Granite reasonably expected the Principals to disclose the existence of alleged defects.

12

    ii.  <u>Granite Fails To Plead Justifiable Reliance On The Alleged Misrepresentations Or Omissions.</u>

Granite's First Amended Complaint fails to plead any plausible claim that it relied on the alleged fraudulent conduct. "The purpose of any reliance requirement is to "provide[] the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury." *Rosenthal v. Dean Witter Reynolds, Inc.*, 908 P.2d 1095, 1101 (Colo. 1995) (citations omitted). In the context of Granite's fraudulent inducement claim, this means Granite must establish that the alleged fraudulent conduct 1) induced it to enter into the transaction complained of, and 2) actually caused the damages claimed. Here, the transaction complained of is the execution of the Release. (First Amended Complaint, Summary of Complaint and ¶ 14-18). The loss alleged, however, is a portion of the consideration paid under the FPSA for the purchase of Southlands Town Center. (First Amended Complaint, ¶ 22). Plaintiff's First Amended Complaint and the supporting documentation reveal that Granite cannot establish any causal connection between the alleged fraudulent conduct and its decision to execute the Release, or its claimed damages. In essence, Granite claims being fraudulently induced to enter one contract entitles it to a refund of the consideration paid under a different contract.

As demonstrated above, the alleged misrepresentations as to the condition of the Property did not and could not have had any effect on Granite's decision to execute the Release. As a result, no causal connection between the alleged fraudulent conduct and the Release exists. Similarly, the alleged $2,150,000 in damages was not incurred because of Granite's ignorance of defects at the Property, but rather, was consideration for the purchase of the Property, about which no complaint is made. Granite is not, therefore, able to establish any causal connection between the alleged fraudulent conduct and the claimed damages.

     iii. <u>Granite's Inspection Rights Negate Any Claim of Reliance</u>

  The FPSA afforded Granite the right to inspect the Property, which precludes any claim of reliance on either silence or misrepresentations as inducement to execute the Release. "A party cannot say they were deceived by the other's misrepresentations where the means of knowledge are equally available to both parties *and* the subject matter is equally open to their inspection." *Sheffield Services Co. v. Trowbridge*, 211 P.3d 714, 726 (Colo. App. 2009) *citing Hayden v. Perry,* 134 P.2d 212, 213 (Colo. 1943) (emphasis original). The FPSA provided significant rights to Granite to inspect the Property in the more than three years between execution of the FPSA and the closing. (Conf. Exh. 2, § 5.3). The FPSA allowed Plaintiff to enter the Property at all reasonable times, to inspect and test the Property. (*Id.*) Thus, if the alleged defects were those that Granite could have discovered through a reasonable inspection, Granite cannot prevail on a claim of misrepresentation or failure to disclose as a matter of law.

  In an attempt to avoid the consequences of the "**AS IS, WHERE IS**" provisions of the FPSA, Granite characterizes the alleged defects at the Southlands Town Center as "latent" defects. (See First Amended Complaint, ¶ 21). Latent defects are "those manifesting themselves after purchase and which are not discoverable through reasonable inspection." *Cosmopolitan Homes, Inc. v. Weller*, 663 P.2d 1041, 1045 (Colo. 1983).

  The documents attached to the First Amended Complaint reveal that the alleged defects were not "latent" and, had Granite exercised its right to conduct inspections, it would have discovered the alleged defects. For example, in paragraph 15 of the First Amended Complaint, Granite references its Exhibit B, which includes multiple photographs represented to be "damage due to building movement." (Exhibit B to First Amended Complaint). Plaintiff's Exhibit C

14

indicates the alleged defects "were evident during [a consultant's] brief site visit on November 17, 2008." (Exhibit C, to First Amended Complaint, page 1). Further, Plaintiff admits in its First Amended Complaint that any such defects were not "latent." Paragraph 16 of the First Amended Complaint alleges that Mr. Cudlip and Allan Provost "should have been aware" of the alleged defects because Mr. Cudlip "was on-site [sic] regularly throughout construction" and that Mr. Provost was "regularly apprised of the status of the project and Property." (First Amended Complaint, ¶16). Granite alleges no other basis for the Principals' purported knowledge of these alleged defects.

