**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 09-CV-00799-ZLW-KLM

GRANITE SOUTHLANDS TOWN CENTER LLC,

        Plaintiff,

v.

ALBERTA TOWN CENTER, LLC,
LAND TITLE GUARANTEE COMPANY,
DONALD G. PROVOST, ALLAN G. PROVOST,
and PETER M. CUDLIP,

        Defendants.

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS PETER M. CUDLIP,
DONALD G. PROVOST, AND ALLAN G. PROVOST'S
MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6)**

---

Plaintiff/counter-defendant Granite Southlands Town Center LLC ("Granite") files this response to Defendants Peter M. Cudlip, Donald G. Provost, and Allan G. Provost's (collectively, the "Principals") Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) [Dkt. #60] ("Principals' Motion"), as follows:

**INTRODUCTION**

As related in Granite's First Amended Complaint (the "Complaint") [Dkt. #36], this case arises out of the purchase and sale of a commercial property known as the Southlands Town Center, located in Aurora, Colorado (the "Property"). The claims at issue here, fraud claims against members and managers of Alberta, relate to apparent serious defects at the Property of which the Principals were aware prior to closing and which they not only failed to disclose but

85305384.3

appear to have actively concealed from Granite so as to induce Granite to pay an additional $2,150,000 at closing. Granite now seeks this amount from Principals as damages. In response to Granite's fraud claims, the Principals filed a Motion to Dismiss which, if one were to be persuaded by it and follow it to its logical conclusion, would mean that

- the fixed price agreement the parties signed in 2005 somehow required Granite to pay an additional $2,150,000 at closing in December 2008, despite the lack of reference to such payment in the 2005 agreement, the lapse of time, the materially distinct terms of the agreements, and the fact that the parties to the agreements are not the same;

- Granite was somehow required to pay the additional $2,150,000 regardless of the condition of the Property, however extreme, and regardless of whether Principals had actively concealed latent defects from Granite; and

- the Principals could not, as a matter of law, be held accountable for hiding latent defects at the Property (which they knew were material) and thereby inducing Granite to close on the Release (allowing Principals to get out from under guarantees of approximately $160,000,000).

To accept Principals' arguments, this Court must believe that if Principals had disclosed Principals' and Alberta's past fraudulent conduct on December 11, 2008, that the very next day Granite still would have been required to enter into the Fifteenth Amendment (which obligated Granite to enter into new obligations under a separate, additional contract, the Release and Termination Agreement ("Release")), and pay an additional, previously unreferenced $2,150,000. Principals' arguments are illogical and can be viewed as offensive. Principals attempt to support their arguments with a misleading and illogical interpretation of the Forward Purchase and Sale Agreement ("FPSA"), citing some provisions of the FPSA while ignoring others that repudiate their arguments.[1]

---

[1] While Granite must respond in this Response to the Principals' misstatements of fact relating to the terms and provisions of the FPSA, Granite is not currently making a claim against the Principals for damages arising out of Alberta's breach of its obligations under the FPSA. As is clearly set forth in Granite's Complaint, Granite's claims

Principals Motion also attempts to persuade this Court that a more strict pleading standard applies to Granite's Complaint than is supported by Colorado law. Despite Principals' assertions to the contrary, the inquiry before the Court on a motion to dismiss is not whether it is likely that all the well-pleaded allegations will be proven true at trial. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) ("[A] judge ruling on a motion to dismiss must accept all allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven."). Rather, the question for the Court is whether the alleged facts, being accepted as true, "give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Red Hawk v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Granite's Complaint satisfies this standard as it pleads facts showing that Principals fraudulently induced Granite to pay Principals and Alberta an additional $2,150,000 over and above the previously agreed purchase price for the Property.[2]

## ARGUMENT

### I. Applicable Legal Standard

Granite clearly has satisfied its burden at this stage of the proceedings and met the applicable legal standard by stating facts that support claims which are certainly plausible on their face, which is the standard to which Granite is held at this stage of the proceedings. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the

---

against Principals solely arise out of Principals fraudulent inducement of Granite to enter into the Release and to pay an additional $2,150,000 in consideration for the Release.

[2] As somewhat of a side note but in the interest of clarity, Granite is not yet claiming that Principals induced it into closing on the purchase of the Property and is not now asserting a claim for damages resulting from a reduction in the value of the Property – this fact seems to confuse Principals and, therefore, confuse the arguments set forth in their Motion to Dismiss.

