IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-CV-00799-ZLW-KLM

GRANITE SOUTHLANDS TOWN CENTER, LLC,

        Plaintiff

v.

ALBERTA TOWN CENTER, LLC,
LAND TITLE GUARANTEE COMPANY,
DONALD G. PROVOST,
ALLAN G. PROVOST,
and PETER M.CUDLIP,

        Defendants.

---

**DEFENDANTS PETER M. CUDLIP, DONALD G. PROVOST AND ALLAN G. PROVOST'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6) [Docket No. 60]**

---

    Defendants, Peter M. Cudlip and Donald G. Provost, by and through their attorneys, Lindquist & Vennum, PLLP, and Defendant Allan G. Provost, through his attorneys, Holley, Albertson & Polk, PC, for their Reply in Support of their Motion to Dismiss pursuant to F.R.C.P. 12(b)(6) [Docket No. 60], state as follows:

### I.    INTRODUCTION

    Plaintiff Granite Southlands Town Center, LLC's ("Granite") First Amended Complaint fails to state a valid, cognizable claim against Peter M. Cudlip, Donald G. Provost and Allan G. Provost ("Principals") and should be dismissed. Granite claims the Principals fraudulently induced Granite to pay Alberta $2,150,000 as consideration for a Release and Termination Agreement ("Release") pursuant to which the parties waived all claims they may have had

against each other relating to the Forward Purchase and Sale Agreement ("FPSA"). Granite's claims must be dismissed for the following four reasons:

First, the facts Granite alleges are not plausible and not supported by the parties' contracts. Contrary to Granite's assertion, the Court is not bound to accept as true Granite's mischaracterization of and conclusory allegations regarding the contracts.

Second, Granite's claims are based entirely upon a mischaracterization of the Fifteenth Amendment to the FPSA which, among other things, obligated the parties to execute the Release. The Fifteenth Amendment plainly provides that $2,150,000 is one of two elements used to calculate the final purchase price for the Southlands Town Center shopping mall ("Property"). The other element is the lesser of $160,000,000 or the amount required to repay the construction loan in full. The Fifteenth Amendment therefore expressly contradicts Granite's characterization of the $2,150,000 as consideration for the Release.

Third, Granite does not seek to rescind either the purchase of the Property or the Fifteenth Amendment. Instead, Granite seeks a $2,150,000 reduction of the purchase price by falsely claiming that this amount was consideration for the Release which the Principals fraudulently induced Granite to execute by misrepresenting the Property's condition. Notwithstanding that the $2,150,000 was not consideration for the Release, a refund of the alleged consideration for the Release cannot be granted without rescinding the entire FPSA, as amended by the Fifteenth Amendment – a remedy Granite does not seek. Colorado law does not allow partial rescission of a contract. Therefore, Granite is not entitled to partially rescind the Fifteenth Amendment or the FPSA to obtain the sought-after partial reduction in the purchase price of the Property.

Fourth, the condition of the Property was not material to the execution of either the Fifteenth Amendment or the Release because Granite was obligated under the FPSA to purchase the Property regardless of its condition and no representation or omission with respect to the Property's condition could have had any impact on Granite's obligation to purchase.

On page two of its Response to the Principals' Motion to Dismiss [Docket # 67] ("Response"), Granite argues that the logical extension of the Principals' arguments is that the original, unamended FPSA required Granite to pay an additional $2,150,000 for the Release regardless of the Property's condition. This characterization is inaccurate. The Principals' position is that, in the Fifteenth Amendment, Granite agreed to pay the $2,150,000 as a component of the final purchase price for the Property, and Granite has not claimed it was fraudulently induced to enter into the Fifteenth Amendment or to pay for and purchase the Property. In short, Granite falsely claims the $2,150,000 was consideration for the Release to obtain a partial refund of purchase price of the Property without rescinding the entire transaction, and to maintain the protection against lawsuits by the Principals and Alberta that it received in the Release.

For the reasons set forth herein and in the Principals' Motion to Dismiss, Granite's First Amended Complaint fails to state a claim against the Principals upon which relief may be granted and should be dismissed.

