## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 09-CV-00799-ZLW-KLM

GRANITE SOUTHLANDS TOWN CENTER, LLC,

        Plaintiff

v.

ALBERTA TOWN CENTER, LLC,
LAND TITLE GUARANTEE COMPANY,
DONALD G. PROVOST,
ALLAN G. PROVOST,
and PETER M.CUDLIP,

        Defendants.

---

## DEFENDANT ALBERTA TOWN CENTER, LLC'S MOTION FOR PARTIAL
## SUMMARY JUDGMENT WITH RECITATION OF LEGAL AUTHORITY

---

Defendant, Alberta Town Center, LLC (Alberta), by and through its attorneys, Lindquist & Vennum, PLLP, hereby moves this Court for Partial Summary Judgment. In support of this Motion, Alberta states as follows:

### I.      INTRODUCTION

In this case Plaintiff, Granite Southlands Town Center, LLC ("Granite"), and Alberta both claim to be entitled to $650,000 that was escrowed from Alberta's December 12, 2008, sale of the Southlands Town Center shopping center to Granite. Under the terms of the written agreements between Alberta and Granite, the funds were escrowed as security for Alberta's obligation to deliver to Granite on or before March 1, 2009, estoppel certificates from tenants of the shopping center. Estoppel certificates were required from tenants occupying more than 75%

of the leased square footage of the shopping center and from all tenants occupying more than

10% of the total rentable square feet of the center.

The undisputed facts demonstrate that Alberta timely fulfilled its contractual

requirements by providing Granite valid tenant estoppel certificates from Southlands Town

Center tenants occupying more than 75% of the leased square footage, and from the only tenant

occupying more than 10% of the total rentable space. Because Alberta has fulfilled its

obligations under its contract with Granite, Alberta, not Granite, is entitled to the $650,000.00

currently held in escrow. No genuine issues of material fact exist and Alberta is entitled to

judgment as a matter of law that it has met all contractual requirements.

## II.     UNDISPUTED FACTS

On September 29, 2005, Alberta and the predecessor to Granite executed a Forward

Purchase and Sale Agreement ("FPSA")[1] pursuant to which Granite agreed to purchase the

Southlands Town Center shopping mall from Alberta. (First Amended Complaint [Docket No.

36][2], ¶10). The parties' rights and obligations with respect to the Southlands Town Center are

governed by the FPSA and its subsequent amendments. (First Amended Complaint, ¶10).

Pursuant to the FPSA as amended by the Fifteenth Amendment to Amendment and

Agreement and Termination Agreement ("Fifteenth Amendment"), Alberta agreed to provide

Granite with "tenant estoppel certificates" from the tenants occupying Southlands Town Center

no later than March 1, 2009. (Conf. Exh. 3, §2(c) amending FPSA §8.1(k)(ii)). Alberta was

required to provide Granite estoppel certificates from "[e]ach tenant occupying more than 10%

---

[1] The FPSA and Fifteenth Amendment were previously designated as Confidential Exhibits 2 and 3, respectively, and filed under seal at Docket No. 62.

[2] Granite filed its First Amended Complaint under three separate Docket entries, #29, #34 and #36, only Docket #29 includes exhibits. It is unclear which Docket entry therefore constitutes the operative pleading.

2

of the rentable square feet in the Buildings" at the Southlands Town Center ("Total Rentable Square Footage"), and from "tenants who together occupy at least 75% of the total number of rentable square feet subject to Qualifying Leases at the Closing" (the "Leased Square Footage"). (Conf. Exh. 2, §8.1(k)(i)).

As security for Alberta's obligation to deliver tenant estoppel certificates after the closing, the parties agreed that $650,000.00 of the purchase price would remain in escrow until Alberta provided the requisite number of estoppel certificates (the "Estoppel Holdback"). (First Amended Complaint, ¶13; Conf. Exh. 3, §2(c)). Upon Alberta's delivery of the required number of estoppel certificates, Granite was obligated to instruct the escrow agent to release the Estoppel Holdback to Alberta. (*Id.*).

