# EXHIBIT B



**A**NEST &
**B**ROWN, P.C.
ATTORNEYS AT LAW

JAMES T. ANEST ♦
STEPHEN L. BROWN
KARA N. NOACK

♦ Also Member of Wyoming Bar

19590 East Mainstreet, Suite 107
Parker, CO 80138

Phone: (303)-841-9525
Fax:     (303)-841-0881

E-Mail Kara@parkerlawyers.com
http:www.parkerlawyers.com

January 28, 2009

Mr. Andrew Piekarski
Granite Southlands Town Center, LLC
c/o BlackRock Realty Advisors, Inc.
300 Campus Drive, Third Floor
Florham Park, NJ 07932
*Via US Mail, Certified, Return-Receipt*

  RE: *Form of Estoppel Certificate, DCC Architects, LLC, Lease of premises Suite 235*

Dear Mr. Piekarski:

  This letter is written in regard to misstatements in the Form of Estoppel Certificate recently provided to DCC Architects, LLC for its review and execution. Please find an executed copy of a Form of Estoppel Certificate containing most of the requested provisions, omitting incorrect provisions regarding the fact that all repairs required have been made and including a simple statement regarding the fact that the Tenant has requested repairs enclosed.

  Unless you provide notice otherwise, DCC Architects, LLC will assume that the provided Form of Estoppel Certificate is acceptable. Please contact me to discuss any questions or concerns.

          Sincerely,

          ANEST & BROWN, P.C.

         Kara N. Noack

Cc: BlackRock Realty Advisors
  Southlands Shopping Center Management, LLC
  DCC Architects, LLC

Enclosure



| | | |
|---|---|---|
| **A**NEST & **B**ROWN, P.C.<br>ATTORNEYS AT LAW | JAMES T. ANEST ♦<br>STEPHEN L. BROWN<br>KARA N. NOACK<br><br>♦ Also Member of Wyoming Bar | 19590 East Mainstreet, Suite 107<br>Parker, CO 80138<br><br>Phone: (303)-841-9525<br>Fax:    (303)-841-0881<br><br>E-Mail Kara@parkerlawyers.com<br>http:www.parkerlawyers.com |

January 28, 2009

Mr. Andrew Piekarski
Granite Southlands Town Center, LLC
c/o BlackRock Realty Advisors, Inc.
300 Campus Drive, Third Floor
Florham Park, NJ 07932
*Via US Mail, Certified, Return-Receipt*

    *RE: DCC Architects, LLC, Lease of premises Suite 235, damage to property/requested repairs and requested revisions to the Form of Estoppel Certificate*

Dear Mr. Piekarski:

    This letter is written in regard to the premises located 6155 South Main Street, Suite 235, Aurora, Colorado, 80016. As the previous owner likely informed you, there are several reported defects in this space and the surrounding area. A copy of my client's letter sent to Alberta Town Center, LLC on June 25, 2008 wherein DCC Architects, LLC detailed the emerging problems and requested the damages be repaired is enclosed for your notice and convenience. Please consider this letter and the enclosed letter notice pursuant to Article 10.1 of the Lease. The damages documented in the June 25, 2008 letter have yet to be satisfactorily repaired and conditions continue to deteriorate.

    Additionally, further cracks and additional structural defects have emerged. There are several health and safety concerns within and around the demised premises in need of immediate attention such as:
- the increasing gap at the base of the glass wall around the conference room that could cause a failure of the glass
- the expanding cracks around the one hour rated egress stairwell, which is likely a violation of current building codes
- expanding joints and areas of sealant giving way which could result in moisture penetration and potential mold growth,
- movement from the built-in counters has the potential consequence of instability or collapse
- the unexplained floor bowing between the structural members has caused a large gap at the base of the demising walls and places additional stress on surrounding structural members

In addition, the uneven building settlement poses a potential issue since the ground level entrances likely no longer meet ADA accessibility requirements. This could present a potential hardship to clients or

visitors to DCC Architects, LLC. There are also security concerns regarding the continual sag of the tenant entry door (repaired on numerous occasions), which results in the inability to lock and secure the premises (Article 9.5 Tenant must...keep the Demised Premises secure...). This item is in part related to the unexplained building movement that is also ongoing.

As a design-based business, image is important to DCC Architects, LLC. The defects visible in the main lobby and throughout the common area, secondary to the structural and safety concerns indicated above, create a negative perception regarding the quality of service associated with the firm. This affects the potential for attracting new clientele.

