IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-CV-00799-ZLW-KLM

GRANITE SOUTHLANDS TOWN CENTER LLC,

        Plaintiff,

v.

ALBERTA TOWN CENTER, LLC,
LAND TITLE GUARANTEE COMPANY,
DONALD G. PROVOST, ALLAN G. PROVOST,
and PETER M. CUDLIP,

        Defendants.

---

**PLAINTIFF'S RESPONSE TO DEFENDANT ALBERTA TOWN CENTER, LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Plaintiff Granite Southlands Town Center LLC ("Buyer" or "Granite") files this response to Defendant Alberta Town Center, LLC's ("Seller" or "Alberta") Motion for Partial Summary Judgment ("Seller's Motion"), as follows:

### SUMMARY OF RESPONSE

The reason the $650,000 was placed into escrow in the first place was to protect Buyer against just the sort of problems at issue here. The parties agreed Seller would deliver tenant estoppel certificates to Buyer, in a specified form, by March 1, 2009. If Seller did so, the $650,000 Estoppel Holdback would go to Seller, Alberta. If not, it would go to Buyer, Granite. The parties agreed, however, that Buyer could reject an estoppel certificate that (i) materially and adversely deviated from the required form – which was drafted to protect Buyer, or (ii)

evidenced a default, for which Buyer as the new owner and landlord might be held accountable. That is precisely what happened here. Therefore, Buyer is entitled to the $650,000 Estoppel Holdback.

Seller now is trying to avoid this intended result by making hyper-technical and illogical arguments that not only are inconsistent with the plain meaning of the agreements but inconsistent with the purpose behind requiring the estoppels and placing the money into escrow in the first place. The purpose was to protect Buyer by preventing tenants from claiming defaults against Buyer, as the new landlord, for acts or omissions of Seller, the old landlord.

Seller's Motion essentially boils down to an argument that complaints by Colorado Cinema about a cracked foundation, Colorado Cinema's refusal to provide an unqualified "no default" declaration, and Colorado Cinema's deletion of a key "no defenses, offsets, liens or claims" clause do not amount to material and adverse modifications to the prescribed form of estoppel certificate and do not constitute evidence of problems that might, with the passage of time, amount to a default. The summary judgment evidence contradicts Seller's argument. More particularly, the summary judgment evidence proves the Estoppel Certificate submitted by Colorado Cinema in January 2009 does not qualify as an "Approved Tenant Estoppel Certificate." At the very least, there is a fact issue as to whether it qualifies. Seller's Motion therefore should be denied.

**SUMMARY JUDGMENT EVIDENCE**

1.    The following summary judgment evidence is offered in support of this response, along with all pleadings, admissions, affidavits, stipulations of the parties, the exhibits attached to Seller's Motion, and authenticated or certified public records on file with this Court at the time

of the hearing on Seller's Motion, all of which are incorporated herein by reference as if set out in full:

| | |
|---|---|
| Conf. Exhibit 2[1] | Forward Purchase and Sale Agreement ("FPSA") |
| Conf. Exhibit 3 | Fifteenth Amendment to Amendment and Agreement and Termination Agreement (defining key terms and setting deadline to deliver Required Estoppels) |
| Exhibit 1 | February 18, 2009, e-mail from Buyer to Seller (expressing concerns about estoppels, including Cinema Estoppel) |
| Exhibit 2 | February 27, 2009, letter from Seller's counsel to Buyer's counsel (acknowledging receipt of and responding to Buyer's objections) |
| Exhibit 3 | Affidavit of Angela Kralovec (Buyer representative) |
| Exhibit 4 | DCC Estoppel (evidence of Seller's inconsistent position as to the default provision) |
| Exhibit 5 | Complete Copy of the Colorado Cinema Lease |
| Exhibit 6 | September 16, 2008, Letter from Colorado Cinema (effective notice of default) |

