IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-CV-00799-ZLW-KLM

GRANITE SOUTHLANDS TOWN CENTER, LLC,

        Plaintiff

v.

ALBERTA TOWN CENTER, LLC, and
LAND TITLE GUARANTEE COMPANY,

        Defendants.

---

## DEFENDANT ALBERTA TOWN CENTER, LLC'S REPLY RE:  MOTION FOR PARTIAL SUMMARY JUDGMENT [DOCKET NO. 75]

Defendant Alberta Town Center, LLC ("Alberta"), by and through its attorneys,

Lindquist & Vennum, PLLP, hereby submits its Reply to Motion for Partial Summary Judgment

[Docket No. 75]:

## I.   INTRODUCTION

Under the FPSA,[1] to be entitled to the $650,000 Estoppel Holdback, Alberta was

obligated to deliver to Granite tenant estoppel certificates from tenants occupying 75% of the

leased square footage of the Property and from each tenant occupying more than 10% of the

rentable space.  Granite's Response to Alberta's Motion for Partial Summary Judgment [Docket

No. 84] ("Response") does not dispute that Alberta provided estoppel certificates in satisfaction

of the 75% requirement.  Instead, Granite relies solely on its objection to the estoppel certificate

from the only tenant that occupied more than 10% of the rentable space – Colorado Cinema

---

[1] Except where specifically noted, this Reply will utilize the abbreviated terms used in Alberta's Motion.

1

Group, LLC – for its claim that Alberta forfeited its right to the $650,000 Estoppel Holdback. The resolution of Alberta's Motion is therefore straightforward and appropriate for summary judgment because the Court must only construe the applicable documents – the FPSA, the Fifteenth Amendment, the Cinema Lease and two estoppel certificates provided by the Cinema, one dated May 12, 2008 ("2008 Cinema Estoppel") and one dated January 13, 2009 ("2009 Cinema Estoppel").

Granite objects to the 2009 Cinema Estoppel on the grounds that it discloses that the Cinema "is currently investigating and *may dispute"* Alberta's assertion that the Cinema is financially responsible "for repairing the cracked foundation that affects the" Cinema. (Exh. A-3, ¶ 5)[2]. Granite contends that this disclosure is a material and adverse modification from the required form and that the 2009 Cinema Estoppel is not on the correct form. Finally, Granite contends that the 2009 Cinema Estoppel "indicates" an actual material landlord default.

Granite's objections to the 2009 Cinema Estoppel are not well taken for the following reasons. First, the 2009 Cinema Estoppel's disclosures relating to the cracked foundation are neither "material" nor "adverse" because: 1) Granite purchased the Southlands Town Center shopping center on an "AS IS WHERE IS" basis "with all faults," thereby assuming the risk of financial responsibility for construction issues; and 2) the Cinema, not Granite, is responsible for the foundation under the Cinema Lease.

Second, Granite's argument that the 2009 Cinema Estoppel is not in the required form borders on frivolous. Under the Fifteenth Amendment, 2009 Cinema Estoppel is to be compared

---

[2] Exhibits A-1 through A-4 are attached to Alberta's Motion. Confidential Exhibits 2 and 3 are filed under seal at Docket No. 62.

2

to substantially similar 2008 Cinema Estoppel that Alberta delivered to Granite in November

2008, rather than Exhibit H to the FPSA, as Granite contends.

Third, Granite's argument that the 2009 Cinema Estoppel "indicates" a landlord default is

contradicted by both the 2009 Cinema Estoppel's express statement that no landlord default

exists and by the Cinema Lease's default provisions.

Granite's objections to the 2009 Cinema Estoppel are therefore baseless and it cannot

prevail on its claim for declaratory judgment. As a result, Alberta is entitled to summary

judgment on Granite's declaratory judgment claim and is entitled to an order directing Defendant

Land Title to release the $650,000 Estoppel Holdback to Alberta.

