**EXHIBIT A-5**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-CV-00799-ZLW-KLM

GRANITE SOUTHLANDS TOWN CENTER, LLC,

    Plaintiff

v.

ALBERTA TOWN CENTER, LLC, AND
LAND TITLE GUARANTEE COMPANY,

    Defendants.

---

**AFFIDAVIT OF DREW C. FLOWERS**

---

STATE OF CALIFORNIA    )
                                      ) ss:
COUNTY OF _____  )

    I, Drew C. Flowers, being duly sworn state as follows:

1.   I am over the age of eighteen and make the following statements based on my personal knowledge.

2.   I am a partner in the law firm of Gibson, Dunn & Crutcher, LLP and represented Alberta Town Center, LLC in connection with its sale of the Southlands Town Center to Granite Southlands Town Center, LLC.

3.   The document attached as Exhibit A is a true and correct copy of a November 21, 2008 letter signed by me or by my authorized representative. Exhibit A was sent via UPS overnight delivery to representatives of Granite Southlands Town Center, LLC.,

including Christopher Silva and Jeremy A. Litt of BlackRock Granite Property Fund, L.P., on or about November 21, 2008.

4. One of the enclosures included with the November 21, 2008 letter was a CD ROM disc containing electronic copies of tenant estoppel certificates from tenants at the Southlands Town Center shopping mall. The document attached hereto as Exhibit B is a true and correct copy of the May 12, 2008 tenant estoppel certificate from Colorado Cinema Group, LLC that was included on the CD ROM disc provided to Granite Southlands Town Center, LLC with Exhibit A.

FURTHER AFFIANT SAYETH NAUGHT

1/11/2010
Date

_____
DREW C. FLOWERS

~~Subscribed and sworn to before me this ___ day of _____ 2010, by Drew C. Flowers.~~

WITNESS my hand and official seal.

My commission expires: _____.

_____
Notary Public

[SEAL]

STATE OF CALIFORNIA        )

COUNTY OF Los Angeles      )

On January 11, 2010 before me, Patricia Rivera, a Notary Public, personally appeared Drew C. Flowers, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

(Seal)

PATRICIA RIVERA
Commission # 1674474
Notary Public - California
Los Angeles County
My Comm. Expires Jul 9, 2010

100740147_1.DOC  (5th Ave & Miramar Rd)                2

**EXHIBIT A-5 (Exhibit A)**

# GIBSON, DUNN & CRUTCHER LLP

LAWYERS

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

One Montgomery Street  San Francisco, California 94104-4505
(415) 393-8200
www.gibsondunn.com
dflowers@gibsondunn.com

November 21, 2008

Direct Dial
(213) 229-7885
Fax No.

(213) 229-6885

Client No.
R 04901-00002

BlackRock Granite Property Fund, L.P.
c/o BlackRock Realty Advisors, Inc.
300 Campus Drive, 3rd Floor
Florham Park, New Jersey, 07932
Attention: Christopher Silva
Facsimile: (646) 521-4965

BlackRock Granite Property Fund, L.P.
c/o BlackRock Realty Advisors, Inc.
300 Campus Drive, 3rd Floor
Florham Park, New Jersey, 07932
Attention: Jeremy A. Litt, Esq.
Facsimile: (973) 993-4571

Re:  *Southlands Town Center, Aurora Colorado (the "Property"); Forward Purchase and Sale Agreement and Escrow Instructions dated as of September 29, 2005, by and between Alberta Town Center, LLC, a Colorado limited liability company ("Alberta" or "Seller"), and BlackRock Granite Property Fund, L.P., a Delaware limited partnership ("Granite" or "Buyer") (as amended, the "Purchase Agreement").*

Gentleman:

  This firm represents the Seller in connection with the Purchase Agreement. As you know, Seller and Buyer are currently discussing an alternative to the closing of the transactions contemplated by the Purchase Agreement. Pursuant to that alternative, Buyer would not acquire

**GIBSON, DUNN & CRUTCHER LLP**

the Property but would instead provide a loan to Seller (or an affiliate) that would permit Seller to continue ownership of the Property. Seller and Buyer have not yet reached agreement on the terms of that alternative transaction or whether, in fact, Seller and Buyer (or their affiliates) will enter into the alternative transaction. Seller expects that those discussions will continue; however, because neither Seller nor Buyer knows whether that alternative transaction will be implemented, Seller wanted to write you to make clear that (a) Seller is working in good faith to complete the closing of the transactions contemplated in the Purchase Agreement and (b) that Buyer should similarly work in good faith to complete the closing of the transactions contemplated in the Purchase Agreement, notwithstanding ongoing discussions. Under no circumstance will the on-going discussions about a potential alternative transaction vary in any respect the obligations of Seller and Buyer under the Purchase Agreement until such time, if any, as a definitive, written agreement is executed by Seller and Buyer.

