IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-CV-00799-ZLW-KLM

GRANITE SOUTHLANDS TOWN CENTER LLC,

      Plaintiff,

v.

ALBERTA TOWN CENTER, LLC and
LAND TITLE GUARANTEE COMPANY,
DONALD G. PROVOST, ALLAN G. PROVOST,
and PETER M. CUDLIP,

      Defendants.

---

**PLAINTIFF'S MOTION FOR RECONSIDERATION
AND FOR LEAVE TO AMEND COMPLAINT**

---

      Plaintiff/counter-defendant Granite Southlands Town Center, LLC, ("Granite") through its counsel, Fulbright & Jaworski L.L.P., submits this Motion for Reconsideration and for Leave to Amend its *First Amended Complaint* ("Complaint") [Dkt. #34], respectfully requesting that the Court reconsider its December 29, 2009, Order [Dkt. #85] ("Order") granting *Defendants Peter M. Cudlip, Donald G. Provost and Allan G. Provost's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6)* ("Motion to Dismiss") [Dkt. #60] and dismissing the claims against the three individual defendants with prejudice.  Granite further requests that this Court permit Granite to amend its Complaint by filing *Plaintiff's Second Amended Complaint*, attached as Exhibit 1.

**INTRODUCTION**

1.   This is a fraud, breach of contract, and declaratory judgment suit concerning a property known as the Southlands Town Center in Aurora, Colorado (the "Property").[1]   The Principals committed fraud against Granite by failing to disclose material, negative changes in the condition of the Property in order to induce Granite to close on the purchase of the Property for over $160 million—which was necessary for their company, Alberta, to be relieved of its $160 million construction loan and for the Principals[2] to be released from $160 million of personal guarantees.   The Principals were aware of serious, latent, structural defects prior to the time of the purchase in December 2008 and had a duty to disclose them, but failed to do so.   The consequence of those defects was that Granite had the right to terminate the FPSA and walk away from the Property.   Knowing that Granite would have refused to close—which would have precipitated Alberta's default on its construction loan and the lender calling the Principals' personal guarantees on the nine-figure loan—Alberta and the Principals took steps to conceal the defects from Granite in order to insure Granite's purchase of the Property.

2.   The Court dismissed these claims against the Principals on the Principals' Motion to Dismiss.[3]   The Principals had sought the dismissal under Rule 12(b)(6), claiming that Granite's theory of reliance was "implausible" under *Twombly*.[4]   Although *Twombly* made clear that

---

[1] For consistency, Granite will used the defined terms used by the Court in its Order.

[2] In the live pleading, the "Principals" were defined to include Allan G. Provost, Donald G. Provost, and Peter M. Cudlip.   Based on recent discovery, Granite has concluded that the individual claims against Allan Provost should be dismissed.   For purposes of this motion, the term "Principals" refers to Don Provost and Peter Cudlip, consistent with the allegations in Granite's  proposed Second Amended Complaint.

[3] Order at 7.

[4] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

implausible claims should not survive the pleadings stage, it also cautioned that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable . . . ."[5]  The Principals argued, and the Court agreed, that the figure of $2.15 million was *not* consideration paid for the Release, but was simply an undifferentiated part of the consideration for the sale of the Property.  Granite's theory of reliance is plausible as it appears in the Complaint, and recent discovery confirms that the allegation is indeed correct.  The deposition testimony of the Principals on January 7 and 8, 2010, proves that the payment of the $2.15 million was made in reliance on the Release, as alleged.

3.   As the Court is aware, Granite and Alberta entered into the FPSA with the ultimate purpose of Granite purchasing the Property after construction.  Because that agreement was made prior to any construction so that Alberta could obtain financing, it contained a number of preconditions that had to be satisfied in order for the parties to close.  Unbeknownst to Granite, Alberta was not able to satisfy certain essential preconditions, and Granite could have—and would have—refused to close had it known the true facts.  Over the course of the eight months before Closing, Alberta had received letters and complaints from tenants of the Property identifying serious, structural defects in the Property and requiring Alberta to make repairs.  Had Alberta disclosed the tenant complaints, engineering reports, and other information in the sole possession of Alberta and its Principals, Granite could have—and again, would have—refused to purchase the Property.

4.   Further, during the course of the construction process, Alberta's principals had taken the position that the parties had agreed to a joint venture for the purchase, which claims had the

---

[5] *Id.* at 556.

potential to frustrate or at least complicate the purchase by Granite.  In order to settle those differences and believing that the parties were acting in good faith to consummate the purchase, Granite offered additional consideration at Closing in exchange for a release.

