# EXHIBIT 5

# FIFTEENTH AMENDMENT

## TO

## AMENDMENT AND AGREEMENT

## AND

## TERMINATION AGREEMENT

This FIFTEENTH AMENDMENT TO AMENDMENT AND AGREEMENT AND TERMINATION AGREEMENT (the "**Amendment**") is made and entered into effective as of December 8, 2008, by and among ALBERTA TOWN CENTER, LLC, a Colorado limited liability company ("**Alberta**"), BLACKROCK GRANITE PROPERTY FUND, L.P., a Delaware limited partnership ("**Granite**"), SOUTHLANDS POWER CENTER, LLC, a Delaware limited liability company ("**Southlands Provost**"), SOUTHLANDS TOWER LLC, a Delaware limited liability company ("**Southlands Tower**"), BANK OF AMERICA, N.A., a national banking association, successor by merger to LaSalle Bank National Association, a national banking association, as agent ("**Agent**") for itself and the other banks party to the Loan Agreement (as hereinafter defined) ("**Lender**"), Donald G. Provost, in individual residing in the State of Colorado ("**D. Provost**"), Peter M. Cudlip, an individual residing in the State of Colorado ("**Cudlip**"), and Allan G. Provost, an individual residing in the State of Colorado ("**A. Provost**"). Alberta, Granite, Southlands Provost, and Southlands Tower are sometimes collectively referred to herein as the "**Property Parties**." Alberta, Granite, and Southlands Provost are sometimes collectively referred to herein as the "**FPSA Parties**." D. Provost, Cudlip, and A. Provost are sometimes collectively referred to herein as the "**Guarantors**." Alberta, Granite, Southlands Provost, Southlands Tower, Agent, Lender, D. Provost, Cudlip, and A. Provost are sometimes collectively referred to herein as the "**Parties**".

## RECITALS

A.     Alberta and Granite are parties to that certain Forward Purchase and Sale Agreement and Escrow Instructions dated as of September 29, 2005, as amended by that certain Amendment and Agreement dated as of April 30, 2007, and that certain First Amendment to Amendment and Agreement effective as of June 1, 2007, and that certain Second Amendment to Amendment and Agreement effective as of June 29, 2007, and that certain Third Amendment to Amendment and Agreement effective as of July 24, 2007, and that certain Fourth Amendment to Amendment and Agreement and Termination Agreement effective as of August 31, 2007, and that certain Fifth Amendment to Amendment and Agreement and Termination Agreement effective as of December 13, 2007, and that certain Sixth Amendment to Amendment and Agreement and Termination Agreement effective as of February 15, 2008, and that certain Seventh Amendment to Amendment and Agreement and Termination Agreement effective as of February 22, 2008, and that certain Eighth Amendment to Amendment and Agreement and Termination Agreement effective as of February 28, 2008, and that certain Ninth Amendment to Amendment and Agreement and Termination Agreement effective as of March 14, 2008, and that certain Tenth Amendment to Amendment and Agreement and Termination Agreement

effective as of March 27, 2008, and that certain Eleventh Amendment to Amendment and Agreement and Termination Agreement effective as of April 9, 2008, and that certain Twelfth Amendment to Amendment and Agreement and Termination Agreement effective as of April 25, 2008, and that certain Thirteenth Amendment to Amendment and Agreement and Termination Agreement effective as of May 8, 2009, as amended by that certain Fourteenth Amendment to Amendment and Agreement and Termination Agreement effective as of May 14, 2008 (collectively, the "**Town Center FPSA**"), wherein, among other things, Alberta has agreed to construct and sell and Granite has agreed to purchase the Project (as defined in the Town Center FPSA) subject to the terms and conditions contained therein.

B.     Southlands Provost and Granite were parties to that certain Forward Purchase and Sale Agreement and Escrow Instructions (VR-2 and VR-3) dated as of January 25, 2006, as amended by that certain Fourth Amendment to Amendment and Agreement and Termination Agreement effective as of August 31, 2007, as amended by that certain Amendment effective as of January 31, 2008 (collectively, the "**Terminated VR-2/3 FPSA**"), wherein, among other things, Southlands Provost agreed to construct and sell and Granite agreed to purchase the VR-2/3 Tracts subject to the terms and conditions contained therein.   Granite terminated the Terminated VR-2/3 FPSA pursuant to Granite's rights in the Terminated VR-2/3 FPSA by letter dated September 26, 2008.

