**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 09-CV-00799-ZLW-KLM

GRANITE SOUTHLANDS TOWN CENTER, LLC,

Plaintiff

v.

ALBERTA TOWN CENTER, LLC, and
LAND TITLE GUARANTEE COMPANY,

Defendants.

---

**DEFENDANT ALBERTA TOWN CENTER, LLC'S RESPONSE
IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION
AND FOR LEAVE TO AMEND COMPLAINT [Docket No. 87]**

---

Defendant, Alberta Town Center, LLC, by and through its attorneys, Lindquist &

Vennum, PLLP, hereby submits its Response in Opposition to Plaintiff's Motion for

Reconsideration and For Leave to Amend Complaint [Docket No. 87]:

## I.    INTRODUCTION

On December 29, 2009, the Court dismissed with prejudice the fraud claims Plaintiff

Granite Southlands Town Center, LLC's ("Granite") asserted against Peter M. Cudlip, Donald G.

Provost and Allan G. Provost ("Principals").  The Court held that Granite had not plausibly

pleaded that its execution of the December 12, 2008, Release and Termination Agreement

("Release") caused it any damage.  Granite's Motion for Reconsideration and for Leave to

Amend Complaint ("Motion") merely reasserts the argument that it paid $2,150,000 as separate

1

Doc# 3153777\3

consideration for the Release and presents no new evidence to support its case.  The evidence upon which Granite relies does not render its claim plausible.

Granite also asks this Court to rescind its dismissal with prejudice and allow Granite to amend its First Amended Complaint to not only reassert the dismissed fraud claims against the Principals, but to plead new fraud theories against the Principals based on the same alleged conduct.  The proposed Second Amended Complaint also asserts new fraud and breach of contract claims against Alberta, although Granite's Motion does not request leave to plead these new claims.  The deadline for amending its Complaint passed more than four months ago and Granite has failed to establish any good cause for amending the Scheduling Order to allow this untimely amendment.  Granite's Motion should therefore be denied.

## II.     ARGUMENT

### A.     GRANITE'S MOTION FOR RECONSIDERATION SHOULD BE DENIED.

#### 1.     Granite Offers Nothing to Justify Reconsideration of the Court's Dismissal.

This Court has recognized that while a motion for reconsideration is not mentioned in the Federal Rules of Civil Procedure, it is not uncommon in federal practice. *Shields v. Shetler,* 120 F.R. D. 123, 125-26 (D. Colo. 1988) (Carrigan, J.).  A motion for reconsideration must do two things:  "First, it must demonstrate some reason why the court should reconsider its prior decision. Second, it must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Id.* at 126.  Judge Brimmer, sitting by designation as a judge of this court, has also addressed a court's power to alter its interlocutory orders.  Although the district court has broad discretion to alter its own orders, a motion to reconsider "is not at the disposal of

Doc# 3153777\3

parties who want to 'rehash' old arguments." *National Business Brokers, Ltd. v. Jim Williamson Productions, Inc.*, 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000) (Brimmer, J.) (citations omitted). This court has distilled the following three major grounds for justifying reconsideration:  (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Shields, supra,* at 126.  A motion to reconsider must, "among other things, present matter that is material and of such importance that it would likely alter the outcome . . . ." *Aldrich Enterprises, Inc. v. U.S.*, 938 F.2d 1134, 1143 (10th Cir. 1991) (motion under Rule 60(b)(2) Fed. R. Civ. P. to reconsider grant of summary judgment). "As courts have consistently recognized, it would be fundamentally unfair to permit a party simply to add to or embellish upon arguments through the vehicle of a motion to reconsider." *U.S. v. LaHue*, 998 F. Supp. 1182, 1195 (D. Kan. 1998).  A motion that fails to meet these standards and is simply a "retread" of a previously submitted brief in the disguise of a motion for reconsideration is frivolous and merits an award of attorneys' fees as a sanction under Rule 11, Fed. R. Civ. P. *Shields, supra,* at 126-27.  Granite's Motion merely restates its previous arguments.  It satisfies none of the three major grounds for reconsideration recognized by this court.  It should therefore be denied and appropriate sanctions considered.

