IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-CV-00799-ZLW-KLM

GRANITE SOUTHLANDS TOWN CENTER LLC,

        Plaintiff,

v.

ALBERTA TOWN CENTER, LLC and
LAND TITLE GUARANTEE COMPANY,
DONALD G. PROVOST, ALLAN G. PROVOST,
and PETER M. CUDLIP,

        Defendants.

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION AND FOR LEAVE TO AMEND COMPLAINT

Plaintiff/counter-defendant Granite Southlands Town Center LLC ("Granite") through its counsel, Fulbright & Jaworski L.L.P., submits this Reply in further support of its *Motion for Reconsideration and for Leave to Amend Complaint* [Dkt. #87] ("Motion for Reconsideration").

### INTRODUCTION

1. Granite's Motion for Reconsideration demonstrated compelling reasons to reconsider the Court's December 29, 2009, Order. In accordance with authority from this Court and the Tenth Circuit, Granite set forth "facts [and] law of a strongly convincing nature to induce the court to reverse its prior decision"[1]—first because discovery has confirmed that Granite's claim of reliance on the Release agreement was not merely plausible, but in fact accurate, and second

---

[1] *Shields v. Shetler*, 120 F.R.D. 123, 126 (D. Colo. 1988); *see also Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000).

85492709.4

because the Order dismissed the claims "with prejudice."  Neither ground is a "rehash [of] old arguments."[2]  The depositions of the Principals taken just last month—after the Order was entered—shows that they have taken a contradictory position in this litigation as to the reliance issue on which the Court ruled.  Further, the parties have not previously briefed the propriety of a dismissal "with prejudice" because the Alberta Defendants never made any such request.

2. Granite has additionally offered a proposed Second Amended Complaint that remedies the reliance "disconnect" perceived by the Court.  Granite supports its request for amendment with a number of documents substantiating its allegations, although Granite's burden at the pleading stage is only to allege a plausible basis for recovery.  Alberta cannot articulate any prejudice from permitting the amendment, except to say that the pleadings deadline has passed.  In accordance with the "practice of this District," the Court should permit this post-dismissal amendment because Alberta has failed to show "that amendment would be unfair or without meaningful effect."[3]

## ARGUMENT AND AUTHORITIES

**I.      Granite Has Offered Ample Reason for Revisiting the Order of Dismissal**

    **A.      Alberta's Attempt to Elevate the Standard for Review Is Not Supported by Its Authorities**

3. The Principals assert that *Shields v. Shetler*, 120 F.R.D. 123, 126 (D. Colo. 1988), has somehow cabined a district court's discretion to revise or reform an interlocutory order.  On the

---

[2] *See Defendant Alberta Town Center, LLC's Response in Opposition to Plaintiffs' Motion for Reconsideration and for Leave to Amend Complaint* [Dkt. #101] ("Response") at 3.  It is not entirely clear why Alberta alone filed this Response, considering that the individual defendants who are the Principals of Alberta were the ones dismissed.

[3] *Yates v. Portofino Real Estate Props. Co., LLC*, No. 08-cv-00324-PAB-MJW, 2009 WL 2588833, *3 (D. Colo. Aug. 17, 2009).

contrary, *Shields v. Shetler*, as well as a number of Tenth Circuit and Colorado District Court decisions cited by Granite, demonstrate that a district court has wide discretion to reconsider an interlocutory order.  *See* Motion for Reconsideration at 5-6.  Granite has clearly met the standard.

    4.   Alberta resorts to cases construing motions under Federal Rules of Civil Procedure 59(e) and 60(b) and asks this Court to impose a higher standard.  Response at 3, 5.  Those cases are not controlling here.  *See, e.g.*, *Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000) (noting that court "can alter its interlocutory orders even where the more stringent requirements applicable to [Rule 59(e) and 60(b) motions] are not satisfied").  By contrast, the request for reconsideration here is of an interlocutory order dismissing claims on the pleadings and before the completion of discovery.

    5.   Likewise, Alberta's assertion that a summary judgment is "analogous," Response at 5, is wrong.  A motion for summary judgment typically cannot be made until sufficient discovery has been taken to determine whether the claim has factual merit.  Because a motion made under Rule 56 must be supported and defended with "evidence," it is no surprise that the Tenth Circuit would require "newly discovered" evidence (or diligence to find it) before overturning a summary judgment.  *See id.* (citing *Webber v. Mefford*, 43 F.3d 1340, 1345 (10th Cir. 1994)).  By contrast, an order dismissing claims under Rule 12(b) is limited to the pleadings, without consideration of the underlying facts.  *See Prager v. LaFaver*, 180 F.3d 1185, 1188 (10th Cir. 1999).  It makes no sense to apply a newly discovered evidence standard to a dismissal on the pleadings.  Nonetheless, as demonstrated below in parts I.B & II.A, Granite has specifically identified deposition testimony and documents that were not available to it until after the pleading deadline, and in many cases, after the briefing on the motion to dismiss was completed.

