# EXHIBIT D



**DLA PIPER**

DLA Piper LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601-1293
www.dlapiper.com

Kenneth L. Schmetterer
kenneth.schmetterer@dlapiper.com
T   312.368.2176
F   312.630.6350

December 18, 2008

**Via email and UPS Next Day Delivery**

Benjamin A. Kahn
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432

Re:   Colorado Cinema, 23955 E. Plaza Ave., Aurora, CO 80016

Dear Mr. Kahn:

I am writing in response to your letter dated December 8, 2008. At the outset, the letter appears to reflect our miscommunication following our discussion and initial exchange of letters. It was my understanding that while we were gathering information I was also awaiting any construction contracts or related documentation that you may have access to that would help me understand both nature and extent of the issue you complained of as well as its underlying cause, something necessary to assess responsibility under the lease. As you know, Kerasotes Showplace Theatres LLC was not involved in the construction of the Colorado theatre, or in the hiring or supervision of any contractors. That complicating factor requires us to go back in time to secure information that, if Kerasotes does not possess, may be in the possession or control of Alberta Development Partners and Alberta Town Center, LLC ("Southlands"), the contractors retained by Colorado Cinema Group, LLC or others. I had asked if you had the underlying construction contract agreement and it was my understanding that you were going to see whether you had a copy of that agreement available (though I have since obtained a copy, which I have enclosed with this letter).

In the meantime, Kerasotes' Director of Construction has reached out to representatives of Colorado Cinema's former contractor, Murray and Stafford, to assist in the evaluation of conditions and to determine whether or not there is any ongoing foundation system movement. The step cracks occurring in the exterior walls might be directly related to foundation movement. If this is the case, we could determine whether any further foundation movement is occurring by marking either side of the step crack and observing results over a period of time. Without this information it will be far more difficult to determine what steps are required in order to rectify this problem. If the evidence compiled from the evaluations reveal no further foundation movement then Kerasotes could simply complete the caulking of the exterior wall at its own cost, setting aside any potential dispute over which party may bear the legal responsibility for these repairs. After securing additional information from Murray and Stafford, we anticipate that Kerasotes will retain a company independent of the original firm to perform these tests.

None of this is to suggest that we have determined the repairs necessitated by any foundation system movement to be the responsibility of Kerasotes. As an example, while the information you provided asserts that the problems may be associated with the failure of the contractor to drill and install piers to appropriate depths during construction, other records raise a question of whether Southland's engineering consultants, retained in connection with the overlot grading of the site and related Southlands development activities, made geotechnical recommendations based on its subsurface exploration in which it recommended to Murray and Stafford the very pier depths that are now alleged to have caused foundation movement. While we will proceed to provide you with our findings and recommendations once we determine whether or not foundation movement has stopped, I am also trying to gather information that will help explain Ground Engineering's work with Alberta and any relationship between Ground



Benjamin A. Kahn
December 18, 2008
Page Two

Engineering's work and the construction activity now complained of. To the extent you have access to that documentation (Southland's contract with Ground Engineering and communications between Ground Engineering and Murray and Stafford representatives or subcontractors, for example), I would appreciate it if you could send me copies. Conversely, at your request, I am providing with this letter copies of documents I have obtained in connection with my inquiries, and I will continue to provide you with additional documents as I receive them.

Again, I anticipate following up with you with additional information and a proposed timetable once Kerasotes' Construction Director obtains information from an independent testing company and additional information from Murray and Stafford. Thank you for your anticipated cooperation in this matter. It remains my hope that this issue can be resolved fairly and professionally. As indicated, Kerasotes intends to comply with any obligations it may have under its lease agreement.

Very truly yours,

DLA Piper LLP (US)

Kenneth L. Stemmetterer

cc:   Michael Policicchio (w/out enclosures)
      Richard F. Klawiter, Esq. (w/out enclosures)

encl

CENTRAL\31169983.1