## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 09-CV-00799-ZLW-KLM

GRANITE SOUTHLANDS TOWN CENTER LLC

    Plaintiff,

v.

ALBERTA TOWN CENTER and
LAND TITLE GUARANTEE COMPANY

    Defendant.

## PROPOSED FINAL PRETRIAL ORDER

### 1. DATE AND APPEARANCES

The pretrial conference was held July 12, 2010, at 9:30 o'clock a.m. in Courtroom A801, Alfred A. Arraj U. S. Courthouse, 901 19th Street, Denver, Colorado, before the Honorable Zita L. Weinshienk, U. S. District Judge.

Plaintiff Granite Southlands Town Center LLC ("Granite") was represented by Paul Trahan of Fulbright & Jaworski L.L.P., 600 Congress Avenue, Suite 2400, Austin, Texas 78701, (512) 474-5201, and by Osborne J. Dykes, 370 17th Street, Suite 2150, Denver, Colorado 80202, (303) 801-2700.

Defendant Alberta Town Center ("Alberta") was represented by Stuart Bennett, Lindquist & Vennum, PLLP, 600 17th Street, Suite 1800, Denver, Colorado 80202, (303) 454-0514.

Defendant Land Title Guarantee Company ("Land Title") was represented by Kimberly A. Bruetsch, Robinson, Waters and O'Dorisio, P.C., 1099 18th Street, Suite 2600, Denver, Colorado 80202, (303) 297-2600.

There are no *pro se* parties.

## 2. JURISDICTION

This Court has original jurisdiction under 28 U.S.C. § 1332 because plaintiff and defendants are citizens of different states and the amount in controversy exceeds the jurisdictional amount of $75,000, exclusive of interest and costs.

## 3. CLAIMS AND DEFENSES

### *Granite's Claim for Declaratory Judgment*

Plaintiff seeks a judicial declaration and ruling that under the terms of the parties' agreements regarding the Southlands Town Center (the "Property") in Aurora, Colorado, including, without limitation, the Forward Purchase and Sale Agreement as amended ("FPSA") and accompanying Escrow Agreement ("Escrow Agreement"), Granite is entitled to $650,000 placed into escrow at closing when the Alberta sold the Property, plus interest on said sum. The money secured Alberta's obligation to deliver tenant estoppel certificates to Buyer pursuant to the FPSA. The form of the required tenant estoppel certificates, as well as the reasons that Granite could object to an estoppel certificate delivered by Alberta, were specified in the FPSA. The purpose of the estoppel certificate was to confirm that the tenant relationships were as they were reported to be and that there were no outstanding issues between the tenant and the landlord Alberta.

Despite giving notice to the parties on March 11, 2009 that the funds would be interplead into the Court, Defendant Land Title has retained the escrowed funds.  Further, rather than adding the interest earned on the escrowed funds to the amount held in escrow, Defendant Land Title has improperly paid more than $8,000 of interest earned on the escrowed funds to Alberta Development Partners, an entity which is not a party to the FPSA or the Escrow Agreement and which has no right to the escrowed funds.

On May 14, 2008, in the Fourteenth Amendment to Amendment and Agreement and Termination Agreement, the parties agreed to extend the closing deadline under the FPSA to December 15, 2008.  Granite's obligation to close remained subject to Alberta satisfying the conditions precedent set out in the FPSA, including the obligation to deliver tenant estoppel certificates by a date certain.  However, despite knowing of the approaching closing date for almost seven months, it was obvious by late November 2008 that Alberta would not be able to deliver all the tenant estoppel certificates.  Alberta offered old tenant estoppel certificates obtained in May 2008, but they were unacceptable to Granite because they were approximately six (6) months old.  Granite rightfully rejected the May 2008 estoppels.

To accommodate Alberta and to allow the closing to occur by December 15, 2008, the extended deadline, Granite agreed to postpone Alberta's obligation to deliver the tenant estoppel certificates until after closing, but in no event later than March 1, 2009.  Because of the importance of the tenant estoppel certificates, Granite required, in exchange for closing without all the required estoppel certificates, that $650,000 of the funds paid by Granite at closing be placed into an escrow account to secure this extended obligation.  The $650,000 is referred to in the parties' agreements as the "Estoppel Holdback."

