IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-CV-00799-ZLW-KLM

GRANITE SOUTHLANDS TOWN CENTER LLC,

    Plaintiff,

v.

ALBERTA TOWN CENTER, LLC AND
LAND TITLE GUARANTEE COMPANY,

    Defendants.

**PLAINTIFF GRANITE SOUTHLANDS TOWN CENTER LLC'S
RESPONSE IN OPPOSITION TO EXPEDITED MOTION FOR EQUITABLE
RELIEF TO PREVENT VEXATIOUS AND REPETITIVE LITIGATION**

Comes now, Granite Southlands Town Center LLC ("Granite"), plaintiff, and submits its Response in Opposition to the Expedited Motion for Equitable Relief to Prevent Vexatious and Repetitive Litigation Pursuant to the All-Writs Act, 28 U.S.C. § 1651(a) and Federal Rule of Civil Procedure 54(b) [Dkt. #131] (the "Motion") filed by Alberta Town Center LLC ("Alberta"), Donald G. Provost and Peter M. Cudlip (collectively, the "Alberta Parties").

**INTRODUCTION**

This action arises out of the construction and sale of a large commercial property, the Southlands Town Center, from Alberta to Granite. In the current motion, Alberta Town Center, LLC and its two principals, Provost and Cudlip, seek to enjoin state court proceedings, *i.e.* a lawsuit commenced by Granite against, among others, Alberta, Provost and Cudlip for fraud and negligence. More particularly, they seek an injunction that would order Granite to (1) withdraw its Complaint in an ongoing Colorado state court lawsuit and (2) obtain permission from this

85729147.3

Court before filing any claims against Alberta, Provost, Cudlip, or any of their alter-egos in any court.  Motion at 2.  The Alberta Parties' motion is premised on their assertion that the fraud claim pending in state court was already decided by this Court when it dismissed the claim for "Fraudulent Inducement as to the Release."

This premise is flawed because the claim dismissed in this lawsuit is different than the claims asserted in the state court lawsuit.  In its December 29, 2009 Order, this Court dismissed a narrow fraud claim against just Provost and Cudlip, which claim was, as noted by the Court (at 6), based on Granite's allegation that it was "fraudulently induced by the Principal's misrepresentations and concealment to enter into the Release, and pay $2.15 million as consideration for the execution of the Release."  The Court was careful to emphasize that Granite's claim was for fraud in the inducement "of the Release," noting that "Plaintiff does *not* allege that it was fraudulently induced to accept conveyance of the Property."  (emphasis by the Court).  The Court concluded in its December 29, 2009 Order (at 6-7):  "Plaintiff asserts that it was fraudulently induced to enter into the Release, but fails to plausibly plead that its execution of the Release - as distinguished from its purchase of the Property – has caused it any damage."

The pending state court action includes the very fraud claim this Court held it was <u>not</u> deciding, *i.e.* the claim that Granite "was fraudulently induced to accept conveyance of the Property."  Accordingly, the pending state court fraud claim is not barred by this Court's Order dismissing the narrow fraud claim against Provost and Cudlip.

Further, the requested injunction is clearly barred by the Anti-Injunction Act, 28 U.S.C. § 2283.  This law bars a Federal court from enjoining state court proceedings with only three narrow exceptions, and none of the exceptions applies in this case.  Even apart from that statute,

85729147.3

the Alberta Parties fail to make even a plausible argument that they will suffer irreparable harm if the state court action is not enjoined.

The Motion also requests that the Court enter a final judgment under Fed. R. Civ. P. 54(b) with respect to Donald G. Provost and Peter M. Cudlip. Motion at 2. Alberta has failed, however, to show that any undue hardship would result if the Court adheres to the policy of avoiding piecemeal appeals and declines to enter final judgment on less than the entire case.

