IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CIVIL ACTION NO. 09-CV-00799

GRANITE SOUTHLANDS TOWN CENTER, LLC,

    Plaintiff,

v.

ALBERTA TOWN CENTER LLC and
LAND TITLE GUARANTEE COMPANY,

    Defendants.

**REPLY IN FURTHER SUPPORT OF EXPEDITED MOTION FOR EQUITABLE RELIEF TO PREVENT VEXATIOUS AND REPETITIVE LITIGATION**

The Alberta Parties respectfully submit this reply in further support of their expedited motion for equitable relief to prevent vexatious and repetitive litigation. Granite's principal argument in response to the Motion (the "Response") is that the claims in the State Court Complaint are not the same claim this Court dismissed with prejudice in the Dismissal Order. Granite is attempting to rewrite history and misstating the nature of the State allegations. As demonstrated in detail below, the first claim in the State Court Complaint is precisely the claim Granite advanced here as a revision intended to revive the claim dismissed by the Dismissal Order. The other State claims are the first claim in various guises. Each seeks the same damages, from the same people (the Principals), incorporating the same theory of fraud.[1]

## I.     The Anti-Injunction Act Does Not Bar the Relief Sought Here

1.     The Motion advanced three reasons why the Anti-Injunction Act does not bar the relief sought here: (a) there are no state court "proceedings" pending against the Alleged Alter-Egos, as that term is used in the Act; (b) the Act's exception for orders to "protect or effectuate" a Federal judgment applies; and (c) the Act's exception for orders to protect the Court's jurisdiction applies, since a state proceeding would impede this Court's ability to decide this case. Granite disputes each of those reasons, but its arguments are not persuasive.

### A.     No State Court "Proceeding" Is Currently Pending Against The Alleged Alter-Egos

2.     If there is no state court "proceeding" pending against the Alleged Alter-Egos, as that word is used in the Anti-Injunction Act, then the Act does not bar the relief sought here. Granite claims that *Hill* v. *Martin*, 296 U.S. 393, 403 (1935), held that any step taken "in the state court or by its officers from the institution to the close of the final process" constitutes a

---

[1]     Capitalized terms used herein and not otherwise defined have the meanings ascribed to them in the Motion.

1

"proceeding" within the meaning of the Act, and therefore that the mere filing of the State Court Complaint was sufficient. (Response 7-8.)  Granite is misreading *Hill*.

3.   In *Hill*, there were multiple actions pending in New Jersey, one of which was an appeal of an administrative determination of the *amount* of a tax to a court of limited jurisdiction, the other an appeal of an administrative proceeding to *collect* the tax.  The plaintiff sought to enjoin the second proceeding while it was administrative, before it was appealed.  (The Act does not prohibit injunctions against state administrative proceedings.)  In the portion of *Hill* cited by Granite, the Court characterized the second New Jersey matter as analogous to an ancillary proceeding in execution of the judgment in first matter, which had already been appealed through the New Jersey courts before the injunction was sought.  *Hill* did not address, and did not purport to address, at what point a "proceeding" begins, nor did it announce any test for when a matter becomes "proceeding."

4.   Here, the facts are:  the State Court Complaint was filed on May 25, 2010.  Granite did not contact the Alleged Alter-Egos for months, apparently not until the State court told Granite to serve or drop the matter.  At that time, Granite asked counsel to accept service of the State Court Complaint on the Alleged Alter-Egos' behalf, and to consider mediation.  That request was rejected, leading to this Motion.[2]

5.   The Alleged Alter-Egos are not, as of now, subject to any obligation in respect of the State Court Complaint.  There is no clock ticking on any time for them to respond to

---

[2]   The Response suggests that the filing of the State Court Complaint commenced some sort of dealings over it, (Response 6 (Granite "delayed service to create an opportunity for discussions with . . . Alberta through its legal counsel Brad Ramming – in an effort to exchange information informally and resolve the dispute"), and that counsel accepted service on behalf of Alberta (Response Exh. 1).  These statements are incorrect.  (*See* Exhibit A (e-mail from Brad Ramming).)

anything in the Colorado state court. Unless Granite takes further steps, the Alleged Alter-Egos will *never* have any obligation to do anything in respect of the State Court Complaint.

