IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  09-CV-00799-SJJ-KLM

GRANITE SOUTHLANDS TOWN CENTER, LLC,

      Plaintiff

v.

ALBERTA TOWN CENTER, LLC, and
LAND TITLE GUARANTEE COMPANY,

      Defendants.

_____

**DEFENDANT ALBERTA TOWN CENTER, LLC'S TRIAL BRIEF**
_____

Defendant, Alberta Town Center, LLC, ("Alberta") by and through its attorneys, Jones & Keller, P.C., hereby submits its Trial Brief:

### I. INTRODUCTION

The issue before the Court is one of contract interpretation.  Plaintiff, Granite Southlands Town Center, LLC ("Granite"), and Alberta both claim to be entitled to $650,000.00 held in escrow from Alberta's December 12, 2008, sale of the Southlands Town Center shopping center to Granite.  Under the terms of the written agreements between Alberta and Granite, the funds were escrowed as security for Alberta's obligation to deliver to Granite on or before March 1, 2009, estoppel certificates from tenants of the shopping center.  Alberta timely fulfilled its contractual requirements by providing Granite valid tenant estoppel certificates from the required number of Southlands Town Center tenants.  Because Alberta fulfilled its obligations, Alberta, not Granite, is entitled to the $650,000.00 originally held in escrow and now held in the registry

{JK00234983.1 }

of this Court.  The only issue before the Court is whether the estoppel certificate from the only tenant that occupied more than 10% of the rentable space - Colorado Cinema Group, LLC – was acceptable under the terms of the FPSA and the Fifteenth Amendment.  This matter should be resolved in Alberta's favor.

## II.     FACTUAL BACKGROUND

On September 29, 2005, Alberta and the predecessor to Granite executed a Forward Purchase and Sale Agreement ("FPSA") pursuant to which Granite agreed to purchase the Southlands Town Center shopping mall from Alberta.  The parties' rights and obligations with respect to the Southlands Town Center are governed by the FPSA and its subsequent amendments.  The FPSA provides that Granite purchased the Property on an "AS IS, WHERE IS" basis and that it could not terminate the FPSA due to the physical condition of the Property.  FPSA, § 5.1 & 5.3(c).

The original version of the FPSA required Alberta to provide Granite at closing estoppel certificates from "[e]ach tenant occupying more than 10% of the rentable square feet in the Buildings" at the Southlands Town Center, and from "tenants who together occupy at least 75% of the total square feet subject to Qualifying Leases."  FPSA, §8.1(k)(i) & (ii).  Granite's exclusive remedy under the FPSA, if Alberta failed to deliver the requisite tenant estoppels, was to terminate the FPSA.  FPSA, §7.2(i), §8.1(k)(ii).  Another provision of the FPSA, however, prohibited Granite from terminating the agreement "as a result of any matter related to the condition of the Property."  FPSA, §5.3(c).  Thus, Granite could not terminate the FPSA under §7.2(i) and §8.1 k(ii) if a tenant disclosed a condition of the Property requiring repair.

The parties agreed that Granite could object to a given tenant estoppel certificate for only three reasons: if the certificate (1) was not in the required form or had been materially and adversely modified from that form, (2) indicated the continuing existence of an actual material default of the landlord under the applicable Lease, or (3) correctly indicated that the tenant's lease includes terms and provisions inconsistent with the lease delivered to Granite. FPSA, §8.1 k(ii). If Granite failed to "timely or appropriately" object to any estoppel certificate, the certificate was automatically deemed an "Approved Tenant Estoppel Certificate." *Id*. If a tenant disclosed a condition of the Property requiring repair that constituted a landlord default, then Granite could terminate the FPSA.

