IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-CV-00799-ZLW-KLM

GRANITE SOUTHLANDS TOWN CENTER LLC,
    Plaintiff,

v.

ALBERTA TOWN CENTER, LLC,
LAND TITLE GUARANTEE COMPANY,
    Defendants.

## PLAINTIFF GRANITE SOUTHLANDS TOWN CENTER LLC'S
## TRIAL BRIEF

Plaintiff Granite Southlands Town Center LLC ("Granite") files this Trial Brief to respond to the Trial Brief of Defendant Alberta Town Center, LLC ("Alberta").

### INTRODUCTION

The issue to be decided at trial is which party is entitled to $650,000 in escrowed funds. This lawsuit arises from events surrounding Alberta's sale of the Southlands Town Center to Granite. Granite invests in real estate, like the Southlands Town Center, for pension funds.

The reason the $650,000 was placed into escrow was to protect Granite against future tenant claims in the event Alberta failed to deliver "clean," or unqualified, tenant estoppel certificates–which is exactly what happened here. Estoppel certificates serve to bar, or "estop," tenants from asserting claims against a new landlord (in this case Granite) for problems not disclosed in the certificate. On the other hand, a *qualified* certificate provides no such protection

for the new landlord and, consequently, exposes the new landlord to considerable future risks and expense. This lawsuit concerns Alberta's failure to deliver unqualified estoppels.

More particularly, the parties agreed Alberta would deliver "clean" tenant estoppel certificates to Granite, in a specified form, by March 1, 2009. The parties agreed that $650,000 would be placed into escrow to protect Granite against the risk of Alberta failing to fulfill its obligation to deliver unqualified estoppels. Alberta failed to deliver unqualified estoppels.

Given the problems set forth in the estoppels, particularly the Colorado Cinema estoppel, Granite does not enjoy the protection for which the estoppels were intended. Stated differently, Colorado Cinema now can sue or otherwise pursue remedies against Granite which, had the estoppel been "clean," Colorado Cinema would not have been able to do. Granite is entitled to the escrowed funds and the attorneys' fees it has incurred to secure the funds.

## BRIEF FACTUAL BACKGROUND

This lawsuit concerns the Southlands Town Center in Aurora, Colorado. The dispute relates to $650,000 that was placed into escrow at closing when Alberta sold the Southlands Town Center to Granite. The money secured Alberta's obligation to deliver tenant estoppel certificates to Granite pursuant to the parties' Forward Purchase and Sale Agreement ("FPSA"). The prescribed form for the tenant estoppel certificate is Exhibit H to the FPSA, attached hereto as Exhibit 1.

Alberta was required to deliver unqualified estoppel certificates for tenants occupying a certain percentage of the rentable space and for each tenant occupying more than 10% of the rentable space. The parties agree that whether Alberta satisfied this requirement comes down to

whether the estoppel certificate provided for Colorado Cinema (<u>Exhibit 2</u> ("Cinema Estoppel")) was materially and adversely modified from the required form.

The deadline for closing on the sale was originally scheduled for much earlier; however, on May 14, 2008, the parties agreed to extend the closing deadline under the FPSA to December 15, 2008. Granite's obligation to close remained subject to Alberta satisfying the conditions precedent set out in the FPSA, including the obligation to deliver unqualified estoppel certificates prior to closing. If Alberta failed to timely deliver the required estoppels, the FPSA gave Granite the right to terminate the FPSA and not close.

It became apparent in late November 2008 that Alberta would not be able to deliver the required estoppels. At that time, Alberta attempted to offer estoppel certificates Alberta had obtained from tenants in May 2008. Since these estoppel certificates were approximately six months old, Granite rejected them. There is no dispute that Granite was within its rights to do so.[1]

As an accommodation to Alberta and in order to allow the closing to occur by the extended deadline, Granite agreed to postpone Alberta's obligation to deliver the required estoppels until after closing, but in no event later than March 1, 2009. Because of the importance to Granite of receiving "clean" estoppels, Granite required that $650,000 of the consideration paid at closing be placed into an escrow account to secure this extended obligation. If Alberta failed to deliver unqualified estoppels by March 1, 2009, Alberta would forfeit the escrowed amount.

