IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-CV-00799-SJJ-KLM

GRANITE SOUTHLANDS TOWN CENTER LLC,
        Plaintiff,

v.

ALBERTA TOWN CENTER, LLC,
LAND TITLE GUARANTEE COMPANY,
        Defendants.

---

## PLAINTIFF GRANITE SOUTHLANDS TOWN CENTER LLC'S BRIEF CLOSING

---

Granite Southlands Town Center LLC ("Granite") submits this Brief Closing for the Court's consideration.

## INTRODUCTION

The Court has called for proposed findings of fact and conclusions of law by April 15, 2011, when the parties will have received and had an opportunity to review the trial transcript, which Granite will provide.  Before too much time has passed, however, Granite would like to provide the Court with a brief overview of what Granite perceives are the key issues and evidence to be decided and considered by the Court, via this written closing.

Granite also submits what it anticipates will be its proposed findings of fact and conclusions of law, subject to revisions that will be made after the trial transcript is available. *See* Attachment 1 hereto.  Here is a description and listing of the documents presented along with this closing:

85936741.1

Attachment 1        Preliminary Proposed Findings of Fact and Conclusions of Law

Attachment 2        2009 Cinema Estoppel (trial Exhibit 23)

Attachment 3        2008 Cinema Estoppel (trial Exhibit 24)

Attachment 4        Comparison of the 2009 Cinema Estoppel to the form estoppel (trial Exhibits 122 through 126)

Attachment 5        Comparison of "No Claims, Offset, or Liens" provision (trial Exhibit 127)

Attachment 6        Comparison of "Cracked Foundation & Tenant Dispute" provision (trial Exhibit 128)

## CLOSING

Granite purchased the Southlands Town Center from Alberta Town Center, LLC ("Alberta") in December 2008, and Granite is the current owner of, and landlord at, the Southlands Town Center. This lawsuit concerns who is entitled to $650,000 in escrowed funds that was set aside at closing to secure Alberta's obligation to deliver an unqualified tenant estoppel certificate for the Cinema at the center. The $650,000 also served to protect Granite against risks associated with an unacceptable or qualified estoppel, such as that received from the Cinema in January 2009. *See* trial **Exhibit 23**, included herewith as Attachment 2.

While the evidentiary burden belongs to Granite as the Plaintiff, the burden to produce acceptable estoppel certificates was on Alberta. There were two sets of criteria Alberta could satisfy in fulfilling its burden: (i) delivering a Cinema estoppel that satisfied the criteria in the original agreement – that is, an estoppel that was not "materially and adversely" different than the form estoppel (*see* trial **Exhibit 46**),[1] or (ii) delivering a Cinema estoppel that was

---

[1] A summary of the material and adverse differences between the 2009 Cinema estoppel and the form estoppel are set forth on Attachment 4, which is a collection of trial **Exhibits 122 through 126**, though Defendant Alberta appears to have conceded this argument.

"substantially similar" to the May 2008 estoppel.  *See* trial **Exhibit 24**, included herewith as Attachment 3.

Alberta appears to have abandoned any attempt to argue it satisfied the original set of criteria and has focused, instead, on an argument that the 2009 Cinema estoppel is "substantially similar" to the 2008 estoppel.  This argument runs directly counter to the conclusion Judge Weinshienk reached in her summary judgment order, where she indicated, "No reasonable reading of the two documents [trial **Exhibits 24 and 23**] could produce a conclusion that the two documents are 'substantially similar.'"  Granite agrees.  Attached as Attachments 5 and 6 are trial **Exhibits 127 and 128**, which compare the two critical differences between the 2008 estoppel and the 2009 estoppel.

These substantial differences are all the more significant given that the Cinema is the Southlands Town Center's largest and, perhaps, most important tenant.  The Cinema occupies 72,000 square feet of space, is the center's "anchor" tenant (drawing a tremendous amount of foot traffic), and produces revenue to Granite of almost $2.0 million per year.  This provides important context for assessing the issues before the Court.

