IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-CV-00799-ZLW-KLM

GRANITE SOUTHLANDS TOWN CENTER LLC,
        Plaintiff,

v.

ALBERTA TOWN CENTER, LLC, and
LAND TITLE GUARANTEE COMPANY,
        Defendants.

## PLAINTIFF GRANITE SOUTHLANDS TOWN CENTER LLC'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff Granite Southlands Town Center LLC files these Proposed Findings of Fact and Conclusions of Law and requests that the Court accept them and render a judgment consistent therewith. In addition to the evidence cited herein, in further support of these findings, Plaintiff references its Trial Brief (Docket #176), its Brief Closing (Docket #186-1), and the Order Denying Alberta's Motion for Partial Summary Judgment (Docket #107).[1]

### PROPOSED FINDINGS OF FACT

1. Defendant Alberta Town Center, LLC ("Alberta") and a predecessor-in-interest to Plaintiff Granite Southlands Town Center LLC ("Granite") entered into a Forward Purchase and

---

[1] These Proposed Findings of Fact and Conclusions of Law are submitted in lieu of the Preliminary Findings of Fact and Conclusions of Law previously submitted to the Court along with Granite's Brief Closing (Docket #186-1).

85983909.8

Sale Agreement ("FPSA") on September 29, 2005, which provided for Granite's purchase of the Southlands Town Center in Aurora, Colorado.  *See* Stip. 1;[2] Exhibit 1 (FPSA).

2. The parties amended the FPSA numerous times.  Stip. 3; Exhibits 2–17.  On December 8, 2008, Granite's predecessor-in-interest and Alberta executed the Fifteenth, and final, amendment to the FPSA ("Fifteenth Amendment").  *See* Stip. 4; *see also* Exhibit 17 (Fifteenth Amendment).

3. Alberta and Granite's predecessor-in-interest closed on the sale of the Southlands Town Center on December 12, 2008, and, as of that date, the property was conveyed from Alberta to Granite.  *See* Stip. 5.

4. Alberta, Granite, and Land Title Guarantee Company ("Escrow Holder") entered into an escrow agreement ("Escrow Agreement") on December 12, 2008.  Exhibit 20 (Escrow Agreement).

5. As part of the Fifteenth Amendment, Granite's predecessor-in-interest and Alberta agreed that $650,000 of the closing funds ("Estoppel Holdback") would be retained by Escrow Holder pursuant to the terms of the FPSA, as amended, and the Escrow Agreement.  Stip. 8.  At the closing on December 12, 2008, this amount was deposited with the Escrow Holder in accordance with the Escrow Agreement.  *See* Exhibit 20 (Escrow Agreement); *see also* Exhibit 100 (Escrow Holder's accounting).

6. To be entitled to receive the Estoppel Holdback, Alberta was required to deliver to Granite's predecessor-in-interest, on or before March 1, 2009, a tenant estoppel certificate for

---

[2] Stipulations contained in Docket #126 at pp. 8–9 will be cited as "Stip. [X]".  Exhibits admitted at the trial to the court held on February 14, 2011 will be cited as "Exhibit [X]".  The trial transcript will be cited as "Transcript [page:line]".

85983909.8                                     - 2 -

each tenant that occupied more than 10% of the rentable square feet in the buildings at the property in the form specified by the FPSA, as amended ("Acceptable Estoppels").  Stips. 6-7 and 9; *see* Exhibit 1 (FPSA) at 18, §8.1(k)(i) and (ii); *see also* Exhibit 17 (Fifteenth Amendment) at 3–4, §2(b)–(c) (which amended Sections 8.1(k)(i) and (ii) of the FPSA); Exhibit 20 (Escrow Agreement) at 3, §3.2.

       7.      Colorado Cinema Group, LLC was the only tenant that occupied more than 10% of the rentable square feet in the buildings at the Property as of the date of the closing.  Stip. 12.  The lease for the Colorado Cinema Group, LLC covers approximately 72,000 square feet of space (compared to approximately 440,000 for the entire center), generates revenue of approximately $165,000 per month, and runs through 2026.  Transcript 67:17 to 68:11 (Silva, representative for Granite).  The Cinema is the largest tenant by square footage at the property and the "anchor" tenant.  As the anchor tenant, the Cinema attracts considerable foot traffic which generates business for the remaining tenants at the center.  Transcript 68:15-21 (Silva).

