IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-CV-00799-ZLW-KLM

GRANITE SOUTHLANDS TOWN CENTER, LLC,

      Plaintiff

v.

ALBERTA TOWN CENTER, LLC,
LAND TITLE GUARANTEE COMPANY,

      Defendants.

### DEFENDANT ALBERTA TOWN CENTER, LLC'S
### PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendant, Alberta Town Center, LLC (Alberta), by and through its attorneys, Jones & Keller, P.C., hereby tenders, pursuant to the Court's Courtroom Minutes dated February 14, 2011, Doc. No. 183, the following Proposed Findings of Fact and Conclusions of Law:

### I.  INTRODUCTION

In this case Plaintiff, Granite Southlands Town Center, LLC ("Granite"), and Alberta both claim to be entitled to $650,000 that was escrowed from Alberta's December 12, 2008, sale to Granite of the Southlands Town Center shopping center pending Alberta's tender of estoppel certificates from tenants of the shopping center (the "Estoppel Holdback").  The issue before the Court is simply one of breach of contract.  Tr. 5:6-10.  Granite claims that Alberta failed to deliver an estoppel certificate from the Colorado Cinema that met the terms of the parties' contract and therefore is entitled to the Estoppel Holdback.  Alberta claims that the estoppel

-2-

certificate it tendered from Colorado Cinema complied with the contract and therefore Alberta is entitled to the escrowed funds.

## II.     PROPOSED FINDINGS OF FACT

1. On September 29, 2005, Alberta and the predecessor to Granite executed a Forward Purchase and Sale Agreement ("FPSA") pursuant to which Granite agreed to purchase the Southlands Town Center shopping center from Alberta.  Ex. 1, Tr. 51, 52.

2. Also on September 29, 2005, Alberta, Granite's predecessor and LaSalle Bank, on its own behalf and certain other banks, entered into a Tri-Party Agreement (Ex. A) and a Construction Loan Agreement (Ex. B). The Tri-Party Agreement and the Construction Loan Agreement were part of the same financial transaction pursuant to which the parties executed the FPSA.

3. Pursuant to the FPSA, as amended by the Fifteenth Amendment to Amendment and Agreement and Termination Agreement ("Fifteenth Amendment"), (Ex. 17, Tr. 51, 52), Alberta agreed to provide Granite with "tenant estoppel certificates" from the tenants occupying Southlands Town Center no later than March 1, 2009.  Ex. 17, §2(c) amending FPSA §8.1(k)(ii).

4. Under Exhibit 17, §2(c), Alberta was required to provide Granite estoppel certificates from "[e]ach tenant occupying more than 10% of the rentable square feet in the Buildings" at the Southlands Town Center and from "tenants who together occupy at least 75% of the total number of rentable square feet subject to Qualifying Leases at the Closing".  Ex.1, §8.1(k)(i).

5. The requirement to furnish estoppel certificates from the tenants occupying 75% of the rentable square feet was not an issue in dispute.  The parties disputed only whether Alberta

met the requirement to provide estoppels from each tenant occupying more than 10% of the rentable square feet. There was only one such tenant — the Colorado Cinema. Tr. 11:20-12:2.

6. Granite did not dispute that Alberta timely delivered an estoppel certificate from the Colorado Cinema which was delivered in January 2009 ("Cinema Estoppel"). Tr. 16:4-7.

7. The only issue for the Court to decide is whether Cinema Estoppel (Ex. 23) complied with the requirements of the FPSA (Ex. 1) and the Fifteenth Amendment (Ex. 17).

8. Under Exhibit 17, Granite could object to a tendered estoppel certificate only if the estoppel certificate (1) was not in the required form or had been materially and adversely modified from that form, (2) indicated the continuing existence of an actual material default of the landlord under the applicable Lease, or (3) correctly indicated that the tenant's lease includes terms and provisions inconsistent with the Lease delivered to Granite. If Granite failed to "timely or appropriately" object to any estoppel certificate, the certificate was automatically deemed an "Approved Tenant Estoppel Certificate." Ex.17, §2(c). Granite relies only on the first two grounds for rejecting the Cinema Estoppel Certificate. Ex. 23; Tr. 16:23-17:7.

9. On February 24, 2009, Granite's counsel notified Alberta that Granite objected to certain tendered estoppel certificates, including the Cinema Estoppel, "for reasons apparent from the face of the certificates". Ex. 30, February 24, 2009, letter from Granite's counsel, Jane Snoddy Smith; Tr. 51, 52.

