UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
------------------------------------------------------X
GRANITE SOUTHLANDS TOWN CENTER, LLC

                Plaintiff,

     - v -

ALBERTA TOWN CENTER and
LAND TITLE GUARANTEE COMPANY.
                Defendants.
------------------------------------------------------X

09 CV 799 (SJ)

MEMORANDUM
AND ORDER

A P P E A R A N C E S:

FULBRIGHT & JAWARSKI LLP
370 Seventeenth St. 600 Congress Ave., Suite 2150
Denver, CO 80202
By:    Osborne J. Dykes, III
         Benjamin M. Vetter
         Windy B. McCracken

600 Congress Ave., Suite 2400
Austin, TX 78701
By:    Paul Trahan
Counsel for Plaintiff

**Attorneys for Plaintiff**

ROBINSON WATERS & O'DORISIO, P.C.
1099 18th Street, Suite 2600
Denver, CO 80202
By:    Stephen L. Waters
         Kimberly A. Bruetsch

**Attorneys for Defendant Land Title Guarantee**

JONES & Keller, P.C.
1999 Broadway, Suite 3150
By:    Stuart N. Bennett
         Kenneth B. Danielsen

**Attorney for Defendant Alberta Town Center, LLC**

JOHNSON, Senior District Judge:

Presently before the Court is a contract dispute between Granite Southlands Town Center, LLC ("Plaintiff" or "Granite") and Alberta Town Center, LLC ("Defendant" or "Alberta").  The matter came before the Court on a bench trial held on February 14, 2011.[1]  In dispute is which party is entitled to the $650,000 plus accrued interest that had been placed in escrow pursuant to the purchase and sale of a large commercial property in Aurora, Colorado.  Faced with conflicting claims for the amount in escrow, the escrow agent, Land Title Guarantee ("Land Title" or the "Escrow Agent"), refused to release the funds to either Granite or Alberta.[2]  Consequently, Granite filed suit against Alberta and added Land Title as a nominal defendant.[3]  After the trial both parties submitted proposed findings of fact and conclusions of law.  Upon consideration of the evidence presented at the bench trial and the entire record, including the exhibits submitted, the Court makes the following Findings of Fact and Conclusions of Law.

---

[1] The bench trial followed the denial of Alberta's motion for partial summary judgment by United States District Judge Weinsheink.  (See Docket Entry ("DE") 107, J. Weinsheink's Order, dated Feb. 9, 2010.)  Testifying on behalf of Granite were: Christopher C. Silva ("Silva"), an employee of Blackrock; Land Title executive, Thomas Blake ("Blake"); Peter M. Cudlip ("Cudlip"), a partner at Alberta; and Angela Kravolec ("Kravolec").  Testifying on behalf of Alberta was Donald Provost ("Provost), a partner at Alberta.

[2] Plaintiff's ("Pl.'s") Exhibit ("Ex.") 36 (letter from Land Title to the parties dated Marc. 6, 2009); see also Trial Transcript ("Tr.") 137 (Blake Testimony).

[3] Granite filed its Original Complaint against Alberta on April 8, 2009, seeking a declaratory judgment that it is entitled to the escrowed funds as well as damages in form of attorneys' fees and cost.  On September 19, 2009, Granite amended the complaint to add fraudulent claims against Alberta's principals. Those claims were dismissed by Judge Weinshienk on December 29, 2009, and the principals are no longer parties in this action. (DE 85 Judge Weinsheink's Order, dated Dec. 29, 2009 ("J. Weinsheink's December 29 Order.")

2

# I.

# **FINDINGS OF FACT**

1. On September 22, 2005, Granite and Alberta executed a Forward Purchase and Sale Agreement ("the FPSA")[4] for a 450,000-square-foot two-story retail shopping center located in Aurora, Colorado known as the Southlands Town Center (the "Property").[5] At that time, the Property was still under development and the FPSA was meant to serve as a means to finance the construction of the Property. The parties initially expected to close on the transaction shortly after construction of the Property was completed in October 2006. Due to financing issues, however, the closing was extended to December 12, 2008 (the "December Closing Date").[6]

