IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-CV-00799-ZLW-KLM (SJ)

GRANITE SOUTHLANDS TOWN CENTER LLC,
    Plaintiff,

v.

ALBERTA TOWN CENTER, LLC, and
LAND TITLE GUARANTEE COMPANY,
    Defendants.

## PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES

Pursuant to Fed. R. Civ. P. 54 and the parties' agreement, Plaintiff Granite Southlands Town Center LLC ("Granite"), as the prevailing party, files this Motion for Attorneys' Fees to recover from Defendant Alberta Town Center, LLC ("Alberta") the attorneys' fees and expenses Granite incurred in direct relation to the claims which were the subject of the February 2011 trial.[1]

### I.    SUMMARY OF MOTION

As the prevailing party, Granite is entitled to its legal fees and expenses and therefore requests an order requiring Alberta to pay legal fees and expenses in the amount of $685,925.12. This amount is limited to the fees and expenses Granite incurred in relation to the Escrow Claims, which were the claims tried to this Court in February 2011. This figure and motion to do not include fees and expenses Granite incurred in relation to other disputes and claims between the parties.

---

[1] Granite is filing a separate Bill of Costs on the Court's form pursuant to D.C.COLO.LCivR 54.1 by which Granite will request an award of its costs. Consequently, Granite's request for expenses in this motion is limited to those items not covered by the local rule on costs.

86137997.6

The following table summarizes how Granite arrived at the $685,925.12 figure for attorneys' fees and expenses:

|  | **HOURS** | **AVERAGE RATE** | **TOTAL** |
|---|---|---|---|
| **FEES ALREADY INVOICED** | 1497.90 | $385.27 | $580,403.32 |
| **EXPENSES ALREADY INVOICED** | N/A | N/A | $54,642.80 |
| **FEES NOT YET INVOICED** | 109.50 | $355.06 | $38,879.00 |
| **ESTIMATE OF FUTURE FEES** | 30.0 | $400.00 | $12,000.00 |
|  |  | **TOTAL** | **$685,925.12** |

These figures are fully supported by affidavits attesting to the reasonableness of the underlying services, rates, fees, and expenses, along with invoices that provide a detailed description of the services provided. A more detailed summary of hours worked and fees charged is provided on Addendum B-1, which is part of the affidavit of Paul Trahan attached hereto as Exhibit B ("Trahan Affidavit").

## II.   AS PREVAILING PARTY, GRANITE IS ENTITLED TO THE ATTORNEYS' FEES AND EXPENSES INCURRED IN RELATION TO THE ESCROW CLAIMS

Pursuant to the Final Judgment issued by the Deputy Clerk of this Court on September 13, 2011, Granite prevailed in this litigation. *See* Final Judgment (Docket #198). Alberta and Granite agreed, as part of the Escrow Agreement, that the prevailing party in any dispute arising from the Escrow Agreement is entitled to recover from the non-prevailing party its reasonable

and actual attorneys' fees and expenses, including those incurred in connection with any appeal. *See* Plaintiff Trial Exhibit No. 20 (Escrow Agreement). Paragraph 12 of the Escrow Agreement reads:

> 12. <u>Attorneys' Fees</u>. The prevailing party in any dispute arising from this [Escrow] Agreement shall be entitled to recover from the non-prevailing party its reasonable and actual attorneys' fees and expenses, including any incurred in connection with any appeal.

The claims that were tried to this Court in February 2011, and on which Granite prevailed, arise from the Escrow Agreement ("Escrow Claims"). Granite, therefore, now is entitled to recover from Alberta the attorneys' fees and expenses it incurred in relation to the Escrow Claims. The only issue is what amount of attorneys' fees and expenses is proper.

### III. STANDARD FOR AWARDING ATTORNEYS' FEES & EXPENSES

#### A. Legal Standard

In diversity cases, attorney fee awards are "a substantive matter controlled by state law." *Combs v. Shelter Mut. Ins. Co.*, 551 F.3d 991, 1001 (10th Cir. 2008). To determine a reasonable attorneys' fee, courts arrive at a "lodestar" figure by multiplying the hours counsel reasonably expends on litigation by a reasonable hourly rate. *E.g.*, *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998); *Dubray v. Intertribal Bison Coop.*, 192 P.3d 604, 608 (Colo. Ct. App. 2008) ("The initial estimate of a reasonable attorney fee is reached by calculating the 'lodestar' amount, which represents the number of hours reasonably expended multiplied by a reasonable hourly rate."); *see also* 10 Moore's Federal Practice § 54.190(2)(a)(i) (Matthew Bender 3d ed.). Once calculated, "[a] claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." *Degrado v. Jefferson Pilot Financial Ins. Co.*, No. 02-cv-01533-WYD-BNB, 2009 WL 1973501 at *6 (D. Colo., July 6, 2009) (*quoting Robinson v. City*

