# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-CV-00799-ZLW-KLM (SJ)

GRANITE SOUTHLANDS TOWN CENTER LLC,
         Plaintiff,

v.

ALBERTA TOWN CENTER, LLC, and
LAND TITLE GUARANTEE COMPANY,
         Defendants.

## AFFIDAVIT OF PAUL TRAHAN

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

BEFORE ME, the undersigned authority, on this day personally appeared Paul Trahan who, being by me duly sworn, on oath stated as follows:

1.     "My name is Paul Trahan. I am over 21 years of age, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2.     I am a litigation partner at Fulbright & Jaworski L.L.P. ("Fulbright"). Fulbright has served as counsel to Granite Southlands Town Center LLC ("Granite") in the captioned lawsuit from the very beginning, and I have served as lead counsel the entire time.

3.     During the course of this engagement, I became aware of an arbitration between Alberta Town Center, LLC ("Alberta") and Callison Architecture, Inc. ("Callison") ("Callison Arbitration"). Granite also became involved in a lawsuit that Alberta filed for the purpose of confirming Alberta and Callison's settlement of the Callison Arbitration. That lawsuit is styled Case Number: 09-CV-9185, Alberta v. Callison, in the District Court, City and County of Denver, Colorado ("Confirmation Action"). Granite sought to intervene in the Confirmation Action but was denied. Granite appealed the trial court's denial.

4.     I learned for the first time on September 20, 2011, that Callison had paid Alberta two settlement installments, one on September 1, 2011, and one on September 6, 2011. Prior to that time, Granite was under the impression the settlement payment had not yet been made.

86142947.2

5.      I do not know the amount of the settlement payment, but when Granite moved to stay the Confirmation Action, Alberta filed a response in which Alberta argued that Granite should be required to post a bond "far in excess of $1 million." A true and correct copy of Alberta's response is attached to Granite's request for an injunction.. In support of its request, Alberta cited C.R.C.P. 62(d), which under certain circumstances requires that a bond be posted that is "125% of the total amount of the judgment." This led me to believe that the settlement amount is at least $800,000.

6.      On September 20, 2011, I sent a draft of Granite's request for an injunction to Alberta's counsel along with the e-mail attached hereto as Addendum 5-A. Defendant's counsel indicated by return e-mail that Alberta will resist the injunction as well as Granite's request for attorneys' fees.

7.      I have reviewed the exhibits to Granite's Application for Temporary Restraining Order and Preliminary Injunction Hearing, am familiar with the originals of those documents, and confirm that the exhibits are true and correct copies of the originals."

Further affiant sayeth not.

_____
Paul Trahan


SUBSCRIBED AND SWORN TO BEFORE ME, on this the 20th of September,

2011, to witness my hand and seal of office.

_____
NOTARY PUBLIC, State of Texas

JULIANN R. WRIGHT
Notary Public, State of Texas
My Commission Expires
JULY 3, 2013

# ADDENDUM 5-A

## Trahan, Paul

| | |
|---|---|
| **From:** | Trahan, Paul |
| **Sent:** | Tuesday, September 20, 2011 2:09 PM |
| **To:** | 'Stuart N. Bennett'; Steven R. Kabler |
| **Subject:** | Granite v. Alberta - Request for a TRO |
| **Attachments:** | 86142081_3.DOCX |

Dear Counsel,

Attached is a draft Application for Temporary Restraining Order and Preliminary Injunction Hearing that we intend to file today in the subject matter absent agreement of the parties or sufficient assurances from Alberta.

It is our understanding Alberta Town Center, LLC is no longer an active entity, is not generating income, and does not have sufficient assets to pay the attorneys' fees, expenses, and costs Granite is requesting in this lawsuit. It also is our understanding that Alberta is anticipating receipt of at least $800,000 as a result of its settlement with Callison and/or MKA but has not yet received those funds. Please let us know if we have misunderstood.

We wish to enjoin the transfer or negotiation of at least $700,000 of the settlement funds. Please let us know if you will (i) agree to this, or something substantially similar, so as to avoid the need for Granite to request an injunction, or (ii) provide Granite with formal assurances that Alberta is capable of satisfying its financial obligations to Granite.

We ask that you please let us know in writing (return e-mail is fine) by 5:00 pm MT today. If you have any questions, please let us know by e-mail or feel free to call. We very much desire to minimize expenses and the burden on all parties.

We ask that you kindly confirm receipt of this e-mail.

