IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-CV-00799-ZLW-KLM

GRANITE SOUTHLANDS TOWN CENTER, LLC,

      Plaintiff

v.

ALBERTA TOWN CENTER, LLC,
LAND TITLE GUARANTEE COMPANY,

      Defendants.

**DEFENDANT ALBERTA TOWN CENTER, LLC'S BRIEF IN OPPOSITION TO GRANITE SOUTHLANDS TOWN CENTER LLC'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (DOCKET # 201)**

Defendant, Alberta Town Center, LLC (Alberta), by and through its attorneys, Jones & Keller, P.C., hereby submits this Brief in Opposition to Granite Southlands Town Center LLC's Application for Temporary Restraining Order and Preliminary Injunction (Docket # 201). ("Granite's Application")

## I.    INTRODUCTION

Granite's Application seeks to enjoin Alberta from "transferring or otherwise negotiating any assets received from" the proceeds of a settlement that Alberta entered into with third party, Callison Architecture, Inc. ("Settlement"). The United States Supreme Court has held that the relief Granite seeks (and has thus far been afforded) is outside the jurisdiction of this Court. Consequently, the existing temporary restraining order should be vacated and the request for preliminary injunction denied.

The sought-after preliminary injunction would prohibit Alberta from paying its legitimate debts owed to other parties, including, among others, the lawyers who handled the arbitration which gave rise to the Settlement and the lawyers representing it in this matter. Alberta paid these debts prior to the entry of the restraining order so the issue is essentially moot in any event. In effect, Granite's Application seeks to prefer Granite's unliquidated claim of attorneys' fees that have yet to be awarded over Alberta's payment of its debts to existing creditors. There is no basis in fact or law for the requested restraining order, which should therefore be vacated, and Granite's Application seeking a preliminary injunction should therefore be denied.

This is not Granite's first attempt to assert an interest in the Settlement proceeds of the Callison arbitration. Granite sought to intervene in the confirmation action filed in the Denver District Court, Case Number 09-cv-9185 claiming an interest in the underlying arbitration proceeding which gave rise to the Settlement. After, its motion to intervene was denied, Granite appealed the denial. The Colorado Court of Appeals affirmed the denial of Granite's motion to intervene in an opinion dated June 30, 2011, attached hereto as Exhibit "A". Dissatisfied with the outcome of its appeal, Granite has now apparently happened upon a new strategy to claim an interest in the Settlement proceeds by way of its current Application.

The remedy Granite seeks is not available under the law of equity. Granite's claim is solely for payment of money – its undetermined attorneys' fees in this action. Granite has no claim entitling it to permanent injunctive relief, so no jurisdiction for its claim for temporary or preliminary injunctive relief exists. Because Granite has no equitable interest in the Settlement proceeds, Granite is not entitled to an equitable remedy for its purely legal claim.

Even if the relief Granite seeks were available in the first instance, Granite cannot establish any of the factors necessary to obtain injunctive relief. Granite has made no showing of likely irreparable harm, no equities in its favor, no public interest, and no likelihood of success on the merits. If anything, Granite's Application shows just the opposite.

In addition, Granite has known since September 2009 when it filed the motion to intervene that Callison agreed to settle its dispute with Alberta, but Granite only now brings its Application. Granite's lack of diligence does not entitle it to the benefit of manufactured urgency in the maintenance of the status quo today. Because the equities in this matter distinctly favor Alberta and Granite fails to meet any of the prongs of the preliminary injunction test, the Court should dissolve the restraining order and deny Granite's Application for preliminary injunction.

## II.   ARGUMENT

### A.   Granite is not entitled to relief under F.R.C.P. 65 as a matter of law.

The temporary restraining order entered in this case and the preliminary injunction Granite seeks are contrary to the long history of equity jurisprudence established by the United States Supreme Court. For more than 65 years, the Supreme Court has rejected attempts to freeze an opponent's assets, as the Court as authorized here, through a "so-called injunction sequestrating [an] opponent's assets pending recovery and satisfaction of a judgment in . . . a law action. No relief of this character has been thought justified in the long history of equity jurisprudence." *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 223, 65 S. Ct. 1130, 1135 (1945) (reversing injunction freezing assets where plaintiff pled only legal claims).