Common sense would dictate that alleged defects that were "evident," visually apparent, and of which the Principals had constructive knowledge by virtue of their presence on the Property and receipt of "updates," were not, as a matter of law, incapable of discovery.

        iv.    <u>Granite Has Not (And Cannot) Allege Any Damage as A Result of the Alleged Fraudulent Inducement</u>

Assuming, *arguendo*, Granite's First Amended Complaint otherwise states a valid claim, it states no plausible claim for actual damages. Actual damage is an essential element of a fraud claim. *Sposato v. Heggs,* 233 P.2d 385, 389 (Colo. 1951)(citation omitted). "In general, the damages recoverable for fraud is the difference between the value of benefits actually received under the contract and the value such benefits would have had if the false representations had been true." *Western Cities Broadcasting, Inc. v. Schueller*, 830 P.2d 1074, 1077 (Colo. App. 1991), *citing Trimble v. City & County of Denver,* 697 P.2d 716 (Colo. 1985).

The consideration Granite "actually received" for executing the Release was Alberta's and the Principals' release of any claims they could assert against Granite. (See Plaintiff's Exhibit A, § 4). Thus, to recover the damages it seeks, Granite must establish that the

15

Doc# 3097324\9

consideration it received (i.e. a release of claims against it) is worth less than it would have been had Granite known of the alleged defects. Because the existence of defects could only have been relevant to claims Granite could assert, representations concerning the condition could not have diminished the value of the claims Alberta and the Principals released against Granite. Consequently, Granite can establish no set of facts to show that the release it received is worth any less than the day it was executed, regardless of the condition of the Property

    c.    <u>Granite Has Released Its Claims against the Principals</u>

Granite's First Amended Complaint does not seek rescission of the Release. (See First Amended Complaint, ¶ 22). "A party asserting fraudulent inducement of a contract must elect whether to rescind or affirm the agreement." *Martinez v. Affordable Housing Network, Inc.*, 109 P.3d 983, 987 (Colo. App. 2004). Rather than seek rescission, Granite has affirmed the Release and seeks damages resulting from the alleged fraudulent inducement. The "damages" Granite seeks is a reduction in the price it agreed to pay for Southlands Town Center in the 15th Amendment. (First Amended Complaint, ¶ 14, 22, 24). In the Release, Granite agreed to:

> RELEASE, ACQUIT, and FOREVER DISCHARGE [Alberta, and the Principals] … from any and all Claims against any of them arising … out of or relating to … (i) the Town Center FPSA; … [and] (vi) any of the documents, instruments or other transactions whether or not executed or entered into by any of the Parties, relating to any of the foregoing matters described in subclauses (i)-(v) …

(Plaintiff's Exhibit A, § 4 (emphasis in original)). The Release defines a "Claim" broadly and includes "all existing future, known, and unknown claims" and "property damage, and all other losses and damages of any kind." (Plaintiff's Exhibit A, § 7).

16

Granite's failure to seek rescission is significant because the Release's terms remain in effect. As such, Granite has "FOREVER DISCHARGE[D]" any claims it may have against the Principals related to the FPSA, its Amendments and any damage or defects to the Property. (Plaintiff's Exhibit A, § 4 (emphasis in original)).

d. Granite's First Amended Complaint Fails to Plead a Claim against the Principals for Affirmative Misrepresentation.

Rule 9(b) of the Federal Rules of Civil Procedure requires that, when alleging fraud, "a party must state with particularity the circumstances constituting fraud." "Rule 9(b) requires that the pleadings give notice to the defendants of the fraudulent statements for which they are alleged to be responsible." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1253 (10th Cir. 1997). To adequately state a claim for fraud, the Plaintiff's First Amended Complaint must, at a minimum, identify the particular defendants alleged to have made misrepresentations, the content of the alleged false statement, and the occasions on which such affirmative statements are alleged to have been made. *See In re Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991); *Seattle-First Nat. Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir. 1986) *citing Trussell v. United Underwriters, Ltd*, 228 F.Supp. 757, 774-75 (D. Colo. 1964).