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 550 U.S. ___, 129 S.Ct. 1937, 1949 (2009) (citation and quotation marks omitted). The court "must accept all allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). The facts alleged "must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.*; *see also, Iqbal*, 129 S.Ct. at 1949 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").

## II.   The First Amended Complaint States a Plausible Claim

Taken as true, as they must be, the factual allegations in Granite's Complaint are more than sufficient to meet *Iqbal's* pleading requirements. Granite has alleged facts creating more than a reasonable inference that Principals knowingly misrepresented the condition of the Property; that they were under a duty to disclose the condition of the Property; that the condition of the Property was a material fact regarding the Release; and that Granite justifiably relied on the misrepresentations when it agreed to enter into the Release and therefore was damaged when it paid additional money as partial consideration for the Release.

### A.   The Pleaded Facts Create a Reasonable Inference of Knowing Misrepresentation by Principals

The Complaint includes numerous factual allegations creating more than a reasonable inference that the Principals knowingly misrepresented the condition of the Property. For example, the Complaint alleges that the three individual defendants are the only members of Alberta, the development company that built the Property. Complaint ¶ 2. The Complaint

further alleges facts showing that Alberta and Principals, the controlling members and managers of Alberta, were aware of substantial defects in the Property well before the Release was executed (or its execution agreed to). Complaint ¶ 15. Specifically, the Complaint includes the following factual allegations, which allegations must be accepted as true for purposes of assessing Principals' Motion:

- Principals failed to disclose to Granite prior to Granite's agreement to enter into the Release and pay $2,150,000 in additional consideration, that Principals had received a letter from DCC Architects in June 2008 alleging severe structural defects existed at the Property. Complaint ¶ 15.

- Principals failed to disclose to Granite prior to Granite's agreement to enter into the Release and pay $2,150,000 in additional consideration, that Alberta (acting through Principals as the members and managers of Alberta) sought proposals from structural engineers to investigate the source of "slab and foundation movements affecting the buildings at Southlands." Complaint ¶ 15.

- Principals failed to disclose to Granite prior to Granite's agreement to enter into the Release and to pay an additional $2,150,000, that Alberta (acting through Principals as the members and managers of Alberta) were in communications with Colorado Cinema, a tenant at the Property, regarding "foundation system movement." Complaint ¶ 15

- "[O]ne or more of the Principals ordered that cosmetic repairs be made at the Property," which they knew representatives of Granite would be visiting, so as to conceal the defects prior to Granite's agreeing to enter into the Release and to pay $2,150,000 in additional consideration. Complaint ¶ 17. *See also* Complaint ¶ 21 (alleging both specific defects that existed before execution of the Release and that "Principals were aware of the defects").

- Principals pressed Granite to accept tenant estoppels which they knew to be factually inaccurate prior to Granite's agreement to enter into the Release and to pay the additional $2,150,000. Complaint ¶ 18

- As alleged in the Complaint, making cosmetic repairs to conceal defects and knowingly and intentionally pressing Granite to accept outdated, inaccurate estoppel certificates amount to affirmative misrepresentations regarding the condition of the Property. Complaint ¶¶ 17, 18, 21.

Moreover, the Complaint satisfies the requirements of Fed. R. Civ. P. 9(b) as the pleaded facts of affirmative misrepresentation are specific and particular as to the content of the misrepresentation (the ordering of cosmetic repairs), the occasions when made (shortly before Granite's scheduled visits), and are pleaded against all three defendants. The factual allegations indisputably give Principals adequate notice of the fraud allegations levied against them.

**B.     The Pleaded Facts Create a Reasonable Inference that the Misrepresented Facts are Material and that Principals had a Duty to Disclose**

**1.     The Factual Allegations Create a Reasonable Inference that the Defects at the Property were Material to a Release**

The facts alleged in the Complaint more than meet Colorado's materiality requirements for common law fraud claims. *See Ackmann v. Merchants Mortgage & Trust Corp.*, 645 P.2d 7, 14 (Colo. 1982) ("'The test, therefore, of material inducement is not whether the plaintiff's action *would*, but whether it *might*, have been different if the misrepresentation had not been made.'") (quoting *Morrison v. Goodspeed*, 68 P.2d 458, 463 (Colo. 1937)).