## II. ARGUMENT

A.  **The Court Is Not Obligated To Accept Granite's Mischaracterizations of the Relevant Contracts.**

Granite asserts that the Court must accept as true Granite's mischaracterizations of the Release, the Forward Purchase and Sale Agreement ("FPSA") and the Fifteenth Amendment to Amendment and Termination Agreement ("Fifteenth Amendment").  The Court is under no such obligation.  Only well-pleaded facts are assumed to be true in deciding a motion to dismiss.  Legal conclusions and factual allegations that contradict a properly considered document are not well-pleaded facts.  *GFF Corp. v. Associated Wholesale Grocers,* 130 F.3d 1381, 1385 (10th Cir. 1997)(citations omitted).  When considering whether to dismiss a complaint which incorporates or references other documents, the legal effect of the documents is determined by the documents, not the pleader.  *Droppleman v. Horsley*, 372 F.2d 249, 250 (10th Cir. 1967); *Zeligson v. Hartman-Blair, Inc.*, 126 F.2d 595, 597 (10th Cir. 1942); *see also* Fed. R. Civ. P. 10(c).  "If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied[1]."  *GFF Corp.,* 130 F.3d at 1385; *TMJ Implants, Inc. v. Aetna, Inc.*, 405 F. Supp. 2d 1242, 1244-45 (D. Colo. 2005).  Thus, in deciding the Principals' Motion to Dismiss, the Court must examine the underlying documents rather than accept Granite's interpretation.

---

[1] Although referenced and relied upon, Plaintiff did not attach either the FPSA or the Fifteenth Amendment to its First Amended Complaint.

  **B. Granite's Mischaracterization of the $2,150,000 Payment are Contradicted by the Express Terms of the Release and the Fifteenth Amendment.**

   1. <u>The Payment of $2,150,000 was a Portion of the Final Purchase Price for the Southlands Town Center, not Consideration for the Release</u>.

Granite did not pay $2,150,000 as consideration for the Release. Section 2 of the Fifteenth Amendment amends the FPSA and creates Granite's obligation to pay $2,150,000 as a component of the final purchase price "as consideration for the conveyance" of the Southland Town Center. Section 2 (a) of the Fifteenth Amendment states:

> 2. The Town Center FPSA is hereby amended as follows:
>
> (a) Section 4.1 of the Town Center FPSA is hereby amended by deleting in its entirety and inserting in lieu thereof the following:
>
> '**4.1 Purchase Price**.
>
> Buyer agrees to pay, and Seller agrees to accept, as consideration for the conveyance of the Property to Buyer, an amount in U.S. Dollars equal to the sum of (1) Two Million One Hundred Fifty Thousand and No/100 ($2,150,000.00) ("**Excess Payment**"), plus (2) the Closing Repayment Amount (the sum of (1) and (2) being the "**Purchase Price**"). At Closing, Buyer shall deliver to Escrow Holder the Purchase Price less the Earnest Money Deposit (the Purchase Price, as reduced by the Earnest Money Deposit, is referred to herein as the "**Closing Funds**"). The term "**Closing Repayment Amount**" shall mean the lesser of (a) the amount required to repay in full the loan (including, without limitation, principal, interest and other expenses owed by Seller under the Loan Documents as of the Closing Date), and (b) One Hundred Sixty Million and No/100 Dollars ($160,000,000.00). The Earnest Money Deposit and Closing Funds shall be applied to the Purchase Price at Closing.'

(Conf. Exh. 3, Section 2(a) [Docket # 62], (emphasis in original)). The Fifteenth Amendment thus directly contradicts Granite's implausible allegation that it paid $2,150,000 as separate consideration for the Release.

5

Granite contends the Release's mere reference to $2,150,000 conclusively establishes that $2,150,000 was consideration for the Release. (Response, at 16). The Release contradicts Granite's allegations. Recital E contains the Release's only reference to $2,150,000, and states:

> E.   On the date of the Agreement, (i) Alberta has transferred the Property (as defined in the Town Center FPSA) to Granite Sub pursuant to and in accordance with the Town Center FPSA, and (ii) Alberta has agreed to use all but $2,150,000 of the consideration received by Alberta at the closing of the Town Center FPSA to repay Lender for all sums due Lender under the Loan.