The parties agreed that Granite could object to a given tenant estoppel certificate only if the certificate (1) was not in the required form or had been materially and adversely modified from that form, (2) indicated the continuing existence of an actual material default of the landlord under the applicable Lease, or (3) correctly indicated that the tenant's lease includes terms and provisions inconsistent with the lease delivered to Granite. (*Id.*; First Amended Complaint, ¶11). If Granite failed to "timely or appropriately" object to any estoppel certificate, the certificate was automatically deemed an "Approved Tenant Estoppel Certificate." (Conf. Exh. 3, §2(c)).

On December 12, 2008, Granite and Alberta closed Granite's purchase of the Southlands Town Center. (First Amended Complaint, ¶10). At the time of closing, the Total Rentable Square Footage was 608,789 square feet and the Leased Square Footage was 426,847 square feet. (Exhibit A-1, Affidavit of Peter Cudlip, ¶4, 6).

3

Before March 1, 2009, Alberta delivered to Granite tenant estoppel certificates from 85 of the 92 Southlands Town Center tenants. (First Amended Complaint, ¶19). On February 24, 2009, Granite's counsel notified Alberta that Granite objected to estoppel certificates from the following nine tenants, "for reasons apparent from the face of the certificates": Chico's FAS, Inc.; Colorado Cinema Group, LLC; DCC Architects; American Family Insurance; Noodles & Co., Inc.; White House|Black Market; Family Life Counseling; Main Street Dental; and QualDent, LLC.[3] (Exhibit A-2, February 24, 2009 Letter from Jane Snoddy Smith). Granite does not object to 76 of the 85 tenant estoppel certificates Alberta provided to Granite prior to March 1, 2009 (the "Undisputed Estoppels"). (First Amended Complaint, ¶19). The Undisputed Estoppels were from tenants occupying 324,464 square feet, or 76%, of the Leased Square Footage. (Exh. A-1, ¶10). The Undisputed Estoppels therefore meet the requirement that Alberta provide to Granite estoppel certificates from tenants occupying at least 75% of the rented space. Consequently, the validity of Granite's objections to the nine tenants' estoppel certificates is irrelevant to whether Alberta complied with this requirement.

The only Southlands Town Center tenant to occupy more than 10% of the Total Rentable Square Footage was Colorado Cinema, LLC ("Cinema") which occupied 72,347 square feet, or 11.9% of the Total Rentable Square Footage. (Exh. A-1, ¶11). On or about January 13, 2009, the Cinema executed a tenant estoppel certificate ("Cinema Estoppel") (Exhibit A-3, Cinema Estoppel, ¶6). The Cinema Estoppel was among the estoppel certificates Alberta provided to Granite prior to March 1, 2009. (Exh. A-1, ¶7). Paragraph 6 of the Cinema Estoppel states: "To

---

[3] Alberta disputes the validity of Granite's purported objections to each of the tenant estoppel certificates. Only the Colorado Cinema Tenant Estoppel Certificate, however, is relevant to the issues before the Court on this Motion for Summary Judgment.

Tenant's actual knowledge and belief (without any duty to investigate), there are no defaults now

existing on the part of the Tenant or of Landlord under the Lease." (Exh. A-3, ¶6).  Paragraph

five of the Cinema Estoppel states:

> Tenant is currently investigating and may dispute Landlord's
> assertion that Tenant is financially responsible for repairing the
> cracked foundation that affects the structure of the Demised
> Premises.  An investigation is underway to determine which party
> is responsible for the repair and financial responsibility for such
> foundation.  As of the date of this document, Tenant disputes that it
> has the responsibility for such repair.  Further, Tenant's
> Proportionate Share for 2008 has not been finalized."

(Exh. A-3, ¶5).

On August 2, 2004, the Cinema and Alberta's predecessor, Southlands Colorado, LLC,

entered into a lease, the relevant terms of which remained effective at the date of the Cinema

Estoppel (the "Cinema Lease").  (Exhibit A-4, Cinema Lease).  The Cinema Lease provides that

a landlord default occurs only if the landlord fails to comply with a material provision of the

Cinema Lease and fails to cure any such failure within 30 days after notice from the Cinema.

(Exh. A-4, Article XV, ¶4).  As of January 13, 2009, the date of the Cinema Estoppel, the

Cinema had not provided Alberta written notice that the landlord had failed to comply with any

material provision of the Cinema Lease and had not requested that Alberta cure any alleged

failure.  (Exh. A-1, ¶13-15).