Pursuant to Article 3 of the Lease, the Landlord "represents and warrants that the foundation, structural portion of the exterior walls, floors, and roof of the Demised Premises as well as Landlord's Work, if, described in (as applicable) Exhibit "C-1" or Exhibit "C-2" to this lease were constructed (or if not yet constructed, will be constructed) in a good and workmanlike manner..." Pursuant to Article 10.1 of the Lease the Landlord must keep the foundation, the exterior walls, and roof in good repair. Many of the aforementioned conditions seem to suggest that the foundation and structural portions of the walls, floor and roof of the building were not constructed in a good and workmanlike manner. Your prompt attention in repairing the aforementioned problems is expected and appreciated.

This letter is also written to request revisions to and clarifications of the recent Form of Estoppel Certificate sent by the New Owners to my client. Please clarify how the amount of square footage was calculated and provide a certification of the square footage for the premises. Also, please describe how the additional rent expenses for common area operating costs are calculated for each tenant and provide evidence of the calculations regarding the additional rent expenses for Suite 235. In addition, please clarify the date of the Lease. The Lease began in March of 2007, yet the Estoppel Certificate listed the DATE OF LEASE as 11/13/2008. Importantly, as mentioned above, my client cannot state that the Landlord has performed all of its obligations under the Lease because of the safety concerns and detailed outstanding areas in need of repair.

Sincerely,

ANEST & BROWN, P.C.

Kara N. Noack

Cc: BlackRock Realty Advisors
    Southlands Shopping Center Management, LLC
    DCC Architects, LLC

# FORM OF ESTOPPEL CERTIFICATE

Re: Southlands Town Center, Aurora, Colorado ("Property")

TENANT: DCC Architects, LLC
DATE OF ORIGINAL LEASE COMMENCED: 3/10/2007
DATE NEW OWNER ASSUMED THE LEASE: 11/13/2008
EXPIRATION DATE OF LEASE: 8/31/2012
PREMISES: Space No. Suite 235

To:   Granite Southlands Town Center LLC ("GSTCLLC"), BlackRock Granite Property Fund, L.P. ("Granite"), and BlackRock Realty Advisors, Inc. ("BlackRock") (GSTCLLC, Granite and BlackRock and their successors and assigns, collectively, "Buyer").

To Whom It May Concern:

The undersigned hereby certifies to Buyer as follows:

1.   The undersigned is the "Tenant" under the above-referenced Lease ("Lease") covering the above-referenced Premises ("Premises").

2.   The Lease is in full force and effect and constitutes the entire agreement between the landlord under the Lease ("Landlord") and Tenant with respect to the Premises and the Lease has not been modified or amended in any respect as set forth above. A true, correct and complete copy of each Lease is attached hereto as Schedule 1.

3.   The term of the Lease commenced on 3/10/2007 and, including any presently exercised option or renewal term, will expire on 8/31/2012. Tenant has accepted possession of the Premises and is the actual occupant in possession. All improvement required to have been constructed on the Premises as of the date hereof by Landlord have been completed and accepted by Tenant and any tenant improvement allowances required as of the date hereof to have been paid by Landlord have been paid. Tenant has not assigned the Lease or sublet all or any part of the Premises except as permitted in accordance with the Lease.

4.   Tenant is currently obligated to pay minimum guaranteed rent installments of $3,851.75 per month and monthly minimum guaranteed rent has been paid through 1/31/2009. In addition, the Lease requires additional rent based on the Tenant's pro-rata share of the building's common area operating costs and real estate taxes which is agreed to 1.29%. No other rent has been paid more than 30 days in advance. Tenant paid a security deposit of $4,218.58 pursuant to the Lease.

5. Tenant has provided a request for repairs to landlord on 6/25/2008 and provided another request to complete the repairs requested 6/25/2008, in addition to repair further defects, to Landlord on 1/28/09.

6. The undersigned has no renewal, extension or expansion option, no right of first offer or right of first refusal and no other similar right to renew or extend the terms of the Lease or expand the Premises except as may be expressly set forth in the Lease. Tenant has no option or preferential right to lease or occupy additional space within the Property. Tenant has no option or preferential right to purchase all or any part of the Premises or any part of the Property.

7. Tenant has made no agreements with Landlord or its agents or employees at this time concerning free rent, partial rent, rebate of rental payments or any other type of rental or other concession except as expressly set forth in the Lease.