## APPLICABLE LEGAL STANDARD

2.      "Summary judgment is a drastic remedy . . . [that] should be awarded with care." *Conaway v. Smith*, 853 F.2d 789, 792 n.4 (10th Cir. 1988) (per curiam).  A grant of summary judgment is appropriate only "when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  *Lab. Corp. of Am. Holdings v. Metabolite Laboratories, Inc.*, 571 F.Supp.2d 1199, 1205 (D. Colo. 2008).  A "genuine" issue is one that "could be resolved in favor of either party," and a "material" fact is one that "might reasonably

---

[1] Confidential Exhibits 2 and 3, sealed by order of this Court [Dkt. #69], are attachments to Defendants Peter M. Cudlip, Donald G. Provost, and Allan G. Provost's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) [Dkt #60].

affect the outcome of the case." *Id.* In evaluating a motion for summary judgment, "all evidence must be viewed in the light most favorable to the party opposing the motion." *Id.*

## BACKGROUND AND SUMMARY JUDGMENT FACTS

3.      This lawsuit concerns the Southlands Town Center in Aurora, Colorado.  The dispute that is the subject of Seller's Motion relates to $650,000 that was placed into escrow at closing when the Seller, Alberta, sold the Southlands Town Center to Buyer, Granite.  The money secured Seller's obligation to deliver tenant estoppel certificates to Buyer pursuant to the parties' Forward Purchase and Sale Agreement ("FPSA").  Conf. Ex. 2.  The prescribed form for the tenant estoppel certificate is Exhibit H to the FPSA.

4.      This response discusses two sets of estoppel certificates, one set dated May 2008 but submitted by Seller to Buyer in November 2008, and a second set submitted and dated early 2009.  It is the second set of estoppels, those from early 2009, which are at issue here.  In particular, the focus is on the estoppel certificate submitted by Colorado Cinema, which is dated January 13, 2009 ("Cinema Estoppel").  Seller's Motion, Ex. A-3.

5.      On May 14, 2008, in the Fourteenth Amendment to Amendment and Agreement and Termination Agreement, the parties agreed to extend the closing deadline under the FPSA to December 15, 2008.  Buyer's obligation to close remained subject to Seller satisfying the conditions precedent set out in the FPSA, including the obligation to deliver the "Required Estoppels" prior to closing.  If Seller failed to timely deliver the Required Estoppels, the FPSA gave Buyer the right to terminate the FPSA.  Conf. Ex. 2, at Section 8.1(k)(ii).

6.      Despite knowing of the approaching closing date for almost seven months, it became apparent in late November 2008 that Seller would not be able to deliver the Required

Estoppels.  At that time, Seller attempted to offer estoppel certificates Seller had obtained from

tenants in May 2008.  Since these estoppel certificates were approximately six (6) months old,

they were not acceptable to Buyer.[2]  Accordingly, Buyer rejected the May 2008 estoppels.  Seller

has acknowledged Buyer was within its rights to do so.  Conf. Ex. 3 at Section 2(c).[3]

7.      As an accommodation to Seller and in order to allow the closing to occur by the

extended deadline, Buyer agreed to postpone Seller's obligation to deliver the Required

Estoppels until after closing, but in no event later than March 1, 2009.  *Id*.  Because of the

importance to Buyer of receiving the Required Estoppels, Buyer required that $650,000 of the

consideration paid at closing be placed into an escrow account to secure this extended obligation.

*Id*.  The $650,000 is referred to in the parties' agreements as the "Estoppel Holdback."  *Id*.  The

Fifteenth Amendment reads, in relevant part:

> Upon Seller's delivery of the Required Estoppels to Buyer, Buyer shall
> instruct Escrow Holder by written notice to Escrow Holder to deliver the
> Estoppel Holdback to Seller; provided, however, that . . . should Seller fail
> to deliver the Required Estoppels to Buyer on or before 5:00 P.M. (EDT)
> on March 1, 2009, Buyer and Seller agree Escrow Holder shall deliver the
> entire Estoppel Holdback to Buyer upon written notice to Escrow Holder
> from Buyer, and the amount of the Estoppel Holdback shall be deemed to
> have been forfeited by Seller.