## II.   ARGUMENT

### A.   The Only Disputed Issue is whether the 2009 Cinema Estoppel Meets the Requirements of the Fifteenth Amendment.

Alberta's Motion demonstrates that Alberta timely fulfilled its contractual obligation to

provide Granite tenant estoppel certificates from Southlands Town Center tenants occupying

more than 75% of the leased square footage. (*See* Motion, Section IV, A). Granite did not

respond to this aspect of Alberta's Motion and concedes that Alberta's right to the Estoppel

Holdback "comes down to whether [Granite's] objection to the Cinema Estoppel was 'timely and

appropriate.'" (Response, ¶ 8). The undisputed facts demonstrate that Alberta is entitled to

judgment as a matter of law that it met the 75% requirement under Section 8.1 (k)(i) of the

FPSA. (See Conf. Exh. 2, §8.1(k)(i)). The Court may, therefore, determine that summary

judgment for Alberta on this issue is appropriate under Rule 56, F.R.C.P. *Reed v. Bennett*, 312

F.3d 1190, 1195 (10th Cir. 2002). The only remaining issue is whether Granite's objections to

the 2009 Cinema Estoppel are appropriate under the FPSA and Fifteenth Amendment.

1.   **The 2009 Cinema Estoppel is not a Material Modification from the Required Form Because the Condition of the Property is not Material.**

The FPSA allows Granite to object to a tenant estoppel certificate if such certificate was "materially and adversely modified" from the approved form. (Conf. Exh. 2, FPSA. §8.1(k)(ii)). Granite argues that a change is "material" if it "goes to the root of the matter or essence of the contract" and that, "materiality must be assessed in the context of the expectations of the parties at the time the contract was formed." (Response, ¶ 18). Using Granite's definitions, the issue before the Court is whether the parties considered the Property's condition to be at "the root of" or "the essence" of their contract when they executed the FPSA provisions related to tenant estoppels. The FPSA demonstrates that the Property's condition was immaterial to Granite's obligations under the contract and could not be a basis for Granite's objection to a tenant estoppel certificate.

Granite induced Alberta to sell the Property by, in part, agreeing to purchase it "on the Closing date in its then 'AS IS, WHERE IS' condition, with all faults." (Conf. Exh. 2, § 5.1 (a)). An "as is-where is" clause reallocates the risk of defects and potential repairs from the seller to the buyer. Where a contract to buy or sell is specifically made "as is, where is, with all their faults," no warranty attaches and it is immaterial that the property turns out to be better or worse than supposed. *Williston on Contracts*, §70:80.

By agreeing to the "AS IS WHERE IS" provisions of the FPSA, Granite assumed the risk that the Property may contain defects and that Granite may be responsible for repairs after the closing. The FPSA provided that Granite had no right to "disapprove the Property" and "except as specifically set forth in [the FPSA]" "no right to terminate [the FPSA] as a result of any matter relating to the condition of the Property." (Conf. Exh. 2, § 5.3 (c)). Granite accepted Alberta's

4

disclaimer of "any representation or warranty ... with respect to ... the physical condition ... of the Property and expressly disclaimed and negated "any implied warranty by [Alberta] with respect to the condition of the Property." (Conf. Exh. 2, §5.1 (b) & (c)). By virtue of these provisions, Granite waived any claims it may otherwise have had against Alberta based on the physical condition of the Southlands Town Center.

To offset this risk, Granite purchased from Alberta all warranties and guarantees from the architects, engineers, contractors, subcontractors and other third parties who participated in the construction of the Southlands Town Center. (Conf. Exh. 2, Art. II, (f)). Thus, the FPSA provides Granite with a remedy should defects exist. That the FPSA provides this remedy demonstrates that the Estoppel Holdback was not intended to compensate Granite for repairs to the Property. These provisions render the Property's condition immaterial.

As originally executed, the FPSA provided only three grounds upon which Granite could object to a tenant estoppel certificate, none of which is a tenant's disclosure of conditions requiring repair. (Conf. Exh. 2, § 8.1(k)(ii)). Granite's exclusive remedy under the FPSA, if Alberta failed to deliver the requisite tenant estoppels, was to terminate the FPSA. (Conf. Exh. 2, § 7.2(i), § 8.1(k)(ii)). Another provision of the FPSA, however, prohibited Granite from terminating the agreement "as a result of any matter related to the condition of the Property." (Conf. Exh. 2, § 5.3(c)). Thus, Granite could not terminate the FPSA under § 7.2(i) and § 8.1 k(ii) if a tenant disclosed a condition of the Property requiring repair, except where the existence of the condition constituted a landlord default.