### Purchase Agreement

In light of the imminent scheduled closing of the Purchase Agreement, we have set forth below Seller's understanding of the status of the various conditions to closing in the Purchase Agreement, together with Seller's plan for delivery of closing documents and for implementation of prorations. All references (e.g., Section 8.1) are to the provisions in the Purchase Agreement, and all capitalized terms not defined in this letter are used as defined in the Purchase Agreement.

### Closing Conditions

Section 8.1(a). Representations and Warranties. Seller's representations and warranties are true and correct in all material respects.

Section 8.1(b). No Termination. As you know, the Purchase Agreement has not been terminated.

Section 8.1(c). Compliance by Seller. Seller is in material compliance with its obligations under the Purchase Agreement.

Section 8.1(d). Substantial Completion. Substantial Completion has occurred, as acknowledged by Buyer in prior estoppels and communications with Bank of America, N.A. (the senior mortgage lender with a lien on the Property).

Section 8.1(e). Other Documents. Attached as Exhibits A, B, C, D and E are unexecuted copies of all the documents that Seller has delivered or will shortly deliver to Escrow Holder in anticipation of closing. Seller has delivered or will shortly deliver to Escrow Holder in anticipation of closing copies of the Conditional Waivers. Seller hereby requests that Buyer confirm that Seller may leave the following materials, which shall be deemed delivered, in the property manager's office at the Property prior to closing: (i) originals or duplicates of all Contracts, to be assumed by Buyer, (ii) the Leases, (iii) the Permits and Licenses and (iv) the manuals referenced in Section 8.1(j); or that Seller timely designate an alternative address where such materials should be sent.

Section 8.1(f). Updated Survey. Seller has previously delivered the Updated Survey.

2

**GIBSON, DUNN & CRUTCHER LLP**

Section 8.1(g). Owner's Title Policy. Seller understands that the Title Company is prepared to issue the Owner's Title Policy in the required form.

Section 8.1(h). Notices. Seller has not received any notices of material violations of law.

Section 8.1(i) Building/Certificate of Compliance/Certificates of Occupancy. The Buildings have been completed in accordance with the Plans and Specifications, as Buyer has previously acknowledged. A certificate of compliance has been issued for the Buildings, as Buyer has previously acknowledged. Certificates of occupancy have been issued for all spaces for each part of the Buildings subject to Qualifying Leases pursuant to which the tenant thereunder is open for business and paying rent. Copies of Certificates of Occupancy for tenant spaces received are included on the enclosed disc.

Section 8.1(j). Certification of Seller's Architect/Punch List. This condition has been satisfied, as Buyer has previously acknowledged.

Section 8.1(k). Estoppels. A disc with the estoppel certificates is enclosed.

**Closing Deliveries**

Attached as Exhibits A, B, C, D and E, respectively, are unsigned execution copies of (i) the Special Warranty Deed, (ii) the Non-Foreign Affidavit, (iii) the Bill of Sale, (iv) the Assignment of Leases and (v) the Assignment of Contracts, together with the escrow instructions attached as Exhibit F to the Escrow Holder specifying the conditions under which executed originals of those documents are to be delivered. Prior to closing, Seller will deliver to Escrow Holder one fully executed and notarized original of the Special Warranty Deed, two (2) originals of each of the Bill of Sale, the Assignment of Leases, the Assignment of Contracts, and one original of the Non-Foreign Affidavit. We expect that, in compliance with the Purchase Agreement, Buyer will deliver to Escrow Holder two (2) original, executed counterparts of each of the Bill of Sale, the Assignment of Leases and the Assignment of Contracts and shall deliver cash or other good funds sufficient to pay the Closing Funds, plus or minus any prorations, the closing costs and any other amounts payable to Buyer to permit Escrow Holder to close the Escrow.

Seller is assuming, at this time, that all existing service contracts will remain in place as of the Closing. Seller has not received notice from Buyer to the contrary, and, at this time, as you well know, termination of those contracts in advance of the closing is not practicable. In addition, we note that if the alternative transaction is implemented, then Seller would expect those service contracts to stay in place.

**Prorations**

On or about December 10, 2008, Seller will submit to you an initial draft of proposed closing statement setting forth the prorations of expenses and revenue in accordance with the Purchase Agreement. Seller requests that you promptly reply to that initial draft so that Seller and Buyer may finalize the closing statement as far in advance of closing as is reasonably practicable.

3

## GIBSON, DUNN & CRUTCHER LLP

**Buyer Cooperation**

We expect that Buyer will act in good faith to complete the transactions contemplated in the Agreement. To that end, we request that you promptly notify Seller if you disagree with our assessment of the status of any Closing Condition or the form of any Closing Delivery so that we may work in good faith, and in compliance with the Purchase Agreement, to complete the transaction.

Please do not hesitate to contact me if you have any questions on the information included in this letter.