5.  Alberta and the Principals understood that this amount was to be a separate consideration.  In a contemporaneous email, Principal Donald G. Provost ("Don Provost") confirmed that "the concept is [Granite] buy[s] a 100% interest, we waive any claims of ownership and walk away from our invested equity in ex[cha]nge for $____."[6]  Both Peter Cudlip and Don Provost confirmed in their depositions on January 7 and 8, 2010, respectively, that "the additional consideration of $2,150,000 would have resolved the parties' disagreement and dispute regarding the joint venture issue."[7]  Thus, the reliance allegations pled are not only plausible, they are substantiated by Don Provost's and Peter Cudlip's testimony, and Granite respectfully submits that the resolution of this factual matter at the pleadings stage was not appropriate.

6.  Separately, the Order recites that the dismissal is "with prejudice."  Notably, the Principals did not themselves request this relief.  And "it is the practice of this District to allow such amendments [*i.e.* after dismissal under 12(b)(6)], unless the defendant shows that

---

[6] *See* Email from Don Provost to Andrew Piekarski dtd. Dec. 3, 2008, 10:49 AM (Exhibit 2).

[7] *See* Deposition of Donald G. Provost ("Provost Depo.") at 99:20-100:1 (Exhibit 3); *see also* Deposition of Peter Cudlip ("Cudlip Depo.") at 110:16-22 (Exhibit 4):

> Q:  Just so I'm clear, you talked to Don about how much additional consideration would need to be provided with this transaction so as to justify your walking away . . . from claims you would have against Granite relating to a joint venture?
>
> A:  Correct.

amendment would be unfair or without meaningful effect."[8]   Attached to this motion as Exhibit 1 is a proposed Second Amended Complaint that addresses the Court's concerns about the nature of Granite's reliance and canvasses the documents recently produced in discovery that bear on the fraud claim, further expanding them to include the substantial losses that Granite has suffered as a result of its execution of the closing documents and purchase of the Property.  All of these acts were done in justifiable reliance on the fraudulent conduct of Alberta and its Principals.  As the Court can see, the amendment would be far from futile and helps explain the context of the complicated transaction, including the nature and role of Granite's justifiable reliance that was the focus of the Order.  It would be neither prejudicial nor unfair to permit this amendment, considering the status of the case and the fact that the documents that substantiate the fraud and negate Alberta Defendants' own legal theories were wholly within the control of Alberta Defendants until only recently.

## ARGUMENT AND AUTHORITIES

### I.      An Interlocutory Order May Be Altered or Amended

7.   The Order is interlocutory because it did not dispose of all claims against all parties and therefore is not a final judgment in the case.  *See, e.g., Anderson v. Deere & Co.*, 852 F.2d 1244, 1246 (10th Cir. 1988) (orders disposing of some, but not all, claims or parties are interlocutory).  This Court has "general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment."  *Wagoner v. Wagoner*, 938 F.2d 1120, 1122 n.1 (10th Cir. 1991); *see also Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 12 n.14 (1983) ("[V]irtually all interlocutory orders may be altered or amended before final

---

[8] *Yates v. Portofino Real Estate Props. Co., LLC*, No. 08-cv-00324-PAB-MJW, 2009 WL 2588833, *3 (D. Colo. Aug. 17, 2009).

judgment if sufficient cause is shown."). A court may reconsider its prior orders "to process litigation to a just and equitable conclusion." *Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000).

8. A party shows sufficient cause for reconsideration when she "set[s] forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Nat'l Bus. Brokers*, 115 F. Supp. 2d at 1256 (internal quotation marks omitted); *see also Shields v. Shetler*, 120 F.R.D. 123, 126 (D. Colo. 1988). Although reconsideration of interlocutory orders is not governed by the strict standards of Federal Rules of Civil Procedure 59(e) and 60(b), *see Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1223 n.2 (10th Cir. 2008), this Court has identified "three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Shields*, 120 F.R.D. at 126. In particular, reconsideration of prior rulings is "encourage[d] . . . where error is apparent." *Warren v. Am. Bankers Ins. of Fla.*, 507 F.3d 1239, 1243 (10th Cir. 2007). This standard is clearly met, as explained below

## II.   Evidence Gained Through the Discovery Process Confirms the Plausibility of Granite's Allegations of Reliance

9. At the pleadings stage, Granite's allegations that it justifiably relied upon the Principals' fraudulent conduct, Complaint ¶¶ 18, 22, should have been taken as true. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1950 (2009)); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Contrary to this maxim, the Principals asserted that "[i]t defies logic that Granite paid $2,150,000 as consideration for its own agreement to release Alberta and the Principals,

. . . ."  The Court apparently agreed with the Principals because, in its view, the $2.15 million was part of the overall consideration for the purchase and therefore, the Release was not separately and fraudulently induced.   Order at 6-7.  Discovery has revealed, that this premise was incorrect.