C.     Alberta, Granite, and Agent are parties to that certain Tri-Party Agreement dated September 29, 2005, as amended by that certain Amendment to Tri-Party Agreement dated May 14, 2008 (collectively, the "**Tri-Party Agreement**") wherein, among other things, Granite consented to Alberta's collateral assignment of all of Alberta's right, title, and interest in and to the Town Center FPSA to Agent.

D.     Lender and Alberta are parties to a Construction Loan Agreement dated as of September 29, 2005, as amended by a First Loan Modification Agreement between Agent and Alberta dated as of October 31, 2007, and a Second Loan Modification Agreement between Agent and Alberta dated as of January 31, 2008, and a Third Loan Modification Agreement between Agent and Alberta dated as of May 14, 2008 (the Construction Loan Agreement, as so amended, is referred to herein as the "**Loan Agreement**"), pursuant to which Lender agreed to extend to Alberta a loan in the maximum principal amount of $158,807,879.00 (the "**Loan**"), upon the terms and conditions set forth in the Loan Agreement.  The term "**Loan Documents**" shall mean all documents entered into in connection with the Loan.

E.     On the date of this Agreement, Alberta has agreed to transfer the Property (as defined in the Town Center FPSA) on the Closing Date to Granite Southlands Town Center LLC, a Delaware limited liability company and wholly-owned subsidiary of Granite ("**Granite Sub**"), pursuant to the terms of the Town Center FPSA (as amended by this Amendment).

F.     The Parties wish to evidence certain agreements of the Parties in connection therewith.

60140212.5                                            - 2 -

NOW THEREFORE, for and in consideration of the foregoing recitals and the mutual agreements set forth herein, and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    The Recitals to this Amendment are incorporated herein by reference.  Words and phrases having defined meanings in the Town Center FPSA shall have the same meaning in this Amendment unless expressly modified in this Amendment.

2.    The Town Center FPSA is hereby amended as follows:

(a)    Section 4.1 of the Town Center FPSA is hereby amended by deleting it in its entirety and inserting in lieu thereof the following:

"**4.1    Purchase Price.**

Buyer agrees to pay, and Seller agrees to accept, as consideration for the conveyance of the Property to Buyer, an amount in U.S. Dollars equal to the sum of (1) Two Million One Hundred Fifty Thousand and No/100 ($2,150,000.00) ("**Excess Payment**"), plus (2) the Closing Repayment Amount (the sum of (1) and (2) being the "**Purchase Price**").  At Closing, Buyer shall deliver to Escrow Holder the Purchase Price less the Earnest Money Deposit (the Purchase Price, as reduced by the Earnest Money Deposit, is referred to herein as the "**Closing Funds**").  The term "**Closing Repayment Amount**" shall mean the lesser of (a) the amount required to repay in full the Loan (including, without limitation, principal, interest and other expenses owed by Seller under the Loan Documents as of the Closing Date), and (b) One Hundred Sixty Million and No/100 Dollars ($160,000,000.00).  The Earnest Money Deposit and Closing Funds shall be applied to the Purchase Price at Closing."

(b)    Section 8.1(k)(i)of the Town Center FPSA is amended by adding the following sentence to the end of that Section:

"Any landlord estoppel delivered pursuant to and in accordance with this Section to remedy the deficiency between the estoppels obtained and the requirement that Seller cause the delivery of Approved Tenant Estoppel Certificates from tenants occupying at least 75% of the rentable square feet in the Buildings shall be deemed an Approved Tenant Estoppel Certificate for purposes of determining whether Seller has delivered the Required Estoppels entitling Seller to disbursement of the Estoppel Holdback."

(c)    Section 8.1(k)(ii) of the Town Center FPSA is amended by deleting it in its entirety and inserting in lieu thereof the following:

"Buyer shall be entitled to object to any Tenant Estoppel Certificate if such Tenant Estoppel Certificate (i) is not in the form required under paragraph 7.2(i) or has been materially and adversely modified from that form, or (ii) indicates the continuing existence of an actual material default of the landlord under the applicable Lease, or (iii) correctly indicates that the Lease includes terms and

provisions that are inconsistent with the applicable lease delivered to Buyer, by delivering a written notice of objections ("**Buyer Notice of Objections**") to Seller on or before the date that is 2 business days prior to the scheduled Closing Date; provided, however, Buyer may not object to (i) any Tenant Estoppel Certificate solely because the tenant refuses to make the certification in paragraph 11 of the form of Tenant Estoppel Certificate attached hereto as Exhibit H, or (ii) any Tenant Estoppel Certificate delivered to Buyer on or after the date that is thirty (30) days before the Closing Date for a tenant that is substantially similar to the Tenant Estoppel Certificate for that tenant executed in or about May 2008 and previously delivered to Buyer. Further, in no event shall the existence of a default by a tenant serve, by itself, as the basis to disqualify a Tenant Estoppel Certificate from being an Approved Tenant Estoppel Certificate, as provided below. Any Tenant Estoppel Certificate not timely and appropriately objected to by Buyer shall be an "**Approved Tenant Estoppel Certificate**;" provided, however, that any Tenant Estoppel Certificate which is not dated on or after the date that is thirty (30) days before the Closing Date shall automatically be deemed not to be an Approved Tenant Estoppel Certificate without any action required by Buyer to object to such Tenant Estoppel Certificate. If, prior to the Closing Date, Seller fails to deliver the Required Estoppels, (x) Seller shall be obligated to continue to use commercially reasonable efforts to obtain the Required Estoppels after the Closing, and (y) Escrow Holder shall retain Six Hundred Fifty Thousand and No/100 Dollars ($650,000.00) of the Excess Funds at Closing ("**Estoppel Holdback**") and shall invest the Estoppel Holdback in accordance with joint investment instructions delivered to Escrow Holder by Buyer and Seller. All interest on the Estoppel Holdback held by Escrow Holder shall accrue for the benefit of the party which ultimately receives the Estoppel Holdback. Upon Seller's delivery of the Required Estoppels to Buyer, Buyer shall instruct Escrow Holder by written notice to Escrow Holder to deliver the Estoppel Holdback to Seller; provided, however, that (i) upon Seller's delivery of the Required Estoppels to Buyer, if the AAD (as defined in Section 10 of the Fifteenth Amendment) has not been delivered to Buyer as of the date of Seller's delivery of the Required Estoppels, then $50,000 of the Estoppel Holdback plus any accrued interest on such amount (such amount of the Estoppel Holdback plus any accrued interest, if and when held back pursuant to this (i), is herein referred to as the "**AAD Holdback**") and the release of the AAD Holdback shall be governed by Section 10 of the Fifteenth Amendment); and (ii) should Seller fail to deliver the Required Estoppels to Buyer on or before 5:00 P.M. (EDT) on March 1, 2009, Buyer and Seller agree Escrow Holder shall deliver the entire Estoppel Holdback to Buyer upon written notice to Escrow Holder from Buyer, and the amount of the Estoppel Holdback shall be deemed to have been forfeited by Seller. The provisions of this Section 8.1(k)(ii) shall survive the Closing."

(d)     The last sentence of Section 10.3 of the Town Center FPSA is hereby amended by deleting it in its entirety and inserting in lieu thereof the following:

"Without limiting the generality of the foregoing, it shall be a condition precedent to Buyer's obligation to proceed with the Closing and purchase the Property that

Buyer receive from Seller such releases and other instruments required in order to convey title to the Property free of any and all liens and encumbrances affecting the Property which secure an obligation to pay money (other than installments of real estate taxes or assessments not delinquent as of the Closing).

Buyer and Seller agree that Seller may leave the items specified in subparagraphs (g), (h), and (j) in the property manager's office at the Property on or prior to Closing, which shall be deemed delivery of such items."

(e)     Section 10.9 of the Town Center FPSA is hereby amended by deleting "8:00" and inserting in lieu thereof "11:00".

(f)     The fourth sentence of Section 14.3 of the Town Center FPSA is hereby amended by deleting "or Seller" therefrom.

(g)     The second sentence of Section 14.18 of the Agreement is hereby amended by deleting "$160,000,000" and inserting in lieu thereof "the Purchase Price".

3.   Sections 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, and 17 of the Fourth Amendment to Amendment and Agreement and Termination Agreement are hereby amended by deleting them in their entirety.

4.   Section 5 of the Eighth Amendment to Amendment and Agreement and Termination Agreement is hereby amended by deleting it in its entirety.

5.   Section 10 of the Fourteenth Amendment to Amendment and Agreement and Termination Agreement is hereby amended by deleting it in its entirety.