In its December 29, 2009, Order [Docket No. 85], the Court held that "Plaintiff asserts that it was fraudulently induced to enter into the Release, but fails to plausibly plead that its execution of the Release – as distinguished from its purchase of the Property – has caused it any damages." (Order, at 6-7).  Granite offers no basis for the Court to reconsider this decision.  As

Doc# 3153777\3

the Court previously found, the Fifteenth Amendment[1] to the FPSA expressly provides that the $2.15 million Granite characterizes as separate consideration for the Release was merely an amount used to calculate the final purchase price of the Property. (Conf. Exh. 3, Section 2(a) [Docket No. 62]). Granite relies upon supposedly new evidence to show that this finding should be reconsidered. The evidence offered by Granite, however, is neither new, nor does it demonstrate that the court's prior conclusions were clearly erroneous. Granite's additional evidence demonstrates only that the Property's final purchase price was negotiated upward from the prior contract amount and that one of the negotiated terms of the purchase included resolution of Alberta's claims against Granite for, among other things, failing to form a joint venture. Nothing Granite has presented constitutes plausible evidence that $2.15 million was separate consideration for the Release.[2]

In support of its Motion, Granite merely restates the position it espoused in pages 15 and 16 of its Response to the Motion to Dismiss [Docket No. 67]. There, Granite argued that its "agreement to pay the additional $2,150,000 and enter into the Release was expressly 'in consideration' of the other agreements in the Fifteenth Amendment which benefited Granite; namely, Principals' and Alberta's agreement to enter into the Release." (Docket No. 67, at 15). Despite this argument, Granite has yet to offer any plausible evidence that it paid $2.15 million as separate consideration for the Release. Moreover, as this Court previously found, it cannot do so based upon unambiguous provisions of the relevant contracts.

---

[1]    Although Granite now calls the Fifteenth Amendment the "Closing Agreement" Alberta will continue to use the terminology the parties have used in all prior pleadings.

[2]    As Granite notes repeatedly, the purpose of the Release was to resolve claims related to Granite's failure to form a joint venture. Granite fails to plausibly plead how Alberta's alleged misrepresentations of the condition of the property could have been related to Alberta's release of claims against Granite.

4

Granite's argument that new evidence renders its fraud claim plausible is baseless.  In the analogous situation of a motion for reconsideration of a summary judgment ruling based upon new evidence, the Tenth Circuit has held that the moving party must show that the evidence is either:  (1) newly discovered; or (2) if the evidence was available at the time summary judgment was granted, that "counsel made a diligent yet unsuccessful attempt to discover the evidence." *Webber v. Mefford*, 43 F.3d 1340, 1345 (10th Cir. 1994) (citations omitted).  Such new evidence must be of such significance that it would likely alter the outcome.  *Aldrich Enterprises, Inc.*, 938 F.2d at 1143.   Granite's evidence is neither new, nor evidence that would be cause to alter the Court's analysis of the relevant contracts.

The December 3, 2008, e-mail exchange between Granite's Managing Director Andrew Piekarski and Mr. Provost upon which Granite relies is not "new evidence."  Mr. Piekarski received the e-mail in December 2008, and Granite offers no explanation as to why it could not have previously discovered this information that was in the possession of one of its senior officers.  If counsel failed to recognize the supposed importance of the evidence, such failure is not sufficient to support a motion to reconsider.  *Webber*, 43 F.3d at 1345.

Notwithstanding that the December 2008 e-mail is not newly discovered, the e-mail provides no basis for reconsideration.  It merely establishes what the Court previously found – that $2.15 million was an undifferentiated portion of the sales price of the Property. Mr. Provost's e-mail states:  "So the concept is you buy a 100% interest, we waive any claim of ownership and walk away from our invested equity in exchange for $____.  Would you want us to continue to manage the property? (At least for the short term.)"  (Motion, Exhibit 2). Mr. Piekarski's reply was:  "Yes to all, plus mutual releases and all that kind of stuff."  (Motion,

Exhibit 2).  This e-mail exchange shows only that Mr. Provost and Mr. Piekarski contemplated Granite's purchase of the property and execution of mutual releases at the closing for one designated sum.  It supports the Court's conclusions rather than undermining them.  The e-mails are certainly not any evidence of separate consideration for the Release.  These negotiations are memorialized in the Fifteenth Amendment to the FPSA, which required Granite to purchase the Property and the parties to execute and deliver the Release at the closing.  The Release was a portion of the consideration for the sale, not a separately paid-for agreement.  (Conf. Exh. 3, § 9).  Granite's argument that the Release is a separate agreement for which Granite paid separate consideration is baseless.