### B. Granite Has Adequately Alleged Reliance in its Live Pleading

The issue on rehearing is whether Granite sufficiently alleged a plausible theory of reliance to survive Rule 12(b). The Principals argued, and the Court found, that the $2.15 million payment by Granite was not consideration for the Release, but instead was simply part of the overall purchase price. The deposition testimony from the Principals proves otherwise:

> Q: So it's your understanding that this agreement, Exhibit 59, which is the release, language in the Fifteenth Amendment and *the additional consideration of $2,150,000 would have resolved the parties' disagreement or dispute regarding the joint venture issues*.
>
> A: Yes.

Provost Depo. (Exhibit 3) at 99:20-100:1 (emphasis added). Likewise, Cudlip characterized the additional consideration and release as follows:

> Q: Just so I'm clear, you talked to Don about *how much additional consideration you would need to be provided in connection with this transaction so as to justify your walking away*, I think is the way you put it, *from the claims you would have against Granite relating to a joint venture*.
>
> A: Correct.

Cudlip Depo. (Exhibit 4) at 110:16-22 (emphasis added).

6. Confronted with this evidence, Alberta has retreated from its original position and agrees that "the Property's final purchase price was negotiated upward from the prior contract amount *and . . . one of the negotiated terms of the purchase included resolution of Alberta's claims against Granite for, among other things, failing to form a joint venture*." Response at 4 (emphasis added). The emphasized portion shows their unequivocal acknowledgment of Granite's reliance upon the resolution of those claims in paying an *additional* $2.15 million at Closing. *See* Motion for Reconsideration at 7-8 & Exhibits 2, 3 & 4. In fact, the amount was set out specifically as "excess payment"—not merely folded into a total purchase price—and the

Closing Agreement[4] specifically required the parties to execute the Release (which was attached as Exhibit C). *See* Closing Agreement ¶¶ 2, 9. Thus, Alberta's argument that the $2.15 million had to be "separate consideration for the Release," Response at 4, is simply irrelevant. Granite did not have to plead that the agreements were separate—only that it changed its position by executing the Release and paying the additional sum. Because Granite sufficiently pled reliance, the Order of dismissal should be revisited and set aside.

7. Defendants' suggestion that their fraud and concealment of the structural defects in the Property was immaterial to the execution of the Release, Response at 4, 6-8 & n.2, is belied by the Closing Agreement itself—at the very least, it presents a fact issue that cannot be resolved by a motion to dismiss. Granite paid the $2.15 million to obtain the Alberta Defendants' release of joint venture claims so that the Closing could take place without a cloud on ownership. Neither Granite nor any reasonable buyer would have purchased the Property had it been aware of the serious latent structural defects, and Granite pled these facts, First Amended Complaint ("Complaint") ¶¶ 18, 22, which should be taken as true. *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). As detailed further in the proposed Second Amended Complaint—which expands the allegations as to Granite's intent and understanding—the purpose of the Release was to insure Granite's ability to purchase the Property free and clear of any claim of shared ownership. Had Granite been aware of the Property defects, it would not have closed on the Property and so would not have been concerned about the Alberta Defendants' ownership claim.

---

[4] Granite is using the term "Closing Agreement" because the document actually contains and refers to a number of related agreements, involves several signatories who were not parties to the original FPSA, and sets out the architecture for the closing. The term "Fifteenth Amendment" truncates the full title of the document and, in doing so, may misleadingly suggest that the agreement is merely an amendment to the FPSA.

Granite certainly would not have paid $2.15 million for the Release. The fraud was thus tied directly to the Release, and Alberta's dispute as to what transpired is not a proper subject of a Rule 12(b) motion.

8. Alberta next claims that the Provost-Piekarski email, which was attached as Exhibit 2 to the Motion for Reconsideration, was equally available to Granite and that this document is not in fact "new" evidence.[5] *See* Response at 2-5. In doing so, it disregards the deposition testimony quoted above from both Principals, Don Provost and Cudlip, confirming that they shared that understanding of the intersection between the Release and $2.15 million "excess payment." These depositions were taken in January 2010 and were not available to Granite until after the Order was entered. Thus, if the Court were to require newly discovered evidence in order to reconsider the Order, *see* part I.A, above, Granite has clearly met that burden with this newly obtained sworn testimony of the Principals that contradicts their litigation position.