Alberta failed to deliver the tenant estoppel certificates meeting the requirements set forth in the FPSA. Granite timely and appropriately objected to the tenant estoppel certificates from nine (9) tenants; however, whether Alberta forfeited the Estoppel Holdback comes down to whether Alberta's objection to the tenant estoppel certificate executed by Colorado Cinema was appropriate; Alberta has never contested the timeliness of Granite's objections to the tenant estoppel certificates. Granite's objection to the Colorado Cinema estoppel certificate was appropriate because (i) the estoppel certificate submitted by Colorado Cinema was materially and adversely modified from the form required by paragraph 7.2(i) of the FPSA, and (ii) indicated the continuing existence of an actual material default of the landlord under the lease.

Because Alberta failed to deliver all the required tenant estoppel certificates on or before March 1, 2009, as it promised to do in the FPSA, Granite is entitled to the escrowed funds plus all interest thereon from the date that Defendant Land Title was notified of the dispute over the escrowed funds. To the extent Defendant Land Title is entitled to any attorneys' fees relating to the escrow dispute, Defendant Land Title is only entitled to $456.00 of attorneys' fees which it incurred through April 2009, the time period by which Defendant Land Title should have interplead the escrowed funds.

***Granite's Claim for Money Owed under the Parties True-up Obligations***

In the FPSA, as amended, the parties agreed to pro-rate revenues and expenses from December 14, 2007 until the closing of the sale of the Property, which occurred on December 12, 2008, on a 50/50 basis. The process of adding up and allocating the revenues and expenses to effectuate the proration will be referred to as the "True-Up." Because the parties were not able to perform the True-Up by closing, they extended the time for completing it several times,

ultimately until May 6, 2009.[1]  On this date the balance due, whether to Alberta or to Granite should have been paid.

Alberta has by counterclaim asserted that under a correct True-Up, Granite owes money to Alberta.  Granite, in the Scheduling Order at 5 [Doc #21] averred that it sought "the amount, if any, owed by Alberta to Granite based upon a proper calculation of the amount due," plus reasonable attorneys' fees.  Granite avers that under a correct True-Up, Alberta owes Granite approximately $1.2 million.  Granite seeks recovery of this sum, plus interest and attorneys' fees.

*Granite's Claim for Attorneys' Fees*

Finally, Granite has requested attorneys' fees as allowed under paragraph 12 of the Escrow Agreement.  Granite is entitled to recover attorneys' fees incurred in procuring the Declaratory Judgment that it is entitled to recover the $650,000 in escrowed funds plus interest thereon.  Granite also is entitled to recover its attorneys' fees incurred in litigating the true-up dispute.  The dispute is one arising from the FPSA, and section 14.8 of the FPSA allows for recovery of "reasonable attorneys' fees, expenses and costs of investigation actually incurred" in the litigation.

*Alberta's Defenses to Granite's Declaratory Judgment Action*

Alberta objects to the Plaintiff's characterization of the claims pending in this lawsuit and its mischaracterization of the facts relevant to this case.  By executing this proposed Pretrial Order, Alberta does not stipulate to any fact set forth in Granite's statement of claims not otherwise listed in the statement of stipulated facts.  Additionally, Alberta does not concede that

---

[1] In the Scheduling Order at 5 [Doc #21] the parties agreed to the following undisputed facts:
Section 10.6 of the FPSA requires Granite and Alberta to review and approve the proration of specified property expenses.  Granite and Alberta, by written agreement dated December 8, 2008, agreed that the proration would be completed on or before March 31, 2009.  Granite and Alberta subsequently agreed to extend the completion date to April 15, 2009, April 30, 2009, and then May 6, 2009.

85673378.6                                - 5 -

Granite's affirmative claims are as Granite asserts them to be. Magistrate Mix has determined the case involves two claims: (1) [Granite's] claim for declaratory judgment and (2) [Alberta's] counterclaim for breach of contract." (Recommendation of Magistrate Mix, Docket No. 119). Granite's sole pending claim is for declaratory judgment related to the Estoppel Holdback provision of the parties' Forward Purchase and Sale Agreement as amended.

Granite's statement of its alleged "<u>Claim for Money Owed under the Parties True-up Obligations</u>" is an attempt to not only broaden this case beyond the claims asserted in the operative complaint, but also to circumvent the Court's June 28, 2010 Order which denied the Plaintiff's Amended [Fourth] Motion for Leave to Amend Complaint (Docket No. 115). In its Order, the Court denied Granite's attempt to amend its complaint to assert the very claim it now states is pending before the Court.