## FACTS

### I.   The Federal Proceedings

Granite filed its original complaint on April 8, 2009 (Dkt. #1) seeking the return of escrow funds because Alberta failed to meet its obligations regarding tenant estoppel certificates.[1] With leave of the Court, *see* Dkt. #33, Granite filed its First Amended Complaint ("FAC"), *see* Dkt. #36, on September 19, 2009, adding a new claim for "Fraudulent Inducement As To The Release" against Alberta's principals, Peter M. Cudlip, Donald G. Provost, and Allan G. Provost. FAC ¶ 22. The fraud claim was *not* pleaded against Alberta. The FAC alleged that "[a]s consideration for the Release, Granite agreed to pay an additional $2,150,000 above the purchase price previously provided for in the [Forward Purchase and Sale Agreement]." FAC ¶ 14. The fraud related to the Release arose from the fact that "[s]hortly after execution of the Release, a tenant provided Granite with Granite's first notice of what Granite would come to realize were material defects at the Property – defects that the Principals

---

[1] The Court denied Alberta's Motion for Summary Judgment on the escrow claim by an Order dated February 9, 2010 (Dkt. #107), and the claim remains pending. Alberta brought a counter-claim alleging that Granite had breached its obligations regarding the true-up of expenses, *see* Dkt. #7, and that claim also remains pending. The state court proceeding does not involve either the escrow claim or the true-up claim.

85729147.3

-3-

had known about for months before execution of the Release." Order dated December 29, 2009 at 3 ("FAC Order") (Dkt. #85); FAC ¶ 15. Granite asserted that it "would never have entered into the Release or paid the Additional Consideration if Granite had known of the structural defects with the Property." FAC Order at 3-4; FAC ¶ 18. By withholding the information regarding the construction defects from Granite, Provost and Cudlip fraudulently induced Granite to enter into the Release and pay the Additional Consideration. *Id.*

Provost and Cudlip moved to dismiss the fraud claim on October 14, 2009. Dkt. #60. The Court granted the motion, concluding that "Plaintiff asserts that it was fraudulently induced to enter into the Release, but fails to plausibly plead that its execution of the Release – as distinguished from its purchase of the Property – has caused it any damage." FAC Order at 6-7. The Court also noted, however, that the fraud claim before it was a narrow one related only to the Release and the $2.15 million Granite alleged it paid for the Release. *Id.* at 6.

On January 13, 2010, Granite filed a Motion for Reconsideration and for Leave to Amend Complaint, requesting that the Court reconsider its order granting dismissal in light of recently discovered evidence. Motion for Reconsideration at 6-9 (Dkt. #87). Granite also requested leave to file a Second Amended Complaint and attached a draft of the proposed amended complaint. *Id.* at 9-15 and Exhibit 1 (Dkt. #87-2). Granite later moved for leave to substitute the Second Amended Complaint attached to the Motion for Reconsideration. Dkt. #109. The substituted Second Amended Complaint addressed the distinction drawn in the Court's FAC Order. Specifically, it alleged that the fraud induced it to "execute the Closing Agreement" and asserted the broader fraud claim against Alberta, in addition to its managers Provost and Cudlip. Plaintiff's Second Amended Complaint ¶ 34 (Dkt. #109-2). By Order dated February 17, 2010,

85729147.3

-4-

the Court (1) denied the Motion for Reconsideration, (2) granted Granite's motion to substitute the Second Amended Complaint, and (3) denied motion for leave to amend. Dkt. #110.[2]

## II. The Colorado State Court Proceedings

On May 25, 2010, Granite filed a Complaint in the District Court for Arapahoe County ("Colorado Complaint"), a copy of which is attached to Alberta's Motion.  *See* Dkt. #131-2. Granite sued numerous parties, including the prime contractor and various design professionals, claiming negligent design and construction.  Colorado Complaint ¶ 21.  Granite alleges that these "construction defects have been caused by soil movement and the corresponding movement of the slabs, piers, and other building components due, in part, to the accumulation of water in a subsurface swale." *Id.* ¶ 23.  As a result, there has been "distortion of and cracks in the slabs, foundations, walls, doorways, ceilings, sidewalks, and building exteriors" and "water damage and damage to the piping and utilities that penetrate the walls." *Id.*

In the Colorado Complaint, Granite asserts the following claims against Alberta Town Center, LLC, Alberta Development Partners, LLC, Southlands Colorado, LLC, Southlands Power Center, LLC, Donald G. Provost, and Peter M. Cudlip:

**Fraud**:  The Colorado Complaint, unlike the FAC, pleads fraud against not only Donald Provost and Peter Cudlip but also against the Alberta Parties.  The allegations of reliance and damage set forth in the Colorado Complaint also are very different from those alleged in the FAC.  In the FAC, Granite asserted that the fraud induced Granite to enter into the Release and

---

[2] Alberta mischaracterizes Granite's Amended Motion for Leave to Amend Complaint, Dkt. #115, filed April 28, 2010.  Granite did not "reassert the same fraud-based claims against the Alberta Parties." Motion at 3.  Granite included parties and claims dismissed by the FAC Order "so as to avoid any waiver of those claims, which remain in the 'live' pleading."  Motion for Leave at 5-6 (Dkt. #115).  Granite was not attempting to re-plead the fraud claim dismissed by this Court.

85729147.3

pay separate consideration for the Release.  By contrast, in the Colorado Complaint, Granite asserts the fraud was "intended to mislead Granite to purchase the Property where Granite would not have consummated the purchase had it known the true facts."  Colorado Complaint, ¶ 35.  This was precisely the distinction drawn by this Court in the December 29 Order, the FAC Order.

**Negligence**:   Granite asserts negligence claims against Alberta Town Center, LLC, Alberta Development Partners, LLC, and Southlands Colorado for breach of duties arising out of their roles as owner and developer.  Colorado Complaint ¶¶ 39-53.  Granite also asserts a negligence claim against Southlands Power Center, LLC, a related Alberta entity, for negligence arising out of its development of the neighboring parcel.  *Id.* ¶¶ 74-81.

**Alter Ego**:  Granite also asserts a claim for "alter ego," asserting that Alberta Town Center, Alberta Development Partners, Southlands Colorado, Southlands Power Center, Donald Provost, and Peter Cudlip all are alter egos of one another and that the corporate veils should be pierced and each held jointly and severally liable for the other's obligations to Granite.  *Id.* ¶¶ 82-84.

Despite the Alberta Parties' suggestions otherwise, there is good reason why Granite did not immediately serve the Colorado Complaint on the defendants – all defendants, not just the Alberta Parties.  Granite delayed service to create an opportunity for discussions with several of the defendants – including Alberta through its legal counsel Brad Ramming – in an effort to exchange information informally and resolve the dispute.  The non-Alberta parties currently are discussing the possibility of an early mediation.  Efforts to resolve the case are detailed in a

status report filed by Granite with the Colorado court shortly before Granite was informed of this motion.  *See* <u>Exhibit 1</u> (Status Report).

## **ARGUMENT**

### I.     **The Anti-Injunction Act Prohibits the Requested Injunction**

The Anti-Injunction Act states in full that

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283.  The statute "is an absolute prohibition against any injunction of any state-court proceedings, unless the injunction falls within one of the three specifically defined exceptions in the Act."  *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630 (1977) (plurality opinion).  The three exceptions "rest[] on the fundamental constitutional independence of the States and their courts . . . [and] should not be enlarged by loose statutory construction."  *Atl. Coast Line R.R. Co.  v. Bhd. Of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970).  When addressing whether a particular injunction fits an exception, "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy."  *Atl. Coast*, 398 U.S. at 297.  Alberta cannot avoid the Act by requesting that Granite, as opposed to the Colorado court, be enjoined.  *Id.* at 288 ("It is settled that the prohibition of § 2283 cannot be evaded by addressing the order to the parties . . . .").

####     A.     **The Anti-Injunction Act Applies**

Alberta argues that the Anti-Injunction Act does not apply because there is no "proceeding" in Colorado state court.  Motion at 9 n.9.  The meaning of the word "proceeding"

as used in the Anti-Injunction Act has been settled since 1935 when Justice Brandeis stated for a unanimous Court that the "term is comprehensive.  It includes *all steps taken or which may be taken in the state court* or by its officers *from the institution* to the final process."  *Hill v. Martin*, 296 U.S. 393, 403 (1935) (emphasis added).[3]  To determine whether there is a pending "proceeding[] in a state court," as that term is used in the statute, federal courts look to state law. *Hall*, 393 U.S. at 398 ("To determine whether a judicial proceeding was pending when these suits were brought, we turn to the law of New Jersey.").