6.  No court has ever held that a "proceeding" exists within the meaning of the Act in such circumstances. The Colorado state court does not even have jurisdiction over the Alleged Alter-Egos. *See In re Marriage of Wilson*, 765 P.2d 1085, 1087 (Colo. App. 1988) ("jurisdiction . . . is acquired only through legal service of process."). There is no "proceeding" against the Alleged Alter-Egos here.

### B.  The Relief Sought Here Is Authorized By The Relitigation Exception

7.  Even if the Anti-Injunction Act applied here, the injunction sought here would fall within the exception for orders to "protect or effectuate" a judgment. Granite disagrees, offering a three-step argument: *First*, Granite argues that a series of authorities adopted a narrow interpretation of the relitigation exception; *Second*, rewriting history, Granite claims that the fraud claim asserted in the SAC is a different claim from the one dismissed in the Dismissal Order; *Third*, Granite claims that the attenuated "alter-ego" theory advanced in the State Court Complaint allows it to seek damages from the Principals for the alleged fraud this Court dismissed on the merits, merely by naming an entity as the nominal defendant and then asserting that the entity and Principals are one and the same.[3]

#### i)  The Relitigation Exception Permits The Injunction Sought Here

8.  The relitigation exception allows litigants to seek an injunction from the Court that issued an original judgment instead of litigating *res judicata* or collateral estoppel issues in the second proceeding. *E.g.*, *United States* v. *Reilly*, 385 F.2d 225, 228 (10th Cir. 1967). It thus

---

[3] Granite does not dispute that the Dismissal Order and February 17, 2010, order denying reconsideration or leave to amend (the "Reconsideration Order") are "judgments" within the meaning of the Act even though they are interlocutory.

3

empowers a federal court "to be the final arbiter of the res judicata effects of its own judgments . . . ." *Burr & Forman* v. *Blair*, 470 F.3d 1019, 1029-30 n. 30 (11th Cir. 2006).  It is ideally suited to cases like this one, in which the parties dispute the meaning of an order, and the Court that issued it is in the best position to resolve the disagreement.  *See Ramsden* v. *AgriBank, FCB*, 214 F.3d 865, 868 (7th Cir.), *cert. denied* 531 U.S. 1036 (2000).

9. For this reason, analysis of the relitigation exception begins with *res judicata* and collateral estoppel.  (*Accord* Response 11.)  The Response claims, however, that *Chick Kam Choo* v. *Exxon Corp.*, 486 U.S. 140 (1988), and *Weyerhaeuser Co.* v. *Wyatt*, 505 F.3d 1104 (10th Cir. 2007), narrow the relitigation exception to matters explicitly addressed in the original Court's judgment. (Response 11-12.)[4]

10. This is a curious argument.  Granite is concerned with claims that are barred by *res judicata*, but nevertheless fall outside the relitigation exception.  The precise delineation of this very narrow category of claims has no bearing here unless Granite believes that its State claims fall within it.  If so, Granite is conceding that the State claims are barred by *res judicata*, and are vexatious, repetitive, and frivolous.  If not, Granite's legal argument is immaterial.

11. In any event, the Response misstates the law.  *Weyerhauser Co.* merely held that the relitigation exception requires that the claim was "affirmatively decide[d]" by the original order, 505 F.3d at 1108, excluding claims that are barred by *res judicata* since they could have been raised but were not, *id.* at 1110.  *Weyerhauser Co.* does not require that the first claim was decided on the facts after a trial, nor that the first judgment or order explicitly refer to or describe the first claim, let alone that the first judgment or order do so in a way identical to the way the

---

[4] There is a circuit split as to whether the scope of the relitigation exception is coterminous with *res judicata* and collateral estoppel.  *See, e.g.*, *W. Sys., Inc.* v. *Ulloa*, 958 F.2d 864, 868-71 (9th Cir. 1992); *Wesch* v. *Folsom*, 6 F.3d 1465, 1471 (11th Cir. 1993); *see also Klay* v.*United HealthGroup, Inc.*, 376 F.3d 1092, 1104 (11th Cir. 2004).

plaintiff describes its new claim. It requires that the new claim be barred by *res judicata* or collateral estoppel, and also have actually been resolved by the original judgment or order. *See id*. (announcing holding).