Prior to the closing, the parties executed the Fifteenth Amendment to Amendment and Agreement and Termination Agreement ("Fifteenth Amendment"), which amended the "tenant estoppel certificate" portion of the FPSA and created the "Estoppel Holdback." Compare FPSA, §8.1(k)(ii) with 15th Am., §2(c). Under the Estoppel Holdback, Alberta agreed to provide Granite with the required "tenant estoppel certificates" after the closing, but no later than March 1, 2009. 15th Am., §2(c) amending FPSA §8.1(k)(ii). Granite could no longer terminate the FPSA if Alberta failed to deliver the required estoppels. Instead, the parties agreed that $650,000.00 of the purchase price would remain in escrow until Alberta provided the requisite number of estoppel certificates. 15th Am., §2(c). Upon Alberta's delivery of the required number of estoppel certificates, Granite was obligated to instruct the escrow agent to release the Estoppel Holdback to Alberta. *Id.*

The Fifteenth Amendment did not alter the bases upon which Granite could object to a tenant estoppel certificate and did not add the Property's condition as a basis for objection. *Id.*

Moreover, none of the amendments to the FPSA altered the "AS IS, WHERE IS" nature of the agreement, Alberta's disclaimer of warranties or representations, or Granite's waiver of its right to terminate due to the condition of the Property. The Fifteenth Amendment only changes Granite's remedy should Alberta fail to provide the required estoppels.

The only Southlands Town Center tenant to occupy more than 10% of the Total Rentable Square Footage was Colorado Cinema Group, LLC ("Cinema"). On or about January 13, 2009, the Cinema executed a tenant estoppel certificate ("2009 Cinema Estoppel"), which Alberta provided to Granite prior to March 1, 2009. Paragraphs five and six of the 2009 Cinema Estoppel form the basis of the parties' dispute.

Paragraph five of the 2009 Cinema Estoppel, states:

> Tenant is currently investigating and may dispute Landlord's assertion that Tenant is financially responsible for repairing the cracked foundation that affects the structure of the Demised Premises. An investigation is underway to determine which party is responsible for the repair and financial responsibility for such foundation. As of the date of this document, Tenant disputes that it has the responsibility for such repair. Further, Tenant's Proportionate Share for 2008 has not been finalized.

Paragraph six of the 2009 Cinema Estoppel states:

> To Tenant's actual knowledge and belief (without any duty to investigate), there are no defaults now existing on the part of the Tenant or of Landlord under the Lease.

### III.   DISCUSSION

**A.   Legal Standard**

The issue before the Court is whether paragraphs five and six of the 2009 Cinema Estoppel constitute material and adverse modifications to the required form. These are both

{JK00234983.1 }                                              4

questions of contract interpretation. Under Colorado law, an unambiguous contract must be enforced according to its plain language. *Theriot v. Colorado Ass'n of Soil Conservation Districts Medical Benefit Plan*, 38 F.Supp.2d 870, 876-877 (D. Colo. 1999) (*citing Board of County Comm'rs v. E-470 Pub. Highway Auth.*, 881 P.2d 412, 420 (Colo. App. 1994) (additional citations omitted)). "The interpretation of a written contract and the determination of whether a provision in a contract is ambiguous are questions of law." *Smalley & Co. v. Emerson & Cuming, Inc.*, 808 F.Supp. 1503, 1514 (D. Colo. 1992) (citation omitted); *see also East Ridge of Fort Collins, LLC v. Larimer and Weld Irr. Co.*, 109 P.3d 969, 974 (Colo. 2005). "When a contractual provision unambiguously resolves the parties' dispute, the interpreting court's task is over" and the contract must be enforced according to its terms. *Level 3 Communications, LLC v. Liebert Corp.*, 535 F.3d 1146, 1154 (10th Cir. 2008). Therefore, unless the Court determines that the provisions of the FPSA and the Fifteenth Amendment are ambiguous, there is nothing for the jury to decide.

## B. The 2009 Cinema Estoppel is not a Material Modification from the Required Form Because the Condition of the Property is not Material.