---

[1] Section 8.1(k)(ii) of the FPSA, as amended by the Fifteenth Amendment and Agreement which states as follows: "[A]ny Tenant Estoppel Certificate which is not dated on or after the date that is thirty (30) days before the Closing Date shall automatically be deemed not to be an Approved Tenant Estoppel Certificate without any action required by Granite to object to such Tenant Estoppel Certificate."

Whether an estoppels is "clean," or unqualified, is spelled out in the parties' agreements. An estoppel is objectionable if it,

(i)  is not in the form required under paragraph 7.2(i) or has been materially and adversely modified from that form [the referenced form, Exhibit H to the FPSA, is attached hereto as <u>Exhibit 1</u>], or

(ii) indicates the continuing existence of an actual material default of the landlord under the applicable Lease, or

(iii) correctly indicates that the Lease includes terms and provisions that are inconsistent with the applicable lease delivered to Granite.

As set forth in detail below, the Cinema Estoppel was "materially and adversely modified" from the required form and raised serious questions about whether the there was "an actual material default of the landlord under" its lease.

Alberta objected to the escrow agent's release of the funds and demanded that the escrow agent, instead, turn over the funds to Alberta. In light of the parties' dispute, the escrow agent refused to deliver the escrowed funds to either party. The escrowed funds ultimately were paid into the registry of the court, after the escrow agent had improperly paid Alberta interest on the funds for over a year. Total interest generated by the funds since the date of the dispute is $12,026.14, which Granite also seeks to recover in this lawsuit.

## **OVERVIEW OF GRANITE'S POSITION**

### **I.   The Cinema Estoppel Differs Materially and Adversely from the Form Required by the FPSA.**

Pursuant to Exhibit H of the FPSA (attached as <u>Exhibit 1</u>), the estoppels were required to include, among other language, the following four paragraphs:

> 4.   Tenant is currently obligated to pay annual base rental in monthly installments of $\_\_\_\_ per month and monthly installments of annual base rental have been paid through _____, 20\_\_. Tenant pays percentage rent as follows: _____, and has paid percentage rent for the lease year

period ending ____, 20__.  In addition, the Lease requires additional rent based on the Tenant's pro-rata share of the building's common area operating costs and real estate taxes which is agreed to ____%.  The current monthly payment payable under the Lease on account of common area operating costs and real estate taxes is $____.  No other rent has been paid more than 30 days in advance, and Tenant has no claim or defense against Landlord under the Lease and is asserting no offsets or credit against rent or additional rent.  Tenant has no claim against Landlord for any security or other deposits except $____ which security deposit was paid pursuant to the Lease.

5.      Landlord has performed all of its obligations, if any, required to have been performed by Landlord prior to the date hereof under the Lease, including, if required under the Lease, making any repairs required to be made by Landlord.  Without in any way limiting the generality of the foregoing, Landlord has completed all tenant improvement or other work in the Premises which Landlord is required to perform as a condition to the Lease or Tenant's occupancy of the Premises and has paid Tenant all allowances or other credits required to be paid by Landlord in connection with the tenant improvement work or otherwise as a condition to the Lease or Tenant's occupancy of the Premises.

6.      There is no existing defense, offset, lien, claim or counterclaim by or in favor of the undersigned or of Landlord under the Lease or against the obligations of the undersigned under the Lease (including, without limitation, any rentals or other charges due or to become due under the Lease), and Tenant is not contesting any such obligations, rentals or charges.

7.      There is no default now existing on the part of the undersigned or of Landlord under the Lease, and there is no event which with notice or the passage of time or both would constitute a default of the undersigned or of Landlord under the Lease.