There are two substantial differences between the 2008 and 2009 Cinema estoppels.  First, the following language was deleted from the 2008 estoppel:[2]

> There are no existing claims, defenses or offsets by or in favor of the Tenant against Landlord under the Lease except that Tenant is currently disputing Tenant's share of real estate taxes for the Demised Premises, and Tenant's Proportionate Share for 2007, as well as Tenant's share of real estate taxes for the Demised Premises, has not been finalized.

---

[2]  This additional important change exists despite Alberta's counsel's assertion in his opening statement that the 2008 and 2009 estoppel were "exactly the same, word for word, except for the language about the cracked foundation which is what everyone has heartburn about."

As Granite's representative Christopher Silva testified, without this language Granite's risk profile for its largest tenant, the Cinema, is dramatically altered.  By deleting this language the Cinema has, among other things, reserved its right to sue the Landlord (now Granite) for problems existing on the date of the estoppel and to assert offsets and defenses to its obligations under the lease.  These changes undercut the reasons a landlord secures a tenant estoppel certificate in the first place.

Secondly, there is the "cracked foundation" paragraph that the Cinema added to the 2009 estoppel – which was nowhere in the 2008 estoppel.  It reads as follows:

> Tenant is currently investigating and may dispute Landlord's assertion that Tenant is financially responsible for repairing the cracked foundation that affects the structure of the Demised premises. An investigation is underway to determine which party is responsible for the repair and financial responsibility for such foundation. As of the date of this document, Tenant disputes that it has the responsibility for such repair. Further, Tenant's Proportionate Share for 2008 has not been finalized.

Although Granite believes the substantiality and seriousness of this addition is apparent from the face of the estoppel, especially an estoppel from the center's largest tenant, Christopher Silva of Granite, a seasoned real estate professional, testified as to the serious, substantial, and material nature of this addition.  To suggest that a cracked foundation does not give a landlord serious cause for concern, as Alberta's principal and witness Donald Provost testified, is untenable.

Granite believes the evidence clearly demonstrates that the 2009 estoppel was not in the form required by the contract and otherwise was substantially different – that is "not substantially similar" – to the 2008 estoppel.  Granite, therefore, is entitled to the $650,000 in escrowed funds.

**RELIEF SOUGHT**

Consistent with its pleadings, argument, and the evidence presented at trial, Granite requests that the Court adopt findings and enter a judgment awarding the $650,000 in escrow plus all accrued interest to Granite as the buyer and landlord of the Southlands Town Center.

Dated:  February 17, 2011.

Respectfully submitted,

_____/s/  Paul Trahan_____
OSBORNE J. DYKES, III
LUCY D. ARNOLD
FULBRIGHT & JAWORSKI L.L.P.
370 Seventeenth Street, Suite 2150
Denver, CO  80202
(303) 801-2700 – Telephone
(303) 801-2777 – Facsimile
jdykes@fulbright.com
bvetter@fulbright.com

PAUL TRAHAN
FULBRIGHT & JAWORSKI L.L.P.
600 Congress Avenue, Suite 2400
Austin, TX  78701
(512) 474-5201 – Telephone
(512) 536-4598 – Facsimile
ptrahan@fulbright.com
**COUNSEL FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 17, 2011, a true and correct copy of the foregoing **PLAINTIFF GRANITE SOUTHLANDS TOWN CENTER LLC'S BRIEF CLOSING** was served upon all counsel of record via hand-delivery, first-class mail postage prepaid, or the CM/ECF system which will send notification of such filing to attorneys for plaintiffs at the following e-mail addresses:

> Stephen L. Waters
> Kimberly A. Bruetsch
> Robinson Waters & O'Dorisio, P.C.
> 1099 18th Street, Suite 2600
> Denver, CO 80202
> swaters@rwolaw.com
> kbruetsch@rwolaw.com
> *Attorneys for Land Title Guarantee*
>
> Stuart N. Bennett
> Jones & Keller, P.C.
> 1999 Broadway, Suite 3150
> Denver, CO 80201
> E-mail: sbennett@joneskeller.com
> *Attorneys for Alberta Town Center, LLC*

*/s/ Paul Trahan*

# ATTACHMENT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-CV-00799-ZLW-KLM

GRANITE SOUTHLANDS TOWN CENTER LLC,
       Plaintiff,

v.