       8.      Alberta was required to deliver an Acceptable Estoppel for Colorado Cinema Group, LLC.  For the certificate to qualify as an Acceptable Estoppel, the certificate was required, in relevant part, to be either:

    (a)    substantially similar to the tenant estoppel certificate executed by Colorado Cinema Group, LLC in or about May 2008 (Exhibit 24, "May 2008 Estoppel"); or

    (b)    not materially and adversely modified from the form estoppel included as an exhibit to the FPSA (Exhibit No. 46, "Form Estoppel").

Exhibit 17 (Fifteenth Amendment) at 3–4, ¶ 2(c).

      9.      Pursuant to Alberta and Granite's agreements, if Alberta failed to deliver an Acceptable Estoppel for Colorado Cinema Group, LLC on or before March 1, 2009, the Estoppel

Holdback would be deemed to have been forfeited by Alberta and, upon Granite's written notice to Escrow Holder, Escrow Holder would be required to deliver the Estoppel Holdback to Granite.  *See* Exhibit 17 (Fifteenth Amendment) at pp. 3-4, ¶ 2(c); *see also* Exhibit 20 (Escrow Agreement) at 3, §3.2.

     10.    The relevant tenant estoppel certificate that Alberta delivered to Granite for Colorado Cinema Group, LLC is dated January 13, 2009, and the estoppel is in evidence as Exhibit 23.  *See* Exhibit 23 ("January 2009 Estoppel").

     11.    The January 2009 Estoppel (Exhibit 23), although timely, is not "substantially similar" to the May 2008 Estoppel (Exhibit 24), as required.  The January 2009 Estoppel is not "substantially similar" to the May 2008 Estoppel for at least the following reasons:

    (a)    The May 2008 Estoppel does not reference a "cracked foundation," but the January 2009 Estoppel does reference a "cracked foundation." *Compare* Exhibit 23 at ¶ 5 to Exhibit 24.  The May 2008 Estoppel also does not dispute responsibility for the cracked foundation, but the January 2009 Estoppel does dispute such responsibility.  Paragraph 5 of the January 2009 Estoppel reads:

> Tenant is currently investigating and may dispute Landlord's assertion that Tenant is financially responsible for repairing the <u>cracked foundation</u> that affects the structure of the Demised premises. An investigation is underway to determine which party is responsible for the repair and financial responsibility for such foundation. As of the date of this document, <u>Tenant disputes that it has the responsibility for such repair</u>. Further, Tenant's Proportionate Share for 2008 has not been finalized.

(emphasis added).  There is no similar provision in the May 2008 Estoppel.  *Compare* Exhibits 23 and 24; *see* Exhibit 127 (comparing Exhibits 23 and 24); *see also* Transcript 75:15–22 and 130:20 to 131:5 (Silva)(acknowledging these differences and establishing the substantial nature of these differences).

    (b)    In addition, the May 2008 Estoppel (Exhibit 24) includes a detailed acknowledgement that the Cinema has no claims against the landlord (with limited identified exceptions), but the January 2009 Estoppel (Exhibit 23), in

contrast, has no such acknowledgement or disclaimer. *Compare* Exhibits 23 and 24; *see* Exhibit 128 (comparing the May 2008 Estoppel to the January 2009 Estoppel). The language in the May 2008 Estoppel reads as follows:

> There are no existing claims, defenses or offsets by or in favor of the Tenant against Landlord under the Lease except that Tenant is currently disputing Tenant's Proportionate Share for 2008, including Tenant's share of real estate taxes for the Demised Premises, and Tenant's Proportionate Share for 2007, as well as Tenant's share of real estate taxes for the Demised Premises, has not been finalized.

Exhibit 24 at ¶ 5. The January 2009 deletes this language, and the deletion represents an important and substantial difference between the two estoppel certificates. *See* Transcript 76:21 to 78:6 (Silva).

12. There are substantial differences between the May 2008 Estoppel and January 2009 Estoppel that do not relate to the condition of the property. *Compare* Exhibits 23 and 24; *see* Exhibit 128 (comparing the May 2008 Estoppel to the January 2009 Estoppel); *see also* Transcript 76:21 to 78:6 (Silva)(explaining differences unrelated to property condition and their importance).

13. Even so, because the FPSA includes numerous provisions that relate to the condition of the property as well as the fact that the "as is, where is" clause is preceded by express qualifiers that defer to the remainder of the FPSA, the Deed, and other closing documents, the condition of the property *was* material to the FPSA and Escrow Agreement. *See* Exhibit 1 (FPSA) at 7, §5.1(a); *see also id.* at 12, §7.1 (entitled "Construction of the Buildings"); *id*. at 16, §7.2(f) (requiring Alberta to "promptly notify Granite of any change in any condition with respect to the Property").