10. Exhibit 30 does not specify the grounds on which Granite objected to the Cinema Estoppel other than the recitation "for reasons apparent from the face of the certificates." *Id.*

11. Granite's representative at trial admitted that prior to rejection of the Cinema Estoppel he did not look at the Cinema's lease, did not know whether the Cinema built its own

{JK00267099.1 }

-3-

building, and did not know the Cinema was responsible for the construction of the improvements on its lease. Tr. 121: 1-22. Granite's failure to exercise even a modicum of diligence before rejecting the Cinema Estoppel does not comport the obligation of contracting parties to exercise their rights in good faith.

12.  Paragraph 6 of the Cinema Estoppel (Ex. 23) states: "To Tenant's actual knowledge and belief (without any duty to investigate), there are no defaults now existing on the part of the Tenant or of Landlord under the Lease." Ex. 23, ¶6.

13.  Paragraph five of the Cinema Estoppel states:

> Tenant is currently investigating and may dispute Landlord's assertion that Tenant is financially responsible for repairing the cracked foundation that affects the structure of the Demised Premises. An investigation is underway to determine which party is responsible for the repair and financial responsibility for such foundation. As of the date of this document, Tenant disputes that it has the responsibility for such repair. Further, Tenant's Proportionate Share for 2008 has not been finalized.

Ex. 23, ¶5.

14.  Granite argued that the Cinema Estoppel was properly rejected because the disclosure of a cracked foundation is an indication of a landlord default, that the Cinema Estoppel was materially and adversely modified from the required form and that it was not substantially similar to the May 2008 estoppel certificate from the Cinema ("May 2008 Cinema Estoppel"). Ex. 24; Tr. 8: 8-15.

15.  On August 2, 2004, the Cinema and Alberta's predecessor, Southlands Colorado, LLC, entered into a lease, the relevant terms of which remained effective at the date of the Cinema Estoppel (the "Cinema Lease"). Ex. C. The Cinema Lease provides that a landlord default occurs only if the landlord fails to comply with a material provision of the Cinema Lease

{JK00267099.1 }

-4-

and fails to cure any such failure within 30 days after notice from the Cinema.  Ex. C, Article XV, ¶4.  There was no evidence presented that as of January 13, 2009, the date of the Cinema Estoppel, the Cinema had provided Alberta written notice that the landlord had failed to comply with any material provision of the Cinema Lease or had requested that Alberta cure any alleged failure.

16. Paragraph 6 of the Cinema Estoppel (Ex. 23) recites that there are no defaults on the part of either Tenant or Landlord under the Cinema Lease.  In the absence of any other evidence of a Landlord default under the terms of the Lease, the Court finds that the Cinema Estoppel does not contain an indication of a landlord default under the applicable Lease.

17. Granite also argued that disclosure of a cracked foundation was a material condition of the property that would have entitled Granite to terminate the FPSA and/or recover the Estoppel Holdback.  Section 5.3 of the FPSA, however, specifically provides that Granite had no disapproval right based upon anything relating to the condition of the property.  Granite's managing director, Jay Alexander, admitted that the provisions of §5.3 of the FPSA were inconsistent with his understanding of the forward commitment and did not know why the provision was included.  Testimony of Jay Alexander, by deposition, 23:24-24:23.

18. Granite argued at trial that §7.2(f) of the FPSA required Alberta to notify Granite of any change of condition of the property.  On deposition, however, Mr. Alexander admitted that Alberta's duty to notify Granite of changes in the condition of the property was limited to two circumstances:  (1) where some other warranty or representation is untrue or misleading without the disclosure, and (2) where the change of condition makes any covenant or agreement incapable of being performed.  Alexander Deposition, 32: 10-17.  In order to impose a duty to

disclose all construction defects, Mr. Alexander admitted that §7.2(f) would have to be rewritten by putting a period after the phrase "any change in condition with respect to the property". *Id.,* 33: 21-34: 2.