2. Section 8.1(k)(i) of the FPSA required Alberta to execute and deliver to Granite, as a precondition or condition precedent to Granite's obligation to close, certain "tenant estoppel certificates" by which the tenants of the Town Center would warrant certain information about their leases.[7] Specifically, under Section 8.1(k)(1) Alberta was required to deliver estoppels from any individual tenant "occupying more than 10% of the rentable square feet" of the Property, and collectively from tenants "who together occupy at least 75% of the total number of rentable square feet . . . . (collectively, the 'Required Estoppels')."[8]

---

[4] DE 126, Stip at 8; see also Pl.'s Ex. 1, FPSA; Tr. 54 (Silva Testimony); Tr. 150 (Blake Testimony). As Silva explained, a Forward Purchase and Sale Agreement governs the purchase of a property at a later date. Like all futures contracts, one of the advantages of such an arrangement is that it allows the buyer the ability to set the price at the time of contracting, with the hopes that the value of the property would appreciate before the buyer actually acquires title. (Tr. 57, 86.)

[5] DE 126, Final Pretrial Order, Stipulation ("Stip.") at 8; Tr. 42, 67 (Silva Testimony); Tr. 142 (Provost Testimony).

[6] Pl.'s Ex. 14, FPSA, Fourteenth Amendment; Tr. 166 (Provost); Tr. 215 (Cudlip Testimony).

[7] DE 126, Final Pretrial Order Stip. at 8; Pl.'s Ex. 1, FPSA, Article VIII, Buyer's Conditions Precedent to Closing, § 8.1(k)(i); see also Tr. 10, 206 (Cudlip Testimony).

[8] Pl's Ex. 1, FPSA, Article VIII, Buyer's Conditions Precedent to Closing, § 8.1(k)(i) (emphasis added).

3. The FPSA further specified that the Required Estoppels were to be in the form attached to the FPSA as Exhibit H (the "Required Form").[9] The Required Form includes, in relevant part, the following four delineated paragraphs:

   4. Tenant is currently obligated to pay annual base rental in monthly installment of $___ per month and monthly installments of annual base rental have been paid through. . . . Tenant has no claim or defense against Landlord under the Lease and is asserting no offsets or credit against rent or additional rent. Tenant has not claim against Landlord for any security deposit or other deposit except $___ which security deposit was paid pursuant to the Lease.
   5. Landlord has performed all of its obligations, if any, required to have been performed by Landlord prior to the date hereof under the Lease, including, if required under the Lease, making any repairs required to be made by Landlord. . . .
   6. There is no existing defense, offset, lien or claim or counterclaim by or in favor of the undersigned or of Landlord under the Lease or against the obligations of the undersigned under the Lease . . . and Tenant is not contesting any such obligations, rentals or charges.
   7. There is no default now existing on the part of the undersigned or of the Landlord under the Lease, and there is no event which with notice or the passage of time or both would constitute a default of the undersigned or of Landlord under the Lease.[10]

4. Pursuant to its duty under the FPSA to secure tenant estoppel certificates within 30-days of the closing date, Alberta secured a set of tenant estoppel certificates in preparation for the May 2008 closing (the "2008 Estoppels").[11] The parties later agreed to further postpone the closing date to December 15, 2008, with the understanding that Alberta would secure updated tenant estoppels for the December Closing Date.[12]

5. Prior to the December Closing Date, in November 2008, Alberta attempted to deliver the identical 2008 Estoppels to Granite. Granite rejected those estoppels on the grounds that the certificates were more than six-months old.[13] Due to financing

---

[9] Pl.'s Ex. 1, FPSA Article VII, <u>Construction of the Buildings Other Seller's Covenants; Other Seller Covenants</u> at § 7.2 (i).

[10] Pl.'s Ex. 46, FPSA, Ex. H.

[11] Tr. 9, 10; Pl.'s Ex. 24, Cinema's May 2008 Estoppel Certificate (the "2008 Cinema Estoppel").

[12] Pl.'s Ex. 1, FPSA, 14th Amendment.

[13] Tr. 6 (Silva Testimony). Sometime in November 2008, Granite informed Alberta that it was no longer interested in pursuing structured debt financing to close on the transaction, and wanted to execute a

issues, however, the parties could not further postpone closing and decided to proceed with the closing even when it became clear that Alberta would not be able to timely deliver updated tenant estoppels Granite for the December Closing Date.