*of Edmond*, 160 F.3d 1275, 1283 (10th Cir. 1998). Additionally, an attorney fee award may include fees expended to prepare and present the motion for attorneys' fees (i.e., "fees on fees"). *See Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1205 (10th Cir. 1986).

When "reasonable" is undefined for an attorney award, Colorado courts may also determine reasonableness according to the factors listed in Rule 1.5 of the Colorado Rules of Professional Conduct [hereinafter "RPC 1.5"]. *See Deitz v. University of Denver*, 2011 U.S. Dist. LEXIS 22728, *37 (D. Colo. Feb. 22, 2011). Thus, courts may adjust the lodestar amount up or down based on the RPC factors.[2] *See Tallitsch v. Child Support Services, Inc.*, 926 P.2d 143, 146 (Colo. App. 1996) (*citing Spensieri v. Farmers Alliance Mutual Ins. Co.*, 840 P.2d 268 (Colo. App. 1990)). As noted, however, the lodestar carries a "strong presumption of reasonableness" in Colorado courts, and "many of [the Rule 1.5] factors will be reflected in the lodestar amount. . . . No adjustments should be made if the lodestar amount already reflects these considerations." *Spensieri v. Farmers Alliance Mut. Ins. Co.*, 840 P.2d 268, 271 (Colo. App. 1990).

In determining reasonableness, courts will consider whether prevailing counsel has exercised "billing judgment." *Case*, 157 F.3d at 1258. The touchstone of billing judgment is whether "the tasks sought to be charged to the adverse party would normally be billed to a paying client." *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983) *overruled in part on other*

---

[2] Colo. RPC 1.5 enumerates the factors to be considered as guides in determining the reasonableness of a fee: "(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly. (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer. (3) The fee customarily charged in the locality for similar legal services. (4) The amount involved and the results obtained. (5) The time limitations imposed by the client or by the circumstances. (6) the nature and length of the professional relationship with the client. (7) The experience, reputation, and ability of the lawyer or lawyers performing the services. (8) Whether the fee is fixed or contingent." *Mau v. E.P.H. Corp.*, 638 P.2d 777, 779 (Colo. 1981) (citing C.R.C.P. DR 2-106(b), which is now Colo. RPC 1.5).

*grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 725 (1987). All of the fees and expenses that Granite seeks in this motion have either been billed to the client or were incurred so recently that a bill has not yet been generated. All of the fees and expenses have been paid or will be paid in due course. *See*, Trahan Affidavit at ¶¶ 25 and 26.

Thus, Granite, as the prevailing party, must satisfy the federal lodestar method of determining reasonable fees, which multiplies hours reasonably expended by the reasonable hourly rate, which Granite has done here. Evidence supporting an award of Granite's attorneys' fees, consistent with the requirements of this Court and Colorado law, is attached to this motion and discussed below.

### B. Procedural Requisites

In support of this motion, pursuant to the local rules of this Court, Granite must provide one or more affidavits, which it has done as attachments to this motion. *See* D.C.COLO.LCivR 54.3(A). *See*, Trahan Affidavit and the Affidavit of Osborne J. Dykes ("Dykes Affidavit"). The local rules also require that this motion include, for each person for whom fees are claimed, a detailed description of the services rendered, the amount of time spent, the hourly rate, and the total amount claimed. This is consistent with Tenth Circuit law, which requires that to prove reasonable hours, Granite must submit "meticulous, contemporaneous time records." *See Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998). Granite's invoices for the Escrow Claims, attached as <u>Exhibit A</u>, are just such meticulous and contemporaneous time records. Granite does not seek to recover fees for any of the redacted portions of the invoices.[3] Also, please refer to the Affidavit of Paul Trahan, at <u>Exhibit B</u>, which further describes the

---

[3] The redactions reflect Granite's counsel's segregation of fees that are unrelated to the Escrow Claims.

invoices and explains what adjustments were made to ensure the invoices only reflect fees and expenses associated with the Escrow Claims.