Thank you,
Paul

**Paul Trahan**, *Partner*
**FULBRIGHT** & *Jaworski L.L.P.* • 98 San Jacinto Boulevard, Suite 1100 • Austin, Texas  78701-4255
T: 512 536 5288 • F: 512 536 4598 • ptrahan@fulbright.com • www.fulbright.com/ptrahan

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-CV-00799-ZLW-KLM (SJ)

GRANITE SOUTHLANDS TOWN CENTER LLC,

      Plaintiff,

v.

ALBERTA TOWN CENTER, LLC AND
LAND TITLE GUARANTEE COMPANY,

      Defendants.

---

**PLAINTIFF GRANITE SOUTHLANDS TOWN CENTER LLC'S
APPLICATION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION HEARING**

COMES NOW Plaintiff Granite Southlands Town Center LLC ("Plaintiff" or "Granite"), by and through its undersigned attorneys, and moves for a Temporary Restraining Order against Alberta Town Center, LLC ("Defendant" or "Alberta") and a Preliminary Injunction Hearing under Federal Rule of Civil Procedure 65. Plaintiff's counsel communicated with Defendant's counsel about the grounds for this motion and the relief requested on September 20, 2011. [summarize Defendant's position]

## I.
## INTRODUCTION

Defendant has no substantial assets or ongoing operations, but Plaintiff anticipates Defendant will receive a substantial payment in the near future. Without the intervention of this Court, plaintiff Granite likely never will collect the attorneys' fees, expenses, and costs it is entitled to recover pursuant to the Final Judgment entered by this Court on September 13, 2011 (the "Final Judgment"). According to the Final Judgment, Granite is "entitled to recover its

reasonable and actual attorneys' fees, expenses and costs . . . ." Final Judgment (Docket #198), at p. 3.   Granite filed its Motion for Attorneys' Fees and Expenses on September 19, 2011 (Docket # 199) and will file its Bill of Costs shortly.

Because defendant Alberta does not have assets or generate income sufficient to pay Granite's attorneys' fees, expenses, and costs, if injunctive relief is not granted, Granite will be irreparably injured as a result of Alberta's inability to pay.   Alberta's last report on its assets indicates Alberta has minimal cash and is not capable of paying the attorneys' fees and expenses for which Granite is moving.   Granite believes Alberta will receive substantial funds from a settlement with Callison Architecture, Inc. ("Callison") in the very near future as a result of an arbitration relating to the same property at issue in this lawsuit ("Callison Arbitration").   If Alberta is allowed to dissipate the proceeds of the Callison settlement before the Court enters judgment for Granite's attorneys' fees, then Alberta will become judgment-proof and Granite will be unable to recover its attorneys' fees and costs from Alberta.   Granite seeks injunctive relief to preserve both the status quo pending the outcome of the case and the Court's power to render a meaningful decision on the merits at the conclusion of this litigation.

A balancing of the equities favors Granite.   As this Court has determined that Granite is entitled to recover attorneys' fees from Alberta, Granite has prevailed on the underlying merits. In the absence of injunctive relief, Granite will likely be irreparably injured by an inability to collect the attorneys' fees to which Granite is entitled according to this Court's Final Judgment. In comparison, an injunction does not pose any real threat of injury to Alberta.

Because the likelihood of success on the merits and the relative threats of injury both weigh heavily in favor of Granite, the Court should enjoin Alberta from transferring or otherwise

negotiating any assets received from Alberta's settlement with Callison.  More specifically, the Court should grant Granite's Proposed Temporary Restraining Order to prevent the dissipation of any funds Alberta receives in an amount sufficient to satisfy the fees and expenses sought in Granite's pending Motion for Attorneys' Fees and Expenses (Docket # 199), and issue an Order for a Preliminary Injunction Hearing on this matter.

## II.
## STATEMENT OF FACTS

**A.    ALBERTA HAS VERY LITTLE ASSETS AND NO ACTIVE OPERATIONS**

Peter Cudlip, 32% owner of Alberta as well as a manager for Alberta, was deposed on January 7, 2010.  Excerpts of the Deposition of Peter Cudlip ("Cudlip Depo.") are attached hereto as Exhibit 1.  Mr. Cudlip testified that Alberta had "very little" assets. (Cudlip Depo., Ex. 1, p. 10, ln. 20-23).  Mr. Cudlip further testified that Alberta had "some cash" (Cudlip Depo., Ex. 1, p. 10, ln. 24-25) and that Alberta's operations consist of existing for the purpose of resolving this lawsuit. (Cudlip Depo., Ex. 1, p. 11, ln. 6-14).