In its more recent decision of *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 321-22, 191 S. Ct. 1961, 1969 (1999), the Supreme Court examined in great depth the reason why federal courts lack equity jurisdiction to issue an injunction of the type erroneously entered in this case. The "well-established general rule is that a judgment establishing the debt [is] necessary before a court of equity would interfere with the debtor's use of his property." *Id.* Quoting from Joseph Story's famous treatise, 1 Commentaries on Equity Jurisprudence § 12, pp. 14-15 (1836), the Supreme Court observed, "'[i]n many [States], if not in all, a debtor may prefer one creditor to another, in discharging his debts, whose assets are wholly insufficient to pay all the debts.'" *Id.* The Supreme Court characterized the relief granted by the Court here as one that has "never been available before . . . and has been specifically disclaimed by longstanding judicial precedent." *Id.,* 191 S. Ct. at 1969-70.

The Supreme Court recognized that a debtor favoring some creditors over others is not novel. But, the "the law of fraudulent conveyances and bankruptcy was developed to prevent such conduct; an equitable power to restrict a debtor's use of his unencumbered property before judgment was not." *Id.* The Tenth Circuit follows, as it must, the limitations on equity jurisdiction described above. *Home-Stake Prod. Co. v. Talon Petroleum, C.A. et al.*, 907 F.2d 1012, 1021 (10th Cir. 1990) ("The general federal rule of equity is that a court may not … freeze [unrelated assets] so that they may be preserved to satisfy a potential money judgment.").

The case upon which Granite primarily relies — *Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc.*, 805 F.2d 351 (10th Cir. 1986) — i s inapplicable to this dispute. *Tri-State* involved loans secured by "requirements contracts" which served to "guarantee a complete payback of the loans." *Id.* at 353. By contrast, Granite is an unsecured

creditor without any interest in the Settlement proceeds and whose claim remains undetermined. The restrained party in *Tri-State* sought to sell all of its assets and distribute the proceeds of the sale to its constituent members, thereby making it impossible for it to perform the requirements contracts securing Tri-State's loans. *Id*. at 353-54. Granite has no security or other interest in the property subject to the transaction to be enjoined. Rather than enjoining a pending transaction, Granite's Application seeks to enjoin payment of a completed contractual obligations—Alberta's payment of its attorneys. Alberta's payment of its attorneys from the Settlement proceeds is of a wholly different character than a complete liquidation and distribution to constituent members of assets constituting an important aspect of security for the creditor's loans. *Tri-State* is of no avail to Granite.

Granite is not entitled to any injunction because it has no interest in the specific assets it seeks to freeze. "[A] plaintiff seeking an asset freeze injunction must have asserted an underlying equitable interest in the particular property that is the subject of the proposed injunction." *In re Qwest Communications Int'l, Inc. Sec. Litig.*, 243 F. Supp. 2d 1179, 1184 (D. Colo. 2003). Granite has no equitable interest in the specific Settlement proceeds (*see* § II.2.a.ii, *infra*). Granite is therefore not entitled to relief pursuant to F.R.C.P. 65, and the restraining order should be dissolved and Granite's Application for preliminary injunction should be denied because both fall outside the Court's equitable jurisdiction. The Court's temporary restraining order violates a long history of equity jurisprudence, is contrary to longstanding judicial precedent and must therefore be vacated.

### B. Even if relief under F.R.C.P. 65 were available, Granite does not meet the test to be so entitled.

Granite must meet the following four-prong test to obtain a preliminary injunction: (a) it will suffer immediate irreparable harm if the injunction is not granted, (b) its threatened injury outweighs the harm caused to the opposing party as a result of the injunction, (c) the injunction is not adverse to the public interest, and (d) it has a substantial likelihood of success on the merits of the case. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004). Because Granite fails to meet any of the four parts of this test, the Court should vacate the restraining order and deny Granite's Application for preliminary injunction.

#### 1. Granite will not likely suffer irreparable harm if an injunction does not issue.

"[B]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is **likely** before the other requirements for the issuance of an injunction will be considered." *Dominion Video Satellite*, 356 F.3d at 1260 (emphasis added, citations omitted). As Granite does not demonstrate that any irreparable harm is "likely" should an injunction not issue, the Court should dissolve the restraining order and deny Granite's Application for preliminary injunction.

##### a) Granite's entitlement to any significant attorney fee award is purely hypothetical and doubtful, thus any alleged harm is not "likely."

Granite's alleged harm is purely hypothetical. Because the amount of attorneys' fees claimed by Granite is unreasonable, its entitlement to recovery of those fees—the entire basis for its alleged irreparable harm—is in doubt. The Court properly limited its award of attorney's fees

{JK00310924.3 }

-6-

to "reasonable" fees. Docket # 198 at 3. Granite nevertheless claims it is reasonable that it incurred nearly $700,000 in fees in pursuit of a declaratory judgment, through which it may recover $650,000 held in escrow. Docket # 199. The disproportionate relationship between the fees sought and the relief obtained demonstrates the fees are unreasonable and thus not awardable. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (holding that in determining the proper amount of awardable attorney fees, "the most critical factor is the degree of success obtained").