Rather than plead its affirmative misrepresentation claims with particularity, Granite merely alleges in conclusory fashion that: "[T]he Principals ... made affirmative misrepresentations that no such defects existed in order to induce Granite to enter into the Release and pay the Additional Consideration." (First Amended Complaint, ¶15). Plaintiff has failed to identify which of the three individual defendants is alleged to have made affirmative misrepresentations, to whom such statements were allegedly made, the substance of any alleged statements, or the occasions on which such statements are alleged to have been made. Plaintiff's

17

failure to comply with F.R.C.P. 9(b) requires dismissal of its affirmative misrepresentation claims against the individual defendants.

## 5. CONCLUSION

Granite was contractually obligated to purchase the Southlands Town Center without regard to the condition of the Property. Granite's claim that alleged misrepresentations or failure to disclose alleged defects in the Property induced it to pay $2,150,000 in consideration for the Release is not a plausible, cognizable claim. Further, even if Granite's First Amended Complaint stated a claim against the Principals, the remedy it seeks – a reduction in the purchase price of the Property – is not causally related to the alleged conduct. Finally, because Granite has not sought rescission of the Release, it remains in effect and precludes the damages claims it seeks.

For the foregoing reasons, Granite's First Amended Complaint against Donald G. Provost, Allan G. Provost and Peter M. Cudlip fails to state a claim and should be dismissed pursuant to F.R.C.P. 12 (b)(6).

DATED: October 14, 2009.

Respectfully submitted,

| | |
|---|---|
| s/ *Stuart N. Bennett* | s/ *Dennis B. Polk* |
| Stuart N. Bennett | Dennis B. Polk |
| **LINDQUIST & VENNUM, P.L.L.P.** | **HOLLEY, ALBERTSON & POLK, P.C.** |
| 600 - 17th Street, Suite 1800 –South | 1667 Cole Blvd. Suite 100 |
| Denver, CO 80202 | Golden, CO 80401 |
| Telephone: (303) 573-5900 | Telephone: (303) 233-7838 |
| Fax: (303) 573-1956 | Fax: (303) 233- |
| E-mail: sbennett@lindquist.com | E-mail: dbp@haplaw.net |
| Attorneys for Defendants Peter M. Cudlip, Donald G. Provost and Alberta Town Center, LLC | Attorneys for Defendant Allan G. Provost |

18

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | | |
|---|---|---|
| *Attorneys for Plaintiff & Counter Defendant Granite Southlands Town Center, LLC* | jdykes@fulbright.com<br>bvetter@fulbright.com | Osborne J. Dykes, III<br>Benjamin M. Vetter<br>Fulbright & Jaworski LLP<br>370 – 17th Street, Suite 2150<br>Denver, CO   80202 |
| *Attorneys for Plaintiff & Counter Defendant Granite Southlands Town Center, LLC* | ptrahan@fulbright.com | Paul Trahan<br>Fulbright & Jaworski LLP<br>600 Congress Avenue, Suite 2400<br>Austin, TX   78701 |
| *Defendant & Counter Claimant Alberta Town Center, LLC* | ehyatt@starrslaw.com<br>estarrs@starrslaw.com | Elizabeth Jeanelia Hyatt<br>Elizabeth A. Starrs<br>Starrs Mihm & Pulkrabek, LLP<br>707 – 17th Street, Suite 2600<br>Denver, CO   80202 |
| *Defendant Land Title Guarantee Company* | kbruetsch@rwolaw.com | Kimberly A. Bruetsch<br>Robinson, Waters & O'Dorisio PC<br>1099 – 18th Street, 26th Floor<br>Denver, CO   80202 |

And I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner indicated by the non-participant's name:

NONE

*s/   Stuart N. Bennett*
Stuart N. Bennett
Attorneys for Defendants Peter M. Cudlip,
Donald G. Provost and Alberta Town
Center, LLC
Lindquist & Vennum P.L.L.P.
600 - 17th Street, Suite 1800 –South
Denver, CO 80202
Telephone:    303-573-5900
Fax:          303-573-1956
E-mail:       sbennett@lindquist.com