In addressing Principals' contentions that the condition of the Property was immaterial to Granite, it must be pointed out that Principals' argument fails to recognize that the Fourteenth Amendment, the Fifteenth Amendment and all of the other "amendments" to the FPSA were, in fact, not just amendments to the FPSA. The documents were separate from the FPSA, entered into by and among different parties years after the execution of the original FPSA, and required separate consideration from that exchanged by the parties under the FPSA. As indicated by the title of each of these documents, these sixteen documents contained not only amendments to the terms and provisions of the FPSA but also separate agreements by and among the various parties, many of whom were not parties to the FPSA. This is evidenced, for example, in the Fifteenth

Amendment which is titled "Fifteenth Amendment to Amendment and Agreement and Termination Agreement." Section 2 of the Fifteenth Amendment reflects the amendments made to the FPSA by the Fifteenth Amendment; however, section 7 (dealing with a tenant improvement escrow), section 8 (dealing with the parties agreement relating to the management of the Property after the closing), section 9 (dealing with the parties agreement to enter into the Release), and section 10 (dealing with the assignment of certain rights under the declaration applicable to the Property) all contain agreements of the parties unrelated to the requirements of the FPSA. Furthermore, six of the parties to the Fifteenth Amendment were not parties to the FPSA. Principals essentially attempt to characterize the Release as nothing more than a closing document required by the FPSA. This is facially inaccurate.

The defects at the Property are material facts, and the misrepresentation thereof also material because, as alleged in Granite's Complaint, had Granite known about the defects at the time, Granite would not have agreed on December 8, 2008, to execute the Release and pay the additional $2,150,000 in consideration, nor would it have executed the Release four days later on December 12, 2008. Complaint ¶¶ 14, 18, 21. As such, Granite's Complaint more than satisfies Colorado's materiality requirements for common law fraud claims.

### 2. The Factual Allegations Create a Reasonable Inference that Principals Had Both a Common Law and Contractual Duty to Disclose the Defects at the Property

The Complaint also alleges facts to support more than a reasonable inference that Principals had a duty to disclose the condition of the Property. In fact, Principals had a duty to

disclose these defects under common law as well as under the FPSA.[3]  Colorado law imposes a duty "to disclose to another with whom he deals facts that in equity or good conscience should be disclosed."  *Mallon Oil v. Bowen/Edwards*, 940 P.2d 1055, 1059 (Colo. Ct. App. 1996) (internal quotation marks omitted).  This duty requires disclosure if a party "has stated facts that the party knows will create a false impression unless other facts are disclosed."  *Id.* at 1060.  Granite has alleged, and shown by attaching the Release, that the Principals, as individuals, are parties to the Release.  Complaint at § 14 and Ex. A.  Principals admit as much in their motion.  Motion at 6 ¶ d.  As individual signatories and beneficiaries of the Release, the Principals dealt directly and individually with Granite regarding the Release.

Thus, in their interactions with Granite regarding the Release, they assumed a duty as individuals, in addition to their duty as principals for Alberta, to disclose "facts that in equity or good conscience should be disclosed."  Material facts affecting Granite's decision to execute the Release unquestionably fall into this category.  Principals essentially argue that the existence of material structural defects at the Property, of which they were aware and that they actively sought to conceal from Granite, were not facts that the Principals should in equity and good conscience have disclosed.  This is not right as Principals were, as a matter of law, under a duty to disclose these defects to Granite.

> [Principals were] under a duty to exercise reasonable care to disclose to [Granite] before the [Release was] consummated: . . . (b) matters known to [the Principals] that [the Principals] knew to be necessary to prevent [their] partial or ambiguous statement of facts from being misleading; and (c) subsequently acquired information that [they knew would] make

---

[3] Principals, however, in an attempt to undercut Granite's claims, mistakenly suggest that Granite's claims are somehow founded in the FPSA.  This is not the case.  Although Granite must respond to Principals' arguments in this regard, Granite reminds the Court of the limited relevance of the FPSA with respect to Granite's fraud claims.  The FPSA is only relevant to Granite's fraud claims for purposes of establishing the context of Principals' duty to report the changed condition.

> untrue or misleading a previous representation that when made was true or believed to be so; and . . . (e) facts basic to the transaction, if [the Principals knew] that [Granite was] about to enter into it under a mistake as to them, and that [Granite], because of the relationship between [Granite and the Principals], the customs of the trade or other objective circumstances, would reasonably expect a disclosure of these facts.