(Exhibit A to Plaintiff's First Amended Complaint, at 2 (hereinafter "Plaintiff's Exh. A")). Recital E demonstrates that the $2,150,000 was a portion of the final purchase price for the Property, to be paid at the closing, not separate consideration for the Release.[2]

   2.   <u>Execution of the Release is a Term of the Fifteenth Amendment</u>.

Granite alleges that the Release, the Fifteenth Amendment and the FPSA are "separate agreements by and among the various parties many of whom were not parties to the FPSA." (Response, at 6). From this Granite concludes that the Property's condition was therefore material to the Release and that had Granite known the alleged defects existed, it would not have executed the Release. (Response, at 7). Again, the Fifteenth Amendment contradicts Granite's position and demonstrates its implausibility.

The Fifteenth Amendment obligated Granite to pay $2,150,000 for the Property and execute the Release. Section 9 of the Fifteenth Amendment contains the parties' agreement to

---

[2] Contrary to Granite's assertion, it did not pay $2,150,000 more for the Property than it otherwise was obligated to pay. The Fourteenth Amendment sets the purchase price for the Property at $160,000,000. Pursuant to the Fifteenth Amendment, Granite paid $161,172,662.15 for the Property – not $162,150,000.

execute the Release and expressly conditions the Release's delivery on the closing of the FPSA. (Conf. Exh. 3, § 9). Section 9 of the Fifteenth Amendment states:

> **Release**. The Parties agree to the [sic] execute the Release and Termination Agreement attached hereto as <u>Exhibit C</u> and to deliver the same to Escrow Holder prior to the Closing. Such Release will be released by Escrow Holder to the Parties only if and when the Closing occurs.

(Conf. Exh. 3, §9)(emphasis in original). The obligation to execute the Release is an express term of the Fifteenth Amendment and, if Granite had not closed on the Property and paid the full purchase price which included the $2,150,000, the Release would not be effective. Granite's argument that the Release is a stand-alone agreement divorced from the Fifteenth Amendment and the FPSA ignores reality.

C. **Granite's First Amended Complaint Seeks a Remedy Not Recognized Under Colorado Law.**

Colorado law is well-settled that a party claiming fraudulent inducement may pursue one of two remedies: 1) affirm the contract and sue for damages; or 2) rescind the contract and recover the money paid. *Aaberg v. H.A. Harman, Co.*, 358 P.2d 601, 603 (Colo. 1961). Where a party elects to rescind the contract, it must "rescind the entire contract to restore the conditions existing before the agreement was made." *Colorado Interstate Gas Co., Inc. v. Chemco, Inc.*, 833 P.2d 786, 793 (Colo. App. 1991) *citing Trimble v. City and County of Denver*, 697 P.2d 716 (Colo. 1985). The party may also "affirm the entire contract and recover the difference between the actual value of the benefits received and the value of those benefits if they had been as represented." *Id.* "Since the two remedies are inherently inconsistent, he cannot pursue the benefits of both affirmance and disaffirmance of the contract." *Arguelles v. Ridgeway*, 827 P.2d

7

553, 558 (Colo. App. 1991)(Hume, J. concurring)(citations omitted); *see also Trimble*, 697 P.2d at 723 (partial rescission is not an available remedy for fraudulent inducement).

Granite attempts to affirm the Fifteenth Amendment and Release but also rescind the portion of Section 2 of the Fifteenth Amendment which included $2,150,000 in the calculation of the final purchase price for the Property. Although Granite does not characterize its requested relief as rescission, return of consideration is a rescission remedy, not damage available for fraudulent inducement where the party does not seek rescission. *See Aaberg*, 358 P.2d at 603. Granite's First Amended Complaint therefore fails to state a claim because it pleads a remedy – partial rescission –not recognized under Colorado law.

D.      **Granite's First Amended Complaint Fails To Plead Any Plausible Damages.**

Any fraud claim requires actual damage sustained "because of [plaintiff's] reliance on the defendant's false representation." *Dann v. Perrotti & Hauptman Devel. Co.*, 670 P.2d 448, 450 (Colo. App. 1983)(citations omitted); *see Ice v. Benedict Nuclear Pharmaceuticals, Inc.*, 797 P.2d 757, 760 (Colo. App. 1990). Granite must plead some actual damage caused by its allegedly fraudulently induced belief the Property was free of defects. Granite's First Amended Complaint does not allege any damage other than the amount it asserts was consideration for the Release. Granite has not pleaded any facts that plausibly support the claim that it incurred actual damage because it believed the alleged structural defects did not exist.