## III.   STANDARD FOR SUMMARY JUDGMENT

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir. 1995).  Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  The Court's role in a declaratory judgment action is to "declare the rights and other legal obligations of any interested party seeking such declaration." 28 U.S.C. §2201(a).  Where, as here, the interested parties' rights and legal obligations are governed by an unambiguous contract, the interpretation of the contract is a question of law for the court that may be decided on summary judgment. *Public Service Co. of Oklahoma v. Burlington Northern R. Co.*, 53 F.3d 1090, 1096 (10th Cir. 1995) (citing *Resolution Trust Corp. v. Federal Savings & Loan Ins. Corp.,* 25 F.3d 1493, 1500 (10th Cir. 1994) and *Utah Power & Light Co. v. Federal Ins. Co.,* 983 F.2d 1549, 1553 (10th Cir. 1993)).

## IV.   ARGUMENT

Under Colorado law, an unambiguous contract must be enforced according to its plain language. *Theriot v. Colorado Ass'n of Soil Conservation Districts Medical Benefit Plan*, 38 F.Supp.2d 870, 876-877 (D. Colo. 1999) (*citing Board of County Comm'rs v. E-470 Pub. Highway Auth.,* 881 P.2d 412, 420 (Colo. App. 1994) (additional citations omitted)).  "The interpretation of a written contract and the determination of whether a provision in a contract is ambiguous are questions of law." *Smalley & Co. v. Emerson & Cuming, Inc.*, 808 F.Supp. 1503, 1514 (D. Colo. 1992) (citation omitted); *see also East Ridge of Fort Collins, LLC v. Larimer and Weld Irr. Co.*, 109 P.3d 969, 974 (Colo. 2005).  "When a contractual provision unambiguously

Doc# 3108967\7

resolves the parties' dispute, the interpreting court's task is over" and the contract must be

enforced according to its terms. *Level 3 Communications, LLC v. Liebert Corp.*, 535 F.3d 1146,

1154 (10th Cir. 2008).

A.     **Alberta Provided Granite Approved Tenant Estoppel Certificates From Tenants Occupying 75% Of The Leased Square Footage At Southlands Town Center**.

The undisputed facts prove Alberta timely provided Granite with all estoppel certificates

required pursuant to the FPSA and the Fifteenth Amendment. Section 8.1(k)(i) of the FPSA

required Alberta to provide Granite, on or before March 1, 2009, tenant estoppel certificates

from tenants who, in the aggregate, occupied 75% of the Leased Square Footage. (Conf. Exh. 2,

§8(k)(i)). To meet this requirement, Alberta was obligated to provide tenant estoppel certificates

from tenants occupying at least 320,035 square feet of Southlands Town Center's 426,847

Leased Square Footage. (Exh. A-1, ¶6).

Before March 1, 2009, Alberta provided Granite with the seventy-six Undisputed

Estoppels that are deemed "Approved Tenant Estoppel Certificates" by virtue of Granites' failure

to object pursuant to the Fifteenth Amendment. (First Amended Complaint, ¶19; Conf. Exh. 3,

§2(c)). The 76 Undisputed Estoppels were from tenants occupying 324,464 of 426,847 or 76%

of the Leased Square Footage. (Exh. A-1, ¶10). Alberta, therefore, timely met the 75%

requirement of the FPSA and complied with the requirements of section 8.1 (k)(i) of the FPSA,

as amended.

B.     **Alberta Provided Granite Approved Tenant Estoppel Certificates For Every Tenant Occupying More Than 10% Of The Total Rentable Square Footage.**

Alberta timely provided Granite with estoppel certificates from each tenant occupying

more than ten percent (10%) of the Total Rentable Square Footage, as required by Section

7

8.1(k)(i) of the FPSA.  (Conf. Exh. 2, FPSA, 8(k)(i)).  The Cinema was the only Southlands

Town Center tenant to occupy more than 10% of the Total Rentable Square Footage.  (Exh. A-1,

¶11).  The Cinema Estoppel does not reveal any ground upon which Granite could appropriately

object pursuant to the amended FPSA.  Because Granite failed to appropriately object, the

Cinema Estoppel is an "Approved Tenant Estoppel Certificate."  Alberta therefore provided

Granite valid estoppel certificates for each tenant occupying more than 10% of the Southland

Town Center.