8. There has not been filed by or against Tenant a petition in bankruptcy, voluntary or otherwise, any assignment for the benefit of creditors, any petition seeking reorganization or arrangement under the bankruptcy laws of the United States, or any state thereof, or any other action brought under said bankruptcy laws with respect to Tenant.

This Certificate is made to Buyer in connection with the transfer of the Property to Buyer knowing that Buyer will rely thereon. This Certificate may be relied on by Buyer, any of BlackRock's, or Granite direct and indirect owners, any current or future mortgagee of Buyer, and any of the respective successors and assigns of any of the foregoing.

Dated this 28 day of JANUARY, 2009.

CERTIFIER

DCC Architects, LLC

By: _____

Name: MELISSA BOW-RICHARDSON

Title: MANAGING MEMBER

MBR



**DCC ARCHITECTS, LLC**

June 25, 2008

Jose Inclan
General Manager
Alberta Town Center, LLC
6155 South Main St., Ste. 260
Aurora, CO 80016

Dear Mr. Inclan:

This letter is to officially inform Alberta Town Center, LLC that we are requesting that said company, as the Landlord, repair interior damage to the DCC Architects' tenant space at 6155 S. Main St., Suite 235, Aurora, CO 80016 at Landlord's expense. Several items require attention and some have been documented in this correspondence. Enclosed are photographs and verbal descriptions of damage due to building movement that is by no fault of the tenant or its occupants. Please consider this letter your notice pursuant to Article 10.1 of the lease.





1. There are numerous cracks in the drywall. There seems to be evidence that the exterior walls of the building are moving independently from the rest of the building. As a result of this movement there is cracking in the interior finish drywall at numerous locations in the office. Cracks have appeared at the junction of the interior framed-in walls and exterior walls throughout the space. There are also cracks in the drywall at the apex of the arch of two of the windows on the east and north sides of the office.





2. The previously-mentioned exterior wall separation/ movement is further evident at the perimeter floor of the space. There is a rotation/ uplift to the closure angle that was installed to cover the gap at the floor from the 2nd level to the 1st level tenants. This movement is causing the light gage metal angles to push up at the concrete slab and create lumps in the carpeting. This is especially noticeable in our conference room space where there are no countertops or desks to hide the bow from view.



3. There is a noticeable gap forming between the wall and the floor on the on the south and east side of our office. The demising wall adjacent to the Free World Foods tenant in suite 240 and the floor slab is moving. This is also causing a gap at the base of the glass wall around the conference room. The floor finishes are pulling away and down from the original finish wall location.








4. The gasket around the glass wall in the conference room is falling out. We reinstalled the gasket once already and it is falling out again. Due to the excessive building movement, the next step will be to adhere it in place but to do so means vacating the office for the afternoon and having the work be completed when the office is vacant due to the smell of the adhesive.




5. The front door is racking in the frame. We moved into the space in April of 2007 and have requested that maintenance remove the door twice to shave the bottom down to allow the door to swing freely. The latch side of the door has displaced to the degree that the tile floor is cracking. We have also requested that maintenance adjust the strike plate on latch so that the door can be closed and locked. It is once again beginning to rub on the tile floor when swinging closed and will soon require additional shaving and adjustment to the strike plate to be able to secure our space. This will remain a temporary correction to this problem.



6. The aluminum frame of the front door is coming apart: the door jamb on the latch side is separating from rest of system, and the top mullion above the glazing area is starting to fall out. There is also cracking around the fame at the corridor.





7. There is also considerable movement form our countertops and low walls from the original installation. The countertops are separating from the walls as the walls around them are moving with the floor.





8. Within the common areas of the building there are large cracks developing as well. As examples located in the hallway wall across from the office door of suite 240 as well as a large crack within the 1 hour rated egress stairwell in the building. This crack started on the north side of the stairwell, but has now expanded to going all the way around the exit enclosure.









As a high-end Architectural firm, there is a perceived image that our office should convey to prospective clients. The current damages to the space are damaging to the image of the firm and limits our ability to invite perspective clients to meetings in the office. The items mentioned above are directly related to the foundation which apparently has not been constructed in a good and workmanlike manner. These conditions may be unsafe. DCC is not responsible for any injuries or damages caused by these conditions. We would greatly appreciate your attention to this matter as soon as possible. Please do not hesitate to contact me with any questions at 303-805-7550 or at mbr@dccarchitects.us.

Sincerely,

Melissa Bow-Richardson, Managing Member
DCC Architects, LLC

Enclosure

MBR/bc