*Id*. (emphasis added).

8.      The agreements define "Required Estoppels" as an "Approved Tenant Estoppel

Certificate" from all "Large Tenants" plus "Approved Tenant Estoppel Certificates" from tenants

in the Town Center representing a specified percentage of the leased square footage of the Town

---

[2] In fact, as Buyer would later learn, Seller was aware at the time it submitted the May 2008 estoppels that they were inaccurate, which serves in part as the basis for Buyer's fraud claims.

[3] *See also* Section 8.1(k)(ii) of the FPSA, as amended by the Fifteenth Amendment and Agreement which states as follows: "[A]ny Tenant Estoppel Certificate which is not dated on or after the date that is thirty (30) days before the Closing Date shall automatically be deemed not to be an Approved Tenant Estoppel Certificate without any action required by Buyer to object to such Tenant Estoppel Certificate."

Center.   The agreements define "Approved Tenant Estoppel Certificates" as "[a]ny Tenant Estoppel Certificate not timely and appropriately objected to by Buyer." <u>Conf. Ex. 3</u> at Section 2(c).  Although Buyer timely and appropriately objected to the Estoppel Certificates for nine (9) tenants (including Colorado Cinema), given that the size of the Colorado Cinema space made it the only "Large Tenant," whether Seller forfeited the Estoppel Holdback comes down to whether Buyer's objection to the Cinema Estoppel was "timely and appropriate."   Because Seller does not dispute the <u>timeliness</u> of Buyer's objection, Seller's Motion turns on whether Buyer's objection to the Cinema Estoppel was <u>appropriate</u>.

9.     The parties' agreements set forth the grounds upon which Buyer could object to an estoppel certificate, i.e. what constitutes an "appropriate" objection.   According to the Fifteenth Amendment to the FPSA, an objection by the Buyer to an estoppel certificate is "appropriate" if the certificate,

(i) is not in the form required by under paragraph 7.2(i) or has been materially and adversely modified from that form, or

(ii) indicates the continuing existence of an actual material default of the landlord under the applicable Lease, or

(iii) correctly indicates that the Lease includes terms and provisions that are inconsistent with the applicable lease delivered to Buyer.

<u>Conf. Ex. 3</u> at Section 2(c).   Buyer objected to the Cinema Estoppel based on the first two grounds.

10.     On February 18, 2009, in an e-mail from Christopher Silva of BlackRock Realty Advisors, Inc., on behalf of Buyer, to Peter Cudlip and Donald Provost of Seller Alberta, Buyer made Seller aware of Buyer's concerns with several of the estoppel certificates delivered by

Seller, including the Cinema Estoppel. A true and correct copy of the e-mail is attached hereto as Ex. 1.

11.     Seller's counsel responded with a February 19, 2009, letter acknowledging receipt of Buyer's February 18 e-mail and disputing Buyer's right to object to the Cinema Estoppel. Buyer's counsel responded on February 24, 2009, outlining objections to nine of the estoppel certificates which had been provided by Seller, including the Cinema Estoppel. Seller's Motion, Ex. A-2. Seller's counsel responded with a letter dated February 27, 2009, which acknowledged receipt of Buyer's February 24 letter but again disputed Buyer's right to object to the nine estoppel certificates referenced in the February 24 letter. A true and correct copy of the February 27 letter is attached hereto as Ex. 2 (the significance of which is discussed below).

### GROUNDS FOR DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT

12.     The only issue for purposes of Seller's Motion is whether the evidence presented in support of the motion establishes, as a matter of law, that the Cinema Estoppel constitutes an Approved Tenant Estoppel Certificate in accordance with Sections 7.2(i) and 8.1(k)(ii) of the FPSA.[4]  Consequently, if the Court concludes a genuine issue of material fact exists as to whether the Cinema Estoppel qualifies as an Approved Tenant Estoppel Certificate, Seller will have failed to carry its burden for purposes of its summary judgment motion, and the motion must be denied.