Prior to the closing, the parties executed the Fifteenth Amendment, which replaced Granite's termination right with the Estoppel Holdback provision. (Compare Conf. Exh. 2, §

8.1(k)(ii) with Conf. Exh. 3, ¶ 2 (c)). The Fifteenth Amendment did not, however, alter the "material and adverse modification" or "landlord default" objection standards and did not add the Property's condition as a basis for objection. *Id.* Moreover, none of the amendments to the FPSA altered the "AS IS WHERE IS" nature of the agreement, Alberta's disclaimer of warranties or representations, or Granite's waiver of its right to terminate due to the condition of the Property. The Fifteenth Amendment only changes Granite's remedy should Alberta fail to provide the required estoppels. Granite cannot now claim the right to the Estoppel Holdback based upon the condition of the Property, just as it could not have terminated the FPSA under the previous version of § 8.1(k)(ii) based upon the Property's condition. To find in Granite's favor, this Court would have to rewrite the FPSA by deleting the "AS IS WHERE IS" provisions that render the Property's condition immaterial. The Court has no such authority. *Randall & Blake, Inc. v. Metro Wastewater Reclamation Dist.*, 77 P.3d 804, 806 (Colo. App. 2003).

**2.     The 2009 Cinema Estoppel is in the Proper Form.**

The Fifteenth Amendment amended Section 8.1(k)(ii) of the FPSA to provide that Granite "may not object to…(ii) any Tenant Estoppel Certificate delivered to Buyer on or after the date that is thirty (30) days before the Closing Date for a tenant that is substantially similar to the Tenant Estoppel Certificate for that tenant executed in or about May 2008 and previously delivered to Buyer." (Conf. Exh. 3, § 2 (c)). On May 12, 2008, the Cinema executed the 2008 Cinema Estoppel that was delivered to Granite on or about November 21, 2008. (Exh. A-5, Affidavit of Drew C. Flowers). The 2008 Cinema Estoppel is identical to the 2009 Cinema Estoppel with the exception of paragraph five which describes the cracked foundation and the potential dispute concerning financial responsibility for repairs. (Compare Exh. A-3, ¶ 5 with

6

2008 Cinema Estoppel, ¶5, Exh. B to Exh. A-5). One of Granite's arguments is that paragraph six of the 2009 Cinema Estoppel is different from Exhibit H to the FPSA. (See Response, p. 10). Paragraph six of both the 2008 and 2009 Cinema Estoppels states:

> To Tenant's actual knowledge and belief (without any duty to investigate), there are no defaults no existing on the part of the Tenant or of Landlord under the Lease

(Exh. A-3, ¶ 6 & Exh. A-5 (¶ 6, Exh. B)). Because paragraph six of the 2009 Cinema Estoppel is identical to paragraph six of the 2008 Cinema Estoppel, Granite's objection is not only invalid, but frivolous. In fact, Granite's arguments on pages 9 through 13 of its Response that the 2009 Cinema Estoppel is different from Exhibit H to the FPSA are superfluous and should be disregarded.

### 3.    The 2009 Cinema Estoppel is Not an Adverse Modification of the Required Form.

The 2009 Cinema Estoppel is not "adversely" modified because the Cinema is responsible for repairs to its building. The term "adverse" means "having opposing interests." BLACK'S LAW DICTIONARY 53 (6th ed. 1990). Pursuant to the Cinema Lease, Alberta was obligated to deliver to the Cinema a "buildable pad." This required only that the Cinema site be "rough graded" and that utilities be installed within five feet of the site. (Plaintiff's Exh. 5, Art. III, ¶ 1 and 4). Alberta made no warranties or representations as to the condition of the buildable pad. The Cinema, on the other hand, assumed total responsibility for the design, engineering, and construction of the theater building and all its components. (Pl. Exh. 5, at 43-45). With these obligations the Cinema assumed "sole[] responsib[ility] for the structural integrity of the walls" and agreed to "maintain and repair the Theater." (Pl. Exh. 5, Art. IV, ¶ 1). The Cinema further agreed to indemnify Alberta against "claims arising in connection with the construction"

of the Cinema building.  (Pl. Exh. 5, Art III, ¶ 6).  Thus, the Cinema Lease makes clear that the