Sincerely,

*/s/ Drew Flowers/*

Drew Flowers

cc:

Fulbright & Jaworski L.L.P.
600 Congress Avenue, Suite 2400
Austin, Texas 78701-3271
Attention: Jane S. Smith
Facsimile: (512) 536-5238

La Salle National Banking Association
c/o Bank of America, N.A.
370 Seventeenth St., Suite 3590
Denver, CO 80202
Attn: Julie M. Elston, Sr. Vice President
Facsimile: (303) 825-7580

Gibson, Dunn & Crutcher LLP
One Montgomery St., Suite 3100
San Francisco, CA 94014
Attn: Fred Pillon
Facsimile: (415) 374-8432

Alberta Development Partners
5460 South Quebec Street, Suite 100
Englewood, Colorado 80111
Attn: Donald G. Provost
Facsimile: (303) 771-4086

Otten, Johnson, Robinson, Neff & Ragonetti, P.C.
950 Seventeenth St., Suite 1600
Denver, CO 80202
Attn: Victoria L. Hellmer, Esq.
Facsimile: (303) 825-6525

**EXHIBIT A-5 (Exhibit B)**

## ESTOPPEL CERTIFICATE

To: BlackRock Realty Advisors, Inc.
Granite Southlands Town Center LLC
BlackRock Granite Property Fund, L.P. (collectively, "Buyer")
c/o Hiroe Takeuchi
300 Campus Drive, 3rd Floor
Florham Park, New Jersey 07932

Re: Lease dated August 2, 2004 ("Original Lease") between Southlands Colorado, LLC, a Delaware limited liability company, as landlord ("Original Landlord"), and Colorado Cinema Group, LLC, a Delaware limited liability company, as tenant ("Tenant"), as amended by that certain (i) First Amendment to Lease dated July 21, 2007 ("First Amendment") between Landlord and Tenant, (ii) Second Amendment to Lease dated January 10, 2006 between Alberta Town Center, LLC, a Colorado limited liability company, as successor in interest to Original Landlord ( "Landlord") ("Second Amendment"), and (iii) Third Amendment to Lease dated June ___, 2006 between Landlord and Tenant ("Third Amendment" and together with the Original Lease, First Amendment and Second Amendment, the "Lease") concerning the "Demised Premises" defined therein and known as the Southlands Town Center, located in Aurora, Colorado (herein, the "Demised Premises")

To Whom It May Concern:

The undersigned hereby certifies to Buyer and its lender as follows:

1. All capitalized terms not herein defined shall have the meanings ascribed to those terms in the Lease.

2. The Lease is in full force and effect and constitutes the entire agreement between the Landlord and Tenant with respect to the Demised Premises and the Lease has not been assigned, modified, supplemented or amended in any respect except as set forth above.

3. The term of the Lease commenced on May 5, 2006 and, excluding any option or renewal terms, will expire on May 30, 2026. Tenant has accepted possession of the Demised Premises and is the actual occupant in possession. All improvements and/or repairs required to have been constructed on the Demised Premises as of the date hereof by Landlord have been completed and accepted by Tenant and any tenant improvement allowances required as of the date hereof to have been paid by Landlord have been paid to Tenant. Tenant has not assigned the Lease or sublet all or any part of the Demised Premises.

4. All Monthly Minimum Rent, Percentage Rent and contributions to the Marketing Fund and have all been paid to date in accordance with the amounts required under the Lease.

5. There are no existing claims, defenses or offsets by or in favor of the Tenant against Landlord under the Lease except that Tenant is currently disputing Tenant's Proportionate Share for 2008, including Tenant's share of real estate taxes for the Demised Premises, and Tenant's Proportionate Share for 2007, as well as Tenant's share of real estate taxes for the Demised Premises, has not been finalized.

6. To Tenant's actual knowledge and belief (without any duty to investigate), there are no defaults now existing on the part of the Tenant or of Landlord under the Lease.

7. Tenant has three (3) separate options to extend the initial term of the Lease for periods of five (5) years each based on the conditions and stipulations contained in the Lease. Tenant has no option or preferential right to lease or occupy additional space within the Shopping Center. Tenant has no option or preferential right to purchase all or any part of the Demised Premises or any part of the Shopping Center.

8. Tenant has made no agreements with Landlord or its agents or employees concerning free rent, partial rent, rebate of rental payments or any other type of rental or other concession except as expressly set forth in the Lease.

This Certificate is made to Buyer and its lender, if any, in connection with Buyer's prospective purchase by it of the Shopping Center knowing that Buyer will rely thereon in consummating the purchase of the Shopping Center and any loan secured thereby and in accepting an assignment of the Lease. This Estoppel Certificate may be relied on by Buyer and its lender in connection with such purchase and the closing of any loan.

(remainder of page intentionally left blank)

CHGO2\0248977.2

Dated this 12th day of May, 2008.

TENANT:

COLORADO CINEMA GROUP, LLC, a Delaware limited liability company

By: _____
Name: ANTHONY KERASOTES
Title: Chmo Ceo

CHGO2\40248977.2