10. As noted above, the Release was a necessary precondition to Granite being able to close the purchase of the Property because the Principals were claiming entitlement to a continuing ownership interest in the Property.  Although the parties never achieved a meeting of the minds as to any joint venture and never entered into any such agreement, the Principals maintained up to Closing that they had a "lawsuit . . . for [Granite] not performing a joint venture on the property . . . ."   Cudlip Depo. (Exhibit 4) at 110:1-4.   Because this disagreement threatened to encumber the Closing, Granite proposed to the Principals that they settle their claims and clear up any dispute over ownership rights that might cloud the purchase.  As the email string between Alberta Principal Don Provost and Granite's representative, Andrew Piekarski, demonstrates, Granite offered a release in exchange for some consideration to settle their differences as to the ownership interest in the Property.  Don Provost confirmed that "the concept is [Granite] buy[s] a 100% interest, we waive any claims of ownership and walk away from our invested equity in ex[cha]nge for $_____."  Email from Don Provost to Andrew Piekarski dtd. Dec. 3, 2008, 10:49 AM (Exhibit 2).  As evidenced by the Release itself, that number was negotiated to be $2,150,000.  *See Release and Termination Agreement* (Exhibit A to First Amended Complaint) [Dkt. 36 and 78-2].

11. Don Provost confirmed this understanding again in his deposition last week:

Q:      So, it's your understanding that this agreement, Exhibit 59, which is the release, language in the Fifteenth Amendment and ***the additional consideration***

*of $2,150,000 would have resolved the parties' disagreement or dispute regarding the joint venture issues*.

> A:    Yes.

Provost Depo. (Exhibit 3) at 99:20-100:1 (emphasis added).   Likewise, Principal Peter Cudlip

characterized the additional consideration and release as follows:

> Q:    Let me ask:  What was your role in connection with moving forward with the closing on the sale of the Southlands Town Center to Granite?
>
> A:    Well, as one of owners and managers of the property, I . . . can go through the whole thing.  We were moving forward with the loan, and at the eleventh hour, Granite came back to us, and instead of doing the loan, they proposed -- asked us if we would -- what would it take to, in essence walk away from a lawsuit that we felt we had for them not performing a joint venture on the property and not performing on the forward purchase and sale . . . .  Don and I came up with a number, and the purchase price was changed for the purchase of the center . . . and then we closed it.
>
>                    *              *              *
>
> Q:    Just so I'm clear, you talked to Don about how much additional consideration you would need to be provided in connection with this transaction so as to justify your walking away, I think is the way you put it, from the claims you would have against Granite relating to a joint venture.
>
> A:    Correct.

Cudlip Depo. (Exhibit 4) at 109:18-110:10; 110:16-22.  This agreement is memorialized in the

Release, which was executed as part of the Closing Papers.

> 12. In order to consummate the purchase of the Property, Granite entered into an

agreement that effectively provided the architecture for the Closing.  *Fifteenth Amendment to

Amendment and Agreement and Termination Agreement* § 2(a) ("Closing Agreement") (attached

[without exhibits] as Exhibit 5).  The Closing Agreement contains and/or references a number of

agreements that were necessary to effect the purchase.  It bound both Granite and Alberta, as

well as a number of additional parties who were not parties to the FPSA, to certain actions.

Among other things, the Closing Agreement:  (i) amended the FPSA to permit Alberta to deliver certain required tenant estoppels after Closing, and thereby extinguish Granite's right to terminate the FPSA and extract itself from the Closing under §§ 7.2(i) and 8.1(k); (ii) bound Alberta, as well as the Principals in their individual capacities, and Alberta's construction lender, to execute a separate agreement releasing possible claims against one another ("Release"); (iii) obligated Granite to pay an additional $2,150,000—defined as an "Excess Payment"—above the purchase price previously provided for in the FPSA, which was the consideration for the Release.  Closing Agreement ¶¶ 2(a) & (c), 9 (Exhibit 5).  Thus it does not "defy logic" to suggest that the $2,150,000 consideration was tied to the Release.  Indeed, it is more implausible to suggest that Granite would have offered to "sweeten" the purchase price of the Property only a few days before Closing when the value of the Property was, if anything, declining.  In any event, this is a factual dispute that cannot be resolved in the context of a Rule 12(b)(6) motion.