6.   Closing Documents. Granite Sub and Alberta agree to execute the documents attached hereto as Exhibit A and to deliver the same to Escrow Holder as a part of the closing deliveries required at Closing.

7.   Escrow Deposit. Alberta, Granite, and Escrow Holder are parties to that certain Escrow Agreement dated as of May 14, 2008, (the "**TI Escrow Agreement**"). Granite and Alberta agree that any amounts remaining in the Escrow (as defined in the TI Escrow Agreement) at Closing shall be the property of Granite Sub and shall, at Granite Sub's election, either be (i) credited against the amount of the Closing Funds due from Granite Sub at Closing (in which case the amounts remaining in the Escrow shall be paid to Seller at Closing), or (ii) delivered by Escrow Holder to Granite Sub at Closing.

8.   Management. At Closing that certain Management Agreement by and between Seller and Southlands Shopping Center Management, LLC ("**SSCM**") dated as of an unnamed date in 2007 ("**Management Agreement**") shall be assumed by Granite Sub as of the Closing Date but only for liabilities arising after Closing. In addition, at the Closing, Seller will cause SSCM to execute and deliver to Escrow Holder an amendment to the Management Agreement in the form of Exhibit B to this Amendment, which, among other things, implements the following terms and conditions:

(a)    the term of the Management Agreement shall terminate on or before June 30, 2009, provided that Granite Sub may terminate the Management Agreement earlier upon thirty (30) days written notice or immediately upon the transfer of the Property; and

(b)    that the total fees owed SSCM by Granite Sub under the Management Agreement shall be $25,000.00 per month, prorated for any partial month.

9.    <u>Release</u>.  The Parties agree to the execute the Release and Termination Agreement attached hereto as <u>Exhibit C</u> and to deliver the same to Escrow Holder prior to the Closing. Such Release will be released by Escrow Holder to the Parties only if and when the Closing occurs.

10.    <u>Assignment and Assumption of Declarant</u>.

(a)    Alberta and Guarantors agree, at their sole cost and expense, to use commercially reasonable efforts to cause Southlands Colorado, LLC, a Delaware limited liability company ("**SCLLC**"), to execute the Assignment and Assumption of Declarant in the form attached hereto as <u>Exhibit D</u> (the "**AAD**") prior to Closing. If, notwithstanding such commercially reasonable efforts by Alberta and Guarantors, SCLLC does not execute the AAD prior to Closing, Alberta and Guarantors shall, at their sole cost and expense, continue to use commercially reasonable efforts to cause SCLLC to execute the AAD after Closing. Alberta and Guarantors shall copy Buyer on all correspondences to SCLLC regarding SCLLC's execution of the AAD. If Alberta and Guarantors have not delivered the AAD signed by SCLLC to Buyer on or before 5:00 P.M. (EDT) on March 1, 2009, Buyer and Seller agree Escrow Holder shall deliver the AAD Holdback (and any interest accrued thereon) to Buyer upon written notice to Escrow Holder from Buyer, and the amount of the AAD Holdback shall be deemed to have been forfeited by Seller. The provisions of this Section 10(a) shall survive the Closing.

(b)    In addition to the foregoing, Alberta shall execute the Assignment and Assumption of Declarant in the form attached hereto as <u>Exhibit E</u> and deliver the same to Escrow Holder as a part of the closing deliveries for Closing.

11.    <u>Property Expense Proration Reconciliation</u>.  Notwithstanding anything in the Town Center FPSA to the contrary, Alberta and Granite Sub shall reconcile the proration of Property expenses (including common area expenses) made at Closing for the Property (as defined in the Town Center FPSA) on or before March 31, 2009. This Section 11 will survive the Closing.

12.    <u>Counterparts.</u>  This Amendment may be executed in separate counterparts. It shall be fully executed when each party has signed and delivered to the other (by mail, overnight delivery, facsimile or e-mail) at least one counterpart, even though no one counterpart contains the signatures of all the Parties to this Amendment.

13.  Ratification.  The Parties hereto agree that the FPSAs and Tri-Party as amended or modified by this Amendment are in full force and effect and they reinstate, ratify and affirm the FPSAs and Tri-Party in all respects as so amended and modified.

14.  Successors and Assigns.  This Amendment and the FPSAs as amended and modified herein shall inure to the benefit of and be binding upon the Parties and their respective successors and permitted assigns.  Whenever in this Amendment a reference is made to any entity or party, such references shall be deemed to include a reference to the successors and permitted assigns of such entity or party.