Granite also contends that deposition testimony from Mr. Provost and Mr. Cudlip supports its argument that Granite paid $2.15 million as separate consideration for the Release.  Mr. Provost's testimony is merely an acknowledgement that the closing of the sale and execution of the Release would have resolved the parties' joint venture dispute.  Mr. Cudlip's testimony shows that the "purchase price was changed" in part to allow the parties to close on the transaction and to allow Alberta to walk away from its potential lawsuit against Granite for failing to form a joint venture.  Nothing in this testimony establishes that Granite paid $2.15 million as separate consideration for the Release.

### 2.    Granite's Motion Fails to Demonstrate Reliance Resulting in Damages.

Assuming, *arguendo*, Granite's evidence makes plausible its claim that it paid $2.15 million as separate consideration for the Release, its Motion demonstrates it did not pay that amount based on alleged misrepresentations concerning the Property's condition.  Granite contends the parties executed the Release to resolve Alberta's claims against Granite for failing

6

to form a joint venture and failing to perform under the FPSA.  (Motion, ¶4).  Granite claims it

would have rightfully refused to close on the Property had it known of the existence of alleged

structural defects.  This claim is implausible for two reasons. First, Granite was contractually

prohibited from terminating the FPSA due to a physical condition of the Property; and second,

the testimony of Granite's representatives illustrates that Granite did not consider the Property's

condition material.

Contrary to Granite's arguments, the FPSA prohibited Granite from terminating the

FPSA due to the physical condition of the Property.  Section 5.3(c) of the FPSA states:

> No Disapproval Right.  [Granite's] right to access the Property and
> perform additional tests and inspections is in no way to be inferred
> or interpreted as [Granite's] right to disapprove the Property,
> terminate this Agreement or receive a refund of its Earnest Money
> Deposit, it being understood that, except as specifically set forth in
> this Agreement, **[Granite] has no right to terminate this
> Agreement as a result of any matter relating to the condition of
> the Property,** its entitlements status or its marketability.

(Conf. Exh. 2, § 5.3(c) (emphasis added)).  Granite contends, however, that Alberta was required

to disclose to it the existence of the alleged defects pursuant to § 7.2(f) which states:

> **Changes in Condition**.  Seller shall promptly notify Buyer of any
> change in any condition with respect to the Property or any portion
> thereof or of any event or circumstance of which seller has
> knowledge subsequent to the date of this Agreement which (a)
> makes any representation or warranty of Seller to Buyer under this
> Agreement untrue or misleading, or (b) makes any covenant or
> agreement of Seller under this Agreement incapable of being
> performed.

Granite contends in a footnote in its First Amended Complaint that the existence of the alleged

defects made incorrect Alberta's representation under section 11.2(d) that it was "not in default

or breach of any of the material terms, representations, covenants or conditions set forth in any

Doc# 3153777\3

Qualifying Lease." (First Amended Complaint [Docket No. 36], n. 5). Granite has not, however, alleged that at the time of closing, Alberta was in default or breach of any material term of any Qualifying Lease because of the condition of the Property. Granite's contention that it had the contractual right to refuse to purchase the Property is therefore unfounded under the unambiguous terms of the FPSA. Granite could not, therefore, have justifiably relied on the condition of the Property as an inducement for either its execution of the Release or its purchase of the Property.

Second, and perhaps more telling, despite Granite's professed concern about the Property's condition, its property manager, Angela Kralovec, recently testified that she visited the Property twice during the six months prior to closing. In June 2008, she just drove through the parking lot. In September 2008, she visited the management offices, talked generally about the Property and visited a tenant located in the Power Center (a portion of the Southlands shopping center owned at the time by Granite). (Exhibit A-8, Kralovec deposition, p. 96, l. 23 – p. 100, l. 6). Moreover, during the entirety of the parties' relationship, Granite never performed or contracted for the performance of an inspection of the Property. As discussed below, the "Inspection Report" referenced in Granite's Motion is actually an appraisal that did not contemplate the condition of the buildings. Granite's claim that the Property's condition was material to its execution of the Release is factually and legally unsupportable.