9. In another twist on their immateriality argument, Alberta claims that Granite did not rely on any fraud as to the condition of the Property because: (i) Granite had no right to terminate the FPSA due to any physical defect; and (ii) Granite's representatives did not in fact consider the Property condition to be material. *See* Response at 6-8. Both of these arguments misstate the facts and the legal consequences of this transaction.

10. First, as explained in the Motion for Reconsideration at 8-9 and the Second Amended Complaint, Granite had the right to terminate the FPSA and its purchase of the Property before it executed the Closing Agreement. The Court has correctly interpreted the FPSA as providing that

---

[5] Granite's counsel in this case were not aware of this email until it was produced in discovery in December 2009, four months after the pleadings cutoff. Discovery and internal investigations are not yet complete in the case.

"Granite could refuse to close based on a changed condition of the Property if Alberta had failed to notify Granite of the change." Order at 9, 11 (denying summary judgment) [Dkt. #107]. In its Response at 7-8, Alberta repeats the same argument that the Court rejected in its interpretation of the contract terms. Alberta again relies on § 5.3(c) of the FPSA, but again ignores the effect of the qualifying language in that same provision that says "except as specifically set forth in this Agreement," FPSA § 5.3(c). As the Court appreciated, the clause that Alberta highlights must be read together with this qualifying language, meaning that under § 5.3(c), Granite could not disapprove of the Property and terminate the FPSA prior to closing *except* where the FPSA otherwise gave it a right to terminate the agreement. The FPSA expressly provided Granite the right to terminate the FPSA if one or more of its preconditions were not satisfied, and some of these preconditions were tied directly to the state of the Property, like Alberta's duty to disclose changed circumstances "in any condition with respect to the Property." FPSA § 7.2(f).

11. Moreover, the principal purpose of the Closing Agreement was to remove a number of impediments so that the transaction could close and the Alberta Defendants could be released from their nine-figure construction loan and guarantee obligations before they defaulted. One of these obstacles was Alberta's inability to deliver a sufficient number of current tenant estoppels before the closing date. FPSA ¶¶ 7.2(i), 8.1(k)(i). Had Granite not been in a position to terminate the FPSA on this independent basis, there would have been no need for the Closing Agreement, which eliminated this possibility.

12. The suggestion that Granite did not consider the physical condition of a newly constructed shopping center to be material to its $160 million purchase, Response at 8, is ludicrous. Alberta is once again attempting to impeach Granite's allegations—which is improper

at the pleadings stage—and Alberta's assertions of "fact" are erroneous.[6]  Indeed, the lengths to which Alberta must go to ascribe to Granite motives and understandings contrary to the Complaint demonstrates that its motion to dismiss was improper.  Alberta's contentions should be tested in a trial, not a patently improper attempt to controvert Granite's allegations.

13. Finally, if the Court still believes there is a reliance deficiency in the Complaint, Granite has offered its Second Amended Complaint, which not only explains the full extent of its reliance, but also sets forth additional instances of fraud that permeated this Closing transaction that have been uncovered during the course of discovery.  Granite should be permitted to go forward on these serious and well-founded claims.

## II.     Granite Has Established Good Cause for Amending its Complaint

### A.     Post-Amendment Discovery Has Produced New Facts Supporting the Amendment

14. In its request for leave to amend its Complaint, Granite showed good cause sufficient to support the amendment under both Rule 16(b) and Rule 15(a).  *See* Motion for Reconsideration at 14-15.  Alberta counters that the evidence supporting Granite's request was either available to Granite or should have been located earlier in the exercise of diligence.  *See*

---

[6] Even if this were a summary judgment proceeding, the "evidence" Alberta cites would not support a judgment in its favor.  In intimating that Granite had a duty to inspect the Property, but failed to do so, Alberta makes several factual mistakes.  *See* Response at 8.  First, Granite did in fact obtain thorough inspections in 2007 and 2008 once the buildings were constructed.  Second, the New Market report *is* based upon an inspection that took place only ***ten days*** before the Closing and involved three real estate professionals that resulted in a detailed, 200-page report.  This report did not reveal any defects in construction and instead concluded that "the buildings are in above average physical and functional condition" and that "[o]verall, the property is in excellent condition."  This report is ***not*** simply "an appraisal that did not contemplate the condition of the buildings," Response at 8; it is compelling evidence that the Property defects were latent and/or concealed.  Further, Angela Kralovec was an asset manager, not a property manager.  *See* Response, Exhibit A-8 at 5:21-22.  It was not her responsibility to inspect the Property.