With respect to the pending declaratory judgment action, Alberta contends that it, not Granite is entitled to the $650,000 Estoppel Holdback. The sole issue before the Court on this claim is whether the estoppel certificate from Colorado Cinema complied with the parties' agreement and, therefore, whether Granite's objection to the Colorado Cinema estoppel certificate was timely and appropriate under the contract. Alberta contends that the Colorado Cinema estoppel certificate complied with the parties' agreement and, therefore, Granite's objection was inappropriate. The Colorado Cinema estoppel certificate is therefore an Approved Tenant Estoppel Certificate as defined by the parties' agreement.

*Alberta's Counterclaims*

Alberta's counterclaims are for breach of contract and the covenant of good faith and fair dealing. Alberta's counterclaims relate to the reconciliation of the proration of property

expenses made at closing as required by Section 11 of the Fifteenth Amendment to Amendment and Agreement and Termination Agreement dated December 8, 2008 ("Fifteenth Amendment").

*Land Title's Defenses and Claims*

On the 12th day of December, 2008 an Escrow Agreement ("Agreement") was entered into among Alberta Town Center, LLC, a Colorado limited liability company ("Alberta"), Granite Southlands Town Center LLC, a Delaware limited liability company ("Granite"), and Land Title Guarantee Company, as escrow agent, ("Escrow Agent").

Escrow Agent agreed to act as escrow holder with respect to the escrowed funds in the amount of $650,000 and to disburse or otherwise dispose of the funds in accordance the Agreement. A dispute with respect to the funds arose between Alberta and Granite all of which is set forth in more detail in the pleadings in this civil action.  Escrow Agent received notice of this dispute and pursuant to paragraph 3.3 of the Agreement, agreed to disburse the funds in accordance with a final order, judgment or decree of a court of competent jurisdiction.  In the alternative, Escrow Agent agreed to interplead the funds if a stipulation could be entered into between Alberta and Granite which would also provide for the reimbursement of attorneys' fees expended by Escrow Agent as provided for in the Agreement.  Absent such a stipulation, Escrow Agent has to remain a party to the litigation and have its request for attorneys' fees resolved by the court at the conclusion of the case.  To date, despite efforts by the Escrow Agent no stipulation has been agreed upon.  Escrow Agent continues to hold the funds pursuant to the Agreement and, therefore, is entitled to reimbursement of all attorneys' fees incurred and, which it continues to incur, until a final order, judgment or decree by this court.

Both Alberta and Granite have demanded that the funds be paid directly to them. Escrow Agent has incurred attorneys' fees related to the escrowed funds and has requested that it be reimbursed all fees and costs as provided for in the Agreement.

## 4.     STIPULATIONS

The following facts are undisputed:

1. Alberta and a predecessor-in-interest to Granite entered into the FPSA on September 29, 2005.

2. Granite's predecessor-in-interest and Alberta executed an Amendment and Agreement amending the FPSA. The Amendment and Agreement was effective April 30, 2007.

3. Granite's predecessor-in-interest and Alberta executed fifteen (15) additional amendments to the Amendment and Agreement.

4. On December 8, 2008, Granite's predecessor-in-interest and Alberta executed the Fifteenth Amendment.

5. Alberta and Granite's predecessor-in-interest closed on the Property on December 12, 2008, and as of that date, the Property was conveyed from Alberta to Granite.

6. Under the FPSA, as amended, Alberta was required to deliver to Granite's predecessor-in-interest required tenant estoppel certificates in the form specified by the FPSA, as amended.

7. Alberta was required to provide a tenant estoppel certificate for each tenant that occupied more than 10% of the rentable square feet in the buildings at the Property.

8. As part of the Fifteenth Amendment, Granite's predecessor-in-interest and Alberta agreed that $650,000 of the closing funds would be retained by an escrow agent pursuant to the terms of the FPSA, as amended, and Escrow Agreement.

9. Alberta was required to provide all required tenant estoppel certificates on or before March 1, 2009.

10. Alberta delivered eighty-five (85) tenant estoppel certificates to Granite before March 1, 2009.

11. Granite rejected the tenant estoppel certificate for Colorado Cinema Group, LLC.

12. Colorado Cinema Group, LLC was the only tenant that occupied more than 10% of the rentable square feet in the buildings at the Property as of the date of the Closing.