Attempting to draw a fine distinction between the commencement of a civil action from the institution of a judicial proceeding, Alberta argues that there is no pending Colorado judicial proceeding against it because it has not been served process.  Motion at 9 n.9.  The argument is premised on a plain error of law.  In Colorado state courts "a civil action is commenced . . . by filing a complaint with the court . . . .."  C.R.C.P. 3(a); *In re Marriage of Olmo*, 701 P.2d 866, 867 (Colo. Ct. App. 1984) (emphasizing that C.R.C.P. 3(a) is disjunctive and an action commences *either* by filing a complaint *or* by service of a summons).  "[A]n action is a *proceeding* on the part of one person, as actor, against another, for the infringement of some right of the first, before a court of justice, in the manner prescribed by the court or law."  *Hernandez v. Downing*, 154 P.3d 1068, 1070 (Colo. 2007) (emphasis added) (citations and quotation marks omitted).  In other words, a "civil action" is a judicial "proceeding," and a judicial proceeding therefore is commenced when a complaint is filed.  Thus, filing a complaint in Colorado state court is the "institution" of a proceeding in a Colorado court within *Hall's* definition of "proceeding."

---

[3]  *See also Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1100 n.14 (9th Cir. 2008) (relying on *Hall's* definition of "proceeding"); *In re Am. Honda Motor Co.*, 315 F.3d 417, 439 (4th Cir. 2003) (same); *Tropf v. Fidelity Nat'l Title Ins. Co.*, 289 F.3d 929, 941-42 (6th Cir. 2002) (same); *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1201 (7th Cir. 1997) (same).

### B. None of the Exceptions to the Anti-Injunction Act Apply

Alberta next argues that the requested injunction is within the second or third exceptions to the Anti-Injunction Act. According to Alberta, the injunction is "necessary in aid of" this Court's jurisdiction because the Colorado proceeding "threatens to evade and undermine an interlocutory ruling by the District Court" in that it "merely tries to reassert in another forum claims this Court already dismissed with prejudice." Motion at 11, 12. Alberta also argues that the injunction is necessary "to protect or effectuate" the judgments of this Court, the particular judgments in need of protection being the Court's FAC Order and its February 17, 2010, Order denying leave to amend.

#### 1. The Injunction is Not Necessary to Aid the Court's Jurisdiction

The exception for injunctions necessary in aid of the court's jurisdiction usually applies to *in rem* proceedings "where the federal court has obtained jurisdiction over the *res*, prior to the state-court action." *Vendo Co.*, 433 U.S. at 641. It typically does not apply to *in personam* actions because the Supreme Court has "never viewed parallel *in personam* actions as interfering with the jurisdiction of either court." *Id.* at 642.

Some Federal Circuit Courts have held that the "necessary in aid of jurisdiction" exception allows injunctions in *in personam* actions, but not under the circumstances present here. Rather, they only have applied the exception where it was necessary to effectuate settlement agreements or to protect essential discovery rulings in multi-district litigation. *See, e.g., In re Diet Drugs Products Liability Litig.*, 369 F.3d 293, 305-307 (3d Cir. 2004) (allowing injunction because "[a]llowing state court actions to run afoul [of the federal settlement agreement] would fatally subvert it and render the agreement (and the Court's jurisdiction)

85729147.3

-9-

nugatory"); *Winkler*, 101 F.3d at 1202 (allowing injunction of "a parallel state court action [that] would make a nullity of the district court's [discovery] ruling, and render ineffective its efforts effectively to manage the complex litigation at hand").[4]  Neither of those circumstances is present here.