12. Here, as demonstrated below, the claims at issue consist of (a) the fraud claim dismissed by the Dismissal Order, in a revised form this Court rejected when Granite offered it in the SAC; and (b) the same claim in other guises.[5]

> ii) The State Court Complaint Fraud Claim Was
> Affirmatively Decided In The Dismissal Order

13. There is no dispute that the State Court Complaint fraud claim is the same claim advanced in Granite's proposed SAC here, which this Court rejected in the Reconsideration Order. Granite argues this was a different claim that the one rejected in the Dismissal Order, and that the Reconsideration Order merely denied Granite leave to bring additional claims, on procedural grounds. (Response 13-14.)[6]

---

[5] The Response quotes part of *Chick Kam Choo*, that a court "should not render a *post-hoc* judgment as to what [a prior] order was intended to *say*," and suggests that the Supreme Court was narrowing the relitigation exception to the explicit language of an order or judgment. (Response 11, internal quotation marks omitted, emphasis in original.) That is not what the Court said. There, the District Court had dismissed claims on *forum non conveniens* grounds. The plaintiff then re-filed in state court, and the District Court granted an anti-suit injunction. On appeal, the Fifth Circuit said that the injunction could be upheld because Federal maritime law preempted state *forum non conveniens* law under the reverse-*Erie* doctrine. The Supreme Court rejected that because the District Court had never addressed preemption. 486 U.S. at 149. The portion of *Chick Kam Choo* quoted by the Response thus concerns how courts should interpret *other* courts' orders for relitigation exception purposes. It did not alter the rule that a District Court is in the best position to interpret its own prior orders. *See Missouri* v. *Jenkins*, 495 U.S. 33 (1990); *G.J.B. & Assoc's, Inc.* v. *Singleton*, 913 F.2d 824, 831 (10th Cir. 1990); *United States* v. *Little*, 60 F.3d 708, 712 n. 2 (10th Cir. 1995).

[6] Even if the SAC fraud claim was a different fraud claim and the Reconsideration Motion denied leave to amend on procedural grounds, the Reconsideration Motion *still* affirmatively decided the claim. *EFCO Corp.* v. *U.W. Marx, Inc.*, 124 F.3d 394, 399-400 (2d Cir. 1997) ("Where a plaintiff's motion to amend . . . is denied, and plaintiff fails to appeal the denial, res judicata applies to the claims sought to be added in the proposed amended complaint."); *Huck* v. *Dawson*, 106 F.3d 45, 49-50 (3d Cir. 1997) ("it is immaterial that the plaintiff . . . sought to prove the acts relied on in the second action and was not permitted to do so because they were not alleged in the complaint and an application to amend . . . came too late" (internal quotation marks omitted)); *Air Frame Sys., Inc.* v. *Raytheon Co.*, 601 F.3d 9, 16 (1st Cir. 2010); *Legnani* v. *Alitalia Linee Aeree Italiane, S.p.A.*, 400 F.3d 139, 141 (2d Cir. 2005).

14. Granite is attempting to rewrite history. The Reconsideration Order denied leave to replead the original fraud claim, not to assert a new one. The FAC, SAC and State fraud claims, which concern the same alleged misstatements by the same people in connection with the same transaction, are the same claim.

15. Granite's motion for leave to amend actually sought, first and foremost, reconsideration of the Dismissal Order. It offered the SAC to demonstrate that Granite could remedy the deficiencies the Court had identified. There is no ambiguity on this point:

- Motion for Reconsideration and Leave to Amend [Docket No. 87] (the "Reconsideration Motion") ¶ 6(emphasis added): the proposed SAC "addresses the Court's concerns about the nature of Granite's reliance and canvasses the documents recently produced in discovery that bear on **the** fraud claim, further expanding them . . . . As the Court can see, the amendment would be far from futile . . . ."

- *Id.* ¶ 14: "Allowing such an amendment would not be prejudicial to either Alberta or its Principals because the facts were known . . . and the core facts and legal theories of fraud remain the same."

- *Id.* ¶ 16: "Nor would an amendment be futile. To the extent that the Court perceived a disconnect in the prior pleading, that defect can be corrected, as Granite has done in the attached proposed amendment. Further . . . the proposed amendment amplifies and expands upon the fraud theories previously pled with more context . . . ."