The FPSA allows Granite to object to a tenant estoppel certificate if it was "materially and adversely modified" from the approved form. FPSA, §8.1(k)(ii). The ordinary meaning of "material" is "having real importance or great consequences." *http.//www.merriam-webster.com/dictionary/material*. The FPSA demonstrates that disclosure of a cracked foundation was immaterial to Granite's obligations under the FPSA and could not be a basis for Granite's objection to a tenant estoppel certificate.

Granite induced Alberta to sell the Property by, in part, agreeing to purchase it "on the Closing date in its then 'AS IS, WHERE IS' condition, with all faults." FPSA, §5.1(a). An "as is-where is" clause reallocates the risk of defects and potential repairs from the seller to the buyer. Where a contract to buy or sell is specifically made "as is, where is, with all their faults," no warranty attaches and it is immaterial that the property turns out to be better or worse than supposed. *Williston on Contracts,* §70:80. By agreeing to the "AS IS, WHERE IS" provisions of the FPSA, Granite assumed the risk that the Property may contain defects and that Granite may be responsible for repairs after the closing.

The FPSA provided that Granite had no right to "disapprove the Property" and "except as specifically set forth in [the FPSA]" "no right to terminate [the FPSA] as a result of any matter relating to the condition of the Property." FPSA, §5.3(c). Granite accepted Alberta's disclaimer of "any representation or warranty . . . with respect to . . . the physical condition . . . of the Property" and expressly disclaimed and negated "any implied warranty by [Alberta] with respect to the condition of the Property." FPSA, §5.1(b) & (c). By virtue of these provisions, Granite waived any claims it may otherwise have had against Alberta based on the physical condition of the Southlands Town Center.

Granite contends that section 7.2(f) of the FPSA constitutes a specific exception to the "AS IS, WHERE IS" nature of the FPSA. Granite's analysis is incorrect. Section 7.2(f) of the FPSA states:

> Change in Condition. Seller shall promptly notify Buyer of any change in any condition with respect to the Property or any portion thereof or of any event or circumstance of which Seller has knowledge subsequent to the date of this Agreement which (a) makes any representation or warranty of Seller to Buyer under this Agreement untrue or misleading, or (b) makes any covenant or

>agreement of Seller under this Agreement incapable of being performed.

Section 7.2(f) required Alberta to notify Granite of a change in condition only if it made another representation or warranty incorrect. As noted above, Alberta made no representations concerning the physical condition of the Property. Moreover, the existence of a "cracked foundation" at the Cinema did not make any other representation or warranty under the contract incorrect or untrue. Alberta's representations and warranties are set forth in paragraph 11.2 of the FPSA and do not contain any provision regarding the condition of the Property. As demonstrated below, the existence of a cracked foundation also did not constitute a landlord default under the Cinema's lease.

To offset the risk of potential construction defects, Granite purchased from Alberta all warranties and guarantees from the architects, engineers, contractors, subcontractors and other third-parties who participated in the construction of the Southlands Town Center. FPSA, Art. II(f). Thus, the FPSA provides Granite with a remedy should defects exist. That the FPSA provides this remedy demonstrates that the Estoppel Holdback was not intended to compensate Granite for repairs to the Property. These provisions render the disclosure of the existence of a "cracked foundation" immaterial.

### C. The 2009 Cinema Estoppel is Not an Adverse Modification of the Required Form Because the Cinema is Responsible for Repairs.