The estoppel submitted by Colorado Cinema dated January 2009 was objectionable in at least the following respects (please refer to the 2009 Cinema Estoppel at Exhibit 2):

- **Modification of Paragraph 4:**  the Cinema Estoppel replaced paragraph 4, which was to inform Granite of the Lease and rent arrangements and confirm that the Colorado Cinema had no dispute over its rent or deposit with the following:

>    4. All Monthly Minimum Rent, Percentage Rent and contributions to the Marketing Fund and have all been paid to date in accordance with the amounts required under the Lease.

- **Addition of Paragraph 5:** the Cinema Estoppel replaced paragraph 5, which was to confirm that the Landlord had fulfilled all its obligations with the following:

>   5. Tenant is currently investigating and may dispute Landlord's assertion that Tenant is financially responsible for repairing the <u>cracked foundation</u> that affects the structure of the Demised premises. An investigation is underway to determine which party is responsible for the repair and financial responsibility for such foundation. As of the date of this document, <u>Tenant disputes that it has the responsibility for such repair</u>. Further, Tenant's Proportionate Share for 2008 has not been finalized.

- **Deletion of Paragraph 6:** the Cinema Estoppel wholly deleted paragraph 6 which was included to confirm that there are no outstanding defenses, offsets, liens, or claims against the landlord; and

- **Modifications to Paragraph 7:** the Cinema Estoppel replaced the unqualified "no landlord default" language with the following:

>   6. To Tenant's actual knowledge and belief (without any duty to investigate), there are no defaults now existing on the part of Tenant or of Landlord under the Lease.

These changes constitute material and adverse modifications to the required form, Exhibit H.

As to paragraph 4, nothing is more fundamental to a lease than the amount of the lease payments and other payment provisions. Deleting this provision was material and adverse to Granite, as it leaves Granite exposed in this fundamental regard. With respect to paragraph 5, changing the form to complain about a cracked foundation and provide notice of a possible dispute amounts to material and adverse modifications. The changes to paragraph 6 were likewise material and adverse. Deleting paragraph 6 was tantamount to Colorado Cinema reserving its right to assert defenses, offsets, liens, claims or counterclaims against its new

landlord, Granite—which clearly constituted a material and adverse modification to the required form.  Colorado Cinema also made material and adverse modifications to paragraph 7, the no-default provision.  By qualifying its "no-default" statement and refusing to acknowledge that "there is no event with which notice or the passage of time or both would constitute a default of the undersigned or of the Landlord under the lease," Granite was placed at great risk of future claims from the Southlands Town Center's largest tenant.  These modifications are "material and adverse" regardless of how these terms are defined.

## II. GRANITE'S RESPONSE TO ISSUES RAISED IN ALBERTA'S TRIAL BRIEF

Alberta's Trial Brief raises issues that have already been ruled on by the Court and that are no longer at issue in this case.  On February 9, 2010, Judge Weinshienk denied Alberta's Motion for Partial Summary Judgment, specifically rejecting arguments raised again by Alberta in its Trial Brief.

### A. The "as is" clause in the FPSA is not related to the estoppel requirements and does not prevent Granite from objecting to estoppels complaining of the property's condition.

Alberta argues that the "as is" provision at section 5.1 of the FPSA makes the condition of the Property, including the Cinema's complaint of a "cracked foundation" immaterial.  To suggest Alberta had no obligations and Granite had no rights regarding the condition of the Property is incorrect.  *See* Dkt. No. 107 at 9.

Section 5.1 of the FPSA states, "the Property is being sold to Granite on the Closing Date in its 'AS IS, WHERE IS' condition."  The "as is" provision, however, only limits Granite's ability to make claims against Alberta, after closing, for defects at the Property.  The dispute over the $650,000 Estoppel Holdback is not a defect claim by Granite against Alberta, and the

"as is" provision is, therefore, not relevant to this dispute. The provisions relating to the Estoppel Holdback are separate and unrelated, as evidenced by the existence of a separate Escrow Agreement and the terms of the FPSA.