ALBERTA TOWN CENTER, LLC,
LAND TITLE GUARANTEE COMPANY,
       Defendants.

---

**PLAINTIFF GRANITE SOUTHLANDS TOWN CENTER LLC'S RESTATEMENT OF STIPULATIONS, ISSUE DECIDED AS A MATTER OF LAW, AND PRELIMINARY PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

---

      Plaintiff Granite Southlands Town Center LLC files this Restatement of Stipulations, Issue Decided as a Matter of Law, and Preliminary Proposed Findings of Fact and Conclusions of Law and requests that the Court accept them and enter a judgment consistent therewith.

## <u>DEFINITIONS</u>

      For purposes of these Stipulations, Findings of Fact, and Conclusions of Law,

      **"Granite"** means Plaintiff Granite Southlands Town Center LLC or a predecessor-in-interest to Granite Southlands Town Center LLC.

      **"Alberta"** means Defendant Alberta Town Center, LLC.

      **"Escrow Holder"** means Land Title Guarantee Company.

      **"FPSA"** means that Forward Purchase and Sale Agreement and Escrow Instructions dated as of September 29, 2005, as amended, by and between Alberta Town Center, LLC and

85931164.1

Metropolitan Life Insurance Company, as predecessor-in-interest to Granite Southlands Town Center LLC.

**"Fifteenth Amendment"** means that Fifteenth Amendment to Amendment and Agreement and Termination Agreement to the FPSA entered into effective as of December 8, 2008.

**"Escrow Agreement"** means that Escrow Agreement made and entered into as of December 12, 2008, by and among Alberta Town Center, LLC, Granite Southlands Town Center LLC, and Land Title Guarantee Company.

**"Acceptable Estoppel"** means a tenant estoppel certificate submitted by a tenant at the Southlands Town Center in Aurora, Colorado that either was

    (a)    substantially similar to a tenant estoppel certificate executed by that tenant in or about May 2008; or

    (b)    in the form of the document in evidence as Plaintiff's Exhibit No. 46 or which was not been materially and adversely modified from that form _and_ which did not indicate the continuing existence of an actual material default of the landlord under Colorado Cinema Group, LLC's lease.

**"Estoppel Holdback"** means the $650,000 placed into escrow pursuant to the Fifteenth Amendment and Escrow Agreement along with any accrued interest.

## STIPULATIONS

The parties' stipulated as to the following facts in the Final Pretrial Order (Docket #126).

1.    Alberta and a predecessor-in-interest to Granite entered into the FPSA on September 29, 2005.

2.      Granite's predecessor-in-interest and Alberta executed an Amendment and Agreement amending the FPSA.  The Amendment and Agreement was effective April 30, 2007.

3.      Granite's predecessor-in-interest and Alberta executed fifteen (15) additional amendments to the Amendment and Agreement.

4.      On December 8, 2008, Granite's predecessor-in-interest and Alberta executed the Fifteenth Amendment.

5.      Alberta and Granite's predecessor-in-interest closed on the Property on December 12, 2008, and as of that date, the Property was conveyed from Alberta to Granite.

6.      Under the FPSA, as amended, Alberta was required to deliver to Granite's predecessor-in-interest required tenant estoppel certificates in the form specified by the FPSA, as amended.

7.      Alberta was required to provide a tenant estoppel certificate for each tenant that occupied more than 10% of the rentable square feet in the buildings at the Property.

8.      As part of the Fifteenth Amendment, Granite's predecessor-in-interest and Alberta agreed that $650,000 of the closing funds would be retained by an escrow agent pursuant to the terms of the FPSA, as amended, and Escrow Agreement.