14. The January 2009 Estoppel (Exhibit 23) also is not in the form of the Form Estoppel (Exhibit 46) and has been materially and adversely modified from the Form Estoppel.

Compare Exhibits 23 and 46; *see* Exhibits 122, 123, 124 and 126 (comparing various provisions of the two estoppels).  Material and adverse changes to the Form Estoppel, when compared to the January 2009 Estoppel, include the following:

 (a) Paragraph 4 in the Form Estoppel (Exhibit 46) sets forth the monthly rent and additional charges due from the tenant.  Exhibit 46.  Paragraph 4 of the January 2009 Estoppel (Exhibit 23), on the other hand, does not set forth the monthly rent and does not acknowledge any additional charges due from the Cinema.  Exhibit 23; *see* Exhibit 122 (comparing these provisions of Exhibits 46 and 23); *see also* Transcript 69:17 to 70:20 (Silva)(explaining the differences and establishing their materiality).

 (b) Paragraph 5 of the Form Estoppel (Exhibit 46) contains the tenant's affirmation that all obligations of the landlord in connection with occupancy and construction of the tenant space have been satisfied.  Exhibit 46.  The January 2009 Estoppel (Exhibit 23) has deleted this paragraph.  *See* Exhibit 23; *see also* Exhibit 123 (comparing Exhibits 46 and 23); Transcript 71:14–72:5 (Silva)(explaining the differences and establishing their importance).

 (c) There is a Paragraph 5 in the January 2009 Estoppel (Exhibit 23) that references a cracked foundation and disputes responsibility for the cracked foundation which is not in the Form Estoppel (Exhibit 46).  *Compare* Exhibits 23 and 46; *see* Exhibit 125 (comparing Exhibits 23 and 46).

 (d) Paragraph 6 of the Form Estoppel (Exhibit 46) contains the tenant's assurances that tenant has no claim, defense, or offset against the landlord (as of the date of the estoppel), but the January 2009 Estoppel (Exhibit 23) contains no such assurances.  *Compare* Exhibits 23 and 46; *see* Exhibit 124 (comparing Exhibits 23 and 46); *see also* Transcript 72:11–73:10 (Silva)(acknowledging the difference and explaining the significance of the provision).

 (e) Paragraph 7 of the Form Estoppel (Exhibit 46) is intended to protect Granite from an event that does or could, with the passage of time, amount to a landlord default.  Exhibit 46; *see* Transcript 74:17–75:10 (Silva)(explaining the significance of the provision).  The Form Estoppel requires a statement that

> There is no default now existing on the part of the undersigned or of Landlord under the Lease, and there is no event which with notice or the passage of time or both would constitute a default of the undersigned or of Landlord under the Lease.

>However, in is January 2009 Estoppel the Cinema significantly restricts that statement by changing it to
>
>>To Tenant's actual knowledge and belief (without any duty to investigate) there are no defaults now existing on the part of the Tenant or of Landlord under the Lease.
>
>Exhibit 23 at ¶ 6; *see* Exhibit 126 (comparing these provisions of Exhibit 23 and 46).

15. There is nothing in the parties' agreements requiring Granite to inquire into or investigate the merits of the claims set forth in the Cinema's January 2009 Estoppel or to determine whether Alberta or Colorado Cinema Group, LLC was responsible for addressing the problems described in the estoppel certificate. *See* Exhibit 1 (FPSA); *see also* Exhibit 17 (Fifteenth Amendment); Exhibit 20 (Escrow Agreement; Transcript 78:10-22 (Silva) (testifying Granite had no obligation to investigate the dispute between Alberta and the Cinema and that Alberta had a duty to provide unqualified estoppel certificates, "nothing more and nothing less."). Whether Alberta or the Cinema was responsible for repairing the cracked foundation is irrelevant for purposes of determining whether Alberta delivered Acceptable Estoppels. *Id.*

16. Granite objected to the January 2009 Estoppel. *See* Stip. 11; *see also* Exhibit 30 (February 24, 2009, letter from Granite's counsel to Alberta objecting to, *inter alia*, the Cinema's January 2009 Estoppel, before Alberta's March 1, 2009 deadline); Exhibit 34 (March 3, 2009, letter from Granite's counsel to Alberta objecting to, *inter alia*, the Cinema's January 2009 Estoppel, after Alberta's March 1, 2009 deadline).