### III.   CONCLUSIONS OF LAW

1.   The parties each concede that the terms of the FPSA and Fifteenth Amendment are unambiguous. "The interpretation of a written contract and the determination of whether a provision in a contract is ambiguous are questions of law." *Smalley & Co. v. Emerson & Cuming, Inc.*, 808 F.Supp. 1503, 1514 (D. Colo. 1992) (citation omitted); *see also East Ridge of Fort Collins, LLC v. Larimer and Weld Irr. Co.*, 109 P.3d 969, 974 (Colo. 2005). The Court has reviewed the relevant provisions of the FPSA and the Fifteenth Amendment (Ex. 1 and 17) and has determined them to be unambiguous. The Court should not admit parole evidence unless the contract is so ambiguous that the parties' intent is unclear. *In re Parsons*, 272 B.R. 735, 753 (D. Colo. 2001)(citation omitted). While the Court received testimony as to the parties' respective interpretations of the various contract terms, the Court has determined the contracts to be unambiguous as a matter of law and therefore has not considered the witnesses' testimony concerning their interpretations of the contract provisions.

2.   Where the interested parties' rights and legal obligations are governed by an unambiguous contract, the interpretation of the contract is a question of law for the court. *Public Service Co. of Oklahoma v. Burlington Northern R. Co.*, 53 F.3d 1090, 1096 (10th Cir. 1995) citing *Resolution Trust Corp. v. Federal Savings & Loan Ins. Corp.,* 25 F.3d 1493, 1500 (10th Cir. 1994) and *Utah Power & Light Co. v. Federal Ins. Co.,* 983 F.2d 1549, 1553 (10th Cir. 1993).

3. Under Colorado law, an unambiguous contract must be enforced according to its plain language. *Theriot v.* Colorado *Ass'n of Soil Conservation Districts Medical Benefit Plan*, 38 F.Supp.2d 870, 876-877 (D. Colo. 1999) (*citing Board of County Comm'rs v. E-470 Pub. Highway Auth.,* 881 P.2d 412, 420 (Colo. App. 1994) (additional citations omitted)).

4. Under Colorado law, separate agreements that pertain to the same subject matter may be read and construed together. *In re Aristocrat, Inc.* 973 P.2d 727, 731 (Colo. App. 1999). Documents executed together as part of a single transaction should be considered together. *Roemmich v. Lutheran Hospitals & Homes Soc. of America,* 934 P.2d 873, 875 (Colo. App. 1996). Each document can provide assistance in determining the meaning intended to be expressed by the others. *Concerning the Application for Water Rights of the Town of Estes Park v. Northern Colorado Water Conservancy District,* 677 P.2d 320, 327 (Colo. 1984).

5. "When a contractual provision unambiguously resolves the parties' dispute, the interpreting court's task is over" and the contract must be enforced according to its terms. *Level 3 Communications, LLC v. Liebert Corp.*, 535 F.3d 1146, 1154 (10th Cir. 2008).

6. Alberta timely provided Granite with the Cinema Estoppel. Ex. 23; Tr. 16: 4-7. The Cinema Estoppel does not reveal any ground upon which Granite could appropriately object pursuant to the amended FPSA. Because Granite failed to appropriately object, the Cinema Estoppel is an "Approved Tenant Estoppel Certificate" as that term is used in §2(c) of Exhibit 17.

7. As indicated above, the FPSA articulates three permissible grounds for objection to tendered tenant estoppels. Granite, however, failed at the time of objection to identify which of these three grounds formed the basis for its objection to the Cinema Estoppel. Ex. 30. The

{JK00267099.1 }
-7-

Court has considered, however, the grounds advanced by Granite for its objections. The first is whether the Cinema Estoppel indicates the existence of a landlord default.

8. Granite argues that the Cinema Estoppel's disclosure of the presence of a cracked foundation in the Cinema building is an indication of the existence of a landlord default under the Cinema Lease because of the cracked foundation. As noted above, such an argument is negated by the express language of the Cinema Estoppel. The Cinema Estoppel expressly states that no landlord defaults exist under the Cinema Lease:

> To Tenant's actual knowledge and belief (without any duty to investigate), there are no defaults now existing on the part of the Tenant or of Landlord under the Lease."

Ex. 23, ¶6. Accordingly, Granite's objection was not appropriate under the contract.

9. Even if the Cinema's express denial of any landlord defaults were not dispositive of this issue, the Cinema Estoppel does not reveal any facts that could be reasonably construed as constituting a landlord default under the applicable Cinema Lease. Under the Cinema Lease the landlord could only be in default if each of three events occurred. Ex. C, Article XV, ¶4. First, the landlord failed to comply with a material provision of the lease. *Id.* Second, the tenant gave written notice of such non-compliance and, third, the landlord failed to cure within 30 days after the tenant gave written notice. *Id.* In the absence of any one of these elements, no landlord default could exist under the Cinema Lease.