6. Even though the parties had to move forward with the closing, they amended the FPSA on December 8, 2008 to address the issue of stale estoppels: the Fifteenth Amendment to Amendment and Agreement and Termination Agreement (the "Fifteenth Amendment").[14] The parties agreed, as part of the Fifteenth Amendment, to place $650,000 of the closing funds into an escrow account maintained by an escrow agent. Alberta, in turn, was obligated to provide updated estoppels on or before March 1, 2009.[15]

7. The Fifteenth Amendment provided Granite with the right to object to any tenant estoppel certificate if such certificate:

> is not in the form required under Section 7.2(i) or has been materially and adversely modified from that form, or (ii) indicates the continuing existence of an actual material default of the landlord under the applicable Lease, or (iii) correctly indicates that the Lease includes terms and provisions that are inconsistent with the Approved Leasing Guidelines or terms and provision that are inconsistent with the applicable lease delivered to Buyer by delivering a written notice of objections. . . . [16]

8. However, the Fifteenth Amendment also restrained Granite's ability to object to a delivered tenant estoppel, providing in relevant part:

> Buyer may not object to . . . ."[a]ny Tenant Estoppel Certificate delivered to Buyer on or after the date that is 30 days before the Closing Date for a Tenant Estoppel Certificate that is substantially similar to the Tenant Estoppel Certificate for that tenant executed in or about May 2008 and previously delivered to Buyer.[17]

---

straight purchase of the asset pursuant to the FPSA (Tr. 170–71, Provost Testimony).

[14] DE 126, Stip at 8; see also Pl.'s Ex. 17 at 17a-001, Fifteenth Amendment, Recitals at ¶ A.

[15] DE 126, Final Pretrial Order, Stip. at 9.

[16] Pl.'s Ex. 17, Fifteenth Amendment of the FPSA, § 2(c) at 17a-003.

[17] Id. Alberta, in its motion for partial summary judgment submits that the 2009 Cinema Estoppel at issue here was substantially similar to the 2008 Cinema Estoppel. In denying the motion, J. Weinsheink considered and rejected this claim, and this Court does not disturb her findings. (DE 107, J.

9. With respect to the $650,000 to be placed in escrow, the Fifteenth Amendment, provides in relevant part:

   "If, prior to the Closing date, Seller object fails to deliver the Required Estoppels, (x) Seller shall be obligated to continue to use commercially reasonable efforts to obtain the Required Estoppels after the Closing, and (y) Escrow Holder shall retain Six Hundred Fifty Thousand and No/100 Dollars ($650,000.00) of the Excess Funds at Closing ("Estoppel Holdback"). . . . Upon Seller's delivery of the Required Estoppels to Buyer, Buyer shall instruct Escrow Holder by written notice to Escrow Holder to deliver the Estoppel Holdback to Seller. . . . and (ii) should Seller fail to deliver the Required Estoppels to Buyer . . . on March 1, 2009, Buyer and Seller agree Escrow Holder Shall Deliver the Entire Estoppel Holdback to Buyer upon written notice to Escrow Holder from Buyer , and the amount of the Estoppel Holdback shall be deemed to have been forfeited by Seller.[18]

10. On the December Closing Date, Granite and Alberta executed a Release and Termination Agreement which expressly provided that "notwithstanding anything to the contrary contained herein, any obligations of the Parties under the following agreements are expressly not released or waived" inclusive of Alberta's obligation, under Section 8.1(k) of the FPSA, to deliver tenant estoppel certificates, at or after the closing, dated within 30 days of the closing of the Town Center.[19]

11. On the December Closing Date, pursuant to the terms of the Fifteenth Amendment, Alberta and Granite, along with Land Title, also executed an escrow agreement (the "Escrow Agreement"), which provides that "Upon Alberta's delivery of the Required Estoppels to Granite, Granite shall instruct Escrow Holder by written notice to deliver the Cash Funds to Alberta. . . ."[20] The Escrow Agreement also provides that the "Escrow Agent shall disburse Cash Funds in accordance with the

---

Weinsheink's Feb. 09, 2010 Order at 7–9.) Thus, as explained more fully in Part II below, to the extent that Alberta's defense to this action is that the 2009 Cinema Estoppel's reference to a cracked foundation is not material because the Cinema's 2009 is "substantially similar," to the Cinema's 2008 certificate, this Court rejects it.