Mr. Trahan's affidavit, and the affidavit of Denver attorney Osborne J. Dykes, opine as to the reasonableness and necessity of the fees and expenses. Mr. Dykes' affidavit is attached as Exhibit C. Local rules also require Granite to provide a summary of relevant qualifications and experience for each person for whom fees are claimed. *See* D.C.COLO.LCivR 54.3(B). Granite provides the biographies for the individuals who provided legal services in relation to the Escrow Claims as Exhibit D to this Motion.

## IV. SUMMARY OF EVIDENCE

A summary of the evidence offered in support of this motion is as follows:

| | | |
|---|---|---|
| Exhibit A | Fulbright & Jaworski's Invoices for the Escrow Claims | |
| Exhibit B | Affidavit of Paul Trahan | |
| | Addendum B-1 | Summary of Hours & Fees |
| | Addendum B-2 | Summary of Rates, Hours & Fees for Core Team |
| | Addendum B-3 | Summary of Rates, Hours & Fees for Document Review Team |
| | Addendum B-4 | Summary of Expenses (with back-up) |
| | Addendum B-5 | Summary of Invoices Paid & Pending |
| Exhibit C | Affidavit of Jeff Dykes | |
| | Addendum C-1 | Summary of Hours & Fees |
| | Addendum C-2 | The Colorado Bar Association 2008 Economics of Law Practice Survey |
| Exhibit D | Biographies of Fulbright & Jaworski Attorneys | |

## V. THE LEGAL SERVICES PROVIDED TO GRANITE IN RELATION TO THE ESCROW CLAIMS WERE REASONABLE & NECESSARY

### A. This Motion is Limited to Services Related to the Escrow Claims

The attached invoices provide a detailed accounting of the services provided and actually billed, along with a description of the associated fees. *See* Exhibit A. The fees Granite seeks to recover are limited to those related to the Escrow Claims. Trahan Affidavit, Exhibit B, at ¶¶ 19-21. All remaining fees and expenses charged in connection with this lawsuit – which, at times, has involved other claims and defenses – have been segregated, and the related time entries and expense items have been subtracted from the invoice amounts. *Id.* Consequently, this motion seeks to recover attorneys' fees only for services and expenses related directly to the Escrow Claims, as reflected on the attached invoices. *See id*.

### B. The Legal Services Provided Were Reasonable and Necessary

As detailed in the attached invoices attached to Granite's Motion for Attorneys' Fees, the services Fulbright & Jaworski L.L.P. ("Fulbright") provided and actually billed to Granite in relation to the Escrow Claims can be described generally as follows:

- investigating claims;
- preparing and filing pleadings and motions;
- preparing a settlement statement;
- extensive discovery and massive document review, including privilege review;
- responding to dispositive motions;
- pre-trial settlement conferences;
- pre-trial motions and trial preparation;
- presenting this matter for trial; and
- post-trial issues, including preparing claims for attorneys' fees.

*See* Trahan Affidavit at Exhibit B.

86137997.6                                      - 7 -

Attached as <u>Addendum B-1</u> to the Trahan Affidavit is a breakdown of fees and expenses incurred by month with a description of the associated legal services.  A detailed description of the legal services provided is set out in the invoices, which are attached as <u>Exhibit A</u> to this motion.  A condensed overview of the hours worked and legal services provided is set forth in the following table:

| Invoice Date | Escrow Related Hours | Escrow Related Fees | General Description of Work |
|---|---|---|---|
| 04/14/2009 | 2.50 | $1,147.50 | Initial investigation of claims, assess and prepare demands to Land Title |
| 05/11/2009 | 41.15 | $16,939.65 | Pursue Settlement, Continued investigation, research claims, prepare complaint, confer with opposing counsel |
| 06/12/2009 | 16.35 | $6,234.33 | Research remedies, confer with Land Title, prepare report to client, review answer & counterclaims, prepare summary of agreements and timeline |
| 07/09/2009 | 18.95 | $7,564.58 | Confer with opposing counsel, address scheduling issues, legal research, prepare settlement statement for magistrate |
| 08/12/2009 | 19.65 | $7,132.99 | Initial disclosures, Pretrial Order, Settlement Statement, Confer with Land Title, Scheduling Hearing, Assess Defendants' Disclosures, Confer on Disclosures |
| 09/09/2009 | 1.80 | $663.00 | Assess Status & Discovery |
| 09/09/2009 | 0.80 | $406.30 | Protective Order, Confer with Opposing Counsel |
| 10/08/2009 | 38.40 | $10,110.75 | Protective Order Assessment, Motion, Discussions & Hearing, Settlement Assessment, Document Production |
| 11/11/2009 | 5.70 | $1,742.92 | Assess Status & Discovery |