Steven Zezulak, the controller of Alberta, was deposed on March 22, 2010.  Excerpts of the Deposition of Steven Zezulak ("Zezulak Depo.") are attached hereto as Exhibit 2.  During that deposition, Mr. Zezulak was asked whether Alberta had net assets.  Mr. Zezulak responded "No tangible property assets, no." (Zezulak Depo., Ex. 2,  p. 106, ln. 15-17).  Mr. Zezulak was then asked if Alberta had cash in the bank.  Mr. Zezulak responded, "A little bit, but it's very minimal." (Zezulak Depo., Ex. 2, p. 106, ln. 18-19).  When asked about Alberta's ability to pay a possible judgment for a million dollars, Mr. Zezulak estimated that Alberta had about $100,000. (Zezulak Depo., Ex. 2, p. 106, ln. 20 – p. 107, ln. 14).

86142081.3

-3-

**B.**    **ALBERTA DOES NOT HAVE SUFFICIENT CAPITAL TO SATISFY ITS DEBTS**

Peter Cudlip testified that Alberta had debts generally consisting of legal fees.  (Cudlip Depo., Ex. 1, p. 11, ln. 1-5).  The law firm of Lindquist & Vennum, PLLP filed a Notice of Lien in this action for not less than $285,851.66, which is attached hereto as Exhibit 3.  The law firm of Starrs Mihm LLP also filed a Notice of Charging Lien in this action for $23,441.15, which is attached hereto as Exhibit 4.

**C.**    **ALBERTA IS EXPECTING INCOME FROM AN ARBITRATION SETTLEMENT**

Alberta and Callison reached a settlement that requires Callison or its insurer to pay Alberta what Granite believes to be at least $800,000 – but not until certain conditions have been met.  Granite does not believe these conditions have been met or that the settlement payment otherwise has been paid.

After settling the Callison Arbitration, Alberta filed a lawsuit for the purpose of confirming the settlement.  Trahan Aff. ¶ 3.  That lawsuit is styled Case Number: 09-CV-9185, Alberta v. Callison, in the District Court, City and County of Denver, Colorado ("Confirmation Action").  Id.  Granite sought to intervene in the Confirmation Action but was denied.  Id.  Granite appealed the trial court's denial.  Id.

Confirmation of the purported arbitration "award" is a condition to Callison's obligation to make the settlement payment.  Id. at ¶ 4.  This was confirmed in Callison Architecture's Joinder in Support of Motion for Confirmation of Arbitration Award and Opposition to Granite's Initial Response to the Confirmation Award, which Callison filed in the Confirmation Action. Id.  Callison stated in that pleading, "The parties then settled their remaining claims, subject to the condition that the panel grant a final award reaffirming its prior ruling regarding the real

party in interest issue." Id.  Information regarding the settlement also was discussed in the papers filed by the various parties in Granite's appeal of the Confirmation Action. Id.  Given the status of the Confirmation Action and related appeal, Granite believes Callison has not yet paid Alberta for settlement of the Callison Arbitration. Id.

Granite believes the amount of the settlement is at least $800,000.  When Granite moved to stay the Confirmation Action, Alberta filed a response in which Alberta argued that Granite should be required to post a bond "far in excess of $1 million." Id. at ¶ 5; see also Alberta's Response at Exhibit 5.  In support of its request, Alberta cited C.R.C.P. 62(d), which under certain circumstances requires that a bond be posted that is "125% of the total amount of the judgment." *Id.*

**D.** **GRANITE GAVE NOTICE OF THIS APPLICATION FOR INJUNCTIVE RELIEF TO ALBERTA'S COUNSEL OF RECORD**

Under Federal Rule of Civil Procedure ("FRCP") 65(b), the Court may grant a temporary restraining order without notice to the opposing party or its counsel.  Nonetheless, on September 20, 2011, counsel for Granite provided [describe notice given and response].

**III.**
**APPLICABLE STANDARDS**

The primary purpose of injunctive relief is "to preserve the status quo pending the outcome of the case." *Tri-State Generation & Transmission Ass'n. v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986) (*citing Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975)).  Courts use preliminary injunctions to try to "preserve the power to render a meaningful decision on the merits" of a case.  *Tri-State*, 805 F.2d at 355 (*citing Compact Van Equipment Co. v. Leggett & Platt, Inc.*, 566 F.2d 952, 954 (5th Cir. 1978)).

The *Erie* doctrine "does not apply to preliminary injunction standards." *Equifax Services, Inc. v. Hitz*, 905 F.2d 1355, 1361 (10th Cir. 1990). Instead, the federal standard for injunctive relief applies. Thus, in a motion for either temporary or preliminary injunctive relief, the four prerequisites which the moving party must establish are as follows:

> (1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.

*Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980).