The unreasonableness of Granite's attorneys' fees is further demonstrated by the fact that Alberta offered to concede what Granite ended up obtaining: its entitlement to the $650,000 held in an escrow account.[1] Therefore, only minimal attorneys' fees were reasonably incurred with regard to Granite's claim to the escrowed funds, and cannot be the subject of Granite's alleged harm, much less "likely" harm. Far more effort was expended by the parties litigating Granite's numerous attempts to assert baseless dismissed fraud claims against Alberta. It was Granite's demand to receive (i) mid-six-figure compensation in addition to (ii) the escrow funds as well as (iii) the preservation of its dismissed fraud claims that precluded resolution of the escrow dispute.

Granite's attorney fee application, Docket #199, is unreasonable on its face due to either exorbitant billing rates, carelessness in preparation of the fee application, or both. The attorney fee application contains a table which bears the following headings:

---

[1] The inclusion of settlement negotiations in this Opposition Brief does not offend F.R.E. 408. *Lohman v. Duryea Borough*, 574 F.3d 163, 168 (3d Cir. 2009) *cert. denied*, 130 S. Ct. 3330 (2010). Alberta properly refers to settlement discussions as Granite itself has put the parties' settlement discussions at issue (*see* Docket # 199 at 12; *id.,* Exhibit B at ¶ 24).

{JK00310924.3 }

| Invoice Date | Escrow Related Hours | Escrow Related Fees | General Description of Work |
|---|---|---|---|

Docket # 199 at 10.  Underneath this heading, the following entry appears:

| 03/10/2011 | 17.00 | $95,429.07 | Prepare for and Attend Trial, Review Pretrial Submissions, Exhibit Objections, Witness Outlines, Witness Preparation, Findings of Fact & Conclusions of Law, Written Closing |
|---|---|---|---|

*Id.*  As the sum of $95,429.07 claimed in the above entry purportedly stems from merely 17 hours of legal work, the hourly rate for this entry equals $5,613.47.  This rate is unreasonable on its face.  If this entry is erroneous, it demonstrates that the fee application is not based on "meticulous" records as Granite admits are required by law (*id.* at 5), and there is reason to doubt that Granite has "gone to great lengths to accurately" claim the fees which it claims to have done.  Moreover, Granite seeks in excess of $95,000 for a one-day trial to the Court in which Granite offered the testimony of one witness in its affirmative case and one rebuttal witness.  Granite's entitlement to the fees claimed in its fee application is in such doubt that Granite suffers no "likely" harm should Granite's Application be denied.

Granite's attorney fee application is unreasonable because it makes an insufficient attempt to differentiate between fees incurred in pursuit of its ultimately successful claim and those incurred in pursuit of its dismissed fraud claims.  For instance, Granite makes a half-hearted attempt to apportion its substantial discovery-related fees by cutting them in half.  Docket # 199 at 19.  However, virtually no discovery was conducted related to the escrow claim in this dispute because interpretation of the unambiguous escrow agreement was purely a

{JK00310924.3 }

-8-

question of law.  *See* Trial Transcript at 24:10-19, attached in relevant part as Exhibit "B".  (Granite's opening statement argued that the case had already essentially been decided by previous denial of Alberta's motion for summary judgment).[2]   Where a party presents insufficient evidence to allow the Court to apportion its fees between those to which it is entitled and those to which it is not entitled, a Court cannot award any fees.  *Fountain v. Mojo*, 687 P.2d 496, 501 (Colo. Ct. App. 1984).  Therefore, Granite is not entitled to any fees, and therefore is not "likely" to suffer any harm should the restraining order be dissolved and Granite's Application for preliminary injunction be denied.

> **b)      Granite waived its interest in the proceeds resulting from the Arbitration.**

Because Granite waived its interest in the proceeds resulting from the Arbitration, it has no legal interest in the specific funds constituting the Callison Arbitration Settlement proceeds.  Granite therefore will neither suffer irreparable harm should an injunction not issue.  In rejecting Granite's appeal of the Denver District Court's denial of Granite's motion to intervene in a proceeding to confirm the award which resulted from the Callison arbitration,[3] the Colorado Court of Appeals stated the following:

> Callison's 'Motion for Summary Judgment Dismissal of Alberta's Claims for Lack of True Party in Interest and Request for Sanctions,' seeking to have Granite declared the real party in interest effectively operated as an invitation to Granite to seek intervention.  The Award itself reveals that

---

[2] For reasons known only to Granite, it never itself moved for summary judgment in this dispute after resisting Alberta's motion for summary judgment.  Given the disposition of Alberta's motion for summary judgment and the trial result in this case, Granite would have likely prevailed on its own motion for summary judgment.  This likelihood of success on summary judgment demonstrates that Granite's attorney fees related to trial preparation were unnecessary and unreasonable, thus not awardable.