*Mallon*, 940 P.2d at 1059 (quoting Restatement (Second) of Torts § 551 (1977)). By pressing Granite to accept the May estoppel certificates in November, which the Principals knew were not accurate because they did not reflect the defects at the Property or the written notices received from several tenants regarding these defects, Principals represented facts that created a false impression. Complaint ¶ 12. Principals' active concealment of defects shortly before Granite's scheduled visits similarly created a false impression and prevented Granite from observing potentially patent indicia of latent defects that might have uncovered Principals' fraud. Complaint ¶ 17.

Independent of their common-law duty to disclose under the Release, Principals, as the controlling members and managers of Alberta, had a duty to disclose the defects under the FPSA, which required that Alberta promptly inform Granite of any changes in the condition of the Property. Complaint ¶ 16. Section 7 of the FPSA, which governed the conduct of the parties during construction of the Property, required Alberta and its Principals to disclose "any change in any condition with respect to the Property or any portion thereof," Conf. Ex. 1. This provision clearly established a duty for Alberta and its Principals to disclose the existence of the changed conditions. Granite, relying on this duty, did not repeat its earlier inspection of the Property.

Section 7 further requires Alberta and Principals, the controlling members and managers of Alberta, to promptly notify Granite of "any event or circumstance" that makes any

representation or warranty required by the FPSA "untrue or misleading" or render performance of any covenant or agreement required by the FPSA "incapable of being performed." Under § 11.2(d) of the FPSA, Alberta and Principals, the controlling members and managers of Alberta, represented that, at the time of closing, none of the tenant leases were in default or "in breach of any material terms, representation, covenants or conditions." *Id.* The facts alleged in the Complaint plainly show that, contrary to the representation in § 11.2(d), some of the tenant leases were in default due to defects in the Property before closing, and at the time of closing, Principals had received written notice from tenants of these defaults due to the defects at the Property, which notices Principals withheld from Granite. *See* Complaint ¶¶ 15-16, 19. The FPSA imposed on Principals a duty to disclose the facts rendering the no lease default representation untrue, such facts being the tenant notice letters and defects at the Property.

### 3. Principals' Argument that the FPSA Negates Duty and Materiality is Incorrect

Contrary to Principals' arguments, the "as is-where is" disclaimers in § 5.1 of the FPSA cannot and do not negate the Principals' duty to disclose the defects at the Property. Section 5.1's disclaimer explicitly excepts from its scope the representations and warranties made elsewhere in the FPSA. Conf. Ex. 1 at § 5.1(a)(ii)-(iii). Each disclaimer of representations and warranties in § 5.1 includes similar "except as otherwise specifically provided herein" language. Section 5.1 does not constitute a license for the Principals to keep and hide the existence of defects from Granite – as the Principals argue is the case. The "except as otherwise specifically provided herein" refers to those provisions in the FPSA requiring disclosure of changed conditions at the Property and of circumstances rendering other representations inaccurate.

Principals cannot rely on the "as is-where is" provision as a catch-all that renders the balance of the FPSA meaningless.

Section 5.1 likewise does not render Principals' misrepresentations as to the condition of the Property immaterial. Principals claim that the misrepresentations could not be material because Granite could not rely on the defects as an excuse to refuse to close on the purchase the Property. Motion at 8-9. Thus, they reason that "for the condition of the Property to be material to the execution of the Release, Granite must have had the right to assert legal claims based on the existence of defects at [the Property] against Alberta or the Principals." Motion at 9. In other words, Principals argue that in order for Granite's fraud claims to withstand Rule 12(b)(6) scrutiny then Granite must have been able to refuse to close under the FPSA. According to Principals, § 5.1 of the FPSA, prevented such claim, and therefore the defects were immaterial to the Release.