Contrary to Granite's unsupported assertion, the return of consideration paid is not a damage for fraudulent inducement unless the party seeks complete rescission. Because Granite seeks to affirm an allegedly fraudulently induced contract, the only proper measure of damages is "the difference between the actual value of the benefits received and the value of those

8

Doc# 3119451\6

benefits if they had been as represented." *Trimble*, 697 P.2d at 724.  The relevant benefits Granite "actually received" for executing the Fifteenth Amendment were the title to the Property and the Release.  Granite does not assert that the Property's value is diminished due to existence of the alleged defects.  Similarly, Granite does not allege that the release of claims it received is worth less than if Granite had known of the alleged defects.  (See Plaintiff's Exhibit A, § 4).  Granite has failed to plead that the value of benefit it received from the FPSA, the Fifteenth Amendment or the Release is diminished.  Consequently, Granite has failed to plead an essential element of fraud –actual damage – and has therefore failed to state a claim upon which relief may be granted.

E. **The Condition Of The Southlands Town Center Was Not Material To Granite's Execution Of The Fifteenth Amendment Or The Release.**

A sufficient fraudulent inducement claim requires Granite to plead facts demonstrating the following elements: (1) the Principals' misrepresentation of a material fact, (2) Granite's reliance on that misrepresentation, (3) Granite's justifiable reliance on the misrepresentation, and (4) resulting damage to Granite.  *M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1382 (Colo. 1994).  "Failure of any one element destroys the claim of fraudulent inducement." *In re Dow Co. Sarabond Prod. Liab. Lit.*, 660 F. Supp. 270, 274 (D. Colo. 1987).  Granite's First Amended Complaint does not plead facts plausibly demonstrating these elements.

In assessing an alleged misrepresentation, the test of materiality is whether "a reasonable person under the circumstances would attach importance to it in determining his course of action."  *Denberg v. Loretto Heights College*, 694 P.2d 375, 377 (Colo. App. 1984)(citation omitted).  Where "the information is of a nature that reasonable minds could not differ with respect to the issue, the question of materiality becomes one of law to be resolved by the court."

9

*Thorne v. Bauder*, 981 P.2d 662, 664 (Colo. App. 1998).  The express terms of the Release, the FPSA and the Fifteenth Amendment unambiguously establish that the Property's condition was not material to Granite's execution of the Fifteenth Amendment or the Release.

  1. <u>The Release Demonstrates the Property's Condition Was Not Material.</u>

  Granite must plead facts which, if assumed true, establish that it might not have executed the Release if it had known of the alleged structural defects in the Property.  *Morrison v. Goodspeed*, 68 P.2d 458, 463 (Colo. 1937).  The Release proves the Property's condition was not material, and Granite can prove no facts to establish otherwise.

  Section 4 of the Release states:  "Subject to Sections 5 and 9, the Granite Parties understand and agree … **that no promise or representation of any kind has been made to the Granite Parties or by anyone acting for the Alberta Parties, except as is expressly stated in this Agreement** …."  (Plaintiff's Exh. A, § 4)(emphasis added).  The Release contains six recitals, none of which relates to the physical condition of the Property.  (*Id.* at 2).  If, as Granite contends, it would not have executed the Release had it known of structural defects, the Release would have contained some reference to the Property's condition.

  2. <u>The FPSA Demonstrates the Property's Condition Was Not Material.</u>

  The FPSA establishes that the Property's condition was not material to Granite's execution of the Release or the Fifteenth Amendment.  Granite's claim that the FPSA is of limited relevance, is demonstrably false.  The FPSA is essential because the claims the parties waived in the Release are claims **arising out of the FPSA**.  (Plaintiff's Exh. A, § 3-4).  Granite received from Alberta and the Principals the agreement to:

> RELEASE, ACQUIT and FOREVER DISCHARGE Granite …
> from any and all Claims… that the [Alberta and the Principals]

> may have against [Granite] **arising directly or indirectly, proximately or remotely, out of or relating to … (i) the Town Center FPSA.**

(Plaintiff's Exh. A, §3)(emphasis added).  The FPSA provided no basis upon which Granite could assert claims against Alberta due to the Property's condition.  The FPSA, in Article V, Section 5.3 (c) states:

> No Disapproval Right.  Buyer's right to access the Property and perform additional tests and inspections is in no way to be interpreted as Buyer's right to disapprove the Property, terminate this Agreement or receive a refund of its Earnest Money Deposit, it being understood that, except as specifically set forth in this Agreement, **Buyer has no right to terminate this Agreement as a result of any matter relating to the condition of the Property**, its entitlements status or its marketability.