       1.      <u>There Are No Grounds For An Appropriate Objection To The Cinema Estoppel</u>
              <u>Certificate</u>.

In its First Amended Complaint Granite pleads a laundry list of alleged defects in various

estoppel certificates without attributing any specific defect to any individual certificate.  (First

Amended Complaint, ¶19).  As indicated above, the FPSA articulates three permissible grounds

for objection.  Granite, however, fails to identify which of these three grounds forms the basis for

its objection to the Cinema Estoppel.

The facts alleged in the First Amended Complaint do not reveal grounds for any

appropriate objection.  The Cinema Estoppel is in the required form and does not indicate any

inconsistency in the Cinema Lease.  In paragraph 17 of the First Amended Complaint, Granite

alleges that a structural defect is one type of landlord default.  In paragraph 19 of the First

Amended Complaint, Granite alleges that the Cinema Estoppel indicates the presence of a

cracked foundation in the Cinema building.  Granite's objection to the Cinema Estoppel,

therefore, appears to be that the Cinema Estoppel indicated the existence of a landlord default

under the Cinema Lease because of the cracked foundation.  (First Amended Complaint, ¶17, 19;

Conf. Exh. 2, §2(c)).  Such a position is negated by the express language of the Cinema Estoppel.

The Cinema Estoppel expressly states that no landlord defaults exist under the Cinema

Lease:

> To Tenant's actual knowledge and belief (without any duty to
> investigate), there are no defaults now existing on the part of the
> Tenant or of Landlord under the Lease."

(Exh. A-3, ¶6). Accordingly, Granite's objection was not appropriate and the Cinema Estoppel

is an "Approved Tenant Estoppel Certificate" pursuant to the Fifteenth Amendment. Because

Granite alleged no other basis for its objection to the Cinema Estoppel, Alberta is entitled to

judgment as a matter of law that it provided valid tenant estoppel certificates from each tenant

occupying more than 10% of the Southlands Town Center.

> 2.     A Cracked Foundation does not Constitute a Landlord Default.

Even if the Cinema's express denial of any landlord defaults were not dispositive of this

issue, the Cinema Estoppel does not reveal any facts that could be reasonably construed as

constituting a landlord default under the applicable Cinema Lease[4]. Under the Cinema Lease the

landlord could only be in default if each of three events occurred. (Exh. A-4, Article XV, ¶4).

First, the landlord failed to comply with a material provision of the lease. (*Id.*). Second, the

tenant gave written notice of such non-compliance and, third, the landlord failed to cure within

30 days after the tenant gave written notice. (*Id.*). In the absence of any one of these elements,

no landlord default could exist under the Cinema Lease.

The Cinema Estoppel does not indicate that any of these events occurred. The Cinema

Estoppel states:

---

[4] Colorado Cinema, LLC and Southlands Colorado, LLC subsequently executed three Amendments to the August 2, 2004 Lease, none of the three Amendments are material to the issues before the Court.

9

> Tenant is currently investigating and may dispute Landlord's assertion that Tenant is financially responsible for repairing the cracked foundation that affects the structure of the Demised Premises. An investigation is underway to determine which party is responsible for the repair and financial responsibility for such foundation. As of the date of this document, Tenant disputes that it has the responsibility for such repair. Further, Tenant's Proportionate Share for 2008 has not been finalized.

(See Exh. A-3, ¶5). The Cinema Estoppel indicates only an investigation and a possible future dispute over financial responsibility for repairs.

The Cinema Estoppel does not indicate that the landlord failed to comply with any material provision of the Cinema Lease. Further, the Cinema Estoppel does not indicate that the Cinema gave written notice of any non-compliance or that the landlord failed to cure any non-compliance. Consequently, nothing in the Cinema Estoppel can reasonably be construed as indicating the "continuing existence of an actual material default of the landlord under the applicable Lease." Granite's purported "objection" to the Cinema Estoppel is, therefore, inappropriate and without basis. Consequently, the Cinema Estoppel is an "Approved Tenant Estoppel Certificate" under the Fifteenth Amendment. Alberta is, therefore, entitled to judgment as a matter of law that it fully complied with section 8(k)(ii) of the FPSA as amended by the Fifteenth Amendment.