13.     Seller's arguments that Buyer did not lodge an appropriate objection to the Cinema Estoppel impose conditions on Buyer's right to object that do not exist in the FPSA or other documents. Buyer timely and appropriately objected to the Cinema Estoppel for reasons

---

[4] Buyer disputes Seller's assertion that the total square footage occupied by tenants as of the date of closing was 426,847; however, this dispute over square footage does not change the Court's analysis for purposes of this motion.

apparent from the face of the Cinema Estoppel.  In particular, the Cinema Estoppel (i) was materially and adversely modified from the form of estoppel certificate required under paragraph 7.2(i) of the FPSA, and (ii) indicated the continuing existence of an actual material default of the landlord under the lease.  Seller's Motion therefore should be denied because, at a minimum, there is a genuine issue of material fact as to whether the Cinema Estoppel was materially and adversely modified from the form required by the FPSA and whether the cracked foundation identified by Colorado Cinema in the Cinema Estoppel constitutes a claim of an actual material default under the lease.

I.     **The Cinema Estoppel Differs Materially and Adversely from the Form Required by the FPSA.**

   A.     **The Cinema Estoppel is Modified from the Form Required by the FPSA in at least Two Material Respects.**

   14.     Seller asserts that the "Cinema Estoppel is in the required form."  Seller's Motion at 8.  This statement simply is incorrect.  Paragraph 5 of the Cinema Estoppel was materially and adversely modified from the required form.  The text of paragraph 5 of the form of tenant estoppel certificate required by the FPSA states as follows:

> Landlord has performed all of its obligations, if any, required to have been performed by Landlord prior to the date hereof under the Lease, including, if required under the Lease, making any repairs required to be made by Landlord. Without in any way limiting the generality of the foregoing, Landlord has completed all tenant improvement or other work in the Premises which Landlord is required to perform as a condition to the Lease or Tenant's occupancy of the Premises and has paid Tenant all allowances or other credits required to be paid by Landlord in connection with the tenant improvement work or otherwise as a condition to the Lease or Tenant's occupancy of the Premises.

Conf. Ex. 2, Exhibit H at ¶ 5.

   In contrast, Paragraph 5 of the Cinema Estoppel states as follows:

> Tenant is currently investigating and <u>may dispute Landlord's assertion that Tenant</u> <u>is financially responsible for repairing the cracked foundation</u> that affects the structure of the Demised Premises.  An investigation is under way to determine which party is responsible for the repair and financial responsibility for such foundation.   <u>As of the date of this document, Tenant disputes that it has</u> <u>responsibility for such repair</u>.  Further, Tenant's Proportionate Share for 2008 has not been finalized.

Seller's Motion, <u>Ex. A-3</u> at ¶ 5 (emphasis added).  As is evident from a comparison of these two paragraphs, Colorado Cinema materially and adversely modified paragraph 5 from the text set forth in the required form of estoppel in the FPSA.  Changing the form and complaining of a cracked foundation amount to material and adverse modifications.

15.   In addition to the changes in Paragraph 5, Colorado Cinema also deleted what was paragraph 6 in the required form of estoppel in its entirety.  *See* <u>Conf. Ex. 2</u>, Exhibit H at ¶ 5. Colorado Cinema's refusal to make any of the required certifications in this paragraph – certifications that would have required Colorado Cinema to state that it had no existing defenses, offsets, liens, claims or counterclaims against the landlord – clearly constituted a material and adverse modification to the required form.  Getting these certifications from tenants of the Town Center, and the assurance that those certifications would provide to Buyer, was one of the key reasons that Buyer wanted the tenant estoppel certificates in the first place.  By deleting paragraph 6 from the Cinema Estoppel, Buyer received no assurance from Colorado Cinema in the Cinema Estoppel that Colorado Cinema would not make any claims against Buyer as landlord.  In fact, this deletion was conspicuous in that it at the very least implied that Colorado Cinema was reserving the right to raise such defenses, offsets, liens, claims, or counterclaims against Buyer in the future – something that was both material and adverse to Buyer as Colorado Cinema's new landlord.