Cinema, not the landlord, is financially responsible for repairs to the Cinema building.  As a

result, the Cinema's disclosure of the need for repairs for which Granite is not responsible is not

an "adverse" modification.

<blockquote>

**4.     Granite Has Waived any Claim that the Cinema Estoppel has been
Materially and Adversely Modified.**

</blockquote>

Granite' First Amended Complaint does not allege the 2009 Cinema Estoppel was

"materially and adversely modified" from the required form.  In its Original Complaint, Granite

alleged that some tenant estoppel certificates "materially and adversely deviated from the

required form." (Original Complaint, ¶ 13 [Docket No. 1]).  On September 16, 2009, Granite

filed its First Amended Complaint and deleted all allegations that the tenant estoppel certificates

had been materially and adversely modified. (*See* First Amended Complaint, [Docket No. 36]).

The First Amended Complaint replaced and superseded the Original Complaint. *Gotfredson v.*

*Larsen LP*, 432 F. Supp. 2d 1163, 1172 (D. Colo. 2006)(citation omitted).  Therefore, "[a]ll

causes of action alleged in [the] original complaint which are not alleged in an amended

complaint are waived." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987); *see also Franklin v.*

*Kansas Dept. of Corrections*, 160 Fed. Appx. 730, 734, 2005 WL 3515716, 2 (10th Cir. 2005).

The First Amended Complaint alleges only that some tenant estoppel certificates reveal "defects

or other landlord defaults" and that Granite's objections to the tenant estoppels are covered by §

8.1(k)(ii) of the FPSA. (First Amended Complaint, ¶ 17 & 19).  Granite's apparent intentional

deletion of any reference to "material and adverse modification" constitutes a waiver of such

claims.[3]  Plaintiff cannot now avoid summary judgment by asserting this claim as a basis for its

objection to the 2009 Cinema Estoppel.

**B.      The Cinema Estoppel Does Not Indicate the Continuing Existence Of An
           Actual Material Default Of The Landlord Under The Applicable Lease.**

**1.      The Cinema Estoppel Does Not Indicate a Landlord Default Under
           the Cinema Lease.**

Granite claims the 2009 Cinema Estoppel indicates the continuing existence of an actual

material landlord default under the Cinema Lease.  As demonstrated in Alberta's Motion, the

2009 Cinema Estoppel expressly states the opposite – no landlord default exists.  (Exh. A-3, ¶ 6).

Even if it were silent as to a landlord default, it does not contain any facts from which the Court

could infer the existence of an actual material landlord default.  Granite attempts to avoid

summary judgment by arguing that a factual issue exists over whether the 2009 Cinema Estoppel

"points out" or "betokens" factual circumstances under which the Cinema could potentially

claim that the landlord is financially responsible for repairs to its foundation.  (Response, ¶ 23-

25).

The Fifteenth Amendment unambiguously provides that the "Tenant Estoppel

Certificate" must "indicate the continuing existence of an actual material" landlord default.

Granite does not attempt to construe the entire "landlord default" provision but, instead,

predicates its argument on a single word – "indicate."  When interpreting a contract the Court

must examine the entire contract and give meaning to each word if possible.  *In re Parsons,* 272

B.R. 735, 753 (D. Colo. 2001).  Unless the parties give terms specialized meaning, the Court

should use "the generally accepted meaning" of contract terms and "strained constructions

---

[3] A party may not amend pleading by a response to motion for summary judgment without complying with the
requirements of F.R.C.P. 15.  *Martinez v. Potter*, 347 F.3d 1208, 1211-12 (10th Cir. 2003).

should be avoided." *Level 3 Communications, LLC,* 535 F.3d at 1154-55 (citations omitted).
Examination of each term of the relevant provision demonstrates that Alberta's interpretation
correctly reflects the parties' intent.