13. Because the basis for justifiable reliance has been sufficiently pled—and substantiated—Granite respectfully requests that the Court reconsider its Order dismissing the fraud claims against the Principals.

III.    Reconsideration to Amend the Order to Dismiss Without Prejudice is Proper

14. Additionally or in the alternative, Granite requests that the Court grant it leave to amend its cause of action against the individual defendants.  "In dismissing a complaint for failure to state a claim, the court should grant leave to amend freely if it appears at all possible that the plaintiff can correct the defect."  *Triplett v. Leflore County, Okla.*, 712 F.2d 444, 446 (10th Cir. 1983) (reversing order of dismissal because district court denied post-dismissal leave to amend (internal quotations and citation omitted)).  "In the absence of an apparent reason to

refuse leave to amend – such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, futility of an amendment, etc. – the leave sought should, as the rules require, be freely given." *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Lee v. Enterprise Fin. Group*, No. CIV-08-1221-M, 2009 WL 1362605, *5 (W.D. Okla. May 14, 2009) (quoting *Triplett* and granting class plaintiffs leave to amend after court granted defendants' motion to dismiss for failure to state a claim). "Indeed, it is the practice of this District to allow such amendments [*i.e.* after dismissal under 12(b)(6)], unless the defendant shows that amendment would be unfair or without meaningful effect." *Yates v. Portofino Real Estate Props. Co., LLC*, No. 08-cv-00324-PAB-MJW, 2009 WL 2588833, *3 (D. Colo. Aug. 17, 2009); *see also Lala v. Frampton*, No. 07-cv-02144-MSK-CBS, 2008 WL 4059874, *5 (D. Colo. Aug. 28, 2008) ("Generally, a dismissal pursuant to FED. R. CIV. P. 12(b)(6) is granted concomitantly with leave to replead under FED. R. CIV. P. 15, unless it is apparent that leave to amend of the pleadings would be unduly prejudicial or futile.").

15. Allowing such an amendment would not be prejudicial to either Alberta or its Principals because the facts were known to the Alberta Defendants and the core facts and legal theories of fraud remain the same. Further, the Final Pretrial Conference is set for July 12, 2010—six months away—and the discovery that has been conducted to date has already produced a vast amount of evidence necessary to prove these claims. Consequently, the Alberta Defendants will not suffer undue prejudice. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006) (Undue prejudice "occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues.").

16. Nor would the amendment be futile.  To the extent that the Court perceived a
disconnect in the prior pleading, that defect can be corrected, as Granite has done in the attached
proposed amendment.  Further, and as explained above, the proposed amendment amplifies and
expands upon the fraud theories previously pled with more context based on the discovery that
has only recently been produced by Alberta Defendants.  There is compelling proof that a serious
fraud was occasioned upon Granite, and the extent of both the fraud—*e.g.*, the acts of
concealment—and damage suffered as a result are only now coming to light; as illustrated in the
proposed Second Amended Complaint (Exhibit 1), Granite has added significant newly
discovered factual allegations.

17. The discovery that has been produced by Alberta so far[9] has revealed that both the
nature and extent of the fraud and Granite's damages as a result is much greater than originally
understood.  For example, we now know that Alberta had learned that there were serious
structural defects in the Property at least eight months prior to Closing.  During that time, it
received letters and complaints from tenants of the Property identifying the defects at the
Property and requiring Alberta to make repairs.  *See, e.g.*, Exhibits 6, 7 & 8 (Ltrs. from tenants
DCC Architects dtd. June 25, 2008, and Colorado Cinema dtd. Sept. 16, 2008, and Dec. 18,
2008).  Don Provost testified that he was made aware of "drywall cracking and separation"
sometime in "June or August or September or whenever."  Don Provost Depo. (Exhibit 3) at
72:1-75:5; 77:13-21.  The defects were so severe that Alberta had sought proposals from five
different engineering firms to investigate the defects and obtained reports from three different

---

[9] The discovery so far produced by Alberta appears to be lacking in several respects, and Granite
believes that these documents represent only the "tip of the iceberg" as to its fraud claims.

structural and soils engineers on the source of the defects—all prior to Closing and without notifying Granite.   Alberta's attorneys, Brownstein Hyatt Farber Schreck, LLP, were communicating with attorneys for the Colorado Cinema, a tenant at the Property, regarding "foundation system movement" only **four days** before Closing.  *See* Exhibit 8 (responding to Dec. 8, 2008, letter from Alberta's attorney).