15.  Time of the Essence.  Time is of the essence with respect to the performance of all obligations under this Amendment and the FPSAs as amended and modified herein.


**[Signatures on Following Pages]**

IN WITNESS WHEREOF, Granite has executed this Amendment as of the date set forth above.

**GRANITE:**

BlackRock Granite Property Fund, L.P.,
a Delaware limited partnership

By:    BlackRock Granite Property Fund, LLC,
       a Delaware limited liability company,
       its General Partner

       By:    BlackRock Granite Property Fund, Inc.,
              a Maryland corporation,
              its Sole Member

              By:    BlackRock Realty Advisors, Inc.,
                   a Delaware corporation,
                   its Investment Manager

              By: _____
              Name: Christopher Silva
              Title: Director

**Execution Date:**    December 8, 2008

**[Signatures Continue on Next Page]**

IN WITNESS WHEREOF, Southlands Tower has executed this Amendment as of the date set forth above.

**SOUTHLANDS TOWER:**

Southlands Tower LLC,
a Delaware limited liability company

By:   BlackRock Granite Property Fund, L.P.,
a Delaware limited partnership, its Sole Member

      By:   BlackRock Granite Property Fund, LLC,
            a Delaware limited liability company,
            its General Partner

            By:   BlackRock Granite Property Fund, Inc.,
                  a Maryland corporation,
                  its Sole Member

                  By:   BlackRock Realty Advisors, Inc.,
                       a Delaware corporation,
                       its Investment Manager

                       By: _____
                       Name: _Christopher Silva_
                       Title: _Director_

**Execution Date:**   December 8, 2008

**[Signatures Continue on Next Page]**

IN WITNESS WHEREOF, Alberta has executed this Amendment as of the date set forth above.

**ALBERTA:**

ALBERTA TOWN CENTER, LLC,
a Colorado limited liability company

By: _____
    Donald G. Provost, Manager

Execution Date: _December 8, 2008_

**[Signatures Continue on Next Page]**

60140212.5        Signature Page to Fifteenth Amendment to Amendment and Agreement
                  and Termination Agreement

IN WITNESS WHEREOF, Southlands Provost has executed this Amendment as of the date set forth above.

**SOUTHLANDS PROVOST:**

SOUTHLANDS POWER CENTER, LLC,
a Delaware limited liability company

> By:  Southlands Colorado, LLC,
> a Delaware limited liability company
>
> By: _____
> Name: *Donald G. Provost*
> Title: *Authorized Signatory*

**Execution Date:** *December 8, 2008*

**[Signatures Continue on Next Page]**

60140212.5

Signature Page to Fifteenth Amendment to Amendment and Agreement
and Termination Agreement

IN WITNESS WHEREOF, Agent has executed this Amendment as of the date set forth above.

**AGENT:**

Bank of America, N.A., a national banking association, successor by merger to LaSalle Bank National Association, a national banking association, as Agent

By: _____

Name: _____

Title: _____

**Execution Date:** _____

**[Signatures Continue on Next Page]**

IN WITNESS WHEREOF, D. Provost, Cudlip, and A. Provost have executed this Amendment as of the date set forth above.

**D. PROVOST:**

_____
Donald G. Provost

**CUDLIP:**

_____
Peter M. Cudlip

**A. PROVOST:**

_____
Allan G. Provost

Signature Page to Fifteenth Amendment to Amendment and Agreement and Termination Agreement

IN WITNESS WHEREOF, D. Provost, Cudlip, and A. Provost have executed this Amendment as of the date set forth above.

**D. PROVOST:**

_____
Donald G. Provost

**CUDLIP:**

_____
Peter M. Cudlip

**A. PROVOST:**

_____
Allan G. Provost

**Acceptance by Escrow Holder:**

Land Title Guarantee Company acknowledges that it has received fully executed counterparts of the foregoing Fifteenth Amendment to Amendment and Agreement and Termination Agreement and agrees to be bound by and perform the terms thereof as such terms apply to Escrow Holder.

Dated: Dec 9, 2008

Land Title Guarantee Company

By:

Name:

Title:

LEIGH RENFRO
ASSISTANT VICE PRESIDENT

[End of Signatures]

60140212.5      Signature Page to Fifteenth Amendment to Amendment and Agreement
and Termination Agreement