**B.   GRANITE'S MOTION TO AMEND ITS FIRST AMENDED COMPLAINT SHOULD BE DENIED.**

Granite requests leave to file a Second Amended Complaint which Granite suggests adds "significant newly discovered factual allegations" and "amplf[ies] and expand[s] upon the fraud theories previously pled." (Motion, ¶ 16). In fact, Granite seeks not only to expand its claims,

8

but to assert new theories of recovery against both Alberta and the previously dismissed Principals.  Granite's proposed Second Amended Complaint seeks to add:  (1) additional factual allegations it contends corrects the "disconnect" in the dismissed fraudulent inducement claim against the Principals; (2) two previously unasserted fraud theories against the Principals; (3) a previously unasserted fraud claim against Alberta; and (4) a previously unasserted breach of contract claim against Alberta.  Granite's pleadings show that it previously contemplated, but chose not to assert, these claims.  Moreover, the facts upon which it bases these claims are not new, but are actually included in its First Amended Complaint.  The time for Granite to amend its pleadings expired on August 7, 2009.  Granite was once before granted leave to file an untimely amendment to its Complaint in which it asserted the now-dismissed fraud claims. Granite cannot establish good cause for a second untimely amendment to its Complaint.

1.   **Granite has Failed to Establish Good Cause for Amending the Scheduling Order Pursuant to F.R.C.P. 16 to Allow an Untimely Amendment of Its Complaint.**

Pursuant to the Court's Scheduling Order, the deadline for Granite to amend its pleadings was August 7, 2009.  (Docket No. 21).  When a party files a motion to amend after the Scheduling Order's deadline has passed, a "two step analysis" is required:  A "movant must first demonstrate to the court that it has a 'good cause' for seeking modification of the scheduling deadline under Rule 16(b).  If the movant satisfies Rule 16(b)'s 'good cause' standard, it must then pass the requirements for amendment under Rule 15(a)."  *Colorado Visionary Academy v. Medtronic, Inc.,* 194 F.R.D. 684, 687 (D. Colo. 2000) (citing *Dilmar Oil Co., Inc. v. Federated Mutual Ins. Co.,* 986 F.Supp. 959 (D.S.C. 1997), *aff'd,* 129 F.3d 116 (4th Cir. 1997)).  The standard for "good cause" under Rule 16(b) "is much different than the more lenient standard

contained in Rule 15(a)." *Id.* Under Rule 16(b), "good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts. *Id.* "Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id.* (citations omitted). A party's mere failure to recognize that a cause of action, or a defense, is applicable is not good cause for relief. *See id.*

Granite bases its request to amend its complaint on the grounds that it discovered new evidence that was "unavailable to Granite before the deadline and could not have been discovered in the exercise of reasonable diligence." (Motion, ¶ 24). Granite has known the facts upon which it relies since as early as December 2008 and no later than the date of the First Amended Complaint. It is apparent that Granite either knew or should have known of the facts upon which its requested amendments are based.

The first "fact" upon which Granite bases its claim is that "we now know that Alberta had learned that there were serious structural defects in the Property at least eight months prior to closing." (Motion, ¶17). Granite's claim that its knowledge is new is belied by its First Amended Complaint which alleges the "Principals were aware of the defects almost six months before Granite signed the Release." (Docket No. 36, ¶15). Moreover, two of the documents upon which Granite relies and characterizes as "new evidence" – the June 25, 2008, letter from DCC Architects and the December 8, 2008, letter from Alberta's attorneys – are attached to the First Amended Complaint. (Docket No. 36, Exhibit B and D).

Granite next claims to have just learned that Alberta performed "cosmetic repairs" at the Property in November 2008. (Motion, ¶ 18). Once again, Granite's First Amended Complaint alleges that "one or more of the Principals ordered that cosmetic repairs be made at the Property

10

at times when Granite was scheduled to visit the Property." (Docket No. 36, ¶ 17). That discovery has revealed a date on which repairs were performed does not constitute grounds for new claims.

Granite next cites a November 21, 2008, letter that Alberta's counsel sent to Granite's counsel on or about that date. This letter is offered as evidence that Alberta represented it was not in default under any tenant obligations. (Motion, ¶ 12). Granite's First Amended Complaint specifically references this very letter in paragraph 17. (Docket No. 36, ¶17). That Granite now attributes some additional significance to a 14 month-old letter to its counsel does not constitute good cause for amending the scheduling order.

Finally, Granite contends that new evidence supports the allegation in its First Amended Complaint that the alleged defects were latent and concealed. (Docket No. 36, ¶ 21 & 17). The "new evidence" upon which Granite relies is a 200-page "Inspection Report" Granite commissioned ten days prior to closing in December 2008. (Motion, ¶20). The "Inspection Report" is actually an appraisal that did not contemplate the condition of the buildings at the Property. (Kralovec Deposition, Exhibit A-8, p. 134, l. 13 – 136, l. 13). This appraisal report has been in Granite's sole possession since December 2008. Granite's failure to attribute significance to it cannot now constitute good cause for amendment.