Response at 10. It ascribes the "newly discovered evidence" moniker to every piece of proof that Granite attached, though some of the documents were submitted only to provide context for the Motion for Reconsideration. To clarify, the newly discovered evidence that supports Granite's entitlement to amend its pleading include:

- Several tenant complaints predating the Closing by several months

- Documents evidencing that, prior to Closing, Alberta sought proposals from five different engineering firms to investigate the structural issues, three of which delivered full reports to Alberta. At least one of these reports recommended repairs and monitoring for further cracking, which it indicated might require deconstruction of the walls to determine the cause of the problems. (In their Response, Alberta does not deny the existence of these reports or the importance of its undisclosed conduct in obtaining them; Alberta simply ignores the matter.)

- The meeting agendas and repair invoices evidencing "cosmetic repair" and active concealment of the defects

- The Provost and Cudlip depositions taken January 7 and 8, 2010

- The Provost-Piekarski email string[7]

In its truncated recitation of Granite's exhibits, Alberta does not attempt to show that these documents (except for one of the tenant letters) were in fact available to Granite prior to the pleading cutoff in September 2009—nor could it.

15. Ongoing discovery has revealed even more. After the Motion for Reconsideration was filed, Granite learned for the first time that the Southlands Metro District No. 1 ("Metro District") paid the construction costs of certain roadway, infrastructure, and other common area improvements to the Property that Alberta added to the ultimate purchase price paid by Granite. To induce Granite to pay this amount, Alberta represented that these amounts were costs

---

[7] As explained in note 5, *supra*, Granite's counsel first learned of this email in discovery from the Alberta Defendants.

incurred by Alberta, without disclosing that Metro District paid for them. On January 29, 2010, Granite's counsel sent Alberta's counsel a letter raising this "substantial and troubling discrepancy" and asking for an explanation. *See* Exhibit 12 (attached). As of the date of this filing, defense counsel has not responded. The silence is telling. It is evident that the proposed amendment is both appropriate and timely, and this case should progress to the next step so that the facts can be further developed—and the truth fully revealed.

### B.     Alberta Does Not Identify any Prejudice from the Amendment

16. Moreover, Granite amply demonstrated that that Defendants have suffered no prejudice because: discovery is not yet complete; the new information and documentation was provided by the Alberta Defendants a year after it was requested by Granite and well after the pleadings cutoff; depositions were not commenced until December 2009; pretrial is not until this summer (and the currently unscheduled trial is expected to be several months afterward); Granite moved promptly to amend after learning these facts; and the claims and allegations that were asserted in the Second Amended Complaint are consistent with the discovery that has been conducted to date. *See* Motion for Reconsideration at 14-16. Again, Alberta does not attempt to articulate any prejudice; their only rejoinder is that it is "too late" because the scheduling order contained a deadline for pleading amendments four months ago. Response at 2.

17. Finally, it is remarkable that Alberta condemns Granite for reserving these claims until it had sufficient proof of the allegations to go forward. Response at 12-13. It offers no authority for their novel suggestion that Granite's restraint pending completion of discovery is grounds for denying Granite the right to amend its Complaint once that process revealed the depths of fraud that Granite initially could only surmise had occurred.

Respectfully submitted this 12th day of February 2010.

                                            */s/ Osborne J. Dykes, III*
OSBORNE J. DYKES, III
BENJAMIN M. VETTER
FULBRIGHT & JAWORSKI L.L.P.
370 Seventeenth Street, Suite 2150
Denver, CO  80202
(303) 801-2700 – Telephone
(303) 801-2777 – Facsimile
jdykes@fulbright.com
bvetter@fulbright.com

PAUL TRAHAN
FULBRIGHT & JAWORSKI L.L.P.
600 Congress Avenue, Suite 2400
Austin, TX  78701
(512) 474-5201 – Telephone
(512) 536-4598 – Facsimile
ptrahan@fulbright.com

**COUNSEL FOR PLAINTIFF
AND COUNTER-DEFENDANT**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on the 12th day of February, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to attorneys for plaintiffs at the following e-mail addresses:

    Stephen L. Waters                        swaters@rwolaw.com
    Kimberly A. Bruetsch                    kbruetsch@rwolaw.com
    ROBINSON WATERS & O'DORISIO, P.C.
    1099 18th Street, Suite 2600
    Denver, CO 80202
    *Attorneys for Land Title Guarantee*

    Dennis Boyd Polk                          DBP@HAPLAW.NET
    Holley, Albertson & Polk, P.C.
    1667 Cole Boulevard, Suite 100
    Golden, CO 80401
    *Attorneys forAlberta Defendant Allen G. Provost*

    Stuart N. Bennett                           sbennett@lindquist.com
    Lindquist & Vennum, P.L.L.P.
    600 – 17th Street, Suite 1800 – South
    Denver, CO 80202
    *Attorneys for Alberta Defendants Peter M. Cudlip*
    *Donald G. Provost and Alberta Town Center, LLC*

                                               */s/ Osborne J. Dykes, III*
                                               Osborne J. Dykes, III