## 5. PENDING MOTIONS

None.

## 6. WITNESSES

Granite's witnesses are listed on the attached Exhibit A.

Alberta's witnesses are listed on the attached Exhibit B.

## 7. EXHIBITS

Granite's exhibits are listed on the attached Exhibit C.

Alberta's exhibits are listed on the attached Exhibit D.

## 8. DISCOVERY

Discovery is complete.

## 9. SPECIAL ISSUES

By submitting the attached Exhibits A and B (Witness Lists) the parties do not agree to admissibility of the testimony of such witnesses. The parties stipulate to the admissibility of Exhibits 1, 10, 17, 18, 21, 22, 23, 24, 30, 63 and 68. Except for those specifically identified exhibits whose admissibility has been stipulated, the parties retain the ability to object to exhibits and testimony, or portions thereof, offered at trial.

## 10. SETTLEMENT

a. Counsel for the parties met in person on April 20, 2010, to discuss in good faith the settlement of the case.

b. The participants in the settlement conference included Magistrate Judge Kristen L .Mix, counsel, and party representatives with settlement authority.

c. On June 29, 2010, Alberta made a settlement proposal in the case which Granite has taken under consideration.

d. No date has been established for a subsequent settlement conference before the magistrate judge or other alternative dispute resolution method.

e. Counsel for the parties considered ADR in accordance with D.C. COLO. LCivR. 16.6.

## 11. OFFER OF JUDGMENT

Counsel acknowledge familiarity with the provision of Rule 68 (Offer of Judgment) of the Federal Rules of Civil Procedure. Counsel have discussed it with the clients against whom claims are made in this case.

## 12. EFFECT OF FINAL PRETRIAL ORDER

Hereafter, this Final Pretrial Order will control the subsequent course of this action and the trial, and may not be amended except by consent of the parties and approval by the court or by order of the court to prevent manifest injustice.  The pleadings will be deemed merged herein.  This Final Pretrial Order, reference may be made to the record of the pretrial conference to the extent reported by stenographic notes and to the pleadings.

## 13. TRIAL AND ESTIMATED TRIAL TIME; FURTHER TRIAL PREPARATION PROCEEDINGS

1. Trial is to a jury on those issues so triable, if any.

2. Granite estimates that trial will require five to seven days.  Alberta estimates that trial will require two days.

3. Trial will be in Denver, Colorado.

DATED this ____ of July, 2010.

BY THE COURT:

_____
United States District Judge

APPROVED:

| | |
|---|---|
| */s/ Paul Trahan* | */s/ Stuart N. Bennett* |
| OSBORNE J. DYKES, III | STUART N. BENNETT |
| BENJAMIN M. VETTER | Lindquist & Vennum, P.L.L.P. |
| FULBRIGHT & JAWORSKI L.L.P. | 600 Seventeenth Street, Suite 1800 South |
| 370 Seventeenth Street, Suite 2150 | Denver, CO  80202 |
| Denver, CO  80202 | (303) 573-5900 – Telephone |
| (303) 801-2700 – Telephone | (303) 573-1956 – Facsimile |
| (303) 801-2777 – Facsimile | sbennett@lindquist.com |
| jdykes@fulbright.com | |
| bvetter@fulbright.com | **COUNSEL FOR DEFENDANT ALBERTA TOWN CENTER, LLC** |
| PAUL TRAHAN | |
| FULBRIGHT & JAWORSKI L.L.P. | |
| 600 Congress Avenue, Suite 2400 | */s/ Stephen L. Waters* |
| Austin, TX  78701 | STEPHEN L. WATERS |
| (512) 474-5201 – Telephone | KIMBERLY A. BRUETSCH |
| (512) 536-4598 – Facsimile | ROBINSON WATERS & O'DORISIO, P.C. |
| ptrahan@fulbright.com | 1099 18th Street, Suite 2600 |
| | Denver, CO  80202 |
| **COUNSEL FOR PLAINTIFF GRANITE SOUTHLANDS TOWN CENTER LLC** | (303) 297-2600 – Telephone |
| | (303) 297-2750 – Facsimile |
| | swaters@rwolaw.com |
| | kbruetsch@rwolaw.com |
| | |
| | **COUNSEL FOR DEFENDANT LAND TITLE GUARANTEE COMPANY** |