Both the federal and state court proceedings at issue here are *in personam* actions, and there is no need for an injunction to protect the federal court's jurisdiction over any *res*.  Alberta therefore must show, even under the most liberal reading of the "necessary in aid of jurisdiction" exception, that allowing the Colorado proceeding to continue would nullify this Court's jurisdiction.  The mere fact that this Court and the Colorado court have concurrent jurisdiction in cases involving similar facts and the same parties does not nullify this Court's jurisdiction.  As the Supreme Court noted in *Vendo*, concurrent litigation does not "impair or defeat the jurisdiction" of the federal court, and "'[e]ach court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court.  Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by the application of the principals of *res adjudicata*.'" 433 U.S. at 642 (quoting *Kline v. Burke Contr. Co.*, 260 U.S. 226, 230 (1922)).  The third exception concerns the principles of *res judicata*, to which we now turn.

---

[4] Notably, however, consistent with the Supreme Court's directive against enlarging the exceptions with "loose statutory construction" and refusing injunctions in doubtful cases, the same courts have found injunctions improper in multi-district litigation when allowing the state court cases to proceed would not nullify the federal court's jurisdiction or orders. *See Zurich Am. Ins. Co. v. Superior Court*, 326 F.3d 816, 826 (7th Cir. 2003) (reversing an injunction as improperly granted under the "necessary in aid of jurisdiction" exception because the parallel state court proceedings would not undermine federal jurisdiction); *see also In re Gen. Motors Corp. Prods. Liability Litig.*, 134 F.3d 133, 137 (3d Cir. 1998) (holding an injunction was not proper because the federal litigation had not advanced to settlement).

85729147.3

### 2. The Injunction is Not Necessary to Protect or Effectuate the Court's Judgment

The third exception, the relitigation exception, "is founded in the well-recognized concepts of *res judicata* and collateral estoppel." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988).[5] In stating it was "founded in" *res judicata* and collateral estoppel, however, *Chick Kam Choo* did not hold that the exception is conterminous with those doctrines; rather, the exception is narrow and "authorizes injunctions against state adjudication of issues that 'actually have been decided by the federal court.'" *Weyerhaeuser Co. v. Wyatt*, 505 F.3d 1104, 1110 (10th Cir. 2007) (quoting *Chick Kam Choo*, 486 U.S. at 148). In determining what an order decides, courts must focus on "what the earlier order *actually* said" and should not "render a *post-hoc* judgment as to what the order was *intended* to say." *Chick Kam Choo*, 486 U.S. at 148. Alberta must "make a strong and unequivocal showing of relitigation" before the exception can be applied. *Wesch v. Folsom*, 6 F.3d 1465, 1471 (11th Cir. 1993).

Importantly, and unlike the *res judicata* doctrine itself, the relitigation exception also requires that claims or issues actually decided be "fully adjudicated *on the merits*." *Brooks v. Barbour Energy Corp.*, 804 F.2d 1144, 1146 (10th Cir. 1986) (emphasis added). It is not sufficient, under the Anti-Injunction Act, that the claims *could* have been litigated in the prior action.

---

[5] Alberta suggests that there is some confusion about whether claim preclusion or issue preclusion applies. Motion at 11 n.7. For the purposes of the relitigation exception to the Anti-Injunction Act, there is no confusion. *Chick Kam Choo* clearly refers both to *res judicata* (claim preclusion) and collateral estoppel (issue preclusion). 486 U.S. at 147. *Weyerhaeuser Co. v. Wyatt*, 505 F.3d 1104, 1110 (10th Cir. 2007) makes it abundantly clear that either a claim or an issue must actually be decided by the federal court for the relitigation exception to apply.

85729147.3

-11-

As stated in *Weyerhaeuser Co. v. Wyatt*, 505 F.3d 1104 (10th Cir. 2007):