- *Id.* ¶ 21: "Granite has not requested prior amendments to cure deficiencies identified by the Court or the parties, but does so now . . . ."

- Granite's Reply in Further Support Of Motion For Reconsideration And For Leave To Amend [Docket No. 108] (the "Reconsideration Reply") ¶ 1: "discovery has confirmed that Granite's claim of reliance on the Release agreement [the fraud theory of the FAC] was not merely plausible, but in fact accurate . . . ."

- *Id.* ¶ 2: the purpose of the proposed SAC, was to "remed[y] the reliance 'disconnect' perceived by the Court" in the Dismissal Order by altering (slightly) Granite's theory and supplementing the pleading with supposedly "newly discovered" evidence.

- *Id.* ¶ 8: "if the Court still believes there is a reliance deficiency in the [FAC], Granite has offered its Second Amended Complaint, which not only explains the full extent of its reliance, but also sets forth additional instances of fraud that permeated this Closing . . . ."[7]

16. The Magistrate also recognized that the two fraud claims were the same claim:

> To the extent the Plaintiff's proposed Second Amended Complaint [actually the fourth proposed complaint] *reasserts parties and claims previously dismissed by Judge Weinshienk*, the proposed amended pleading is improper.

Recommendation [Docket No. 119], at 8 n. 3 (emphasis added).

17. Granite disagrees with the Dismissal Order and believes it should have been granted leave to amend. Granite is free to appeal those rulings. Attempting to instead relitigate those issues in a new forum, is improper. *Air Frame Sys., Inc.*, 601 F.3d at 16 ("Airframe's failure to get leave . . . to amend its complaint [does not] somehow deprive the . . . judgment of preclusive effect. . . . Airframe's recourse was to appeal, not to start a new action.").[8]

### iii) The Other State Claims Are The Fraud Claim In Disguise

18. Granite then argues that the relitigation exception cannot apply to the fraud claim against Alberta because Alberta was not named as a defendant on the fraud claim in the FAC. (Response 15.) But the State fraud claim is one single claim asserted against the Principals and Alberta together making no distinction between them. (*See* State Court Complaint ¶¶ 31-38.)

---

[7] Granite devoted 17 pages of its briefing to the merits of the fraud claim, and only two to timeliness. The most reasonable "presumption" on the face of this record, is that the Court rejected the Reconsideration Motion because the allegations and theories in the SAC did not justify revisiting the Dismissal Order. Notably, the Court had concluded that what Granite claimed it had done in reliance on supposed misrepresentations and omissions, did not connect with the misrepresentations and omissions alleged or the damages sought. The circumstances of Granite's reliance are surely in its personal knowledge, so it is difficult to understand how Granite could attempt to amend the claim and assert that it had actually done something in reliance on the same supposed misrepresentations, different from what it had said before that it had done. The Court's decisions to make dismissal of the fraud claim with prejudice, and to deny leave to amend the claim, are sensible and correct.

[8] The Response (at 14) asserts that the State Court Complaint's fraud claim was "carefully tailored" to assert "precisely those claims which this Court explicitly stated it was not deciding." The Court was actually pointing to inadequacies in the FAC's fraud allegations, not identifying claims the Court intended to leave for another day.

Granite further claims that, because of the same alleged fraud, the Principals should be liable for any damages inflicted by Alberta. (*Id.* ¶¶ 82-84.) So the claim against Alberta seeks the same damages, based on the same allegations, from the same people, as the claim against the Principals. They are the same claim.[9]

19. In all events, *res judicata* and collateral estoppel, which are the foundation of the relitigation exception, apply not just to the actual parties to the original judgment, but also to parties in privity. *Satsky* v. *Paramount Comm., Inc.*, 7 F.3d 1464, 1467 (10th Cir. 1993); *Northern Natural Gas* v. *Grounds*, 931 F.2d 678. 681 (10th Cir. 1991).