The 2009 Cinema Estoppel is not "adversely" modified because the Cinema, and not Granite or Alberta, is responsible for repairs to its building. The term "adverse" means "having opposing interests." BLACK'S LAW DICTIONARY 53 (6th ed. 1990). Pursuant to the Cinema Lease, Alberta was obligated to deliver to the Cinema a "buildable pad." This required only that

the Cinema site be "rough graded" and that utilities be installed within five feet of the site. Cinema Lease, Art. III, §1 and 4.  Alberta made no warranties or representations as to the condition of the buildable pad.  The Cinema, on the other hand, assumed total responsibility for the design, engineering, and construction of the theater building and all its components.  Cinema Lease, at 43-45.  With these obligations the Cinema assumed "sole[] responsib[ility] for the structural integrity of the walls" and agreed to "maintain and repair the Theater."  Cinema Lease, Art. IV, § 1.  The Cinema further agreed to indemnify Alberta against "claims arising in connection with the construction" of the Cinema building.  Cinema Lease, Art III, § 6.  Thus, the Cinema Lease makes clear that the Cinema, not the landlord, is financially responsible for repairs to the Cinema building.  As a result, the Cinema's disclosure of the need for repairs for which Granite is not responsible is not an "adverse" modification.

### D. The Cinema's Previously Submitted 2008 Tenant Estoppel Constitutes the Proper Form to Which the 2009 Cinema Estoppel Must be Compared.

The Fifteenth Amendment amended Section 8.1(k)(ii) of the FPSA to provide that Granite "may not object to . . . (ii) any Tenant Estoppel Certificate delivered to Buyer on or after the date that is thirty (30) days before the Closing Date for a tenant that is substantially similar to the Tenant Estoppel Certificate for that tenant executed in or about May 2008 and previously delivered to Buyer."  15th Am., §2(c). On May 12, 2008, the Cinema executed an estoppel certificate that was delivered to Granite on or about November 21, 2008 (the "2008 Cinema Estoppel").  The 2008 Cinema Estoppel is identical to the 2009 Cinema Estoppel with the exception of paragraph five which describes the cracked foundation and the potential dispute

concerning financial responsibility for repairs.  Compare 2009 Cinema Estoppel, ¶ 5 with 2008 Cinema Estoppel, ¶ 5.  Paragraph six of both the 2008 and 2009 Cinema Estoppels states:

> To Tenant's actual knowledge and belief (without any duty to investigate), there are no defaults now existing on the part of the Tenant or of Landlord under the Lease.

Because paragraph six of the two Cinema Estoppels is identical, and Granite accepted the 2008 Cinema Estoppel, it could not validly object to the language of paragraph six of the 2009 Cinema Estoppel.  Consequently, the only issue is whether paragraph five of the 2009 Cinema Estoppel shows the continuing existence of an actual landlord default or has been otherwise materially and adversely modified.

### E. The 2009 Cinema Estoppel Does Not Indicate the Continuing Existence of an Actual Material Landlord Default.

The 2009 Cinema Estoppel does not indicate the continuing existence of an actual material landlord default under the Cinema Lease.  The Fifteenth Amendment unambiguously provides that a "Tenant Estoppel Certificate" is objectionable if it "indicates the continuing existence of an actual material" landlord default.  Paragraph six of the 2009 Cinema Estoppel expressly states the opposite - no landlord default exists.  2009 Cinema Estoppel, ¶ 6.  Even if the 2009 Cinema Estoppel were silent as to a landlord default, it does not contain any facts from which the Court could infer the existence of an actual material landlord default.

On August 2, 2004, the Cinema and Alberta's predecessor, Southlands Colorado, LLC, entered into a lease, the relevant terms of which remained effective at the date of the 2009 Cinema Estoppel (the "Cinema Lease").  The Cinema Lease provides that a landlord default occurs only if the landlord fails to comply with a material provision of the Cinema Lease and

fails to cure any such failure within 30 days after notice from the Cinema. Cinema Lease, Article XV, §4.