This reading is reinforced by the fact that the "as is" provision subjects itself to the rest of the FPSA. As noted by Judge Weinshienk, "[t]he FPSA's 'as-is' and 'no right of termination' provisions each are preceded by express qualifiers that those provisions shall apply 'except a [specifically or expressly] set forth' elsewhere in the FPSA." Dkt. No. 107 at 8. To suggest the "as is" provision overrides the rest of the FPSA is not consistent with the terms of the agreement. Alberta consistently has failed to address these express carve outs.

Another provision of the FPSA that sheds light on the inaccuracy of Alberta's "as is" argument is Alberta's covenant regarding changes in the condition of the Property. Section 7.2(f) of the FPSA required Alberta to "promptly notify Granite of any change in any condition with respect to the Property." Alberta's compliance with this covenant was an express condition precedent to Granite's obligation to close under the FPSA. The condition of the Property and Alberta's representations as to the condition of the Property were key components of the underlying transaction. To suggest otherwise by placing undue and inappropriate emphasis on the "as is" provision is inaccurate and misleading. The "as is" provision does not absolve Alberta of its remaining obligations under the FPSA, like the duty to inform Granite of changes in the condition of the Property <u>and</u> the duty to deliver "clean" estoppel certificates.[2]

The FPSA expressly gave Granite a right to terminate the FPSA if one or more preconditions were not satisfied, and some of those preconditions were tied to the state of the

---

[2] It is worthy to note that Granite exercised its right to inspect the Property prior to closing, but there were no visible signs of problems because, Granite believes, Alberta and its Principals had concealed them.

85927504.5 - 8 -

Property, like the duty of Alberta to disclose changed circumstances "in any condition with respect to the Property." As Judge Weinshienk found, "Granite could refuse to close based on a changed condition of the Property. The condition of the Property was not necessarily immaterial to Granite's obligations under the FPSA." Dtk. No. 107 at 9.

> **B.  Whether the Cinema is responsible for the repairs does not matter for purposes of this lawsuit.**

Alberta argues that Granite was not justified in objecting to the Cinema Estoppel because, if the Cinema's foundation was cracked, the Cinema was responsible for it. Who was responsible for the cracked foundation is of no moment for purposes of assessing the adequacy of the Cinema Estoppel. Either the estoppel was "clean" or it was not; and, it clearly was not. The parties' agreement does not place a burden on the Granite to determine whether there are merits to material and adverse modifications to a form estoppel. The mere fact that there are material and adverse modifications means that Alberta failed to deliver "clean" estoppel.

Even so, the Cinema expressly disputed that it had responsibility to repair the cracked foundation, and the Cinema's lease clearly provides that the landlord may be liable for repairs to the building. The lease reads, in relevant part:

> Tenant shall be solely responsible for the structural integrity of the walls *unless required due to the acts or omissions of Landlord, its agents, employees, contractors or invitees, in which case Landlord shall be responsible therefor.*

(Emphasis added.) The Cinema Estoppel indicated to Granite that it may have a fight on its hands. For Alberta to argue that Granite should win the fight is of little comfort and no import here. Shifting the focus to the Colorado Cinema lease is a red herring that has no bearing on the issues to be decided in this lawsuit.

85927504.5 - 9 -

### C. The FPSA does not require an express statement of default or require Colorado Cinema to satisfy the contractual requirements for declaring a default.

Contrary to Alberta's assertions, Section 8.1(k)(ii) does not require a tenant to expressly state that the landlord under the applicable lease was in default. Rather, Section 8.1(k)(ii) only requires that the submitted estoppel "indicates the continuing existence of an actual material default of the landlord under the applicable Lease." References to a cracked foundation, statements that the landlord may be responsible, and a refusal to accept responsibility for repairing the foundation are "indications" of "the continuing existence of an actual material" landlord default.