9.      Alberta was required to provide all required tenant estoppel certificates on or before March 1, 2009.

10.     Alberta delivered eighty-five (85) tenant estoppel certificates to Granite before March 1, 2009.

11.     Granite rejected the tenant estoppel certificate for Colorado Cinema Group, LLC.

12.     Colorado Cinema Group, LLC was the only tenant that occupied more than 10% of the rentable square feet in the buildings at the Property as of the date of the Closing.

## ISSUE DECIDED AS A MATTER OF LAW

The tenant estoppel certificate that is in evidence as Plaintiff's Exhibit No. 23 is not substantially similar to the tenant estoppel certificate submitted by Colorado Cinema Group LLC dated May 12, 2008, which is in evidence as Plaintiff's Exhibit No. 24.[1]

## PROPOSED FINDINGS OF FACT

1. The lease for the cinema at the Southlands Town Center covers approximately 72,000 square feet of space (compared to approximately 420,000 for the entire center), generates revenue of approximately $165,000 per month, and runs through 2026.  *See* testimony of Granite representative Christopher Silva.

2. Pursuant to Alberta and Granite's agreements, if Alberta failed to deliver an Acceptable Estoppel for Colorado Cinema Group, LLC on or before 5:00 P.M. (EDT) on March 1, 2009, the Escrow Holdback would be deemed to have been forfeited by Alberta and, upon Granite's written notice to Escrow Holder, Escrow Holder would deliver the Escrow Holdback to Granite. *See* pp. 3-4, paragraph 2(c), of the Fifteenth Amendment, **Exhibit 17**; *see also* §3.2 of the Escrow Agreement, **Exhibit 20**.

3. Alberta delivered a tenant estoppel certificate for Colorado Cinema Group, LLC to Granite on or before 5:00 P.M. (EDT) on March 1, 2009.  The certificate is dated January 8, 2009, and in evidence as Plaintiff's **Exhibit No. 23**.

4. The tenant estoppel certificate that is in evidence as Plaintiff's **Exhibit No. 23** is not in the form of the document in evidence as Plaintiff's **Exhibit No. 46** or has been materially and

---

[1] "Paragraph 5 of the 2008 Certificate and paragraph 5 of the 2009 Certificate are not largely the same; they are entirely different.  The 2009 Certificate discusses a subject that appears nowhere in the 2008 Certificate.  No reasonable reading of the two documents could produce a conclusion that the two documents are 'substantially similar.'  Alberta's argument lacks merit."  Order denying Alberta's Motion for Partial Summary Judgment, Docket #107, p. 9.

adversely modified from that form or indicates the continuing existence of an actual material default of the landlord under Colorado Cinema Group, LLC's lease. *Compare* **Exhibits 23** and 46; *see* **Exhibits 122, 123, 124, 125, and 126**; *see also* testimony of Granite representative Christopher Silva.

5.      Granite provided written notice to Escrow Holder of Alberta's failure to provide the required Acceptable Estoppels on or before 5:00 P.M. (EDT) on March 1, 2009. *See* **Exhibit 35**.

6.      The dispute between Alberta and Granite that is the subject of this lawsuit arises from the Escrow Agreement. *See* **Exhibit 20**; *see also* testimony of Land Title representative Thomas Blake.

7.      Alberta and Granite agreed, as part of the Escrow Agreement, that the prevailing party in any dispute arising from the Escrow Agreement is entitled to recover from the non-prevailing party its reasonable and actual attorneys' fees and expenses, including any incurred in connection with any appeal. *See* **Exhibit 20**, paragraph 12.

8.      Alberta and Granite agreed that all interest on the Estoppel Holdback would accrue, and Escrow Holder would hold the interest, for the benefit of the party that ultimately received the Estoppel Holdback. *See* pp. 3-4, paragraph 2(c), Fifteenth Amendment, **Exhibit 17** ("All interest on the Estoppel Holdback held by Escrow Holder shall accrue for the benefit of the party which ultimately receives the Estoppel Holdback.")