17. Granite provided written notice to Escrow Holder of Alberta's failure to provide the required Acceptable Estoppels. *See* Exhibit 35 (March 4, 2009, letter from Granite's counsel to Escrow Holder); *see also* Transcript 84:16-31 (Silva)(establishing timeliness of Granite's

notice to Escrow Holder).  It is undisputed that the January 2009 Estoppel was the last tenant estoppel certificate that Alberta delivered for the Cinema.

18. The parties agreed that all interest on the Estoppel Holdback would accrue, and Escrow Holder would hold the interest, for the benefit of the party that ultimately received the Estoppel Holdback.  *See* Exhibit 17 (Fifteenth Amendment) at pp. 3-4, ¶ 2(c) (amending §8.1(i)(ii) of the FPSA)("All interest on the Estoppel Holdback held by Escrow Holder shall accrue for the benefit of the party which ultimately receives the Estoppel Holdback").

19. The amount of interest that accrued on the Estoppel Holdback but which Escrow Holder did not hold and place into the registry of the court totals $8,852.83.  *See* Exhibit 100 (interest calculation by Escrow Holder); *see also* Transcript 135:14 to 136:11 (Blake, representative for Escrow Holder) (testifying that interest in the amount of $8,852.53 was paid to Alberta).

20. The Escrow Holder placed $653,173.31 into the registry of the court on or about December 8, 2010, which consisted of the Estoppel Holdback plus a portion of the accrued interest.  *See* Exhibit 100; *see also* Transcript 138:1–11 (Blake).

21. Alberta and Granite agreed, as part of the Escrow Agreement, that the prevailing party in any dispute arising from the Escrow Agreement is entitled to recover from the non-prevailing party its reasonable and actual attorneys' fees and expenses, including any incurred in connection with any appeal.  *See* Exhibit 20 (Escrow Agreement) at ¶ 12.

22. The dispute between Alberta and Granite that is the subject of this lawsuit arises from the Escrow Agreement.  *See* Exhibit 20 (Escrow Agreement); *see also* Transcript 139:19-25 (Blake).

- 9 -

## PROPOSED CONCLUSIONS OF LAW

1. Alberta did not deliver an Acceptable Estoppel for Colorado Cinema Group, LLC on or before March 1, 2009.

2. All conditions precedent to Granite's receipt of the Estoppel Holdback have been satisfied.

3. Granite is entitled to receive the Estoppel Holdback from the registry of the court along with all accrued interest.

4. As the party ultimately entitled to receive the Estoppel Holdback, Granite is entitled to receive $8,852.83 in interest from Escrow Holder that Escrow Holder should have held for Granite.

5. Alberta is liable to Granite for the reasonable and actual attorneys' fees Granite incurred in relation to the dispute over the Estoppel Holdback, in an amount to be decided by the court.

Dated April 15, 2011

        Respectfully submitted,

        */s/ Paul Trahan*
        OSBORNE J. DYKES, III
        BENJAMIN M. VETTER
        FULBRIGHT & JAWORSKI L.L.P.
        370 Seventeenth Street, Suite 2150
        Denver, CO  80202
        (303) 801-2700 – Telephone
        (303) 801-2777 – Facsimile
        jdykes@fulbright.com
        bvetter@fulbright.com

        PAUL TRAHAN
        FULBRIGHT & JAWORSKI L.L.P.
        600 Congress Avenue, Suite 2400
        Austin, TX  78701
        (512) 474-5201 – Telephone
        (512) 536-4598 – Facsimile
        ptrahan@fulbright.com

        **COUNSEL FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 15, 2011, a true and correct copy of the foregoing **PLAINTIFF GRANITE SOUTHLANDS TOWN CENTER LLC'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** was served upon all counsel of record via hand-delivery, first-class mail postage prepaid, or the CM/ECF system which will send notification of such filing to attorneys for plaintiffs at the following e-mail addresses:

> Stephen L. Waters
> Kimberly A. Bruetsch
> Robinson Waters & O'Dorisio, P.C.
> 1099 18th Street, Suite 2600
> Denver, CO 80202
> swaters@rwolaw.com
> kbruetsch@rwolaw.com
> *Attorneys for Land Title Guarantee*
>
> Stuart N. Bennett
> Jones & Keller, P.C.
> 1999 Broadway, Suite 3150
> Denver, CO 80201
> E-mail: sbennett@joneskeller.com
> *Attorneys for Alberta Town Center, LLC*

                                              */s/  Paul Trahan*