10. The Cinema Estoppel does not indicate that the landlord failed to comply with any material provision of the Cinema Lease. Further, the Cinema Estoppel does not indicate that the Cinema gave written notice of any non-compliance or that the landlord failed to cure any non-compliance. Consequently, nothing in the Cinema Estoppel can reasonably be construed as

indicating the "continuing existence of an actual material default of the landlord under the applicable Lease."  Granite's purported "objection" to the Cinema Estoppel on the basis of a landlord default is, therefore, inappropriate and baseless.

11. As a second ground for objection, Granite argued that the Cinema Estoppel is not in the required form because paragraphs 4, 5 and 7 of the Cinema Estoppel differ from the language of the corresponding paragraphs of Exhibit 46, the form of estoppel attached to the FPSA as Exhibit H.  Tr. 69: 5-16; 71: 18-25; 74: 17-75: 4.

12. Comparison of the Cinema Estoppel to Exhibit 46 is not the appropriate inquiry. The Fifteenth Amendment (Ex. 17) amended Section 8.1(k)(ii) of the FPSA (Ex. 1) to provide that  Granite "may not object to . . .  any Tenant Estoppel Certificate delivered to Buyer . . . for a tenant that is substantially similar to the Tenant Estoppel Certificate for that tenant executed in or about May 2008 and previously delivered to Buyer."  Ex. 17, § 2 (c).  Thus, if the January 2009 Cinema Estoppel is substantially similar to the May 2008 Cinema Estoppel, the Fifteenth Amendment (Ex. 17) specifically authorizes the use of the May 2008 form of estoppel notwithstanding any variances from the form provided in the FPSA.  Ex. 17, §2(c).  The relevant inquiry is therefore whether the Cinema Estoppel provided in January 2009 (Ex. 23) is substantially similar to the May 2008 Cinema Estoppel.  Ex. 24 .

13. Paragraphs 1, 2, 3, 4, 6, 7 and 8 of the January 2009 Cinema Estoppel (Ex. 23) and the May 2008 Cinema Estoppel (Ex. 24) are identical.  Tr. 108-111.  Therefore, as to these paragraphs of the two estoppels there can be no question that they are substantially similar.  To the extent they deviate from Exhibit 46, such deviation does not constitute a ground for objection under the terms of the Fifteen Amendment to the FPSA.  Ex. 17, §2(c).

14.     Only paragraph 5 of the 2009 Cinema Estoppel varies from the provisions of the 2008 Cinema Estoppel.  The next inquiry is therefore whether the changes in paragraph 5 from the May 2008 Cinema Estoppel to the January 2009 Cinema estoppel constitute grounds for objection.

15.     Aside from an indication of a landlord default, the only ground for objection to a tendered tenant estoppel is that it has been "materially and adversely modified" from the required form.  Paragraph 5 of the 2009 Cinema Estoppel has not been "adversely" modified from the 2008 Cinema Estoppel form because the disclosure of a dispute regarding a cracked foundation in not material or adverse.  The term "adverse" means "having opposing interests."  BLACK'S LAW DICTIONARY 53 (6th ed. 1990).

16.     To determine whether the disclosure of a cracked foundation is adverse, it is necessary to review the terms of the Cinema's Lease.  Pursuant to the Cinema Lease, Alberta was obligated only to deliver to the Cinema a "buildable pad."  This required only that the Cinema site be "rough graded" and that utilities be installed within five feet of the site.  Ex. C, Art. III, ¶ 1 and 4.  Alberta made no warranties or representations as to the condition of the buildable pad.  The Cinema, on the other hand, assumed total responsibility for the design, engineering, and construction of the theater building and all its components.  Ex. C at 43-45.  With these obligations the Cinema assumed "sole[] responsib[ility] for the structural integrity of the walls" and agreed to "maintain and repair the Theater."  Ex. C, Art. IV, ¶1.  The Cinema further agreed to indemnify Alberta against "claims arising in connection with the construction" of the Cinema building.  Ex. C, Art III, ¶6.  Thus, the Cinema Lease makes clear that the Cinema, not the landlord, is financially responsible for repairs to the Cinema building.  As a

result, the Cinema's disclosure of the potential need for repairs for which the landlord is not responsible is not an "adverse" modification.