[18] Pl.'s Ex. 17, the Fifteenth Amendment, § 4.1 Purchase Price at 17a-004.

[19] Pl.'s Ex. 18, Release and Termination Agreement at 005; Tr. 61 (Silva Testimony).

[20] Pl.'s Ex. 20, the Escrow Agreement, § 3.2 Disbursement of Cash Funds and Holdback at 20-003.

final order, judgment or decree of any court of competent jurisdiction which may be filed, entered, or issued."[21]

12. Before the March 1, 2009 deadline, Alberta timely delivered to Granite eighty-five (85) tenant estoppels covering for tenants that together occupy at least 75% of the total number of rentable square feet, and including an updated tenant estoppel from the Colorado Cinema Group, LLC (the "Cinema")—the only Town Center tenant occupying more than 10% of the rentable square footage of the Property (the "2009 Cinema Estoppel").[22]

13. Granite timely objected to nine (9) of these delivered tenant estoppels—among which was the 2009 Cinema Estoppel—on the grounds that said estoppels were not "[i]n accordance with Section 8.1(k)(ii) of the FPSA," and "for reasons apparent from the face of the certificates."[23] The Cinema's Estoppel is the only disputed estoppel at issue here because it is the only tenant that leases more than 10% of the rentable square footage, and with respect to the balance of the eight, Alberta has complied with the 75% threshold of delivering tenant estoppels regardless of whether they are accepted or not.[24]

14. The 2009 Cinema Estoppel included language that discloses to Granite for the first time the existence of a cracked foundation and structural defects in the portion of the Property that Cinema leases.[25]

15. Alberta was aware of Cinema's concerns as early as six-months prior to closing, and had, in fact, hired engineers and lawyers to investigate and address the issue.[26]

---

[21] Id. at §3.3 Court Order.

[22] DE 126, Final Pretrial Order, Stip at 10; Pl.'s Ex. K, letter from Alberta to Granite (providing notice of the delivery of the Required Estoppels); Pl.'s Ex. 23, the 2009 Cinema Estoppel.

[23] Pl.'s Ex. 30, email from Granite's counsel to Alberta's counsel dated Feb. 24, 2009 (objecting to nine tenant certificates; Pl.'s Ex. 34, email from Granite's counsel to Alberta's counsel dated Marc. 3, 2009 (explaining that it was rejecting estoppels for the reasons permitted by the FPSA).

[24] The "at least 75%" requirement is not at issue in present dispute. (See DE 107, J. Weinsheink's December Order at FN1.

[25] Pl.'s Ex. 23, the 2009 Cinema Estoppel.

[26] Tr. 187, 204, 222–24, 229 (Cudlip Testimony); Tr. 237 (Kralovec Testimony); Def.'s Ex. 116-004

16. Other provisions of the FPSA raised by the parties include the following:

   (i) Section 5.1 of the FPSA specified that "Buyer acknowledges, understands and agrees . . . (iii) except as expressly set forth herein and except for those warranties expressly set forth, or implied by law, in the Deed or other documents, delivered to at the Closing, the Property is being sold to Buyer on the Closing date in its then 'AS IS, WHERE IS' condition," with all faults.[27]

   (ii) Furthermore, Section 5.3(c) also specified that "Buyer's right to access the Property and perform additional test and inspections is in no way to be inferred or interpreted as Buyer's right to prohibited Granite from terminating the agreement "as a result of any matter related to the condition of the Property."[28]

   (iii) Section 7.2(f) of the FPSA addressed Alberta's obligations to Granite in the event of a "<u>Change in Condition</u>" providing, "Seller shall promptly notify Buyer of any change in any condition with respect to the Property or any portion of thereof or of any event or circumstance of which Seller has knowledge subsequent to the date of this Agreement which (a) makes any representation or warranty of the Seller to Buyer under this Agreement untrue or misleading, or (b) makes any covenant or agreement of Seller under this Agreement incapable of being performed."[29]