| Invoice Date | Escrow Related Hours | Escrow Related Fees | General Description of Work |
|---|---|---|---|
| 12/11/2009 | 0.60 | $181.08 | Prepare Discovery |
| 01/12/2010 | 84.50 | $29,259.98 | Assess & Respond to Alberta Summary Judgment, Interview Witnesses, Review Discovery Requests, Confer w/ Opposing Counsel re: Discovery Disputes, Prepare Summary Judgment Response w/ Evidence |
| 02/12/2010 | 251.20 | $102,722.08 | Review of Granite Documents for Production to Alberta, Review Alberta documents, Prepare for and Take Depositions, Settlement Discussions, Prepare for and Defend Depositions, Discovery Disputes, Interpleader Issues, Surreply to Summary Judgment, Mass Document Review & Production |
| 03/08/2010 | 407.70 | $125,307.39 | Continue Mass Document Review in Response to Alberta Discovery, Privilege Review of Documents, Take Depositions, Confer re: Discovery Disputes |
| 04/09/2010 | 64.65 | $25,346.79 | Take Multiple Depositions, Respond to Discovery Disputes, Prepare Multiple Witnesses for Depositions, |
| 05/10/2010 | 118.55 | $52,810.71 | Prepare for & Attend Settlement Conference, Prepare & Defend Depositions, Address Interpleader Issues |
| 06/09/2010 | 5.70 | $2,495.17 | Address Escrow Issues, Settlement Assessment |
| 07/12/2010 | 13.90 | $5,880.30 | Address Pretrial Order, Settlement, Escrow Funds Issues |
| 08/09/2010 | 20.80 | $32,228.17 | Address Pretrial Order, Exhibit & Witness Lists, Review Settlement Issues, Settlement Memo |
| 09/09/2010 | 12.40 | $63.75 | Assess Alberta's Motion to Expedite |
| 10/13/2010 | 12.40 | $5,655.90 | Prepare for & Attend Settlement Conference |

| Invoice Date | Escrow Related Hours | Escrow Related Fees | General Description of Work |
|---|---|---|---|
| 11/12/2010 | 6.90 | $2,425.05 | Assess Settlement, Trial Logistics |
| 12/14/2010 | 10.90 | $1,290.30 | Review issues relating to Interpleader of Funds, Trial Logistics |
| 01/12/2011 | 13.50 | $6,248.35 | Trial Prep, Status Conference, Pretrial Matters, Motion in Limine |
| 02/09/2011 | 212.10 | $15,615.35 | Pretrial Motions, Amended Complaint, Prepare Exhibits, Settlement Discussions, Damages Statement, Voir Dire Questions |
| 03/10/2011 | 17.00 | $95,429.07 | Prepare for and Attend Trial, Review Pretrial Submissions, Exhibit Objections, Witness Outlines, Witness Preparation, Findings of Fact & Conclusions of Law, Written Closing |
| 04/12/2011 | 79.60 | $8,815.94 | Research Attorneys' Fees & Post-trial Issues |
| 05/13/2011 | 10.60 | $12,536.22 | Post-trial Issues including Review of Transcript, Revising Proposed Findings of Fact and Conclusions of Law |
| 05/13/2011 | 1.20 | $418.20 | Review issues relating to Attorneys' Fees claim |
| 06/13/2011 | 2.50 | $1,312.50 | Address Post-Trial Issues |
| 06/13/2011 | 5.90 | $2,419.00 | Review invoices in anticipation of Claim for Attorneys' Fees to delete unrelated fees |
| Fees Not Yet Invoiced (for July, August & September 2011) | | $38,879.00 | Assess Court's Ruling in favor of Granite, Begin Preparation of Atty. Fees Request w/ supporting evidence & Confer w/ Land Title |
| Estimate of Future Fees | | $12,000.00 | Pursue Atty. Fees & Collection of Judgment & Address Post-trial issues (not appeal, which will be addressed separately) |