Injunctive relief is evaluated on "a sliding scale that demands less of a showing of likelihood of success on the merits when the balance of hardships weighs strongly in favor of the plaintiff, and vice versa." *O Centro Espirita Beneficente Uniao do Vegetal v. Ashcroft*, 389 F.3d 973, 1002 (10th Cir. 2004) (Seymour, Circuit Judge, concurring in part and dissenting in part, joined by Tacha, Chief Judge, Porfilio, Henry, Briscoe, and Lucero, Circuit Judges) (citing *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 526 (4th Cir. 2003). Therefore, the more likely it is that a movant will succeed on the merits, "the less the balance of irreparable harms need favor the [movant's] position." *Id.* (citing *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)).

## IV.
## ARGUMENT

### A.   THERE IS A SUBSTANTIAL LIKELIHOOD GRANITE WILL PREVAIL ON THE MERITS

Granite has prevailed on the underlying merits of this action and is entitled to an award of its reasonable attorneys' fees and expenses from Alberta. *See* Final Judgment ("Plaintiff is also entitled to recover its reasonable and actual attorney's fees, expenses and costs pursuant to

paragraph 12 of the Escrow Agreement and D.C.COLO.LCivR 54.1."); *see also* Plaintiff Trial

Exhibit 20 (Escrow Agreement), ¶12 ("The prevailing party in any dispute arising from this

Agreement shall be entitled to recover from the non-prevailing party its reasonable and actual

attorneys' fees and expenses, including any incurred in connection with any appeal."); *Utah*

*Women's Clinic v. Leavitt*, 75 F.3d 564, 567 (10th Cir. 1995) (*citing Buchanan v. Stanships, Inc.*,

485 U.S. 265, 267-68, (1988) (per curiam)) (attorneys' fees and costs are collateral to and

separate from a decision on the merits).

**B.   ALLOWING ALBERTA TO DISSIPATE THE CALLISON SETTLEMENT
PROCEEDS POSES A RISK OF IRREPARABLE HARM TO GRANITE**

Difficulty in collecting a judgment for damages may support a claim of irreparable injury.

*Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc.*, 805 F.2d 351, 355

(10th Cir. 1986) (citing *Central States, Se. & Sw. Areas Pension Fund v. Admiral Merchants*

*Motor Freight, Inc.*, 511 F. Supp. 38, 43 (D. Minn. 1980)). In *Tri-State*, the Tenth Circuit found

that a trial court erred in failing to enjoin the sale of the defendant's assets pending resolution of

a trial on the merits of the plaintiff's claims. *Id.* at 360. In part, the court stated that "[i]f Tri-

State cannot collect a money judgment, then failure to enter the preliminary injunction would

irreparably harm it." *Tri-State*, 805 F.3d at 355. Because the plaintiff was likely to suffer

irreparable injury if the defendant were permitted to sell its assets—either because the plaintiff

would be unable to collect damages at the end of the trial or because the plaintiff's viability as a

business was threatened by sale of the defendants assets—the *Tri-State* Court enjoined the

defendant from selling its assets pending a resolution on the merits. *Id.* at 355-56.

Decisions from other Courts of Appeals also support the proposition that a plaintiff

suffers irreparable injury where a defendant is unable to satisfy a judgment because it becomes

"insolvent before a final judgment can be entered and collected." *Roland Machinery Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984); *Central States, Se. & Sw. Areas Pension Fund v. Jack Cole-Dixie Highway Co.*, 642 F.2d 1122 (8th Cir. 1981) (affirming preliminary mandatory injunction granted by the trial court in *Central States, Southeast & Southwest Areas Pension Fund v. Admiral Merchants Motor Freight, Inc.*, 511 F. Supp. 38, 43 (D. Minn. 1980), which recognized that the difficulty of collecting a money judgment supports a claim of irreparable harm).

Here, Granite will not be able to collect damages if Alberta is allowed to dissipate the Callison settlement proceeds.   In this regard, Granite's claim of irreparable injury is in a meaningful way superior to that of Tri-State's successful claim: Granite has already prevailed on the merits of its underlying claim, and now seeks its contractually provided attorneys' fees.  By contrast, the merits in *Tri-State* remained undecided at the time the plaintiff sough injunctive relief, and the court noted that the case involved "unique factual circumstances and history . . . mak[ing] the resolution of the final *question* of law a genuinely debatable issue." *Id.*  at 359. Here there can be no debate that Granite is entitled to *some* amount of reasonable attorneys' fees and expenses, and Granite has filed its Motion for Attorneys' Fees and Expenses to determine this issue. In the interim—while the precise amount of such fees and expenses is being litigated and set by the Court—Granite would suffer irreparable injury if Alberta is not prevented from transferring or distributing any proceeds or assets it currently possesses or receives as a result of the Callison settlement.