[3] While Callison and Alberta reached a settlement in their arbitration, the arbitration panel additionally entered an award stating that Alberta was the real party in interest to the arbitration.  Benjamin A. Kahn, Esq. Affidavit, Exhibit "D", at ¶8.

{JK00310924.3 }

-9-

> the panel expressly considered the fact that 'Granite has been notified about the pendency of this proceeding but has not intervened.'....
>
> We agree that Granite should have represented its own interest, if any, in the underlying arbitration….
>
> Granite erroneously argues that because it could not intervene in the underlying arbitration, it needed to intervene in the confirmation proceedings. The record refutes this claim. Alberta and Callison's contract supplies the option of consolidation, or joinder of 'other entities or persons,' but that option was not exercised … Granite did not timely assert its claimed interest during the arbitration proceedings.

*Alberta Town Center, LLC v. Callison Architecture, Inc.*, 2010CA443, pp. 4-7 (June 30, 2011, Colo. Ct. App.) (motion for rehrg. den'd, opinion modified) (attached as Exhibit "A"). As the Colorado Court of Appeals has previously determined, Granite has no interest in the Settlement proceeds. This determination is final and binding on Granite under the doctrine of issue preclusion. *B. Willis, C.P.A., Inc. v. BNSF Ry. Corp.*, 531 F.3d 1282, 1300 (10th Cir. 2008) (federal court will apply issue preclusion to prevent re-litigation of issue determined in state court). Granite is therefore not "likely" harmed by its hypothetical inability to recover its undetermined reasonable fees from the Settlement should an injunction not issue.

Granite's purported "irreparable harm," if any, is the result of Granite's failure to exercise diligence in pursuing pre-judgment remedies. Granite's Application cites to the depositions of Peter Cudlip and Steven Zezulak—which took place in January and March of 2010, respectively—for the proposition that Alberta has very little assets and no active operations. Granite's Application, at 3. These facts have therefore been known to Granite for over eighteen months, and Granite has known about the potential payment of the Settlement since at least September 23, 2009. Exhibit A, at 2. Nevertheless, Granite never sought a pre-judgment writ of attachment for or claimed any other interest in Alberta's assets or the

{JK00310924.3 }

Settlement proceeds. In fact, only on September 22, 2011 did Granite first seek discovery of information which would assist a writ of attachment. *See* Granite's discovery requests, attached as Exhibit "C". Granite's lack of diligence throughout this dispute does not now make its alleged harm any more irreparable or likely. Any harm from Alberta's payment of its debts to the exclusion of Granite's unliquidated debts is due only to Granite's own neglect.

          **c)**         **Granite would not suffer from irreparable harm if an injunction does not issue because it has other remedies at law.**

"It is axiomatic that equitable relief is only available where there is no adequate remedy at law; cases in which the remedy sought is the recovery of money damages do not fall within the jurisdiction of equity." *Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520, 1527 (11th Cir. 1994). If an injunction does not issue, the harm Granite would suffer, if any, would not be irreparable because Granite has other remedies at law. Though Alberta has not conducted any of the activities described by the United States Supreme Court in *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, that case demonstrates the impropriety of granting Granite's Application prior to a judgment concerning the amount of fees to which it is entitled, if any:

> [W]e suspect there is absolutely nothing new about debtors' trying to avoid paying their debts, or seeking to favor some creditors over others…. The law of fraudulent conveyances and bankruptcy was developed to prevent such conduct; an equitable power to restrict a debtor's use of his unencumbered property before judgment was not.

527 U.S. 308, 321-22 (1999) (internal quotation marks and citations omitted). Should Granite desire to file a fraudulent conveyance claim or pursue its rights in the event of Alberta's bankruptcy; that is Granite's prerogative. The existence of these remedies demonstrates that denial of Granite's Application for preliminary injunction will not result in "irreparable" harm.

      2.      **The threatened harm to Granite does not outweigh the harm to Alberta should an injunction issue.**

As demonstrated above, the threatened harm to Granite should an injunction not issue is neither likely nor irreparable and results solely from its own lack of diligence.  Given the hypothetical and tenuous nature of Granite's harm, it cannot outweigh the very real harm to Alberta should an injunction issue: the inability to pay its legitimate debts in due course.  Granite alleges, without any supporting evidence, that Alberta seeks to "dissipate the Callison settlement proceeds."  Granite's Application at 7.  On the contrary, Alberta has only paid its quantifiable debts owed to it attorneys for their services.  Its inability to do so because of an injunction would almost certainly result in costly and harmful litigation.