Not only, as explained below, is Principals' argument here irrelevant to the inquiry before this Court in ruling on Principals' Motion, Principals' argument is also fundamentally flawed as it misrepresents Alberta's obligations and Granite's rights under the FPSA through selective citation of the provisions of the FPSA. First, Principals incorrectly assert that Section 5.1 of the FPSA applies prior to closing. If that were the case, Granite would have been required to close on the purchase of the Property if the improvements were built upside down. This, of course, was not the case and not what the FPSA required. Section 5.1 does not require Granite to close on the purchase of the Property regardless of its condition, as Principals' argue, but, rather, it only requires Granite to close on the purchase of the Property provided that all of the terms of the FPSA had been satisfied – including the obligation to disclose material changes in the condition

of the Property and to provide required estoppels. Moreover, the FPSA provided Granite with the right to terminate the FPSA at any time prior to closing if any representation or warranty of Alberta made in the FPSA was untrue and Alberta failed to cure such breach. Conf. Ex. 1 at § 11.2 (last paragraph). Because the condition of the Property affected the truth and accuracy of the representations and warranties made by Alberta under the FPSA which in turn triggered a termination right in favor of Granite, the materiality of the condition of the Property is undeniable. Principals' erroneous interpretation of the FPSA, compounded by Principals' selective citation of the terms of the FPSA, invalidate Principals' arguments that the condition of the Property was immaterial to Granite.

Furthermore, Principals' arguments in this regard are irrelevant to the inquiry before this Court. Principals' argument fails because it does not recognize that, as alleged in Complaint ¶ 14, the FPSA and the Release are separate agreements. Principals argue that because Granite has not claimed damages for fraudulent inducement of the FPSA, Granite cannot have been fraudulently induced to enter into the Release. Principals' Motion at 3. This argument misses the mark.[4] Granite is not claiming it was fraudulently induced into entering into the FPSA; Granite claims it was fraudulently induced into entering into the Release and paying the extra $2,150,000. The materiality of the condition of the Property as it relates to Granite's obligation pursuant to the FPSA to close on the purchase the Property is irrelevant to Granite's fraud claim under the Release. Instead, the relevant question is whether Principals' fraudulent misrepresentations were material in that they induced Granite to enter the Release and to pay additional money. As shown above, the misrepresentations were material because if Granite had

---

[4] While Granite is not currently making this claim, Granite is also not waiving the right to bring this claim in the future.

85305384.3 - 12 -

known the structural defects that were present at the Property, it would not have entered the Release and would not have paid the additional money.

### C. The Pleaded Facts Create a Reasonable Inference of Justifiable Reliance

Under Colorado law, Granite was justified in believing that Principals would comply with their clear legal obligation to disclose the defects in the Property. *See, e.g., Frontier Exploration, Inc. v. Amer. Nat'l Fire Ins. Co.*, 849 P.2d 887, 892 (Colo. Ct. App. 1992) (upholding a jury's verdict that American's reliance on the fact that Frontier would comply with its contractual obligations was justified). The Complaint alleges that Alberta and Principals had both contractual and common law duties that required them to disclose the defects, Complaint ¶¶ 16, 18, 21. Granite was justified in relying on Alberta's and Principals' good faith performance of its contractual obligation and performance of its general legal obligation.

Principals, citing *Sheffield Services Co. v. Trowbridge*, 211 P.3d 714, 726 (Colo. Ct. App. 2009), assert that Granite's right to inspect the Property negates any allegation of justifiable reliance. *Sheffield*, however, involved markedly different facts in that the plaintiff buyer "knew specific facts that should have aroused its suspicion and prompted it to conduct a reasonably diligent inquiry." 211 P.3d at 725.[5] Granite did not have notice of such specific facts. Moreover, Granite has alleged that the defects at issue—sinking slabs causing damage to exterior walls, interior walls, and other building components—are latent in nature and therefore not easily discovered absent prior knowledge of specific facts. Complaint ¶ 21. Principals, on the other hand, had specific knowledge of the foundation problems. Complaint ¶ 15.[6] Despite specific

---

[5] In *Sheffield,* there was a public record of the specific facts complained of.
[6] Notably, nowhere in the Response do Principals challenge Granite's claim that Principals knew of the foundation problems. They cannot, because the undeniable evidence, much of which is attached to Granite's Complaint, proves otherwise.

knowledge of the difficult to discover defects, Principals did not at any time inform Granite of the defects or otherwise provide specific facts similar to those cited by *Sheffield* to put Granite on notice that it should conduct an additional investigation.  Indeed, Principals actively concealed the defects.  Furthermore, *Hayden v. Perry*, 134 P.2d 212, 214 (Colo. 1943), the very case relied on in *Sheffield*, also makes clear that Colorado follows the well-settled rule that "where one party to a transaction induces the other party to enter it by willful misrepresentations, the representor cannot escape liability for his fraud by claiming that the representee could have investigated the representations made and would then have found that they were untrue."  Thus, Principals cannot induce Granite to execute the Release and pay an additional $2,150,000 by misrepresenting the condition of the Property and by actively concealing the condition of the Property, and then turn around and cite a right to inspect as a defense against their fraudulent conduct.  It is offensive for Principals to attempt to hide behind Granite's inspection right when they knew of latent defects that they failed to disclose and took active measures to hide potentially patent indicia of these latent defects that Granite may have discovered but for Principals' fraudulent concealment.