(Conf. Exh. 2, §5.3)(emphasis added).  The FPSA's inclusion of warranties with the property Granite purchased, the specific exclusion of representations and warranties from Alberta, and the exclusion of disapproval rights establish that Granite could not assert claims against Alberta due to the Property's condition.  (Conf. Ex. 2, Art. II, (f); §§ 7.2(b) and (g), 5.1 (a)-(c), and 5.3).  Granite's remedy for structural defects is to enforce the contractor, engineer and architect warranties it purchased through the FPSA.

Because Granite could not assert claims directly against Alberta or the Principals for structural defects, Granite's alleged belief that no such defects existed could not have influenced it to waive claims under the FPSA.  Thus, Granite can plead no facts to establish – even plausibly – that had it known of alleged structural defects, it might not have executed the Fifteenth Amendment and the Release.

11

      3.    <u>The FPSA Imposes No Disclosure Obligations on the Principals to Support the Imposition of Individual Liability.</u>

Granite concludes that alleged structural defects constitute a "change in condition" that the Principals, as individuals, were required to disclose to Granite pursuant to FPSA section 7.2. (Response, at 9-10). Granite argues that the Principals' alleged individual obligation derives from Alberta's representations in the FPSA that no landlord defaults existed under the tenant leases. For the first time in its Response, Granite asserts that alleged defects constituted such a default. Granite is incorrect. First, the Principals in their individual capacity were not parties to the FPSA and, therefore, had no individual obligations. The Principals' status as members and managers of Alberta is insufficient to impose personal liability pursuant to C.R.S. § 7-80-705, and Granite has not pleaded any facts or theory upon which a claim of personal liability could be based. Thus, even if Alberta was obligated and failed to disclose structural defects under FPSA section 7.2, Granite has not alleged sufficient facts to impose personal liability on the Principals.

Second, under the FPSA, Alberta's disclosure obligation was limited to circumstances which made "any representation or warranty of Seller to Buyer under this Agreement untrue or misleading, or (b) makes any covenant or agreement of Seller under this Agreement incapable of being performed." (Conf. Exh. 2, § 7.2(f)). This obligation does not apply to structural defects because Alberta expressly disclaimed any warranties concerning the physical condition of the Property. Granite expressly acknowledged that Alberta did "not make any representation or warranty, whether oral or written, express or implied, with respect to … the physical condition ... of the Property." (Conf. Exh. 2, § 5.1 (a)-(c)).

In direct contradiction to the argument espoused by Granite in its Response, the First Amended Complaint does not assert that the existence of a structural defect constituted a

12

landlord default under any tenant lease. Further, Granite pleads no facts from which the Court could conclude that, prior to the execution of the Release or closing, any tenant claimed Alberta, as the landlord, was in default by virtue of alleged structural defects, or that Alberta had failed to cure any landlord default timely under any applicable lease. Granite's First Amended Complaint fails to state any basis upon which personal liability can be imposed on the Principals.

    4.    <u>The FPSA Provides Remedies for Granite in the Event the Property was not Built According to Plan.</u>

Granite's argument that Alberta's interpretation of the FPSA would have obligated Granite to close the transaction if the Property had been "built upside down" is absurd and contradicted by the FPSA. (Response, at 11). The FPSA required Alberta to develop the Property according to "Plans and Specifications" that were delivered to Granite prior to construction. (Conf. Exh. 2, §§7.1(a) & 5.2(a)). These "Plans and Specifications" included "site plans, landscaping plans, and architectural elevations" along with plans and specifications for the buildings on the Property. (Conf. Exh. 2, § 5.2(a)). Alberta was obligated to construct the buildings according to the Plans and Specifications and to adhere to all applicable laws, codes, ordinances and other legal requirements such as the Americans with Disabilities Act and CERCLA. (Conf. Exh. 2, § 7.1 (a)). Alberta's ability to modify the plans throughout the development of the Property was expressly conditioned upon Granite's approval of any such plans. (Conf. Exh. 2, § 7.1(b)). Had Alberta constructed a building "upside down," Granite could have terminated the FPSA and legitimately refused to close pursuant to §8.2 (c) of the FPSA.