C.     **Alberta Is Entitled To Payment Of The $650,000 Escrow Holdback**.

Pursuant to the Fifteenth Amendment, upon Alberta's delivery of the requisite number of Approved Tenant Estoppel Certificates to Granite, Granite was obligated to instruct the escrow holder to deliver the $650,000.00 Estoppel Holdback to Alberta. Upon receipt of written notice, Land Title was obligated to deliver the Estoppel Holdback to Alberta. As established above, prior to March 1, 2009, Alberta delivered "Approved Tenant Estoppel Certificates" to Granite

10

from tenants occupying more than 75% of the Leased Square Footage, and from each tenant occupying at least 10% of the Total Rentable Square Footage. Alberta is therefore entitled to summary judgment that Alberta, not Granite, is entitled to payment of the $650,000 Estoppel Holdback and an order directing Land Title, as escrow agent, to deliver the Estoppel Holdback to Alberta, as required by the Fifteenth Amendment.

## V.   CONCLUSION

No genuine issues of material fact exist to prevent the Court from determining the rights of the parties with respect to the tenant estoppel certificates. The FPSA and Fifteenth Amendment unambiguously set forth Alberta's obligations with respect to tenant estoppel certificates and the grounds on which Granite could legitimately object to a tenant estoppel certificate. The undisputed facts establish that Alberta timely provided Granite with valid tenant estoppel certificates from tenants occupying 75% of the Leased Square Footage and from each tenant occupying more than 10% of the Total Rentable Square Footage of Southlands Town Center. Consequently, Alberta is entitled to judgment as a matter of law on Granite's request for judicial declaration.

Alberta respectfully requests that the Court enter judgment in favor of Alberta on Granite's declaratory judgment action and find that 1) Alberta timely provided valid tenant estoppel certificates from tenants occupying 75% of the Leased Square Footage of the Southland Town Center; 2) Alberta timely provided valid tenant estoppel certificates from each tenant of Southlands Town Center occupying more than 10% of the Total Rentable Square Footage of Southlands Town Center; 3) Alberta is entitled to receive the $650,000 Escrow Holdback; and 4) Land Title is entitled and obligated to deliver the $650,000 Escrow Holdback to Alberta.

11

DATED:  December 2, 2009.

Respectfully submitted,


*s/   Stuart N. Bennett*
Stuart N. Bennett
**LINDQUIST & VENNUM, P.L.L.P.**
600 - 17th Street, Suite 1800 –South
Denver, CO 80202
Telephone:      (303) 573-5900
Fax:               (303) 573-1956
E-mail:          sbennett@lindquist.com
Attorneys for Defendants Alberta Town Center,
LLC, Donald G. Provost and Peter M. Cudlip

12

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | | |
|---|---|---|
| *Attorneys for Plaintiff & Counter Defendant Granite Southlands Town Center, LLC* | jdykes@fulbright.com<br>bvetter@fulbright.com | Osborne J. Dykes, III<br>Benjamin M. Vetter<br>Fulbright & Jaworski LLP<br>370 – 17th Street, Suite 2150<br>Denver, CO  80202 |
| *Attorneys for Plaintiff & Counter Defendant Granite Southlands Town Center, LLC* | ptrahan@fulbright.com | Paul Trahan<br>Fulbright & Jaworski LLP<br>600 Congress Avenue, Suite 2400<br>Austin, TX  78701 |
| *Defendant Land Title Guarantee Company* | kbruetsch@rwolaw.com | Kimberly A. Bruetsch<br>Robinson, Waters & O'Dorisio PC<br>1099 – 18th Street, 26th Floor<br>Denver, CO  80202 |
| *Defendant Allan G. Provost* | dbp@haplaw.net | Dennis B. Polk<br>Holley, Albertson & Polk, P.C.<br>1667 Cole Boulevard, Suite 100<br>Golden, CO  80401 |

And I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner indicated by the non-participant's name:   NONE

s/ Stuart N. Bennett
Stuart N. Bennett
Attorneys for Defendants Alberta Town Center, LLC,
Donald G. Provost and Peter M. Cudlip
Lindquist & Vennum P.L.L.P.
600 - 17th Street, Suite 1800 –South
Denver, CO 80202
Telephone:          303-573-5900
Fax:                     303-573-1956
E-mail:          sbennett@lindquist.com

Doc# 3108967\7