16.     Colorado Cinema also made material and adverse modifications to the no-default provision in the required form of the estoppel certificate.   The no-default provision, found in Paragraph 7 of the required form, reads as follows:

> There is no default now existing on the part of the undersigned or of the Landlord under the Lease, and there is no event with which notice or the passage of time or both would constitute a default of the undersigned or of the Landlord under the lease.

Conf. Ex. 2, Ex. H at ¶ 7.

In contrast, the no-default provision in the Cinema Estoppel, found in paragraph 6, states as follows:

> To Tenant's actual knowledge and belief (without any duty to investigate), there are no defaults now existing on the part of the Tenant or of the Landlord under the Lease.

Seller's Motion, Ex. A-3 at ¶ 6 (emphasis added).   Again, it is evident that Colorado Cinema materially and adversely modified the no-default provision from the text required by the FPSA, which served as an "appropriate" ground for Buyer to lodge an objection.

**B.     A Genuine Issue of Material Fact Exists as to Whether the Cinema Estoppel Modifications are Material and Adverse.**

17.     Buyer's purpose in wanting the Cinema Estoppel was to get assurance from Colorado Cinema that Colorado Cinema was not going to raise a dispute or make claims against Buyer arising out of events that happened while Seller owned the Town Center.   The Cinema Estoppel did not provide Buyer with any such assurance.   In fact, it gave Buyer notice that Buyer was inheriting a potential dispute with Colorado Cinema, a dispute which Seller had concealed from Buyer prior to Buyer's acquisition of the Town Center.   Colorado Cinema's modifications to the required form, at the very least, create a genuine issue of material fact as to whether those

modifications were material and adverse modifications to the required form.  Again, Section 8.1(k)(ii) of the FPSA allows Buyer to object to a tenant estoppel certificate if the estoppel is "materially and adversely modified from [the required] form."[5]  The interpretation and construction of particular contract terms is a question of law, as is the determination of whether a particular contract term is ambiguous.  *Denver Center for the Performing Arts v. Briggs*, 696 P.2d 299, 306 (Colo. 1985).

     18.    The terms "materially" and "adversely," not defined specifically in the FPSA, must be "examined and construed in harmony with the plain and generally accepted meaning of the words used." *Level 3 Communications, LLC v. Liebert Corp.,* 535 F.3d 1146, 1154 (10th Cir. 2008) (*citing East Ridge of Fort Collins, LLC v. Larimer and Weld Irrigation Co.*, 109 P.3d 969, 974 (Colo. 2005))  A change in terms is "adverse" if the change presents "an opposing or contrary interest, concern, or position." BLACK'S LAW DICTIONARY. at 62 (9th ed. 2009).  In its plain and generally accepted use, a fact or action is "material" if it "goes to the root of the matter or essence of the contract." *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 64 (Colo. 2005). Although the definition of "material" is a legal question, whether a particular fact or action "goes to the root of the matter or essence of the contract" and therefore *is* material is a question of fact, not law.  *Id.*; *see, e.g., Nat'l Propane Corp. v. Miller*, 18 P.3d 782, 789 (Colo. Ct. App. 2000) ("The proper test for determining whether a breach is material is to look at the substantial benefit that the injured party (purchaser) would have obtained from the fulfillment of the contract . . .").  Furthermore, "[m]ateriality must be assessed in the context of the expectations of the parties at

---

[5] Section 7.2(i) of the FPSA allows Seller to use a form of tenant estoppel certificate required by a particular lease, if the lease includes a form of tenant estoppel certificate.  Because Colorado Cinema's lease did not include any such form, the form attached to the FPSA applies here.

the time the contract was formed." *Coors,* 112 P.3d at 64.  Buyer viewed and views the modifications as material and adverse. Ex. 3, Affidavit of Angela Kralovec.