As noted by Granite, the word "indicate" means "to show" or "make known."
(Response, ¶ 23). The word "continuing" means "enduring" and "to persist." BLACK'S LAW
DICTIONARY 321 (6th ed. 1990); AMERICAN HERITAGE COLLEGE DICTIONARY 301 (3rd ed.
2000). The word "exist" means "to be in present force, activity, or effect at a given time."
BLACK'S LAW DICTIONARY 574 (6th ed. 1990). The word "actual" means "real; substantial;
existing presently in fact; having a valid objective existence as opposed to that which is merely
theoretical or possible ... hypothetical, or nominal." BLACK'S LAW DICTIONARY 34 (6th ed.
1990). In the context of a "default" the term "material" means that the alleged breach "'goes to
the root of the matter or essence of the contract,' and renders substantial performance under the
contract impossible." *Interbank Investments, L.L.C. v. Vail Valley Consolidated Water Dist.*, 12
P.3d 1224, 1229 (Colo. App. 2000) (citations omitted).

The phrase "default of the landlord" has the meaning ascribed in the Cinema Lease,
rather than the plain and ordinary meaning. *Level 3 Communications, LLC*, 535 F.3d at 1154.
Under the Cinema Lease a landlord default occurs only if the landlord fails to comply with a
material provision of the Cinema Lease and fails to cure any such failure after notice from the
Cinema. (Exh. A-4, Article XV, ¶ 4).

When each word of the relevant section is given meaning, it demonstrates that Granite
could appropriately object to paragraph five of the 2009 Cinema Estoppel only if: 1) the 2009
Cinema Estoppel itself; 2) showed; 3) that as of the date of the Cinema Estoppel certificate, 4) in

fact, as opposed to possibly or potentially; 5) Alberta had failed to comply with a provision of

the Cinema Lease; 6) that the provision with which Alberta failed to comply went to the essence

of the Cinema Lease and rendered substantial performance under the Cinema Lease impossible;

7) that the Cinema had given Alberta notice of such failure to comply; and 8) that Alberta had

failed to cure such failure.  In the absence of any one of these elements, there is no default and

Granite cannot appropriately object.  The 2009 Cinema Estoppel does not claim on its face that

any of these elements exist, but instead states just the opposite – that no landlord default existed

under the Cinema Lease.  The 2009 Cinema Estoppel reveals only an incomplete investigation

concerning the party responsible for repairing cracks in the Cinema building foundation.

> **2.**     **Granite's Reliance on Extraneous Documents is as an Indication of
> Default is Improper.**

Because the 2009 Cinema Estoppel expressly states that no landlord default exists,

Granite impermissibly relies on extraneous documents in an attempt to show a landlord default.

For example, Granite relies on a September 16, 2008 letter from the Cinema that Granite

argues constitutes "effective notice of default."  (Response, ¶ 1).  Section 8.1(k)(ii) of the FPSA

requires that any indication of default be contained in the estoppel certificate itself.  This

extraneous document is therefore irrelevant.  Obviously, the Cinema did not claim in the 2009

Estoppel Certificate that Alberta was in default, despite the dispute over responsibility for repairs

to the building.  Under the FPSA, only the Cinema's statements in the 2009 Estoppel Certificate

are important, not a four-month-old letter from a Cinema employee.