18. Rather than disclose any of these tenant communications to Granite, Alberta and its Principals ordered cosmetic repairs be made to portions of the Property that the Alberta Defendants knew Granite would be visiting to conceal the existence of the defects.  Meeting agendas recently produced by Alberta confirm that "[c]osmetic repairs due to building movement" were "completed" as of November 19, 2008—contemporaneous with Alberta's production of "[i]nformation to New Market [Granite's inspectors]" and shortly before New Market's "walk-through" portion of the inspection on December 2, 2008.  *See* Exhibit 9 (Southlands Meeting Agendas, ALBERTA003654 & ALBERTA003656).  A November 26, 2008 invoice shows approximately $1,500 of "misc. repairs" conducted in tenant DCC's space - following DCC's April 2008 complaint and June 25, 2008 letter about "damage due to building movement."  *See* Exhibit 10 (ALBERTA003665).

19. In fact, Alberta never notified Granite of any changed circumstances prior to Closing as it was required to do under the FPSA—much less any structural defects—and represented that it was not in default of any tenant obligations, which was also clearly untrue.  *See*  Ltr. from Gibson Dunn [without exhibits] "represent[ing] the Seller" dtd. Nov. 21, 2008, at 2 stating that "Seller is in material compliance with its obligations under the Purchase Agreement.") (Exhibit

11).[10]   These defects were not open and obvious, but in fact were latent and in many cases concealed, as evidenced by the fact that only ten days before the Closing, three real estate professionals from New Market Real Estate Group inspected the Property on Granite's behalf and provided a detailed, 200-page report that did not reveal anything that would have shown that the soil's load-bearing capacity was insufficient to support the existing structure or that there were other defects in construction ("Inspection Report").   Instead, the appraiser reported that "the buildings are in above average physical and functional condition" and that "[o]verall, the property is in excellent condition."

20. These additional facts that give rise to or further substantiate several theories of fraud by both the individual defendants and Alberta, were discovered after the First Amended Complaint was filed and present a compelling reason to reconsider the Order and/or permit an amendment to the Complaint.  *See, e.g., Ayyad v. Gonzales*, No. 05-cv-02342-WYD-MJW, 2008 WL 2955964 *3-4 (D. Colo. July 31, 2008) (granting motion to reconsider interlocutory order granting preliminary injunction to consider new facts and arguments); *Ponca Tribe of Indians of Okla. v. Continental Carbon Co.*, No. 05-445-C, 2006 WL 2850482 *2 (W.D. Okla. Sept. 29, 2006) (granting motion to reconsider interlocutory order dismissing complaint because of newly presented evidence).

21. Finally, it is noteworthy that Granite has not requested prior amendments to cure deficiencies identified by the Court or the parties, but does so now in light of the newly

---

[10] This document was previously submitted to the Court as  Exhibit A-5 to *Defendant Alberta Town Center LLC's Reply re: Motion for Partial Summary Judgment* (Dkt. # 86).

discovered facts, the policy of determining cases based on substantive rights, and to prevent manifest injustice.

## IV.     Leave to Amend Should Be Given Because Good Cause Is Shown

22. To file its Second Amended Complaint at this stage in the litigation, Granite must show good cause to modify the Scheduling Order [Dkt. #21] and satisfy the requirements of Federal Rule of Civil Procedure 15(a).  *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2000).

### A.     Good Cause Exists to Modify the Scheduling Order

23. The "good cause" inquiry focuses on the diligence of the party seeking to amend in its attempt to meet the Scheduling Order's deadline.  *Id.*  "[T]he focus of the inquiry is upon the moving party's reasons for seeking the modification."  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

24. The Second Amended Complaint alleges facts discovered after the deadline for amendment of pleadings and joinder of parties passed.  The facts, discovered through Granite's investigation and in the course of discovery, were unavailable to Granite before the deadline and could not have been discovered in an exercise of reasonable diligence.  "[I]nformation learned through discovery . . . if occurring after the deadline to amend contained in the Scheduling Order constitutes good cause to justify an extension of that deadline."  *Pumpco, Inc.*, 204 F.R.D. at 668.