### 2. Granite Cannot Establish Grounds for Amendment Under F.R.C.P. 15(a).

Granite cannot establish either good cause for amending the Scheduling Order or grounds for amendment pursuant to F.R.C.P. 15(a). Only after the moving party establishes the existence of good cause under 16(b) does the more lenient standard of Rule 15(a) apply. *Colorado Visionary Academy, supra,* 194 F.R.D. at 687. However, "even though Rule 15(a) states that

'leave [to amend] shall be freely given when justice so requires,' this presumption is reversed in cases, such as here, where a plaintiff seeks to amend a complaint after judgment has been entered and a case has been dismissed." *The Tool Box, Inc. v. Ogden City Corp.*, 419 F.3d 1084, 1087 (10th Cir. 2005) (citations omitted). Refusal of leave to amend is "justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). It is well settled in the Tenth Circuit that "untimeliness alone is a sufficient reason to deny leave to amend especially when the party filing the motion has no adequate explanation for the delay." *Id.* at 1365-66 (citations omitted). Prejudice to the opposing party need not be shown to justify denial. *Las Vegas Ice and Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990). Furthermore, "[w]here the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." *Id.* This last grounds for denial is particularly appropriate in deciding Granite's Motion.

As explained above, Granite has had possession of the evidence upon which it bases its motion to amend since at least the filing of its First Amended Complaint and in some instances since late 2008. Moreover, Granite's counsel contemplated these claims as early as November 3, 2009 when it filed its Response to the Principal's Motion to Dismiss, [Docket No. 67]. In footnote 1 to its Response to the Motion to Dismiss, Granite stated that it was "not currently making a claim against the Principals for damages arising out of Alberta's breach of its obligations under the FPSA." (Docket No. 67, n. 1). Furthermore, Granite also stated that "it is

12

Doc# 3153777\3

not yet claiming that Principals induced it into closing on the purchase of the Property and is not now asserting a claim for damages resulting from a reduction in the value of the Property." (*Id.,* n. 2).  That Granite contemplated these claims and did not assert them previously contradicts Granite's claims of good cause to amend its Complaint and justifies denial.

### III.    CONCLUSION

For the reasons set forth above, as well as the reasons set forth in the Principals' Motion to Dismiss, Granite's Motion for Reconsideration and to Amend Complaint should be denied.

DATED:  January 29, 2010.


Respectfully submitted,


*s/   Stuart N. Bennett*
Stuart N. Bennett
**LINDQUIST & VENNUM, P.L.L.P.**
600 - 17th Street, Suite 1800 –South
Denver, CO 80202
Telephone:            (303) 573-5900
Fax:            (303) 573-1956
E-mail:            sbennett@lindquist.com
Attorneys for Defendant Alberta Town Center, LLC

Doc# 3153777\3

# CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | | |
|---|---|---|
| ***Attorneys for Plaintiff & Counter Defendant Granite Southlands Town Center, LLC*** | jdykes@fulbright.com <br> bvetter@fulbright.com | Osborne J. Dykes, III <br> Benjamin M. Vetter <br> Fulbright & Jaworski LLP <br> 370 – 17th Street, Suite 2150 <br> Denver, CO  80202 |
| ***Attorneys for Plaintiff & Counter Defendant Granite Southlands Town Center, LLC*** | ptrahan@fulbright.com | Paul Trahan <br> Fulbright & Jaworski LLP <br> 600 Congress Avenue, Suite 2400 <br> Austin, TX  78701 |
| ***Defendant Land Title Guarantee Company*** | kbruetsch@rwolaw.com | Kimberly A. Bruetsch <br> Robinson, Waters & O'Dorisio PC <br> 1099 – 18th Street, 26th Floor <br> Denver, CO  80202 |

And I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner indicated by the non-participant's name:   NONE

*s/   Stuart N. Bennett*
Stuart N. Bennett
Attorneys for Defendant Alberta Town Center, LLC
Lindquist & Vennum P.L.L.P.
600 - 17th Street, Suite 1800 –South
Denver, CO 80202
Telephone:          303-573-5900
Fax:                     303-573-1956
E-mail:          sbennett@lindquist.com

14