> [T]he question presented is whether the relitigation exception permits a federal court to protect and effectuate the full res judicata effect of its judgments – that is, to bar state litigation of both claims actually raised in a prior federal action and those that could have been raised or whether it covers only issues that the federal court actually decided.
>
> * * *
>
> Since *Chick Kam Choo*, this Court has dealt with the AIA's relitigation exception three times, but we have never squarely addressed its scope. We do so now and, like the vast majority of circuits that have explicitly or implicitly considered this issue, conclude that *Chick Kam Choo* leaves little room for doubt: the AIA's third exception does not authorize a federal court to protect the full res judicata effect of its decisions. Instead, it authorizes injunctions against state adjudication of issues that actually have been decided by the federal court.
>
> [W]e think *Chick Kam Choo's* specific explication of the scope of the relitigation exception, along with the case's actual outcome . . . leads to the conclusion that the relitigation exception does not encompass all aspects of claim preclusion. Whether or not this is the best interpretation of the statute, and whether or not this limitation undermines the rights that are supposed to attach to a federal judgment, *Chick Kam Choo* says what it says, and we must follow it.
>
> In any event, we believe this interpretation is consistent with the dual purposes of the AIA: to respect comity while also ensur[ing] the effectiveness and supremacy of federal law. <u>When a federal court affirmatively decides an issue, that decision is entitled to respect and finality. But when a federal court has not passed on a specific claim, the main concern raised by subsequent state litigation is harassment of the opposing party. That concern is not to be taken lightly, but it is the province of res judicata, a defense that a party is free to raise in the subsequent state-court suit.</u>

505 F.3d at 1107-08, 1109-111 (emphasis added) (citations and internal quotations omitted).

Since this Court expressly found that Granite did not allege in the fraud claim here "that it was fraudulently induced to accept conveyance of the Property," that fraud claim was not "actually decided" here. Accordingly, under the Anti-Injunction Act, this Court should not

enjoin Granite from proceeding with that fraud claim in state court merely because a claim based on reliance on closing on the purchase *could* have been brought in this Court.

Alberta argues that the requested injunction is necessary to protect two of this Court's judgments: the FAC Order and its February 17, 2010, Order denying leave to amend. Neither order requires a protective injunction.

> a. *The February 17, 2010 Order is Not an Adjudication on the Merits*

The February 17, 2010 Order denied, without comment, Granite's Motion for Leave to File a Second Amended Complaint. Although the Order did not state the reasons for denying leave, the Court presumably denied it as untimely. *See* Recommendation of United States Magistrate Judge at 2 (Dkt. #119). "[T]he decision denying leave to amend is usually based on factors such as timeliness or convenience . . . and is not an adjudication 'on the merits.'" *N. Assurance of Am. v. Square D. Co.*, 201 F.3d 84, 88 (2d. Cir. 2000). When, as here, denial for leave to amend is not an adjudication on the merits, "the fact that a judge has denied a motion to amend which seeks leave to add a new claim to an existing case should have no bearing either way on the question of whether a plaintiff may file the new claim as a separate lawsuit." *Integrated Technologies Ltd. v. Biochem Immunosystems, (U.S.) Inc.*, 2 F.Supp.2d 97, 103 (D. Mass. 1998). In sum, the denial of leave to file the Second Amended Complaint did not adjudicate the merits of any claims. Therefore, an injunction is not needed to prevent the relitigation of a claim never litigated.

> b. *The Colorado Complaint Does not Allege Fraud Claims that Were Adjudicated on the Merits by this Court*

At this point in the litigation, the FAC Order is the only decision that actually decides the merits of any claims. In that order, the Court reviewed the fraud claim alleged by Granite

against Cudlip and Provost in the First Amended Complaint.  As noted in the Introduction, the Court emphasized that Granite's fraud claim alleged that it was "fraudulently induced . . . to enter into the Release, and pay $2.15 million as consideration for the execution of the Release." FAC Order at 6.  The Court was careful to note that Granite's claim was for fraud in the inducement "of the Release," noting that "Plaintiff does *not* allege that it was fraudulently induced to accept conveyance of the Property."  *Id.*  The Court dismissed the narrower fraud claim, finding that "Plaintiff asserts that it was fraudulently induced to enter into the Release, but fails to plausibly plead that its execution of the Release – as distinguished from its purchase of the Property – has caused it any damage."  *Id.* at 6-7.