### C. The Jurisdiction Exception Applies In The Circumstances Of This Case

20. The parties agree that the jurisdiction exception to the Anti-Injunction Act applies to only some *in personam* proceedings depending on the circumstances. (Response 9; Motion 11.) Granite claims that the only *in personam* actions to which it applies involve Multi-District Litigations ("MDLs"). (Response 9-10.) But the rule is: "[p]roceedings in other courts that involve the same facts as already issued judgments and orders, or that could result in the issuance of an inconsistent judgment, threaten the jurisdiction of the district court enough to warrant an injunction." *Klay*, 376 F.3d at 1104. The Motion, at ¶¶ 16-19, cited numerous authorities on this point not involving MDLs. The Response does not distinguish or address any of them.[10]

---

[9] Granite's negligence claim against the Alberta and Southland Entities, which occupies only two paragraphs of the pleading's factual allegations, is the fraud claim in another disguise, and indeed incorporates it via the alter-ego claim. The theory is that (a) the entities are liable for the structural defects allegedly concealed by the Principals' supposed fraud, (b) the entities are merely shells, alter-egos of the Principals, and (c) since they allegedly committed fraud, the Principals are liable for any damages inflicted by the entities.

[10] *Winkler* v. *Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1996), the case cited by Granite as holding that the only *in personam* cases to which the jurisdiction exception can apply are MDLs, actually listed MDLs as one of several types of such cases. The holding in *Winkler* was that the jurisdiction exception "should be construed 'to empower the federal court to enjoin a concurrent state proceeding that might render the exercise of the federal court's jurisdiction nugatory.'" *Id*. (citation omitted).

8

## II. The Requested Injunction Is Not Overbroad

21. Hedging its bad bet on the Anti-Injunction Act, the Response (at 15) goes on to claim that the Alberta Parties' proposed order is overbroad. Granite is wrong. The proposed order would not bar any claim against any party "related in some way to" an Alleged Alter-Ego, as the Response asserts. It would require Granite to seek this Court's permission before commencing any new litigation (a) arising out of the same transactions, (b) against anyone based on the theory that that person is really the Principals in the form of an alter-ego.

## III. The Alberta Parties Are Not Required To Demonstrate Irreparable Harm

22. The Response contends that the Alberta Parties have not "satisf[ied] th[e] element of the claim for injunctive relief" of showing irreparable harm. (Response 15.) Irreparable harm is not an element that must be shown in a motion to enjoin vexatious and repetitive litigation. Granite cites no authority saying that it is.[11]

23. In all events, unless Granite is willing to agree in advance that the Alleged Alter-Egos may recover the *full* amount of their attorneys' fees if a Court ultimately finds that the State claims were barred by the *res judicata* or collateral estoppel effect of this Court's orders, relitigation would be an irreparable harm.

## IV. The Court Should Grant Rule 54(b) Certification

24. Granite asks the Court to refuse to enter a final judgment in respect of the Dismissal Order. But why? Granite offers no explanation other than, apparently, that if there are proceedings on the State Court Complaint and the Alleged Alter-Egos move to dismiss on *res*

---

[11] The Response asserts that under *Weyerhaeuser* "a motion in the state courts to dismiss on *res judicata* grounds is . . . the appropriate remedy," apparently, according to the Response, in all cases where an anti-suit injunction would otherwise be available as alternative relief. (Response 16.) The Response's interpretation would read the relitigation exception out of the Anti-Injunction Act. As discussed above and in the Motion, a purpose of the relitigation exception is to let Federal courts be the final arbiters of the *res judicata* effect of their own judgments. Federal courts have been issuing anti-suit injunctions for more than a Century.

9

*judicata* grounds, Granite intends to offer the hyper-technical argument that the Dismissal Order can only have collateral estoppel (not *res judicata*) effect until this case has gone to trial and resulted in a judgment. (*See* Motion 11 n. 7; Response 17.) That is not a good reason to deny certification.[12]

25. Granite's argument that the Rule 54(b) motion falls for failure to demonstrate "undue hardship," citing *Oklahoma Turnpike Authority* v. *Bruner*, 259 F.3d 1235, 1242 (10th Cir. 2001), misstates the law. (Response 17.) "[U]ndue hardship" is not pre-requisite for a Rule 54(b) Order. Immediately following the portion of *Bruner* quoted in the Response, the Court of Appeals concluded: "Thus, a certification under Rule 54(b) is only appropriate when a district court adheres strictly to the rule's requirement that a court make [the] express determinations" set forth in *Curtiss-Wright Corp.* v. *General Elec. Co.*, 446 U.S. 1, 7-8 (1980). The Response takes no issue with the Motion's argument (at 8) that the standards of *Curtiss-Wright Corp.* are satisfied here. (*See* Motion 8.)