Examination of each term of the relevant provision demonstrates that the 2009 Cinema Estoppel does not indicate the existence of a landlord default. The word "indicate" means "to show" or "make known." The word "continuing" means "enduring" and "to persist." BLACK'S LAW DICTIONARY 321 (6th ed. 1990); AMERICAN HERITAGE COLLEGE DICTIONARY 301 (3rd ed. 2000). The word "exist" means "to be in present force, activity, or effect at a given time." BLACK'S LAW DICTIONARY 574 (6th ed. 1990). The word "actual" means "real; substantial; existing presently in fact; having a valid objective existence as opposed to that which is merely theoretical or possible . . . hypothetical, or nominal." BLACK'S LAW DICTIONARY 34 (6th ed. 1990). In the context of a "default" the term "material" means that the alleged breach "'goes to the root of the matter or essence of the contract,' and renders substantial performance under the contract impossible." *Interbank Investments, L.L.C. v. Vail Valley Consolidated Water Dist.*, 12 P.3d 1224, 1229 (Colo. App. 2000) (citations omitted). The phrase "default of the landlord" has the meaning ascribed in the Cinema Lease, rather than the plain and ordinary meaning. *Level 3 Communications, LLC v. Liebert Corp.,* 535 F.3d 1146, 1154 (10th Cir. 2008).

When each word of the relevant section is given meaning, it demonstrates that Granite could appropriately object to paragraph five of the 2009 Cinema Estoppel only if: 1) the 2009 Cinema Estoppel itself; 2) showed; 3) that as of the date of the 2009 Cinema Estoppel certificate, 4) in fact, as opposed to possibly or potentially; 5) Alberta had failed to comply with a provision of the Cinema Lease; 6) that the provision with which Alberta failed to comply went to the essence of the Cinema Lease and rendered substantial performance under the Cinema Lease

impossible; 7) that the Cinema had given Alberta notice of such failure to comply; and 8) that Alberta had failed to cure such failure. In the absence of any one of these elements, there is no default and Granite could not appropriately object. The 2009 Cinema Estoppel does not claim on its face that any of these elements exist, but instead states just the opposite – that no landlord default existed under the Cinema Lease. The 2009 Cinema Estoppel reveals only an incomplete investigation concerning the party responsible for repairing cracks in the Cinema building foundation. Consequently, no valid basis for objection existed.

## IV.   CONCLUSION

The Colorado Cinema Tenant Estoppel Certificate was not materially or adversely altered from the required form. As a result, no grounds existed for Granite to object to the 2009 Cinema Estoppel and to refuse to direct that the $650,000.00 in escrow be delivered to Alberta.

DATED:   February 7, 2011.

Respectfully submitted,

*s/   Stuart N. Bennett*
Stuart N. Bennett
**JONES & KELLER, P.C.**
1999 Broadway, Suite 3150
Denver, CO 80202
Telephone:         (303) 573-1600
Fax:                    (303) 573-8133
E-mail:               sbennett@joneskeller.com
Attorneys for Defendant Alberta Town Center, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | | |
|---|---|---|
| *Attorneys for Plaintiff & Counter Defendant Granite Southlands Town Center, LLC* | jdykes@fulbright.com<br>bvetter@fulbright.com | Osborne J. Dykes, III<br>Benjamin M. Vetter<br>Fulbright & Jaworski LLP<br>370 – 17th Street, Suite 2150<br>Denver, CO   80202 |
| *Attorneys for Plaintiff & Counter Defendant Granite Southlands Town Center, LLC* | ptrahan@fulbright.com | Paul Trahan<br>Fulbright & Jaworski LLP<br>600 Congress Avenue, Suite 2400<br>Austin, TX  78701 |
| *Defendant Land Title Guarantee Company* | kbruetsch@rwolaw.com | Kimberly A. Bruetsch<br>Robinson, Waters & O'Dorisio PC<br>1099 – 18th Street, 26th Floor<br>Denver, CO   80202 |

And I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner indicated by the non-participant's name:    NONE

*s/   Stuart N. Bennett*
Stuart N. Bennett
Attorneys for Defendant Alberta Town Center, LLC
Jones & Keller, P.C.
1999 Broadway, Suite 3150
Denver, CO 80202
Telephone:         303-573-1600
Fax:                   303-573-8133
E-mail:               sbennett@joneskeller.com