Alberta also argues Granite only had the right to object to the Cinema Estoppel if Colorado Cinema had taken all steps necessary under the Cinema Lease to put Alberta as landlord in default. Alberta again misconstrues the contract language. Section 8.1(k)(ii) requires only an indication of an actual material default, not that the tenant had independently given a separate written notice of default and/or taken all steps necessary to memorialize a default by landlord under the lease. But even if Alberta is correct (which it is not), the facts show that Colorado Cinema, in fact, did take all steps necessary to give Alberta notice of an alleged default as of the date of the Cinema Estoppel. According to Alberta, a default requires a showing that (1) Alberta failed to comply with material provisions of the lease, (2) Colorado Cinema gave written notice of the non-compliance, and (3) Alberta failed to cure within thirty days after receiving the written notice. All three requirements that Alberta claims were necessary to claim a default were, in fact, satisfied by Colorado Cinema well before the December 2008 closing.

The Cinema provided notice to Alberta both in the Cinema Estoppel itself and in a letter dated September 16, 2008 (the "Colorado Notice").  In the Cinema Estoppel, the Cinema asserted that Alberta had failed to comply with a material provision of the lease—namely that the work undertaken by Alberta to deliver the buildable pad was defective.  The letter, provided over a year before the Cinema Estoppel, gave written notice to Alberta that repairs relating to foundation system movement were required and that such repairs were "the responsibility of landlord to correct."

Finally, paragraph 5 of the Cinema Estoppel specifically notes the continued existence of the purported cracked foundation on the date of the Cinema Estoppel and that repairs were necessary.  Because the Cinema Estoppel asserts the continued existence of the cracked foundation, and the Cinema Estoppel is dated more than 30 days after the Colorado Notice, the Cinema Estoppel shows that Alberta failed to cure the alleged defect within 30 days.

In summary, Alberta's position that Section 8.1(k)(ii) requires the tenant estoppels to expressly state that there is a default creates conditions on Granite's right to object that simply are not required in the FPSA.  Section 8.1(k)(ii) only requires that the tenant estoppel certificate "indicate" the existence of a default, which the Cinema Estoppel clearly does.  Second, Alberta's fallback position, that the tenant must have taken all steps necessary to memorialize a claimed default, is also incorrect.  Third, Colorado Cinema did, in fact, take the steps necessary to declare a default.

### D. The proper comparison is between the required form (Exhibit H to the FPSA) and the 2009 Cinema Estoppel.

In an attempt to reopen an issue that has already been decided in this case, Alberta also argues that Exhibit H to the FPSA is not the standard against which the sufficiency of the 2009

85927504.5                                  - 11 -

Cinema Estoppel should be gauged. This argument was rejected by Judge Weinshienk in her Order denying Alberta's Motion for Partial Summary Judgment. Dkt. No. 107 at 7–9.

Relying on language in the Closing Agreement, Alberta contends that the estoppel the Cinema submitted in May 2008 establishes a new standard. This is not correct. A copy of the 2008 Estoppel is attached hereto as <u>Exhibit 3</u>. The language in the Closing Agreement did not establish a new standard; it merely provided a limitation on Granite's right to object to new estoppels. In essence, Alberta asserts that if Granite had not objected to a 2008 Tenant Estoppel Certificate, Granite could not object to a 2009 certificate that was substantially similar. The language on which Alberta relies reads, in relevant part:

> Granite shall be entitled to object to any Tenant Estoppel Certificate if such Tenant Estoppel Certificate (i) is not in the form required under paragraph 7.2(i) or has been materially modified from that form, or (ii) indicates the continuing existence of an actual material default of the landlord under the applicable Lease . . . ; provided, however, Granite may not object to . . . any Tenant Estoppel Certificate . . . that is substantially similar to the Tenant Estoppel Certificate for that tenant executed in or about May 2008 and previously delivered to Granite.