9.      The amount of interest that accrued on the Estoppel Holdback but which Escrow Holder did not hold and place into the registry of the court totals $8,852.83. *See* **Exhibit 100**; *see also* testimony of Land Title representative Thomas Blake.

10.     The Escrow Holder placed $653,173.31, which consisted of the Escrow Holdback plus a portion of accrued interest, into the registry of the court on or about December 8, 2010.  *See* **Exhibit 100**; *see also* testimony of Land Title representative Thomas Blake.

## PROPOSED CONCLUSIONS OF LAW

1.     Alberta did not deliver an Acceptable Estoppel for Colorado Cinema Group, LLC on or before 5:00 P.M. (EDT) on March 1, 2009.

2.     Granite is entitled to receive the Estoppel Holdback from the registry of the court along with all accrued interest.

3.     As the party ultimately entitled to receive the Estoppel Holdback, Granite is entitled to receive $8,852.83 in interest from Escrow Holder that Escrow Holder should have held for Granite.

4.     Granite prevailed in this lawsuit; consequently, Alberta is liable to Granite for the reasonable and actual attorneys' fees Granite incurred in relation to the dispute over the Estoppel Holdback, in an amount to be decided by the court.

Dated February 17, 2011

Respectfully submitted,


_____*/s/  Paul Trahan*_____
OSBORNE J. DYKES, III
BENJAMIN M. VETTER
FULBRIGHT & JAWORSKI L.L.P.
370 Seventeenth Street, Suite 2150
Denver, CO  80202
(303) 801-2700 – Telephone
(303) 801-2777 – Facsimile
jdykes@fulbright.com
bvetter@fulbright.com

PAUL TRAHAN
FULBRIGHT & JAWORSKI L.L.P.
600 Congress Avenue, Suite 2400
Austin, TX  78701
(512) 474-5201 – Telephone
(512) 536-4598 – Facsimile
ptrahan@fulbright.com

COUNSEL FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 17, 2011, a true and correct copy of the foregoing **PLAINTIFF GRANITE SOUTHLANDS TOWN CENTER LLC'S RESTATEMENT OF STIPULATIONS AND PRELIMINARY PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** was served upon all counsel of record via hand-delivery, first-class mail postage prepaid, or the CM/ECF system which will send notification of such filing to attorneys for plaintiffs at the following e-mail addresses:

Stephen L. Waters
Kimberly A. Bruetsch
Robinson Waters & O'Dorisio, P.C.
1099 18th Street, Suite 2600
Denver, CO 80202
swaters@rwolaw.com
kbruetsch@rwolaw.com
*Attorneys for Land Title Guarantee*

Stuart N. Bennett
Jones & Keller, P.C.
1999 Broadway, Suite 3150
Denver, CO 80201
E-mail: sbennett@joneskeller.com
*Attorneys for Alberta Town Center, LLC*

/s/  Paul Trahan

# ATTACHMENT 2

## ESTOPPEL CERTIFICATE

To:     Granite Southlands Town Center LLC ("Buyer")
        c/o BlackRock Realty Advisors, Inc.
        300 Campus Drive, 3rd Floor
        Florham Park, New Jersey 07932

Re:     Lease dated August 2, 2004 ("Original Lease") between Southlands Colorado, LLC, a Delaware limited liability company, as landlord ("Original Landlord"), and Colorado Cinema Group, LLC, a Delaware limited liability company, as tenant ("Tenant"), as amended by that certain (i) First Amendment to Lease dated July 21, 2007 ("First Amendment") between Landlord and Tenant, (ii) Second Amendment to Lease dated January 10, 2006 between Alberta Town Center, LLC, a Colorado limited liability company, as successor in interest to Original Landlord ( "Landlord") ("Second Amendment"), and (iii) Third Amendment to Lease dated in June, 2006 between Landlord and Tenant ("Third Amendment" and together with the Original Lease, First Amendment and Second Amendment, the "Lease") concerning the "Demised Premises" defined therein and known as the Southlands Town Center, located in Aurora, Colorado (herein, the "Demised Premises")