17. The Cinema Estoppel's disclosure of a cracked foundation is also not a material modification of the May 2008 form. Something is material if it "goes to the root of the matter or essence of the contract, and renders substantial performance under the contract impossible." *Interbank Investments, L.L.C. v. Vail Valley Consolidated Water Dist.*, 12 P.3d 1224, 1229 (Colo. App. 2000) (citations omitted). A disclosure by a tenant of a condition relating to the property is not material when viewed in the context of the parties' contracts as a whole.

18. Granite induced Alberta to sell the property by, in part, agreeing to purchase it "on the Closing date in its then 'AS IS, WHERE IS' condition, with all faults." Ex. 1, § 5.1 (a). An "as is-where is" clause reallocates the risk of defects and potential repairs from the seller to the buyer. Where a contract to buy or sell is specifically made "as is, where is, with all their faults," no warranty attaches and it is immaterial that the property turns out to be better or worse than supposed. *Williston on Contracts*, §70:80.

19. By agreeing to the "AS IS, WHERE IS" provisions of the FPSA, Granite assumed the risk that the property may contain defects and that Granite may be responsible for repairs after the closing. The FPSA provided that Granite had no right to "disapprove the Property" and "except as specifically set forth in [the FPSA]" "no right to terminate [the FPSA] as a result of any matter relating to the condition of the Property." Ex. 1, § 5.3 (c). Granite accepted Alberta's disclaimer of "any representation or warranty . . . with respect to . . . the physical condition . . . of the Property and expressly disclaimed and negated "any implied warranty by [Alberta] with respect to the condition of the Property." Ex. 1, §5.1 (b) & (c). By virtue of these provisions,

Granite waived any claims it may otherwise have had against Alberta based on the physical condition of the Southlands Town Center.

20.   To offset this risk, Granite purchased from Alberta all warranties and guarantees from the architects, engineers, contractors, subcontractors and other third parties who participated in the construction of the Southlands Town Center. Ex. 1, Art. II, (f). Thus, the FPSA provided Granite with a remedy should defects exist. That the FPSA provided this remedy demonstrates that the Estoppel Holdback was not intended to compensate Granite for repairs to the property. These provisions render the property's condition immaterial.

21.   The Tri-Party Agreement (Ex. A) confirms the parties' intention that it was Granite's obligation (and the Bank's) to keep themselves apprised of the condition of the property. Ex. A, §7.b. Further, a default under the FPSA was a default under the Loan Agreement entitling the Banks to succeed to Alberta's rights and enforce Granite's obligations under the FPSA. Ex. B, §10.3(e).

22.   As originally written, if Alberta failed to deliver the requisite tenant estoppels, Granite's exclusive remedy under the FPSA was to terminate the FPSA. Ex. 1, § 7.2(i), § 8.1(k)(ii). Another provision of the FPSA, however, prohibited Granite from terminating the agreement "as a result of any matter related to the condition of the Property." Ex. 1, § 5.3(c).

23.   Prior to the closing, the parties executed the Fifteenth Amendment, which replaced Granite's termination right with the Estoppel Holdback provision. Compare Ex. 1, § 8.1(k)(ii) with Ex. 17, ¶2 (c). The Fifteenth Amendment did not, however, alter the "material and adverse modification" or "landlord default" objection standards and did not add the property's condition as a basis for objection. *Id.* Moreover, none of the amendments to the

FPSA altered the "AS IS, WHERE IS" nature of the agreement, Alberta's disclaimer of warranties or representations, or Granite's waiver of its right to terminate due to the condition of the property. The Fifteenth Amendment only changed Granite's remedy should Alberta fail to provide the required estoppels. Granite could not claim the right to the Estoppel Holdback based upon the condition of the property, just as it could not have terminated the FPSA under the previous version of § 8.1(k)(ii) based upon the property's condition. The Cinema's disclosure of a cracked foundation requiring repair is therefore immaterial and does not entitle Granite to the $650,000 Estoppel Holdback.

24. As found above, Granite's representative admitted that, prior to rejection of the Cinema Estoppel, he did not look at the Cinema Lease, did not know whether the Cinema built its own building, and did not know the Cinema was responsible for the construction of the improvements on its Lease. Tr. 121: 1-22. Each party to a contract owes the duty of good faith performance and impliedly covenants not to interfere with the right of the other to the fruits of its bargain. *Ryder Truck Rental, Inc. v. Central Packing Co.,* 341 F. 2d 321, 323 (10th Cir. 1965). Granite's failure to consider the terms of the Cinema Lease before objecting to the Cinema Estoppel amounts to bad faith and an attempted interference with Alberta's right to receive the Estoppel Holdback.