17. In this action, Granite contends that the 2009 Cinema Estoppel materially and adversely diverges in from the FPSA's Required Form.  Furthermore, in its divergence, it discloses for the first time a cracked foundation and structural

---

and Pl.'s Ex. 47-001 (email between Alberta employees discussing request of Ground Engineering "research a sonar study of the cinema foundations," dated June 20, 2008); Pl. Ex. 42 (letter from Ground to Alberta on foundations research, dated Sept. 8, 2008); Pl.'s Ex. 56 (Town Center requesting proposals for engineering services related to some of the cinema's structural issue, dated Nov. 19, 2008);  Pl.'s Ex. 65 (letter from Alberta's counsel to Cinema's counsel disputing responsibility for cracked foundation, dated Dec. 18, 2008).

[27] Pl. Ex. 1, FPSA, Article V, <u>Inspection</u>, §5.1.

[28] Pl.'s Ex. 1, FPSA, Article V, <u>Inspection</u>, §5.3(c).

[29] Pl.'s Ex. 1, FPSA, Article VII, <u>Construction of the Buildings</u>; <u>Other Seller Covenants</u>, §7.2(f) at 023.

defects, exposing Granite to potential claims by the Town Center's anchor tenant—thus depriving Granite of the very protection it had bargained for under the terms of the Fifteenth Amendment and the Escrow Agreement.

18. Alberta contends that Granite had no right to object to the estoppel because Granite was aware of the cracked foundation issue ahead of the closing which, in any event, is not a material issue because it is not an actual landlord default.[30] Alberta also asserts that the Estoppel Holdback was not meant to protect Granite against future tenant claims in the event that Alberta failed to deliver valid or "clean" tenant estoppels. Rather, Alberta maintains, the Estoppel Holdback's only purpose was to ensure timely delivery of the Required Estoppels, which Alberta has undisputedly done, and hence it should prevail in this action.[31]

## II.
## CONCLUSIONS OF LAW

The sole claim before this Court is for a breach of contract based on the parties' conflicting interpretations of the FPSA as it pertains to the issue of whether the 2009 Cinema Estoppel fulfilled Alberta's obligations under the FPSA. The parties do not dispute that Colorado contract law applies.

"Under Colorado law, contracts should be interpreted consistently with the well-established principles of contractual interpretation." Level 3 Communications, LLC v. Liebert Corp., 535 F.3d 1146, 1154 (10th Cir.) (citing Allstate Ins. Co. v. Huizar, 52 P.3d 816, 819 (Colo.2002). "A court's primary obligation is to effectuate the intent of the contracting parties according to the plain language and meaning of the contract." Albright v. McDermond, 14 P.3d 318, 322 (Colo. 2000). "Absent an

---

[30] Def.'s Ex. 66 (email from Cudlip to Provost stating that Granite was aware of the cracked foundation, dated Feb. 24, 2009).

[31] Tr. 28, 29, 171 (Provost Testimony).

indication the parties chose to deviate from plain meaning, the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words used. In other words, common usage prevails, and strained constructions should be avoided." Level 3, 535 F.3d at 1154. As a rule, the interpretation of contract and whether it is ambiguous are both a question of law. Pub. Serv. v. Meadow Island Ditch Co. No. 2, 132 P.3d 333, 339 (Colo. 2006). A contract is ambiguous if it is "reasonably susceptible to more than one interpretation," and parol or extrinsic evidence is conditionally admitted to determine whether it is ambiguous. Level 3, 535 F.3d at 1155.

As an initial matter, the Court rejects Alberta's argument that Granite could not, per the parties' Closing Agreement, properly object to the 2009 Cinema Estoppel because it was "substantially similar" to the 2008 estoppel provided by the Cinema. As noted in footnote 17, supra, Judge Weinsheink has already found that the 2008 and 2009 Cinema estoppels are not "substantially similar." It follows then that the Closing Agreement does not control.

Here, there is no dispute that as provided for in FPSA Section 8.1(k)(ii), Granite could properly object to the 2009 Cinema Estoppel is if the estoppel:

    (1) is not the form required by Exhibit H of the FPSA or has been materially and adversely modified from that form;
    (2) indicates the continued existence of an actual material default of the landlord under the applicable lease; or
    (3) correctly indicates that the tenant's lease includes terms and provisions inconsistent with the lease delivered to Granite.