Importantly, as part of this process and before Granite filed suit, Granite reached out to Alberta's counsel to discuss the possibility of settlement. *See*, Trahan Affidavit at ¶ 24. Granite's counsel also facilitated direct settlement discussions between the parties. *Id.* Granite did not file the lawsuit on the Escrow Claims until settlement discussions failed. *Id.*

Of particular note, responding to Alberta's expansive document requests required extraordinary effort and the addition of additional (less expensive) members to the team. In order to properly respond to Alberta's document requests, Granite was required to collect over 200,000 documents from at least 20 sources. *See*, Trahan Affidavit at ¶ 10. The review of these documents for responsiveness and privilege was time-consuming and expensive. *Id.* As a result of its efforts, Granite produced over 15,000 pages of documents to Alberta. *Id.* This aspect of the case alone generated attorneys' fees of $165,833.73. *See* Addendum B-3 to Trahan Affidavit. As explained in further detail in the Trahan Affidavit, to account for the fact that at the time of document review the case involved Alberta's counterclaims in addition to the Escrow Claims, Granite reduced the amount for purposes of this motion by 50%, or to $82,916.86 (i.e., 50% of $165,833.73).

Because the factors identified in the Colorado Rules of Professional Conduct already are reflected in the lodestar amount discussed above, there is no need to go through each specific factor. *See Spensieri v. Farmers Alliance Mut. Ins. Co.*, 804 P.2d 268, 271 (Colo. App. 1990) ("No adjustments should be made if the lodestar amount already reflects these considerations."); *see also Burlington v. Dague*, 505 U.S. 557, 562 (1992) ("There is a "strong presumption" that the lodestar represents the "reasonable fee."). Nonetheless, these factors support Granite's claim for attorneys' fees, as described more fully in the Trahan Affidavit.

### C.   <u>Granite's Various Attorneys Served in Separate and Distinct Roles</u>

Granite assembled a team for the actual trial that consisted of Paul Trahan, Jeff Dykes, and Lucy Arnold. Partner Paul Trahan, as the attorney on the team with the most knowledge of the underlying facts, took the lead. Mr. Trahan prepared and presented Granite witness Christopher Silva and questioned Alberta witness Peter Cudlip. Retired Partner Jeff Dykes provided support from Fulbright's Denver office and from a Colorado law perspective. Mr. Dykes prepared and presented Granite witness Angela Kralovec and cross-examined Alberta witness Donald Provost. Associate Lucy Arnold conducted much of the legal research and coordinated the preparation and assembly of evidence for trial. Mrs. Arnold also prepared for and questioned Land Title's witness at trial. This same team performed the post-trial work in terms of briefing and preparing the Proposed Findings of Fact and Conclusions of Law and related papers.

Ultimately, Granite's trial team prevailed in the litigation, recovering the entire amount in dispute with respect to the Escrow Claims. It is unfortunate that Granite's attempts to settle the dispute before filing this lawsuit were not successful, and it is unfortunate that Granite was forced to expend the amount of time and money it took to prevail in this action. The fact that the amount in dispute was less that Granite's ultimate legal fees and expenses is of no moment. The parties agreed that the prevailing party would receive its reasonable and actual attorneys' fees and expenses – irrespective of the relationship between the amount sought and the amount in dispute. Granite is firmly within its rights in requesting the full amount of its fees and expenses, irrespective of whether the amount exceeds the ultimate amount in controversy. If Alberta had acknowledged Granite's right to receive the escrow funds in the beginning, this lawsuit could

have been entirely avoided.  Colorado courts have recognized that the amount of attorneys' fees awarded can exceed the amount of damages.  *See John Deere Co. v. Catalano*, 525 P.2d 1153, 1157 (Colo. 1974) (finding an attorneys' fee award is not unreasonable because it exceeds the amount of the underlying deficiency judgment); *Mau v. E.P.H. Corporation*, 638 P.2d 777, 780 (Colo. 1982) ("The amount recovered is only one factor to be considered in fashioning an appropriate fee award.").

In addition to the trial team, there were a number of Fulbright attorneys who provided services to Granite in relation to the Escrow Claims.  Each of them was an important member of the team, and their roles and responsibilities were distinct.  Involving multiple attorneys in the case was necessary given the amount of work required, and doing so resulted in greater efficiencies in the handling of the case which, in turn, translated into reduced fees.  For example, less experienced attorneys reviewed the documents responsive to Alberta's multitude of document requests, and more experienced attorneys handled the trial and motions practice.  As described in more detail in the Trahan Affidavit, Granite also relied on real estate specialists and attorneys in Austin, Texas – who work with Granite on a regular basis and know its business best, to manage and handle the more substantive and fact-intensive aspects of the case.  *See* Trahan Affidavit at ¶¶ 1-10, 13 and 15.