**C.   RISK OF HARM TO GRANITE GREATLY OUTWEIGHS ANY POTENTIAL HARM TO ALBERTA**

If Granite's proposed injunctive relief is granted, Alberta will not suffer any real harm. As Alberta's manager Peter Cudlip testified, Alberta's operations currently consist of existing for the purpose of resolving this lawsuit. (Cudlip Depo., Ex. 1, p. 11, ln. 6-14). Thus, Alberta cannot claim that the issuance of an injunction would affect its operations or business. In the unlikely event that Granite receives no award of attorneys' fees whatsoever, then the injunction bond that Granite is required to post would fully compensate Alberta for any costs or damages incurred as a result of any inability to dispose of certain funds during the period of an alleged wrongful enjoinment or restraint. *See* FRCP 65(c).

Because Granite only is seeking to enjoin Alberta's use of funds sufficient to cover its claim for attorneys' fees, expenses, and costs, for a limited amount of time, a $10,000 injunction bond will serve as sufficient protection of Alberta's interests. The total amount of attorneys' fees, expenses, and costs Granite seeks is approximately $700,000. With daily interest on $700,000 accruing at 5% being $95.89 per day, a $10,000 bond would protect Alberta against lost interest for almost 15 weeks. Granite anticipates any issues relating to its attorneys' fees, expenses, and costs will be resolved within that time period.

**D.   ISSUING THE INJUNCTION IS NOT ADVERSE TO THE PUBLIC INTEREST**

According to Alberta's executives, Alberta does not have sufficient funds to satisfy Granite's expected attorneys' fees and does not have active operations to generate income. (Cudlip Depo, p. 11, ln. 6-14). Alberta's only apparent source of material funds is the Callison settlement. *Id.* The proposed injunctive relief will preserve the status quo between private parties and would not be adverse to any public interest.

## V.
## PRAYER FOR RELIEF

For these reasons, Granite respectfully requests the Court to:

1.  Issue a Temporary Restraining Order ENJOINING Alberta, its affiliates, agents, officers, servants, employees, representatives, attorneys, and any other individual or entity in active concert or participation with Alberta from transferring or otherwise negotiating at least $700,000 of any funds received in connection with settlement of Defendant's arbitration against Callison Architecture, Inc. ("Callison Settlement Funds");

2.  Issue a Temporary Restraining Order ORDERING Alberta, its affiliates, agents, officers, servants, employees, representatives, attorneys, and any other party in active concert or participation with Alberta to:

    a.   Immediately notify the Court and Plaintiff in writing if and when any of them receive all, or a portion of the Callison Settlement Funds or information relating to payment of the Callison Settlement Funds, and

    b.   Hold at least $700,000 of all or any portion of the Callison Settlement Funds in their possession, custody, or control until further order of this Court;

3.  Set a Preliminary Injunction Hearing on this matter, at which Granite will request relief consistent with that requested herein along with a request that such relief remain in place until such time as issues relating to Granite's Motion for Attorneys' Fees and Expenses and Bill of Costs have been finally decided.

DATED: September ___, 2011.

Respectfully submitted,



_____

OSBORNE J. DYKES, III
BENJAMIN M. VETTER
FULBRIGHT & JAWORSKI L.L.P.
370 Seventeenth Street, Suite 2150
Denver, CO 80202
(303) 801-2700 – Telephone
(303) 801-2777 – Facsimile
jdykes@fulbright.com
bvetter@fulbright.com

PAUL TRAHAN
FULBRIGHT & JAWORSKI L.L.P.
600 Congress Avenue, Suite 2400
Austin, TX 78701
(512) 474-5201 – Telephone
(512) 536-4598 – Facsimile
ptrahan@fulbright.com

COUNSEL FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 20, 2011, a true and correct copy of the foregoing was served upon all counsel of record via U. S. first class mail and via email as follows:

> Stephen L. Waters
> Kimberly A. Bruetsch
> Robinson Waters & O'Dorisio, P.C.
> 1099 18th Street, Suite 2600
> Denver, CO 80202
> swaters@rwolaw.com
> kbruetsch@rwolaw.com
> *Attorneys for Land Title Guarantee*
>
>
> Stuart N. Bennett
> Lindquist & Vennum, P.L.L.P.
> 600 – 17th Street, Suite 1800 – South
> Denver, CO 80202
> sbennett@lindquist.com
> *Attorneys for Alberta Town Center, LLC*

_____
Paul Trahan