      3.      **Granting Granite's Application would harm the public interest.**

It is in the public interest that companies pay their creditors what is owed.  Alberta has simply paid the attorneys responsible for the Settlement what they earned and its attorney's fees incurred in this matter.  The law firm of Brownstein Hyatt Farber Schreck, LLP ("Brownstein"), was entitled to an attorney's lien on the Settlement proceeds to secure payment of its fees. C.R.S. § 12-5-119.  See, Affidavit of Benjamin A. Kahn, Esq. attached as Exhibit "D", at ¶15. Brownstein's rights in Alberta's specific property are therefore superior to Granite's disputed, unliquidated, and unsecured claim.  Moreover, Alberta has already paid Brownstein from the Settlement proceeds to release its lien, and therefore the issues presented in Granite's Application are moot in any respect. Kahn Affidavit, at ¶16.  It would be contrary to the public interest to allow Granite to subvert Alberta's payment of its own debts when Granite's rights to the Settlement proceeds are inferior to Brownstein's attorney's lien on the Settlement proceeds.

Granting Granite's Application to freeze Alberta's assets would have implications for and wreak havoc on bankruptcy procedures as well. If an unsecured creditor could simply obtain an injunction whenever it alleged a debtor did not have sufficient capital to satisfy its debts, as Granite has done (*see* Granite's Application, § II.B.), it would subvert the orderly process Congress has carefully crafted to deal with those situations through the Bankruptcy Code. The resulting uncertainty would be contrary to the public interest.

**4.     Granite does not have a substantial likelihood of success on the merits of its attorney fee application.**

As detailed above (*see* § II.2.a.i, *supra*), Granite does not have a substantial likelihood of success on the merits of its attorney fee application. The request is unreasonable because the amount is excessive in relation to the relief obtained and the tasks performed, because Alberta offer of settlement proffered exactly what was obtained, and because of Granite's failure to apportion its fee request among the claim on which it succeeded and the claims which failed. Because of the scant likelihood of Granite's success on the merits of its nearly $700,000 attorney fee application, Granite's Application for preliminary injunction should be denied.

### III.  CONCLUSION

WHEREFORE, Alberta respectfully requests that this Court dissolve the temporary restraining order, deny Granite's Application for preliminary injunction, and to order such additional and further relief as appropriate.

DATED:  September 30, 2011.

Respectfully submitted,

*s/  Stuart N. Bennett*
Stuart N. Bennett
**JONES & KELLER, P.C.**
1999 Broadway, Suite 3150
Denver, CO 80202
Telephone:    (303) 573-1600
Fax:              (303) 573-8133
E-mail:          sbennett@joneskeller.com
Attorneys for Defendants Alberta Town Center, LLC, Donald G. Provost and Peter M. Cudlip

# CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | | |
|---|---|---|
| *Attorneys for Plaintiff & Counter Defendant Granite Southlands Town Center, LLC* | jdykes@fulbright.com<br>bvetter@fulbright.com | Osborne J. Dykes, III<br>Benjamin M. Vetter<br>Fulbright & Jaworski LLP<br>370 – 17th Street, Suite 2150<br>Denver, CO   80202 |
| *Attorneys for Plaintiff & Counter Defendant Granite Southlands Town Center, LLC* | ptrahan@fulbright.com | Paul Trahan<br>Fulbright & Jaworski LLP<br>600 Congress Avenue, Suite 2400<br>Austin, TX  78701 |
| *Defendant Land Title Guarantee Company* | kbruetsch@rwolaw.com | Kimberly A. Bruetsch<br>Robinson, Waters & O'Dorisio PC<br>1099 – 18th Street, 26th Floor<br>Denver, CO   80202 |
| *Defendant Allan G. Provost* | dbp@haplaw.net | Dennis B. Polk<br>Holley, Albertson & Polk, P.C.<br>1667 Cole Boulevard, Suite 100<br>Golden, CO   80401 |

And I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner indicated by the non-participant's name:    NONE

*s/    Stuart N. Bennett*
Stuart N. Bennett
Attorneys for Defendants Alberta Town Center, LLC,
Donald G. Provost and Peter M. Cudlip
JONES & KELLER, P.C.
1999 Broadway, Suite 3150
Denver, CO 80202
Telephone:    303-573-1600
Fax:             303-573-8133
E-mail:          sbennett@joneskeller.com

{JK00310924.3 }