Finally, Principals, in a similar vein, assert that the "as-is, where-is" clause in the FPSA vitiates reliance.  Motion at 14-15.  Principals' argument is essentially that the as-is clause shifts the risk of defects to Granite; however, "a seller who actually knows there is a latent defect on the property and chooses not to reveal this to the purchaser cannot hide behind contract language purporting to shift the risk of nondisclosure to the purchaser."  *Haney v. Castle Meadows, Inc.*, 839 F.Supp. 753, 757 (D. Colo. 1993); *see also Bridgewater Apartments, LLC v. 6401 South Boston Street, Inc.*, No. 05-CV-02021-REB-PAC, 2006 WL 295385 *3 (D. Colo. Feb. 7, 2006) (holding that contract provisions requiring the plaintiff "to employ the highest level of due

diligence" and take the property "as is" were not "sufficient, either singly or in combination, to shield defendants from liability for fraud and negligent misrepresentation") (Attached as Ex. A). The Complaint alleges facts creating a reasonable inference that the defects at the Property were latent in nature, and, consequently, the "as-is, where-is" clause may not, as a matter of law, defeat Granite's well-pleaded facts.

### D. The Pleaded Facts Create a Reasonable Inference of Damages

Principals contest Granite's factual allegation that it was damaged by their fraudulent misrepresentation, essentially arguing that Granite gratuitously paid the additional $2,150,000 as part of a sale that both parties were bound to close. Motion at 6. This argument is illogical and does not make sense. In making this argument, Principals misconstrue the express terms of the Fifteenth Amendment to the FPSA. The Fifteenth Amendment specifically provides that the parties' agreements in the Fifteenth Amendment are "for and in consideration of … the mutual agreements set forth" in the Fifteenth Amendment. *See* Conf. Ex. 3 at first paragraph of page 2. As such, and as expressly provided for in the Fifteenth Amendment, Granite's agreement to pay the additional $2,150,000 and enter into the Release was expressly "in consideration" of the other agreements in the Fifteenth Amendment which benefitted Granite; namely, Principals' and Alberta's agreement to enter into the Release. Conf. Ex. 3 at § 2(a) and § 9. Principals cannot and have not argued that Granite was required to enter into the Fifteenth Amendment or increase the purchase price for the Property by $2,150,000 in order for Alberta to be required to close under the FPSA; in fact, Alberta had previously agreed in the Fourteenth Amendment that the sale of the Property "must occur on December 15, 2008" and that "neither Granite nor Alberta has any further right to extend the date of Closing beyond December 15, 2008." *See* § 2 of the

Fourteenth Amendment.  Therefore, it is clear from the agreements between Granite and Alberta that the increase to the purchase price was not in consideration of Alberta's agreement to close the sale of the Property.  The Release, in turn, explicitly refers to the $2,150,000.  *See* Complaint, Ex. A at § 5.  Granite's allegation that it paid the $2,150,000 in return for the Release, Complaint ¶ 14, is a fact that must be accepted as true and is bolstered by the Release and the other prior agreements. There is more than a reasonable inference that Granite paid the $2,150,000 as consideration for the Release together with its agreement to mutually release Principals, and therefore Granite was damaged when it paid substantial money for the fraudulently procured Release.

Principals' inaccurate conclusions regarding the consideration exchanged among the parties for the parties' agreement to enter into the Release leads Principals to erroneously assert that it is the consideration "actually received" by Granite that is at issue [*See* Motion at 16]; however, Granite's argument is not that it received too little in entering into the Release, but rather, that Granite was fraudulently induced to enter into the Release at all and to pay additional money.