13

### III.     CONCLUSION

Granite contends it was fraudulently induced to agree to one term of the Fifteenth Amendment – the Release – by the condition of the Property.  Rather than seek damages for the alleged inducement, Granite seeks to partially rescind a different term of the Fifteenth Amendment and obtain a partial refund of the final purchase price.  Because the damages alleged by Granite have no relationship to the alleged fraud, Granite has attempted to create such a relationship by mischaracterizing $2,150,000 of the final purchase price for the Southlands Town Center as consideration for the Release.

The Release, the Fifteenth Amendment and the FPSA demonstrate that $2,150,000 was a component of the final purchase price of the Property, not separate consideration for the Release. The remedy Granite seeks, therefore, is a partial rescission of the Fifteenth Amendment which sets forth the purchase price of the Property.  Partial rescission is not permissible under Colorado law and Granite has pleaded no other cognizable damage.  Finally, because Granite could not assert claims against either Alberta or the Principals for structural defects, the existence of any such defects, and consequently Granite's alleged belief that no defects existed, was not material to the execution of the Fifteenth Amendment and the Release.

For the foregoing reasons, Granite's First Amended Complaint against Donald G. Provost, Allan G. Provost and Peter M. Cudlip fails to state a claim and should be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6).

14

Doc# 3119451\6

DATED:  November 19, 2009.

        Respectfully submitted,

        *s/   Stuart N. Bennett*
        Stuart N. Bennett
        **LINDQUIST & VENNUM, P.L.L.P.**
        600 - 17th Street, Suite 1800 –South
        Denver, CO 80202
        Telephone:	(303) 573-5900
        Fax:	(303) 573-1956
        E-mail:	sbennett@lindquist.com
        Attorneys for Defendants Peter M. Cudlip,
        Donald G. Provost and Alberta Town Center, LLC


        *s/   Dennis B. Polk*
        Dennis B. Polk
        **HOLLEY, ALBERTSON & POLK, P.C.**
        1667 Cole Blvd., Suite 100
        Golden, CO 80401
        Telephone:	303-233-7838
        E-mail:	dbp@haplaw.net
        Attorneys for Defendant Allan G. Provost

# CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | | |
|---|---|---|
| *Attorneys for Plaintiff & Counter Defendant Granite Southlands Town Center, LLC* | jdykes@fulbright.com<br>bvetter@fulbright.com | Osborne J. Dykes, III<br>Benjamin M. Vetter<br>Fulbright & Jaworski LLP<br>370 – 17th Street, Suite 2150<br>Denver, CO  80202 |
| *Attorneys for Plaintiff & Counter Defendant Granite Southlands Town Center, LLC* | ptrahan@fulbright.com | Paul Trahan<br>Fulbright & Jaworski LLP<br>600 Congress Avenue, Suite 2400<br>Austin, TX  78701 |
| *Defendant Land Title Guarantee Company* | kbruetsch@rwolaw.com | Kimberly A. Bruetsch<br>Robinson, Waters & O'Dorisio PC<br>1099 – 18th Street, 26th Floor<br>Denver, CO  80202 |
| *Defendant Allan G. Provost* | dbp@haplaw.net | Dennis B. Polk<br>Holley, Albertson & Polk, P.C.<br>1667 Cole Boulevard, Suite 100<br>Golden, CO   80401 |

And I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner indicated by the non-participant's name:

NONE

s/ *Stuart N. Bennett*
Stuart N. Bennett
Attorneys for Defendants Peter M. Cudlip,
Donald G. Provost and Alberta Town Center, LLC
Lindquist & Vennum P.L.L.P.
600 - 17th Street, Suite 1800 –South
Denver, CO 80202
Telephone:    303-573-5900
Fax:               303-573-1956
E-mail:          sbennett@lindquist.com

16