19.    Instead of assuring Buyer that the landlord Seller was current on all of its repair obligations and not in a dispute with Colorado Cinema, paragraph 5 of the Cinema Estoppel explicitly states that "Tenant disputes that it has responsibility" to repair the "cracked foundation" under investigation.  That modification is both material and adverse.  It is material because, as the new landlord, Buyer may be required to make any repairs that Seller was obligated to but failed to make.  For that reason, Buyer required assurances from Seller that Buyer was not purchasing a property with significant outstanding repair obligations.   The existence of significant outstanding repair obligations undoubtedly was important to Buyer and goes to the "root of the matter or essence of the contract".  *See* Ex. 3.  Furthermore, the modification is adverse to Buyer's interests because it indicates both the potential existence of defects requiring repair and an ongoing dispute regarding financial responsibility for the repairs – regardless of whether the repairs are needed or whether Buyer, as landlord, was ultimately financially responsible for the repairs.

20.    Similarly, the Cinema Estoppel's deletion of paragraph 6 of the required form and modifications to the no-default provision in the required form are material and adverse.  Instead of certifying that Colorado Cinema had no existing claims against the landlord and assuring Buyer that it was unaware of any defaults under the lease terms, the Cinema Estoppel deletes the certifications relating to existing claims and offsets and only states that Colorado Cinema was presently unaware of any defaults and did not represent that there were no events or facts which with proper notice or passage of time could constitute a landlord default.  Moreover, Colorado

Cinema's stating it had "no duty to investigate" was completely in opposition to the requirement in the required form of estoppel that such an investigation be conducted by a tenant. This statement by Colorado Cinema left the door open for Colorado Cinema to later claim a default relating to past actions or omissions of Seller, as landlord, that any subsequent investigation by Colorado Cinema uncovered – obligations for which Buyer could potentially be liable. The no-default provision of the Cinema Estoppel failed to provide any of the substantive assurances called for by the required estoppel form's no-default provision.

21.     As alleged in Buyer's First Amended Complaint, Buyer timely and appropriately objected to the Cinema Estoppel because the Cinema Estoppel had been materially and adversely modified from the required form, a reason which was apparent on the face of the Cinema Estoppel. In all events, Seller's request for partial summary judgment should be denied. Either the plain language of the contract entitles Buyer as a matter of law to the $650,000 Estoppel Holdback, or a question of fact exists as to whether the Cinema Estoppel submitted to Seller by Buyer was "materially and adversely" modified.

## II.     A Genuine Issue of Material Fact Exists as to Whether the Cinema Estoppel Indicated the Continuing Existence of a Landlord Default under the Cinema Lease

22.     Seller argues that because of the language contained in paragraph 6 of the Cinema Estoppel, Buyer could not object to the Cinema Estoppel on the basis that it indicated the continuing existence of an actual material default of landlord under the Cinema Lease. Seller again misconstrues the plain and generally accepted meanings of the terms used in Section 8.1(k)(ii) of the FPSA.

### A.    The FPSA does not Require an Express Statement of Default.

23.    Contrary to Seller's assertions, Section 8.1(k)(ii) does not require a tenant to expressly state that the landlord under the applicable lease was in default; rather, Section 8.1(k)(ii) only requires that the submitted estoppel "indicates the continuing existence of an actual material default of the landlord under the applicable Lease." "Indicate," in its common definition, means "to point out, point to, make known, show (more or less distinctly)" or "to point to or towards the presence, existence, or reality of; to be a sign or symptom of, to betoken." OXFORD ENGLISH DICTIONARY at 207 (Oxford Univ. Press 1971).    An express statement of default undoubtedly "indicates" the default, but a statement of facts that points toward, shows, or otherwise betokens a default also "indicates" a default.