Similarly, Granite contends that a February 27, 2009 letter between the parties' attorneys

establishes that Alberta has taken an inconsistent position with respect to the DCC Architects'

estoppel certificate.  In the letter, Alberta's attorneys acknowledged that "Granite **may** have

11

properly objected" to the DCC Architects' estoppel certificate ("DCC Estoppel"). Whether Granite properly objected to the DCC Estoppel is irrelevant to the 2009 Cinema Estoppel. The DCC Estoppel states the tenant had requested that the landlord make repairs more than six months earlier. (Exh. A-6, DCC Estoppel). It does not affirmatively deny the existence of a default as does the 2009 Cinema Estoppel. Unlike the Cinema Lease, the DCC Architects' lease, obligates the landlord to maintain and repair the premises. (See Exh. A-7, excerpt of DCC Architects lease). Because the landlord's duties under the Cinema Lease are undisputedly different from its duties under the DCC Architects' lease, Alberta's attorney's statements are irrelevant to whether Granite's objections to the Cinema Estoppel are appropriate.

C.    **The FPSA and Fifteenth Amendment are Unambiguous and do not require Parol Evidence for Interpretation.**

The Court should reject Granite's attempt to vary the terms of the FPSA through parol evidence as to the alleged purposes of the Fifteenth Amendment or the intent of the parties with respect to the Estoppel Holdback. Granite has attempted to create ambiguity by offering the affidavit of one of its employees and relying on statements in the letters described above.

The Court should not admit parol evidence unless the contract is so ambiguous that the parties' intent is unclear. *In re Parsons*, 272 B.R. at 753 (citation omitted). "Whether a contract term is ambiguous is a question of law." *Id.* "Contractual terms are not rendered ambiguous merely because the parties subsequently urge diverse interpretations." *Stichting Mayflower Recreational Fonds v. Newpark Resources, Inc.,* 917 F.2d 1239, 1246-47 (10th Cir. 1990). "Rather, a contract is ambiguous where the text of the agreement reasonably allows for varying interpretations. Unless there is an ambiguity in its terms, a court should avoid strained

12

interpretations, give effect to the terms according to their ordinary meaning, and enforce the contract as written." *In Re Parsons*, 272 B.R. at 753 (citation omitted).

The FPSA and Fifteenth Amendment unambiguously set forth the rights and obligations of both Granite and Alberta with respect to the purchase of the Property and the provision of tenant estoppel certificates. The Court should therefore disregard Granite's parol evidence and enforce the contracts as written.

## III.   CONCLUSION

For the foregoing reasons, Alberta is entitled to judgment as a matter of law on all aspects of Granite's declaratory judgment claim and to an Order requiring Defendant Land Title to deliver the $650,000.00 currently held in escrow to Alberta.

DATED:  January 11, 2010.

Respectfully submitted,

*s/ Stuart N. Bennett*
Stuart N. Bennett
**LINDQUIST & VENNUM, P.L.L.P.**
600 - 17th Street, Suite 1800 –South
Denver, CO 80202
Telephone:          (303) 573-5900
Fax:          (303) 573-1956
E-mail:          sbennett@lindquist.com
Attorneys for Defendant Alberta Town Center, LLC

Doc# 3145491\7

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | | |
|---|---|---|
| *Attorneys for Plaintiff & Counter Defendant Granite Southlands Town Center, LLC* | jdykes@fulbright.com<br>bvetter@fulbright.com | Osborne J. Dykes, III<br>Benjamin M. Vetter<br>Fulbright & Jaworski LLP<br>370 – 17th Street, Suite 2150<br>Denver, CO 80202 |
| *Attorneys for Plaintiff & Counter Defendant Granite Southlands Town Center, LLC* | ptrahan@fulbright.com | Paul Trahan<br>Fulbright & Jaworski LLP<br>600 Congress Avenue, Suite 2400<br>Austin, TX 78701 |
| *Defendant Land Title Guarantee Company* | kbruetsch@rwolaw.com | Kimberly A. Bruetsch<br>Robinson, Waters & O'Dorisio PC<br>1099 – 18th Street, 26th Floor<br>Denver, CO 80202 |

And I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner indicated by the non-participant's name: NONE

> *s/ Stuart N. Bennett*
> Stuart N. Bennett
> Attorneys for Defendant Alberta Town Center, LLC
> Lindquist & Vennum P.L.L.P.
> 600 - 17th Street, Suite 1800 –South
> Denver, CO 80202
> Telephone:        303-573-5900
> Fax:               303-573-1956
> E-mail:          sbennett@lindquist.com