25. Alberta Defendants did not produce any documents until after Granite's First Amended Complaint was filed on September 4, 2009.  Only in the discovery materials delivered to Granite after December 21, 2009, was information disclosed to Granite about the extent of Alberta Defendants' investigation of the defects, the period of time over which it occurred, the

number of tenant complaints about the defects, and the fact that Alberta Defendants had hired engineers to monitor vertical movement at the Property less than a month before Closing; all of this information being given months after the deadline for amendment of pleadings and a year after being requested by Granite.  Furthermore, no depositions were taken in this matter until December.  Both the documents produced by defendants and the depositions have revealed additional facts giving rise to additional claims, and supporting the existing claims.

26. Granite diligently complied with the Scheduling Order's deadline and amended its complaint based on the facts then known.  The new facts revealed in discovery after the deadline constitute good cause to modify the Scheduling Order to allow the Second Amendment.

**B.     Leave to Amend is Appropriate under Rule 15(a)**

27. Leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  "The purpose of [Rule 15(a)] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties."  *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (internal quotation marks omitted).  To that end, "[r]efusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."  *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

28. Undue delay exists "when the party filing the motion has not adequate explanation for the delay."  *Frank*, 451 U.S. at 1365-66.  As explained, there is no undue delay in this case.  Granite simply did not know, and could not have known, the additional facts at the time it filed the First Amended Complaint.  As also noted above, Alberta Defendants will not suffer undue

prejudice, and Granite has not previously requested an amendment to cure any pleading deficiencies, and the amendment is not futile.

## CONCLUSION AND PRAYER

This case arises from a sizable real estate transaction, in which the seller deliberately hid structural defects from the buyer until after the closing. Fact issues are present. It is a substantial case which should be decided on the facts and on the merits and not dismissed summarily on the pleadings.

WHEREFORE, Plaintiff asks the Court to:

(i) GRANT its Motion for Reconsideration and dismissal, vacate its Order, and enter a new order denying the Motion to Dismiss;

(ii) in the alternative, AMEND the December 29, 2009 Order such that said order is made without prejudice; and

(iii) GRANT Granite LEAVE to file the proposed attached Second Amended Complaint.

Respectfully submitted this 13th day of January, 2010.

/s/ Osborne J. Dykes, III
OSBORNE J. DYKES, III
BENJAMIN M. VETTER
FULBRIGHT & JAWORSKI L.L.P.
370 Seventeenth Street, Suite 2150
Denver, CO  80202
(303) 801-2700 – Telephone
(303) 801-2777 – Facsimile
jdykes@fulbright.com
bvetter@fulbright.com

PAUL TRAHAN
FULBRIGHT & JAWORSKI L.L.P.
600 Congress Avenue, Suite 2400
Austin, TX  78701
(512) 474-5201 – Telephone
(512) 536-4598 – Facsimile
ptrahan@fulbright.com

COUNSEL FOR PLAINTIFF
AND COUNTER-DEFENDANT

## CERTIFICATE OF CONFERENCE

I certify that I conferred with counsel for the Defendants on January 13, 2010, and they

informed me that the Defendants oppose the relief sought in this motion.

/s/ Osborne J. Dykes, III

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on the 13th day of January, 2010, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system which will send notification of such filing to

attorneys for plaintiffs at the following e-mail addresses:

Stephen L. Waters                        swaters@rwolaw.com
Kimberly A. Bruetsch                     kbruetsch@rwolaw.com
ROBINSON WATERS & O'DORISIO, P.C.
1099 18th Street, Suite 2600
Denver, CO 80202
*Attorneys for Land Title Guarantee*


Dennis Boyd Polk                         DBP@HAPLAW.NET
Holley, Albertson & Polk, P.C.
1667 Cole Boulevard, Suite 100
Golden, CO 80401
*Attorneys forAlberta Defendant Allen G. Provost*


Stuart N. Bennett                        sbennett@lindquist.com
Lindquist & Vennum, P.L.L.P.
600 – 17th Street, Suite 1800 – South
Denver, CO 80202
*Attorneys for Alberta Defendants Peter M. Cudlip*
*Donald G. Provost and Alberta Town Center, LLC*


*/s/ Osborne J. Dykes, III*