The Colorado Complaint alleges the very fraud claim this Court held it was <u>not</u> deciding – the claim that Granite "was fraudulently induced to accept conveyance of the Property." Specifically, the claim for relief asserts that Alberta's fraudulent "actions were intended to mislead Granite to purchase the Property where Granite would not have consummated the purchase had it known the true facts."  Colorado Complaint ¶ 35.  The state court fraud claim also alleges, "Granite would not have closed on the Property had it not been for Alberta Town Center's and the Managers' fraudulent conduct" and that the "fraud also caused Granite to overpay for the Property."  *Id.* at 38.  The operative fraud claims in the Colorado Complaint were carefully tailored to respect this Court's adjudication of the narrower fraud claims in the federal case.  The claims, while alleging much of the same fraudulent conduct, are precisely those claims which this Court explicitly stated it was not deciding.  Because the Colorado Complaint's fraud claims were not decided in the FAC Order, no injunction is necessary to protect or effectuate the Order.

85729147.3

-14-

Further, this Court's order dismissing the fraud claim did not address Alberta Town Center, LLC, against whom a fraud claim was not even brought in this Court in the First Amended Complaint. Certainly, the relitigation exception cannot apply to prevent a state court fraud claim against Alberta Town Center, LLC, when no fraud claim was asserted against that entity or any of its alter egos in this Court.

### C.    The Requested Anti-Suit Injunction is Overbroad

Alberta's request for an injunction also should be denied because it is overbroad on its face. Alberta requests "an order (a) requiring Plaintiff withdraw its State Court Complaint and/or seek to have it State Court Complaint stricken, [and] (b) barring Plaintiff from filing any other action against the Alberta Parties (or anyone else based on the allegation that they are an alter-ego of, or otherwise jointly and severally liable with, any Alberta Party) arising out of the same allegations of fact as the fraud claims already dismissed by this Court without this Court's permission[.]" Motion at 2. The effect of such an order would be to prohibit Granite from suing in state court for *any* claim, including the negligence claims currently proceeding in state court, against *any* party related in some way to Alberta Town Center, Peter Cudlip, or Donald Provost, including Alberta Development Partners, LLC, Southlands Colorado, LLC and Southlands Power Center. In other words, Alberta seeks an order enjoining Granite from prosecuting state court claims that were never presented to this Court against entities who were never parties to the federal proceedings. For that reason alone, the Motion should be denied.

### II.    No Irreparable Harm Has Been Shown

Finally, the Alberta Parties fail to make a showing of irreparable harm. To try to satisfy this element of the claim for injunctive relief, the Alberta Parties claim (Motion at 8) that, absent

85729147.3

an injunction, "they would be required to defend a vexatious and duplicative state court litigation merely to defend a ruling already obtained by this Court." Further, they argue (Motion at 11) that "if the injunction sought here does not issue, and the State Court Complaint is ultimately served, [their] next step would be to seek dismissal of the state court action as barred by *res judicata*." There are two rather obvious flaws with this argument:

First, there is nothing "irreparable" about the harm. The only harm identified consists of the attorney's fees incurred in defending the state court action. If the state court judge agrees with the Alberta Parties and finds that the State Court Action is frivolous or vexatious, that judge has the power to award attorneys fees. C.R.S. § 13-17-102. The harm is not only reparable, but the Alberta Parties can be compensated through a proceeding at law.

Second, the Tenth Circuit has held that a motion in the state courts to dismiss on *res judicata* grounds is, in fact, the appropriate remedy. As quoted above, the Court in *Weyerhaeuser* stated that "when a federal court has not passed on a specific claim, the main concern raised by subsequent state litigation is harassment of the opposing party. That concern is not to be taken lightly, but it is the province of *res judicata*, a defense that a party is free to raise in the subsequent state-court suit." 505 F.3d at 1110-1111.

### III. The Court Should Deny Rule 54(b) Certification

Under Fed. R. Civ. P. 54(b), the Court "may direct entry of final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." In exercising its discretion, the Court must first determine whether the judgment sought to be certified is "final" and next must expressly determine "that there is no just reason to delay review of the final order until it has conclusively ruled on all claims presented by

85729147.3

-16-

the parties to the case." *Okla. Turnpike Auth. v. Bruner*, 259 F.3d 1236, 1242 (10th Cir. 2001). The Tenth Circuit has cautioned that entry of judgment under Rule 54(b) is "not to be made routinely" and that "trial courts should be reluctant to enter Rule 54(b) orders since the purpose of this rule is a limited one: to provide a recourse for litigants when dismissal of less than all their claims will create undue hardships." *Id.* (citations and quotation marks omitted). Ultimately, the district court "should act as a 'dispatcher' weighing Rule 54(b)'s policy of preventing piecemeal appeals against the inequities that could result from delaying an appeal." *Stockman's Water Co. v. Vaca Partners*, 425 F.3d 1263, 1265 (10th Cir. 2005).