## Conclusion

26. For the reasons set forth in the Order and further demonstrated above, the Court should issue an injunction in substantially the form proposed and direct the entry of a final judgment in respect of the Dismissal Order.

---

[12] Some of Granite's arguments suggest that some State claims are more properly enjoined than others. (*See, e.g.*, Response 15.) If the Court accepts those argument (or Granite's argument that an injunction should be denied even though the State claims are barred by *res judicata* (*id.* 11)), the Alberta Parties' next step would be a motion to dismiss what remains of the State claims against the Alleged Alter-Egos on *res judicata* grounds.

Dated: New York, New York
August 20, 2010.

        Respectfully Submitted,

        ___s/ Amos B. Elberg_____
        Allan B. Diamond
        Amos B. Elberg
        DIAMOND McCARTHY LLP
        620 Eighth Avenue, 39th Floor
        New York NY 10018
        (212) 430-5400—Telephone
        (212) 430-5499—Facsimile
        adiamond@diamondmccarthy.com
        aelberg@diamondmccarthy.com

        Reda M. Hicks
        DIAMOND McCARTHY LLP
        909 Fannin Street, Suite 1500
        Houston TX 77010
        (713) 333-5100—Telephone
        (713) 333-5195—Facsimile
        rhicks@diamondmccarthy.com

COUNSEL FOR DEFENDANTS DONALD G. PROVOST and PETER M. CUDLIP

        Stuart N.  Bennett
        **JONES & KELLER, P.C.**
        1999 Broadway, Suite 3150
        Denver, CO 80202
        Telephone:    303-573-1600
        Fax:    303-573-0769
        E-mail:    sbennett@joneskeller.com

COUNSEL FOR ALBERTA TOWN CENTER, LLC

## CERTIFICATE OF SERVICE

       I hereby certify that a true and correct copy of Defendants' **REPLY IN FURTHER SUPPORT OF EXPEDITED MOTION FOR EQUITABLE RELIEF TO PREVENT VEXATIOUS AND REPETITIVE LITIGATION** filed by Alberta Town Center, LLC, Donald G. Provost and Peter M. Cudlip was served upon the parties listed below by facsimile, regular U.S. Mail, certified mail, return receipt requested and/or electronic service on this 20th day of August, 2010.

| | | |
|---|---|---|
| *Attorneys for Plaintiff & Counter Defendant Granite Southlands Town Center LLC* | jdykes@fulbright.com<br>better@fulbright.com | Osborn J. Dykes, III<br>Benjamin M. Vetter<br>Fulbright & Jaworski LLP<br>370—17th Street, Suite 2150<br>Denver, CO 80202 |
| *Attorneys for Plaintiff & Counter Defendant Granite Southlands Town Center LLC* | ptrahan@fulbright.com | Paul Trahan<br>Fulbright & Jaworski LLP<br>600 Congress Ave., Ste. 2400<br>Austin TX 78701 |
| *Defendant & Counterclaimant Alberta Town Center LLC* | ehyatt@starrslaw.com<br>estarrs@starrslaw.com | Elizabeth Jeanelia Hyatt<br>Elizabeth A. Starrs<br>Starrs Mihm & Pulkrabek LLP<br>707—17th Street, Ste. 2600<br>Denver CO 80202 |
| *Defendant Land Title Guarantee Co.* | kbruetsch@rwolaw.com | Kimberly A. Bruetsch<br>Robinson Waters & O-Dorisio PC<br>1099—18th Street, 26th Floor<br>Denver, CO 80202 |

                                                */s/ Reda M. Hicks*_____
                                                Reda M. Hicks
                                                DIAMOND McCARTHY LLP
                                                909 Fannin Street, Suite 1500
                                                Houston TX 77010
                                                (713) 333-5100—Telephone
                                                (713) 333-5195—Facsimile
                                                rhicks@diamondmccarthy.com