This provision means that Granite could not object to a new estoppel, even if it deviated from the specimen Exhibit H, provided the new estoppel was substantially similar to that submitted by a tenant in May 2008. By the same token, if the new estoppel was not substantially similar to the estoppel submitted in May 2008, the sufficiency of the new estoppel was to be measured against Exhibit H. This is what happened with the Cinema Estoppel because it is not substantially similar to the estoppel submitted by the Cinema in May 2008.

Even so, the 2009 Cinema Estoppel is not "substantially similar" to the 2008 Estoppel in at least two very important respects.

1. The 2009 Cinema Estoppel deletes the following key language disclaiming defenses, offsets, liens, and claims, which was a key component of Exhibit H and the 2008 Estoppel:

> There is no existing defense, offset, lien, claim or counterclaim by or in favor of the undersigned or of Landlord under the Lease or against the obligations of the undersigned under the Lease (including, without limitation, any rentals or other charges due or to become due under the Lease), and Tenant is not contesting any such obligations, rentals or charges.

This deletion, in itself, renders the 2009 Cinema Estoppel not "substantially similar" to the 2008 Estoppel. Then there is the issue of the cracked foundation.

2. The 2008 Estoppel does not reference a cracked foundation or raise a dispute about the responsibility for repairs. As Judge Weinsheienk put it in the Order denying Alberta's summary judgment motion (Docket #107),

> Paragraph 5 of the 2008 Certificate and paragraph 5 of the 2009 Certificate are not largely the same, they are entirely different. The 2009 Certificate discusses a subject that appears nowhere in the 2008 Certificate. No reasonable reading of the two document could produce a conclusion that the two documents are "substantially similar." Alberta's argument lacks merit.

Because the Cinema Estoppel was not substantially similar to the 2008 Estoppel, the standard against which the Cinema Estoppel was measured was Exhibit H to the FPSA. Setting this issue aside, however, there is no real question that the 2009 Cinema Estoppel and the 2008 Estoppel are "not substantially similar." Granite was justified in objecting to the Cinema Estoppel, for good reason, on multiple fronts.

## CONCLUSION

The evidence clearly demonstrates that Alberta failed to deliver a "clean," unqualified estoppels certificate for Colorado Cinema and that Granite, not Alberta, is entitled to the $650,000 in escrowed funds.

Dated February 11, 2011

>Respectfully submitted,
>
>*/s/ Osborne J. Dykes, III*
>OSBORNE J. DYKES, III
>BENJAMIN M. VETTER
>FULBRIGHT & JAWORSKI L.L.P.
>370 Seventeenth Street, Suite 2150
>Denver, CO  80202
>(303) 801-2700 – Telephone
>(303) 801-2777 – Facsimile
>jdykes@fulbright.com
>bvetter@fulbright.com
>
>PAUL TRAHAN
>FULBRIGHT & JAWORSKI L.L.P.
>600 Congress Avenue, Suite 2400
>Austin, TX  78701
>(512) 474-5201 – Telephone
>(512) 536-4598 – Facsimile
>ptrahan@fulbright.com
>
>**COUNSEL FOR PLAINTIFF/COUNTER-DEFENDANT**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on February 11, 2011, I electronically filed the foregoing **PLAINTIFF GRANITE SOUTHLANDS TOWN CENTER LLC'S TRIAL BRIEF** with the Clerk of Court using the CM/ECF system which will send notification of such filing to attorneys for the remaining parties at the following e-mail addresses:

>Stephen L. Waters
>Kimberly A. Bruetsch
>Robinson Waters & O'Dorisio, P.C.
>1099 18th Street, Suite 2600
>Denver, CO 80202
>swaters@rwolaw.com
>kbruetsch@rwolaw.com
>*Attorneys for Land Title Guarantee*
>
>Stuart N. Bennett
>Jones & Keller, P.C.
>1999 Broadway, Suite 3150
>Denver, CO 80201
>E-mail: sbennett@joneskeller.com
>*Attorneys for Alberta Town Center, LLC*

>>*/s/ Susan Quinn*
>>Susan Quinn