To Whom It May Concern:

The undersigned hereby certifies to Buyer and its lender as follows:

1.      All capitalized terms not herein defined shall have the meanings ascribed to those terms in the Lease.

2.      The Lease is in full force and effect and constitutes the entire agreement between the Landlord and Tenant with respect to the Demised Premises and the Lease has not been assigned, modified, supplemented or amended in any respect except as set forth above.

3.      The term of the Lease commenced on May 5, 2006 and, excluding any option or renewal terms, will expire on May 30, 2026.  Tenant has accepted possession of the Demised Premises and is the actual occupant in possession. All improvements and/or repairs required to have been constructed on the Demised Premises as of the date hereof by Landlord have been completed and accepted by Tenant and any tenant improvement allowances required as of the date hereof to have been paid by Landlord have been paid to Tenant. Tenant has not assigned the Lease or sublet all or any part of the Demised Premises.

4.      All Monthly Minimum Rent, Percentage Rent and contributions to the Marketing Fund and have all been paid to date in accordance with the amounts required under the Lease.

5.      Tenant is currently investigating and may dispute Landlord's assertion that Tenant is financially responsible for repairing the cracked foundation that affects the structure of the Demised Premises.  An investigation is underway to determine which party is responsible for the

CENTRAL\31176289.1

Exhibit No.: 3
Deponent: Nolan
Date/RPR: 1/4/10
Hunter + Geist, Inc. mH

repair and financial responsibility for such foundation. As of the date of this document, Tenant disputes that it has the responsibility for such repair. Further, Tenant's Proportionate Share for 2008 has not been finalized.

6.     To Tenant's actual knowledge and belief (without any duty to investigate), there are no defaults now existing on the part of the Tenant or of Landlord under the Lease.

7.     Tenant has three (3) separate options to extend the initial term of the Lease for periods of five (5) years each based on the conditions and stipulations contained in the Lease. Tenant has no option or preferential right to lease or occupy additional space within the Shopping Center. Tenant has no option or preferential right to purchase all or any part of the Demised Premises or any part of the Shopping Center.

8.     Tenant has made no agreements with Landlord or its agents or employees concerning free rent, partial rent, rebate of rental payments or any other type of rental or other concession except as expressly set forth in the Lease.

This Certificate is made to Buyer and its lender, if any, in connection with Buyer's prospective purchase by it of the Shopping Center knowing that Buyer will rely thereon in consummating the purchase of the Shopping Center and any loan secured thereby and in accepting an assignment of the Lease. This Estoppel Certificate may be relied on by Buyer and its lender in connection with such purchase and the closing of any loan.

(remainder of page intentionally left blank)

CENTRAL\31176289.1

Dated this ___13th___ day of January, 2009

TENANT:

COLORADO CINEMA GROUP, LLC, a Delaware limited liability company

By: _____
Name: _Anthony Herasotis_
Title: _CEO_

CENTRAL\31176289.1

Plaintiff Trial Exhibit No. 23 - 003

# ATTACHMENT 3

**ESTOPPEL CERTIFICATE**

To:     BlackRock Realty Advisors, Inc.
        Granite Southlands Town Center LLC
        BlackRock Granite Property Fund, L.P. (collectively, "Buyer")
        c/o Hiroe Takeuchi
        300 Campus Drive, 3rd Floor
        Florham Park, New Jersey 07932