25. Granite attempted to parse the language of §7.2(f) of the FPSA to impose an obligation on Alberta to disclose all changes in the condition of the property and thereby suggest that the condition of the property was indeed material under the FPSA. Tr. 203:24-204:16. Section 7.2(f) of the FPSA has two qualifications on Alberta's duty to notify Granite of changes in the property's condition. The first is those changes that would make any representation or

warranty of Seller misleading and, second, which makes any covenant or agreement incapable of being performed.  Ex. 1, 7.2(f).  Granite would read these two qualifiers to apply only to any "event or circumstance of which Seller has knowledge" and not to changes in any condition of the property.  This reading is grammatically incorrect and strained, rendering, in effect, the entire AS IS, WHERE IS provisions of the contract null and void.  Courts should avoid strained interpretations of contracts and should enforce them as written.  *In re Parsons,* 272 B.R. 735, 753 (D. Colo. 2001)(citation omitted).  Effect should be given to each word of the contract, if possible.  *Id.*  A contract should be interpreted in its entirety to harmonize all its provisions so that none will be rendered meaningless.  *Roberts v. Adams,* 47 P.3d 690, 694 (Colo. App. 2001).  The Court therefore holds that Alberta was obligated to notify Granite of changes in the condition of the property only if the changes would make a representation or warranty of Alberta misleading or would make any covenant or agreement contained in the FPSA incapable of being performed.  As such, changes in the condition of the property were not material under the FPSA unless one of these two conditions were met.  Nothing in the FPSA required disclosure of the Cinema's position regarding the cracked foundation of the Cinema building.

26. In order to find in Granite's favor, the Court would have to rewrite the FPSA by deleting the "AS IS, WHERE IS" provisions of section 5 and rewriting the provisions of §7.2(f), both of which render the property's condition immaterial.  The Court has no such authority.  *Randall & Blake, Inc. v. Metro Wastewater Reclamation Dist.*, 77 P.3d 804, 806 (Colo. App. 2003).

27. Alberta is entitled to judgment that Alberta, not Granite, is entitled to payment of the $650,000 Estoppel Holdback and an order directing the Clerk of the Court to deliver the

Estoppel Holdback, together with all accrued interest, to Alberta, as required by the Fifteenth Amendment.

DATED:  April 15, 2011.

                Respectfully submitted,

                *s/    Stuart N. Bennett*
                Stuart N. Bennett
                **JONES & KELLER, P.C.**
                1999 Broadway, Suite 3150
                Denver, CO 80202
                Telephone:     (303) 573-1600
                Fax:                (303) 573-8133
                E-mail:            sbennett@joneskeller.com
                Attorneys for Defendants Alberta Town Center, LLC, Donald G. Provost and Peter M. Cudlip

# CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | | |
|---|---|---|
| *Attorneys for Plaintiff & Counter Defendant Granite Southlands Town Center, LLC* | jdykes@fulbright.com<br>bvetter@fulbright.com | Osborne J. Dykes, III<br>Benjamin M. Vetter<br>Fulbright & Jaworski LLP<br>370 – 17th Street, Suite 2150<br>Denver, CO   80202 |
| *Attorneys for Plaintiff & Counter Defendant Granite Southlands Town Center, LLC* | ptrahan@fulbright.com | Paul Trahan<br>Fulbright & Jaworski LLP<br>600 Congress Avenue, Suite 2400<br>Austin, TX  78701 |
| *Defendant Land Title Guarantee Company* | kbruetsch@rwolaw.com | Kimberly A. Bruetsch<br>Robinson, Waters & O'Dorisio PC<br>1099 – 18th Street, 26th Floor<br>Denver, CO   80202 |
| *Defendant Allan G. Provost* | dbp@haplaw.net | Dennis B. Polk<br>Holley, Albertson & Polk, P.C.<br>1667 Cole Boulevard, Suite 100<br>Golden, CO   80401 |

And I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner indicated by the non-participant's name:    NONE

    *s/    Stuart N. Bennett*
    Stuart N. Bennett
    Attorneys for Defendants Alberta Town Center, LLC,
    Donald G. Provost and Peter M. Cudlip
    JONES & KELLER, P.C.
    1999 Broadway, Suite 3150
    Denver, CO 80202
    Telephone:     303-573-1600
    Fax:               303-573-8133
    E-mail:           sbennett@joneskeller.com