Thus, under the common sense meaning of the word _**"or"**_ Granite was well within its rights to object if just one of the above conditions were met.

The purpose of the tenant estoppels was to protect Granite from potential claims from tenants. A review of Paragraphs 4–7 of Exhibit H, as noted more fully in paragraph 3 of the Court's fact findings, shows that Granite wanted tenants to warrant, in sum: (i) that the tenant had no existing claim or defense against the landlord under the existing lease; (ii) that the landlord had perform all of its obligations; (iii) that the tenant had no defense, offsets, and claims against a new landlord, and (iv) did not know of any existing default or event that could constitute default in the future.

Based upon the Court's fact findings, the Court concludes that disclosure of the Cinema's cracked foundation was both "material" and "adverse." First, there is no question that the 2009 Cinema Estoppel was modified from the Required Form in at least four (4) ways—the most significant of which being the disclosure of the Cinema's cracked foundation and structural defects, which exposes Granite to potential claims of liability by the Property's anchor tenant. The parties negotiated the Tenant Estoppel in the original FPSA and the provision survived the numerous amendments to the FPSA—indicating the importance that clean tenant estoppels played in the closing of the transaction.[32] Exposure to potential claims such as a tenant's assertion that the

---

[32] The Court specifically credited Silva's testimony that the purpose of the estoppel was to provide "some security in the event that there was a problem with some of these estoppels (Tr. 66), and found Provost's testimony that a cracked foundation would not material to him as a buyer, is simply not credible. (Tr. 181–82, 192.)

building itself is faulty deprives Granite of the very protection it bargained for in the original Tenant Estoppel, and in the subsequent Estoppel Holdback—potential tenant claims for problems that existed prior to closing.[33] See Level 3, 535 F.3d at 1154 (stating that "in construing a contract courts must also 'consider the subject matter, the object of making it, the sense in which the parties naturally understood it at the time it was made, and the purposes and objects to be accomplished thereby. . . .'" (quoting Total Petroleum, Inc. v. Farrar, 787 P.2d 164, 167 (Colo. 1990)).

Alberta contends that the 2009 Cinema Estoppel provides only notice of an incomplete investigation concerning which party is responsible for repairing cracks in the Cinema building foundation, rather than notice of an existing landlord default. Specifically, Alberta argues that under the express terms of the separate lease agreement between the Cinema and Alberta, it is the Cinema that is financially responsible for repairs to the Cinema building; Alberta thus has no obligation to repair the Cinema's cracked foundation.

The record shows, however, that there is a genuine difference of opinion between the Cinema and Alberta concerning who is ultimately liable for the Cinema's foundation problems. For example, while there is evidence in the record that Alberta believed that that the Cinema bore the duty for any structural defects, the record also

---

[33] Silva testified that the Cinema is by far the Town Center's largest tenant as it occupies 72,000 square feet of the 420,000 square feet of the Property, and its lease, which ran until 2026, generated nearly two million dollars in annual revenue for the landlord. (Tr. 7, 14, 15, 10, 59.)

shows that the Cinema contested this position.[34] Furthermore, notwithstanding Alberta's claims, the record also shows that Alberta nevertheless took steps to investigate the issue and retained legal counsel in connection with this dispute with the Cinema.[35] Having already retained legal counsel in its dispute with the Cinema, the Court's must reject Alberta's position that the cracked foundation immaterial. Whatever the ultimate merits of a potential claim against Granite by the Cinema, Granite will still have to defend it. This expenditure of resources on a tenant condition existing prior to the December Closing Date, even if Granite ultimately prevails, is precisely what the tenant estoppels provision in the FPSA intended.

The Court also rejects Alberta's arguments that other provisions of the FPSA overcome the validity of Granite's objections to the 2009 Cinema Estoppel. Specifically, Alberta contends that the disclosure of the cracked foundation was not material or adverse because: (i) Granite had an unconditional duty to close pursuant to the FPSA's "AS IS, WHERE IS" and termination provisions—which bar Granite from terminating the deal based upon the condition of the Property; (ii) Alberta did not make

---

[34] Def.'s Exs. 49–51; Pl.'s Ex. No. 39-001 (email from the Cinema to Alberta stating that it was the Cinema's position that the cracked foundation "is the responsibility of the landlord to correct," dated Sept. 16, 2008.)