The following table provides a general breakdown of the roles Granite's attorneys at Fulbright served in relation to the Escrow Claims:

| ATTORNEY NAMES | PRACTICE AREA/LOCATION | RESPONSIBILITIES |
|---|---|---|
| Paul Trahan, Jeff Dykes, Lucy Arnold, Ben Vetter | Litigation/Denver and Austin | Written Discovery, Depositions, Pre-trial, Trial, Motions Practice |
| Jane Smith, Bryan Patrick | Real Estate/Austin | Investigation, Real Estate Expertise, Knowledge of Property and Agreements |
| Marcy Greer, Sara Wolf, David Diamond | Appellate & Litigation/Austin | Legal Research & Briefing, Support of Motions Practice |
| Document Review Team[4] | Junior Associates under the supervision of Counsel Jennifer Sherrill/mostly Austin at an average rate of $266.40 per hour | Document Review |

## VI.   THE AMOUNT OF ATTORNEYS' FEES IS REASONABLE

### A.   The Hours Claimed Are Reasonable

Granite's counsel has expended a reasonable number of hours in litigating the Escrow Claims. Attorneys at Fulbright have spent over 1,600 hours to date on these Claims and are expected to spend approximately 130 more through the conclusion of this litigation. *See* Trahan Affidavit at ¶¶ 2 and 3. Fulbright's invoices contain meticulous, contemporaneous time records evidencing the services provided during these hours. *See* Exhibit A. Additionally, Fulbright has demonstrated billing judgment by providing a 15% discount since April 2009 on all fees to

---

[4] *See* Addendum B-3 to Trahan Affidavit.

Granite. *See* Trahan Affidavit at ¶¶ 4 and 16. Moreover, Granite seeks to recover only those fees for which it has been actually billed, as reflected in Fulbright's invoices, indicating that Granite's counsel does not seek to recover amounts from an adversary that would not properly be billed to a client. *See Hensley v. Eckerhart*, 461 U.S. 424, 434, (1983) ("Hours that are not properly billed to one's client also are not properly billed to one's adversary . . ."). Finally, attempting to err on the side of being conservative (from Alberta's perspective), hours and fees incurred in responding to Alberta's document requests have been reduced by 50%, even though much of the time written-off likely relates to the Escrow Claims. *See* Trahan Affidavit at ¶ 13(b).

      **B.**      **The Hourly Rates Claimed are Reasonable**

Courts determine the lodestar reasonable rate by looking to the "prevailing market rate in the relevant community." *Wirtz v. Kansas Farm Bureau Services, Inc.*, 355 F. Supp. 2d 1190, 1200 (D. Kan. 2005) (*quoting Blum v. Stenson*, 465 U.S. 886, 895 (1984)). "Regarding the hourly rates charged, the Court should base its award on market evidence of attorney billing rates for similar litigation." *Casey v. Williams Production RMT Co.*, 599 F.Supp.2d 1253, 1255 (D. Colo., 2009). In addition, when hiring out-of-town counsel is reasonable under the circumstances, courts have found that the prevailing rates of another locality may be considered along with the local district's rates. *See, e.g.*, *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 769 (7th Cir. 1982) (finding that where out-of-town counsel was required, trial court erred as a matter of law in limiting the hourly rates to local rates); *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995).

Because the attorneys with the most knowledge of Granite's business and the facts underlying the Escrow Claims are located in Austin, Texas, it was reasonable for Granite to engage Fulbright's out-of-town attorneys to litigate the Escrow Claims. *See* Trahan Affidavit at ¶ 15. In so doing, Granite obtained the benefit of attorneys who could serve in separate and distinct roles, and who brought skills and familiarity that were well-suited to this lawsuit. *Id.* Granite further avoided the need to educate a new group of attorneys about its business and, more particularly, the property, transaction, and agreements at issue regarding the Escrow Claims. *Id.* Paul Trahan attests that the hourly rates charged by the Austin attorneys were in line with rates charged by other attorneys in the Austin area with similar experience, education, and for matters of this nature. *Id* at ¶¶ 16, 17 and 18. Further support for the reasonableness of hourly rates is provide by the biography of each timekeeper, which serve as indicia of experience and skill. *See* Exhibit D.