### III.     The Release Does not Bar Granite's Fraud Claims

In two brief paragraphs, Principals claim that Granite's claims must be dismissed because in electing to seek damages rather than rescission of the Release, Granite necessarily has affirmed the Release and thereby surrendered any claims.  Motion at 16-17.  The Colorado Supreme Court rejected Principals' exact legal argument in *Trimble v. Denver*, 697 P.2d 716 (Colo. 1985).  In *Trimble*, addressing the assertion that "affirmance [of a fraudulently induced settlement agreement] will leave the tortfeasor with the agreement sought, and disaffirmance will

place the wrongdoer in no worse position than before the fraud was committed," the court disputed the premise of the tortfeasor's argument, noting that "the defrauded party has an additional remedy." 697 P.2d at 723. The court stated that "fully consistent with affirmation of the agreement, the defrauded party may bring a tort action against the one guilty of fraud to obtain damages resulting from the fraudulent misrepresentations." *Id.* at 723-24. Thus, Granite may affirm the Release *and* prosecute a tort action to recover damages for the fraud, namely, the additional money paid for the fraudulently procured release.

## CONCLUSION

The inquiry before the Court on a motion to dismiss is not whether it is likely that all the well-pleaded allegations will be proven true at trial. *Robbins*, 519 F.3d at 1247 ("[A] judge ruling on a motion to dismiss must accept all allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven."). Rather, the question for the Court is whether the alleged facts, accepted as true, "give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Red Hawk v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Granite's Complaint pleads facts sufficient to create a reasonable inference that it is entitled to recover against Principals for their fraudulent conduct. Moreover, Principals' arguments attack the legal, as opposed to factual, sufficiency of the claims in the Complaint. Principals misconstrue the relevant legal precedents, make assertions that are not supported by the documents or the facts, and do not allege grounds to dismiss the Complaint under Rule 12(b)(6).

WHEREFORE Plaintiff Granite Southlands Town Center LLC respectfully requests that the Court deny Defendants Peter M. Cudlip, Donald G. Provost, and Allan G. Provost's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) in its entirety and for all other requests for relief, and further respectfully requests that the Court enter judgment in favor of Granite and against Defendants Peter M. Cudlip, Donald G. Provost, and Allan G. Provost, and any other such relief to which Granite is entitled.

Dated November 3, 2009.

          Respectfully submitted,

          */s/ Paul Trahan*
          OSBORNE J. DYKES, III
          BENJAMIN M. VETTER
          FULBRIGHT & JAWORSKI L.L.P.
          370 Seventeenth Street, Suite 2150
          Denver, CO  80202
          (303) 801-2700 – Telephone
          (303) 801-2777 – Facsimile
          jdykes@fulbright.com
          bvetter@fulbright.com

          PAUL TRAHAN
          FULBRIGHT & JAWORSKI L.L.P.
          600 Congress Avenue, Suite 2400
          Austin, TX  78701
          (512) 474-5201 – Telephone
          (512) 536-4598 – Facsimile
          ptrahan@fulbright.com

          **COUNSEL FOR PLAINTIFF/COUNTER-DEFENDANT**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on November 3, 2009, I electronically filed the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANTS PETER M. CUDLIP, DONALD G. PROVOST, AND ALLAN G. PROVOST'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(B)(6)** with the Clerk of Court using the CM/ECF system which will send notification of such filing to attorneys for the remaining parties at the following e-mail addresses:

Stephen L. Waters                             swaters@rwolaw.com
Kimberly A. Bruetsch                        kbruetsch@rwolaw.com
ROBINSON WATERS & O'DORISIO, P.C.
1099 18th Street, Suite 2600
Denver, CO 80202
*Attorneys for Land Title Guarantee*

Dennis Boyd Polk                             DBP@HAPLAW.NET
Holley, Albertson & Polk, P.C.
1667 Cole Boulevard, Suite 100
Golden, CO 80401
*Attorneys for Defendants Allen G. Provost*

Stuart N. Bennett                             sbennett@lindquist.com
Lindquist & Vennum, P.L.L.P.
600 – 17th Street, Suite 1800 – South
Denver, CO 80202
*Attorneys for Defendants Peter M. Cudlip*
*Donald G. Provost and Alberta Town Center, LLC*

　　　　　　　　　　　　　　　　　　　　　　*/s/ Paul Trahan*
　　　　　　　　　　　　　　　　　　　　　　Paul Trahan