24.    If the Court determines it must provisionally consider extrinsic evidence to determine whether "indicates" is ambiguous,[6] the available evidence supports Buyer's construction.  Seller acknowledged in the February 27 letter from its counsel that Buyer properly objected to the tenant estoppel certificate from DCC Architects, LLC, ("DCC Estoppel") dated January 28, 2009.  A true and correct copy of the February 27 letter is attached as Exhibit 2, and a true and correct copy of the DCC Estoppel is attached hereto as Exhibit 4.  Neither the tenant estoppel certificate nor the cover letter from DCC expressly state that the landlord is in default.  Instead, the tenant points to numerous structural problems as evidence that the landlord's repair obligations have not been satisfied.  Nonetheless, Seller's counsel acknowledged that Buyer's objection to the DCC estoppel certificate was proper.  The February 27 letter from Seller's counsel constitutes a written acknowledgment by Seller that a tenant's noting numerous repair

---

[6] Under Colorado law, the Court may provisionally consider extrinsic evidence in determining whether the contract is ambiguous.  *Denver Center*, 696 P.2d at 306.

obligations without an express allegation of landlord default was sufficient grounds for Buyer to object to a tenant estoppel certificate.  At the very least, the February 27 letter creates a fact issue as to whether the Cinema Estoppel expresses an "indication" of default.

25.     Finally, if the Court determines that "indicates," as used in Section 8.1(k)(ii), is ambiguous, there is a genuine issue of disputed material fact that precludes summary judgment. *Atlantic Richfield Co. v. The Farm Credit Bank of Wichita*, 226 F.3d 1138, 1151 (10th Cir. 2000) ("Once a contract is determined to be ambiguous, 'the meaning of its terms is generally an issue of fact to be determined in the same manner as other disputed factual issues.'") (quoting *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 912 (Colo. 1996)).  In that event, the issues for which Seller seeks summary judgment should be decided by the jury.

**B.      The FPSA does not Require Completion of all Steps to Establish Default.**

26.     Seller's Motion also argues Buyer only had the right to object to the Cinema Estoppel if Colorado Cinema had taken all steps necessary under the Cinema Lease to put Seller as landlord in default.  Seller again misconstrues the contract language.  Section 8.1(k)(ii) requires only an indication of an actual material default, not that the tenant had independently given a separate written notice of default and/or taken all steps necessary to memorialize a default by landlord under the lease.  But even if Seller is correct (which it is not), the facts show that Colorado Cinema, in fact, did take all steps necessary to give Seller notice of an alleged default as of the date of the Cinema Estoppel.  According to Seller, a default requires a showing that (1) Seller failed to comply with material provisions of the lease, (2) Colorado Cinema gave written notice of the non-compliance, and (3) Seller failed to cure within thirty days after receiving the written notice.  Seller's Motion at 9.  All three requirements that Seller claims were

required to claim a default were, in fact, satisfied by Colorado Cinema well before the December 2008 closing.

27.     The landlord under the Cinema Lease was required pursuant to Article III to deliver to Colorado Cinema a buildable pad.  The landlord under the Cinema Lease further covenanted in Article III, Section 6 of the Cinema Lease, that "[a]t all times during the term of [the Cinema Lease], the improvements to be undertaken by Landlord … with respect to the Theatre shall be free from, and [Landlord] shall fully indemnify [Colorado Cinema] against … claims arising in connection with the construction of such improvements." Ex. 5.[7]  Paragraph 5 of the Cinema Estoppel disputed that Colorado Cinema was financially responsible for the necessary foundation repairs, showing that Colorado Cinema was asserting that landlord had failed to comply with a material provision of the lease – namely that the work undertaken by Seller to deliver the buildable pad was defective.

28.     Even if the Cinema Estoppel itself  does not constitute express written notice of non-compliance, Seller had in fact received written notice from Colorado Cinema of the very issues complained of in the Cinema Estoppel.  Perhaps more importantly, at no time prior to closing did Seller or its principals notify Buyer of this notice.  Despite the implication in Seller's Motion that no such notice had ever been received by Seller, Buyer, after closing on the acquisition of the Southlands Town Center, obtained a copy of a letter sent by Colorado Cinema to Seller, dated September 16, 2008 ("Colorado Notice"), where Colorado Cinema gave written notice to Seller that repairs relating to foundation system movement were required and that such repairs were "the responsibility of landlord to correct."  A true and correct copy of the Colorado

---

[7] Exhibit 5 is a true and correct copy of the unredacted Cinema Lease.  Seller attached the Cinema Lease as Exhibit A-4 to its Motion, but heavily redacted the lease "for brevity."