Alberta's sole reason for requesting entry of judgment is "to eliminate any question as to whether this Court has made a "final judgment" as to Plaintiff's fraud claim for purposes of *res judicata* and claim preclusion, if any Alleged Alter-Ego is ultimately required to defend any portion of the State Court Complaint or any related subsequent action." Motion at 8. Alberta's primary concern is the effect of the FAC Order in the state court litigation, and rests on the concern that perhaps only a "final judgment" would support an assertion of claim preclusion. Response at 11 n.7. But according to Alberta's own Motion, "[i]ssue preclusion would prohibit relitigation of the fraud claim in a state proceeding in any event." *Id.* If, as Alberta asserts, issue preclusion applies, the lack of a clear claim preclusion argument works no hardship to Alberta in the state court proceeding. In short, Alberta's purported "undue hardship" evaporates upon close examination.

The Court should deny the request for entry of judgment under Rule 54(b) because Alberta has not shown any undue hardship and therefore has not overcome the strong policy of preventing piecemeal appeals.

85729147.3

-17-

## **CONCLUSION**

Alberta's request for injunction should be denied. The Anti-Injunction Act applies because there are ongoing proceedings in Colorado state court, and Alberta's argument that an injunction is necessary in aid of this Court's jurisdiction or is necessary to effectuate a judgment of this Court fails. The Court also should deny Alberta's request for entry of judgment. Alberta has not made even cursory showing of hardship sufficient to overcome the policy against piecemeal appellate litigation.

Respectfully submitted,

*/s/ Paul Trahan*
Osborne J. Dykes, III
BENJAMIN M. VETTER
FULBRIGHT & JAWORSKI L.L.P.
370 Seventeenth Street, Suite 2150
Denver, CO  80202
(303) 801-2700 – Telephone
(303) 801-2777 – Facsimile
jdykes@fulbright.com
bvetter@fulbright.com

PAUL TRAHAN
FULBRIGHT & JAWORSKI L.L.P.
600 Congress Avenue, Suite 2400
Austin, TX  78701
(512) 474-5201 – Telephone
(512) 536-4598 – Facsimile
ptrahan@fulbright.com

**COUNSEL FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2010, I electronically filed the foregoing **PLAINTIFF GRANITE SOUTHLANDS TOWN CENTER LLC'S RESPONSE IN OPPOSITION TO EXPEDITED MOTION FOR EQUITABLE RELIEF TO PREVENT VEXATIOUS AND REPETITIVE LITIGATION** with the Clerk of Court using the CM/ECF system which will send notification of such filing to attorneys for the remaining parties at the following e-mail addresses:

Stuart N. Bennett
Steven R. Kabler
JONES & KELLER, P.C.
1999 Broadway, Suite 3150
Denver, Colorado 80202
sbennett@joneskeller.com
skabler@joneskeller.com

*Attorneys for Alberta Town Center, LLC*

Stephen L. Waters
Kimberly A. Bruetsch
ROBINSON WATERS & O'DORISIO, P.C.
1099 18th Street, Suite 2600
Denver, Colorado 80202
swaters@rwolaw.com
kbruetsch@rwolaw.com

*Attorneys for Land Title Guarantee*

Allen B. Diamond
Amos B. Elberg
DIAMOND MCCARTHY LLP
620 Eighth Avenue, 39th Floor
New York, New York 10018
adiamond@diamondmccarthy.com
aelberg@diamondmccarthy.com

Reda M. Hicks
DIAMOND MCCARTHY LLP
909 Fannin Street, Suite 1500
Houston, Texas 77010
rhicks@diamondmccarthy.com

*Attorneys for Donald G. Provost and Peter M. Cudlip*

/s/ Paul Trahan
Paul Trahan

85729147.3