Re:     Lease dated August 2, 2004 ("Original Lease") between Southlands Colorado,
        LLC, a Delaware limited liability company, as landlord ("Original Landlord"),
        and Colorado Cinema Group, LLC, a Colorado limited liability company, as
        tenant ("Tenant"), as amended by that certain (i) First Amendment to Lease dated
        July 21, 2007 ("First Amendment") between Landlord and Tenant, (ii) Second
        Amendment to Lease dated January 10, 2006 between Alberta Town Center,
        LLC, a Colorado limited liability company, as successor in interest to Original
        Landlord ( "Landlord") ("Second Amendment"), and (iii) Third Amendment to
        Lease dated June ___, 2006 between Landlord and Tenant ("Third Amendment"
        and together with the Original Lease, First Amendment and Second Amendment,
        the "Lease") concerning the "Demised Premises" defined therein and known as
        the Southlands Town Center, located in Aurora, Colorado (herein, the "Demised
        Premises")

To Whom It May Concern:

        The undersigned hereby certifies to Buyer and its lender as follows:

        1.      All capitalized terms not herein defined shall have the meanings ascribed to those
terms in the Lease.

        2.      The Lease is in full force and effect and constitutes the entire agreement between
the Landlord and Tenant with respect to the Demised Premises and the Lease has not been
assigned, modified, supplemented or amended in any respect except as set forth above.

        3.      The term of the Lease commenced on May 5, 2006 and, excluding any option or
renewal terms, will expire on May 30, 2026. Tenant has accepted possession of the Demised
Premises and is the actual occupant in possession. All improvements and/or repairs required to
have been constructed on the Demised Premises as of the date hereof by Landlord have been
completed and accepted by Tenant and any tenant improvement allowances required as of the
date hereof to have been paid by Landlord have been paid to Tenant. Tenant has not assigned the
Lease or sublet all or any part of the Demised Premises.

        4.      All Monthly Minimum Rent, Percentage Rent and contributions to the Marketing
Fund and have all been paid to date in accordance with the amounts required under the Lease.

CHI02\40248977.2

Exhibit No.: 2
Deponent: Inclan
Date/RPR: 1/6/10
Hunter + Geist, Inc.

5.      There are no existing claims, defenses or offsets by or in favor of the Tenant against Landlord under the Lease except that Tenant is currently disputing Tenant's Proportionate Share for 2008, including Tenant's share of real estate taxes for the Demised Premises, and Tenant's Proportionate Share for 2007, as well as Tenant's share of real estate taxes for the Demised Premises, has not been finalized.

6.      To Tenant's actual knowledge and belief (without any duty to investigate), there are no defaults now existing on the part of the Tenant or of Landlord under the Lease.

7.      Tenant has three (3) separate options to extend the initial term of the Lease for periods of five (5) years each based on the conditions and stipulations contained in the Lease. Tenant has no option or preferential right to lease or occupy additional space within the Shopping Center. Tenant has no option or preferential right to purchase all or any part of the Demised Premises or any part of the Shopping Center.

8.      Tenant has made no agreements with Landlord or its agents or employees concerning free rent, partial rent, rebate of rental payments or any other type of rental or other concession except as expressly set forth in the Lease.

This Certificate is made to Buyer and its lender, if any, in connection with Buyer's prospective purchase by it of the Shopping Center knowing that Buyer will rely thereon in consummating the purchase of the Shopping Center and any loan secured thereby and in accepting an assignment of the Lease. This Estoppel Certificate may be relied on by Buyer and its lender in connection with such purchase and the closing of any loan.

(remainder of page intentionally left blank)

CHGO2\40348977.2

Plaintiff Trial Exhibit No. 24 - 002

Dated this _12th_ day of May, 2008.

TENANT:

COLORADO CINEMA GROUP, LLC, a Delaware limited liability company

By: _____

Name: ANTHONY KERASOTES

Title: Chma Ceo

CHGO2\40248977.2

# ATTACHMENT 4

## LEASE AMOUNT & PAYMENTS

### Form Estoppel

4.   Tenant is currently obligated to pay annual base rental in monthly installments of $_____ per month and monthly installments of annual base rental have been paid through _____, 20____. Tenant pays percentage rent as follows: _____, and has paid percentage rent for the lease year period ending _____, 20___. In addition, the Lease requires additional rent based on the Tenant's pro-rata share of the building's common area operating costs and real estate taxes which is agreed to _____%. The current monthly payment payable under the Lease on account of common area operating costs and real estate taxes is $_____. No other rent has been paid more than 30 days in advance, and Tenant has no claim or defense against Landlord under the Lease and is asserting no offsets or credit against rent or additional rent. Tenant has no claim against Landlord for any security or other deposits except $_____ which security deposit was paid pursuant to the Lease.