[35] Tr. 187, 204, 222–24, 229 (Cudlip Testimony); Tr. 237 (Kralovec Testimony); Def.'s Ex. 116-004 and Pl.'s Ex. 47-001 (email between Alberta employees discussing request of Ground Engineering "research a sonar study of the cinema foundations," dated June 20, 2008); Pl. Ex. 42 (letter from Ground Engineering to Alberta on its foundations research on the Property, dated Sept. 8, 2008); Pl.'s Ex. 56 (Town Center requesting proposals for engineering services related to some of the cinema's structural issue, dated Nov. 19, 2008); Pl.'s Ex. 65, (letter from Alberta's counsel to Cinema's counsel disputing responsibility for cracked foundation, dated Dec. 18, 2008).

any representations or warranties to Granite concerning the condition of the Property; (iii) the FPSA provides Granite with a defense if a defect exists because Granite purchased from Alberta all the relevant warranties and guarantees from third-parties who participated in the construction of the Property; and (iv) finally, in any event, Granite was well aware of the cracked foundation issue.[36]

The Court finds none of these contentions persuasive. First, Alberta's reliance on As Is/Where Is and termination provisions of the FPSA is misplaced. Those provisions operate to constrain Granite from suing Alberta post-closing with respect to the condition of the Property. They do not directly bear on the operative issues here: namely, Alberta's obligation and failure to deliver updated Required Estoppels wherein tenants affirm, among other things, that there were no existing issues or potential claims/defenses against the landlord; and Granite's remedy for Alberta's failure to do so. It follows then that Court is bound to construe the As Is/Where Is and termination provisions in harmony with the controlling Fifteenth Amendment of the FPSA and the Escrow Agreement. See Pepcol Mfg. Corp. v Denver Union Corp., 687 P.2d 1310, 1313–14 (Colo. 1984) (an integrated contract in the first instance is to be interpreted in its entirety with the end view of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless); see also Level 3, 535 F.3d at 1154 (noting that is a general principle of contract interpretation that "while every relevant provision must be considered and given effect, 'a more specific provision

---

[36]Tr. 50, 162 (Provost Testimony).

controls the effect of general provisions.'") ((citing <u>E-470 Pub. Highwayu Auth. v. Jagow</u>, 30 P.3d 798, 801 (Colo. Ct. App. 2001) <u>aff'd</u>, 49 P.3d 1151 (Colo. 2002)).

Second, concerning Alberta's argument on Granite's potential remedies and the lack of actual landlord default, even assuming the warranties/guarantees Granite assumed under the FPSA would ensure a successful defense of a potential claim for the Cinema's structural problems, the time and expense of defending against a problem that existed prior to the December Closing Date is not what Granite bargained for.

Finally, concerning Alberta's claim of Granite's knowledge of the cracked foundation, the record shows that Alberta was aware of the cracked foundation at least six-months prior to the December Closing Date. While Alberta might have conveyed this information to Granite's representatives orally, there is simply no evidence in the record that Alberta ever provided Granite with notice of this issue.[37]

Accordingly, the Court finds that the 2009 Cinema Estoppel modified in "material" and "adverse" ways from the Required Form. As such, Granite was not required to accept the 2009 Cinema Estoppel, and is entitled to the funds in escrow.

---

[37] Tr. 73 (Silva Testimony); Tr. 204, 229 (Cudlip Testimony); Tr. 230–31, 236–37 (Kralovec Testimony).

## **CONCLUSION**

Based on the foregoing, the Court finds in favor of Granite on its breach of contract claim. Accordingly, it is

ORDERED that the Clerk of Court shall enter judgment in favor of Plaintiff Granite Southlands Center, LLC and against Defendant Alberta Town Center, LLC.

This ruling makes it unnecessary to discuss any other issues raised by the parties.

SO ORDERED.

DATED:      September 02, 2011                    _____/s/_____
            Brooklyn, New York                    Sterling Johnson, Jr.  U.S.D.J.