Even so, the rates charged to Granite are reasonable when compared to rates charged for similar services by attorneys with similar skill and experience in Denver, Colorado. *See* Dykes Affidavit at Exhibit C. Mr. Dykes attests to the reasonableness of the rates, stating that none of the hourly rates billed by Fulbright's attorneys exceed the ranges of rates for similar-sized firms reported in The Colorado Bar Association 2008 Economics of Law Practice Survey. *See* Dykes Affidavit and Addendum C-2.

Granite also refers to Addendum B-5 to the Trahan Affidavit as further evidence of the reasonableness of the fees Granite incurred in relation to the Escrow Claims. This summary was prepared by Fulbright's accounting department at Mr. Trahan's request. *See* Trahan Affidavit at ¶¶ 25 and 26. Fulbright has billed Granite for all of the fees and expenditures incurred in the

course of its representation in this litigation through June 2011.  *Id.*  As to the Escrow Claims, Granite has paid $528,237.13 of the amounts invoiced by Fulbright.  *See Id.* and Addendum B-5.  Based on the timing of Granite's past payments in relation to this lawsuit and other matters, Granite will pay the remaining $106,808.99 in full.  *Id.*

### C. The Expenses Claimed are Reasonable

Expenses that are normally itemized and billed in addition to the hourly rate – but not taxable as part of a Bill of Costs under 28 U.S.C. §1920 – may also be included in fee allowances.  *See* Fed. R. Civ. P. 54(d)(2)*, Ramos*, 713 F.2d at 559; *Case*, 157 F.3d at 1258.  A summary of legal expenses is attached as Addendum B-4 to the Trahan Affidavit.  These recoverable expenses include Westlaw fees, faxes, copies, FedEx expenses, postage charges, fees paid to investigative services, attorney travel costs, paralegal fees, and long-distance phone calls, among others.  *See Ramos*, 713 F.2d at 559; *Case*, 157 F.3d at 1258.  Here, Granite seeks to recover for such costs, including long-distance telephone costs, facsimile costs, Westlaw and Lexis fees, delivery and messenger services, travel expenses, and data management fees.  Such fees are not absorbed as part of Fulbright's overhead and are routinely billed to private clients, as evidenced by the invoices attached as Exhibit A.  *See also* Trahan Affidavit at ¶¶ 22 and 23.

### VII. CONCLUSION

Granite's counsel has gone through a careful review and assessment of the actual legal fees it has charged, or will soon invoice, Granite to ensure that the fees requested here relate only to the Escrow Claims.  The hours worked and the rates charged are reasonable and were necessary for this matter.  Granite respectfully requests that the Court award Granite legal fees and expenses in the amount of $685,925.12 and enter the appropriate order requiring Alberta to

pay this amount to Granite.  Granite also asks for all other and further relief to which it is entitled and specifically reserves its right to secure attorneys' fees and expenses for any appeal.

Respectfully submitted,

*/s/ Paul Trahan*
OSBORNE J. DYKES, III
BENJAMIN M. VETTER
FULBRIGHT & JAWORSKI L.L.P.
370 Seventeenth Street, Suite 2150
Denver, CO  80202
(303) 801-2700 – Telephone
(303) 801-2777 – Facsimile
jdykes@fulbright.com
bvetter@fulbright.com

PAUL TRAHAN
FULBRIGHT & JAWORSKI L.L.P.
600 Congress Avenue, Suite 2400
Austin, TX  78701
(512) 474-5201 – Telephone
(512) 536-4598 – Facsimile
ptrahan@fulbright.com

**COUNSEL FOR PLAINTIFF**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on the 19th day of September, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to attorneys for plaintiffs at the following e-mail addresses:

    Stephen L. Waters                    swaters@rwolaw.com
    Kimberly A. Bruetsch                kbruetsch@rwolaw.com
    ROBINSON WATERS & O'DORISIO, P.C.
    1099 18th Street, Suite 2600
    Denver, CO 80202
    *Attorneys for Land Title Guarantee*

    Stuart N. Bennett                     sbennett@joneskeller.com
    JONES & KELLER, P.C.
    1999 Broadway, Suite 3150
    Denver, CO 80202
    *Attorneys for Alberta Town Center, LLC*

                                              */s/ Paul Trahan*
                                              Paul Trahan