Notice is attached hereto as <u>Exhibit 6</u>.  The Colorado Notice shows that Colorado Cinema gave written notice to Seller of the alleged existence of the defects before delivery of the Cinema Estoppel and informed Seller of its obligation to repair the alleged defects.

29.     Finally, paragraph 5 of the Cinema Estoppel specifically notes the continued existence of the purported cracked foundation on the date of the Cinema Estoppel and that repairs were necessary.  Because the Cinema Estoppel asserts the continued existence of the cracked foundation, and the Cinema Estoppel is dated more than 30 days after the Colorado Notice, the Cinema Estoppel shows that Seller failed to cure the alleged defect within 30 days.

30.     In summary, Seller's position that Section 8.1(k)(ii) requires the tenant estoppels to expressly state that there is a default creates conditions on Buyer's right to object that simply are not required in the FPSA.  Section 8.1(k)(ii) only requires that the tenant estoppel certificate "indicate" the existence of a default, which the Cinema Estoppel clearly does.  Second, Seller's fallback position, that the tenant must have taken all steps necessary to memorialize a claimed default, is also incorrect.  But, even if Seller was correct, the evidence at least creates a fact issue as to whether Colorado Cinema took the steps necessary to declare a default.

<u>CONCLUSION</u>

The evidence at bar supports only one of two possible findings by this Court: Either (i) Seller failed to deliver an Approved Tenant Estoppel Certificate from Colorado Cinema that conformed to the requirements stated in the FPSA and, contrary to Seller's position, Buyer, not Seller, is entitled to the $650,000 Estoppel Holdback as a matter of law; or (ii) genuine issues of material fact exist as to (a) whether Colorado Cinema materially and adversely modified the required form of tenant estoppel certificate, or (b) whether the Cinema Estoppel indicates the

continuing existence of an actual material default by the landlord (Seller) under the Cinema Lease.  In either event, the Court should deny Seller's Motion.

For these reasons, Buyer Granite respectfully requests that the Court deny Seller's Motion for Partial Summary Judgment.

Dated December 23, 2009

Respectfully submitted,

OSBORNE J. DYKES, III
BENJAMIN M. VETTER
FULBRIGHT & JAWORSKI L.L.P.
370 Seventeenth Street, Suite 2150
Denver, CO  80202
(303) 801-2700 – Telephone
(303) 801-2777 – Facsimile
jdykes@fulbright.com
bvetter@fulbright.com

PAUL TRAHAN
FULBRIGHT & JAWORSKI L.L.P.
600 Congress Avenue, Suite 2400
Austin, TX  78701
(512) 474-5201 – Telephone
(512) 536-4598 – Facsimile
ptrahan@fulbright.com

COUNSEL FOR PLAINTIFF/COUNTER-DEFENDANT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on December 23, 2009, I electronically filed the foregoing

**PLAINTIFF'S RESPONSE TO DEFENDANT ALBERTA TOWN CENTER, LLC'S**

**MOTION FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of Court using the

CM/ECF system which will send notification of such filing to attorneys for the remaining parties

at the following e-mail addresses:

Stephen L. Waters  swaters@rwolaw.com
Kimberly A. Bruetsch  kbruetsch@rwolaw.com
ROBINSON WATERS & O'DORISIO, P.C.
1099 18th Street, Suite 2600
Denver, CO 80202
*Attorneys for Land Title Guarantee*

Dennis Boyd Polk  DBP@HAPLAW.NET
Holley, Albertson & Polk, P.C.
1667 Cole Boulevard, Suite 100
Golden, CO 80401
*Attorneys for Defendants Allen G. Provost*

Stuart N. Bennett  sbennett@lindquist.com
Lindquist & Vennum, P.L.L.P.
600 – 17th Street, Suite 1800 – South
Denver, CO 80202
*Attorneys for Defendants Peter M. Cudlip*
*Donald G. Provost and Alberta Town Center, LLC*

_____
Paul Trahan