### January 2009 Estoppel

4.   All Monthly Minimum Rent, Percentage Rent and contributions to the Marketing Fund and have all been paid to date in accordance with the amounts required under the Lease.

EXHIBIT

122

## LANDLORD OBLIGATIONS

### Form Estoppel

> **5.** Landlord has performed all of its obligations, if any, required to have been performed by Landlord prior to the date hereof under the Lease, including, if required under the Lease, making any repairs required to be made by Landlord. Without in any way limiting the generality of the foregoing, Landlord has completed all tenant improvement or other work in the Premises which Landlord is required to perform as a condition to the Lease or Tenant's occupancy of the Premises and has paid Tenant all allowances or other credits required to be paid by Landlord in connection with the tenant improvement work or otherwise as a condition to the Lease or Tenant's occupancy of the Premises.

### January 2009 Estoppel

EXHIBIT

123

# DISCLAIMER OF DEFENSES, OFFSETS, LIENS AND CLAIMS

## Form Estoppel

> 6. There is no existing defense, offset, lien, claim, or counterclaim by or in favor of the undersigned against Landlord under the Lease or against the obligations of the undersigned under the Lease (including, without limitation, any rentals or other charges due or to become due under the Lease), and Tenant is not contesting any such obligations, rentals or charges.

## January 2009 Estoppel



**EXHIBIT**

124

# CRACKED FOUNDATION

## Form Estoppel

## January 2009 Estoppel

> 5.      Tenant is currently investigating and may dispute Landlord's assertion that Tenant is financially responsible for repairing the cracked foundation that affects the structure of the Demised Premises.  An investigation is underway to determine which party is responsible for the repair and financial responsibility for such foundation.  As of the date of this document, Tenant disputes that it has the responsibility for such repair.  Further, Tenant's Proportionate Share for 2008 has not been finalized

EXHIBIT
125

# NO LANDLORD DEFAULT

## Form Estoppel

> **7.      There is no default now existing on the part of the undersigned or of Landlord under the Lease, and there is no event which with notice of the passage of time or both would constitute a default of the undersigned or of Landlord under the Lease.**

## January 2009 Estoppel

> **6.      To Tenant's actual knowledge and belief (without any duty to investigate), there are no defaults now existing on the part of the Tenant or of Landlord under the Lease.**

**EXHIBIT**

126

# ATTACHMENT 5

# CRACKED FOUNDATION

## May 2008 Estoppel

## January 2009 Estoppel

5.    Tenant is currently investigating and may dispute Landlord's assertion that Tenant is financially responsible for repairing the cracked foundation that affects the structure of the Demised Premises. An investigation is underway to determine which party is responsible for the repair and financial responsibility for such foundation. As of the date of this document, Tenant disputes that it has the responsibility for such repair. Further, Tenant's Proportionate Share for 2008 has not been finalized

**EXHIBIT**

127

# ATTACHMENT 6

# DISCLAIMER OF DEFENSES, OFFSETS, LIENS AND CLAIMS

## May 2008 Estoppel

> **5.** There are no existing claims, defenses or offsets by or in favor of the Tenant against Landlord under the Lease except that Tenant is currently disputing Tenant's Proportionate Share for 2008, including Tenant's share of real estate taxes for the Demised Premises, and Tenant's Proportionate Share for 2007, as well as Tenant's share of real estate taxes for the Demised Premises, has not been finalized.

## January 2009 Estoppel



**EXHIBIT**

120