UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
-----------------------------------------------------X
GRANITE SOUTHLANDS TOWN CENTER, LLC

              09 CV 799 (SJ)

          Plaintiff,

              <u>MEMORANDUM</u>
      - v -              <u>AND ORDER</u>

ALBERTA TOWN CENTER and
LAND TITLE GUARANTEE COMPANY.
             Defendants.
-----------------------------------------------------X
A P P E A R A N C E S:

FULBRIGHT & JAWARSKI LLP
370 Seventeenth St. 600 Congress Ave., Suite 2150
Denver, CO 80202
By:    Osborne J. Dykes, III
        Benjamin M. Vetter
        Windy B. McCracken

600 Congress Ave., Suite 2400
Austin, TX 78701
By:    Paul Trahan
Counsel for Plaintiff

**Attorneys for Plaintiff**

ROBINSON WATERS & O'DORISIO, P.C.
1099 18th Street, Suite 2600
Denver, CO 80202
By:    Stephen L. Waters
        Kimberly A. Bruetsch

**Attorneys for Defendant Land Title Guarantee**

JONES & Keller, P.C.
1999 Broadway, Suite 3150
By:    Stuart N. Bennett
        Kenneth B. Danielsen

**Attorney for Defendant Alberta Town Center, LLC**

JOHNSON, Senior District Judge:

Presently before the Court is a contract dispute between Granite Southlands Town Center, LLC ("Plaintiff" or "Granite") and Alberta Town Center, LLC ("Defendant" or "Alberta"). The matter came before the Court on a bench trial held on February 14, 2011.[1] In dispute is which party is entitled to the $650,000 plus accrued interest that had been placed in escrow pursuant to the purchase and sale of a large commercial property in Aurora, Colorado. Faced with conflicting claims for the amount in escrow, the escrow agent, Land Title Guarantee ("Land Title" or the "Escrow Agent"), refused to release the funds to either Granite or Alberta.[2] Consequently, Granite filed suit against Alberta and added Land Title as a nominal defendant.[3] After the trial both parties submitted proposed findings of fact and conclusions of law. Upon consideration of the evidence presented at the bench trial and the entire record, including the exhibits submitted, the Court makes the following Findings of Fact and Conclusions of Law.

---

[1] The bench trial followed the denial of Alberta's motion for partial summary judgment by United States District Judge Weinsheink. (See Docket Entry ("DE") 107, J. Weinsheink's Order, dated Feb. 9, 2010.) Testifying on behalf of Granite were: Christopher C. Silva ("Silva"), an employee of Blackrock; Land Title executive, Thomas Blake ("Blake"); Peter M. Cudlip ("Cudlip"), a partner at Alberta; and Angela Kravolec ("Kravolec"). Testifying on behalf of Alberta was Donald Provost ("Provost"), a partner at Alberta.

[2] Plaintiff's ("Pl.'s") Exhibit ("Ex.") 36 (letter from Land Title to the parties dated Marc. 6, 2009); see also Trial Transcript ("Tr.") 137 (Blake Testimony).

[3] Granite filed its Original Complaint against Alberta on April 8, 2009, seeking a declaratory judgment that it is entitled to the escrowed funds as well as damages in form of attorneys' fees and cost. On September 19, 2009, Granite amended the complaint to add fraudulent claims against Alberta's principals. Those claims were dismissed by Judge Weinsheink on December 29, 2009, and the principals are no longer parties in this action. (DE 85 Judge Weinsheink's Order, dated Dec. 29, 2009 ("J. Weinsheink's December 29 Order.")

# I.

## **FINDINGS OF FACT**

1. On September 22, 2005, Granite and Alberta executed a Forward Purchase and Sale Agreement ("the FPSA")[4] for a 450,000-square-foot two-story retail shopping center located in Aurora, Colorado known as the Southlands Town Center (the "Property").[5] At that time, the Property was still under development and the FPSA was meant to serve as a means to finance the construction of the Property. The parties initially expected to close on the transaction shortly after construction of the Property was completed in October 2006. Due to financing issues, however, the closing was extended to December 12, 2008 (the "December Closing Date").[6]

2. Section 8.1(k)(i) of the FPSA required Alberta to execute and deliver to Granite, as a precondition or condition precedent to Granite's obligation to close, certain "tenant estoppel certificates" by which the tenants of the Town Center would warrant certain information about their leases.[7] Specifically, under Section 8.1(k)(1) Alberta was required to deliver estoppels from any individual tenant "occupying more than 10% of the rentable square feet" of the Property, and collectively from tenants "who together occupy at least 75% of the total number of rentable square feet . . . . (collectively, the 'Required Estoppels')."[8]

---

[4] DE 126, Stip at 8; see also Pl.'s Ex. 1, FPSA; Tr. 54 (Silva Testimony); Tr. 150 (Blake Testimony). As Silva explained, a Forward Purchase and Sale Agreement governs the purchase of a property at a later date. Like all futures contracts, one of the advantages of such an arrangement is that it allows the buyer the ability to set the price at the time of contracting, with the hopes that the value of the property would appreciate before the buyer actually acquires title. (Tr. 57, 86.)

[5] DE 126, Final Pretrial Order, Stipulation ("Stip.") at 8; Tr. 42, 67 (Silva Testimony); Tr. 142 (Provost Testimony).

[6] Pl.'s Ex. 14, FPSA, Fourteenth Amendment; Tr. 166 (Provost); Tr. 215 (Cudlip Testimony).

[7] DE 126, Final Pretrial Order Stip. at 8; Pl.'s Ex. 1, FPSA, Article VIII, Buyer's Conditions Precedent to Closing, § 8.1(k)(i); see also Tr. 10, 206 (Cudlip Testimony).

[8] Pl's Ex. 1, FPSA, Article VIII, Buyer's Conditions Precedent to Closing, § 8.1(k)(i) (emphasis added).

3. The FPSA further specified that the Required Estoppels were to be in the form attached to the FPSA as Exhibit H (the "Required Form").[9]  The Required Form includes, in relevant part, the following four delineated paragraphs:

> 4. Tenant is currently obligated to pay annual base rental in monthly installment of $___ per month and monthly installments of annual base rental have been paid through. . . . Tenant has no claim or defense against Landlord under the Lease and is asserting no offsets or credit against rent or additional rent.  Tenant has not claim against Landlord for any security deposit or other deposit except $___ which security deposit was paid pursuant to the Lease.
>
> 5. Landlord has performed all of its obligations, if any, required to have been performed by Landlord prior to the date hereof under the Lease, including, if required under the Lease, making any repairs required to be made by Landlord. . . .
>
> 6. There is no existing defense, offset, lien or claim or counterclaim by or in favor of the undersigned or of Landlord under the Lease or against the obligations of the undersigned under the Lease . . . and Tenant is not contesting any such obligations, rentals or charges.
>
> 7. There is no default now existing on the part of the undersigned or of the Landlord under the Lease, and there is no event which with notice or the passage of time or both would constitute a default of the undersigned or of Landlord under the Lease.[10]

4. Pursuant to its duty under the FPSA to secure tenant estoppel certificates within 30-days of the closing date, Alberta secured a set of tenant estoppel certificates in preparation for the May 2008 closing (the "2008 Estoppels").[11]  The parties later agreed to further postpone the closing date to December 15, 2008, with the understanding that Alberta would secure updated tenant estoppels for the December Closing Date.[12]

5. Prior to the December Closing Date, in November 2008, Alberta attempted to deliver the identical 2008 Estoppels to Granite.  Granite rejected those estoppels on the grounds that the certificates were more than six-months old.[13]  Due to financing

---

[9] Pl.'s Ex. 1, FPSA Article VII, <u>Construction of the Buildings Other Seller's Covenants; Other Seller Covenants</u> at § 7.2 (i).

[10] Pl.'s Ex. 46, FPSA, Ex. H.

[11] Tr. 9, 10; Pl.'s Ex. 24, Cinema's May 2008 Estoppel Certificate (the "2008 Cinema Estoppel").

[12] Pl.'s Ex. 1, FPSA, 14th Amendment.

[13] Tr. 6 (Silva Testimony).  Sometime in November 2008, Granite informed Alberta that it was no longer interested in pursuing structured debt financing to close on the transaction, and wanted to execute a

issues, however, the parties could not further postpone closing and decided to proceed with the closing even when it became clear that Alberta would not be able to timely deliver updated tenant estoppels Granite for the December Closing Date.

6. Even though the parties had to move forward with the closing, they amended the FPSA on December 8, 2008 to address the issue of stale estoppels: the Fifteenth Amendment to Amendment and Agreement and Termination Agreement (the "Fifteenth Amendment").[14]  The parties agreed, as part of the Fifteenth Amendment, to place $650,000 of the closing funds into an escrow account maintained by an escrow agent.  Alberta, in turn, was obligated to provide updated estoppels on or before March 1, 2009.[15]

7. The Fifteenth Amendment provided Granite with the right to object to any tenant estoppel certificate if such certificate:

> is not in the form required under Section 7.2(i) or has been materially and adversely modified from that form, or (ii) indicates the continuing existence of an actual material default of the landlord under the applicable Lease, or (iii) correctly indicates that the Lease includes terms and provisions that are inconsistent with the Approved Leasing Guidelines or terms and provision that are inconsistent with the applicable lease delivered to Buyer by delivering a written notice of objections. . . .[16]

8. However, the Fifteenth Amendment also restrained Granite's ability to object to a delivered tenant estoppel, providing in relevant part:

> Buyer may not object to . . . ."[a]ny Tenant Estoppel Certificate delivered to Buyer on or after the date that is 30 days before the Closing Date for a Tenant Estoppel Certificate that is substantially similar to the Tenant Estoppel Certificate for that tenant executed in or about May 2008 and previously delivered to Buyer.[17]

---

straight purchase of the asset pursuant to the FPSA (Tr. 170–71, Provost Testimony).

[14] DE 126, Stip at 8; see also Pl.'s Ex. 17 at 17a-001, Fifteenth Amendment, Recitals at ¶ A.

[15] DE 126, Final Pretrial Order, Stip. at 9.

[16] Pl.'s Ex. 17, Fifteenth Amendment of the FPSA, § 2(c) at 17a-003.

[17] Id.  Alberta, in its motion for partial summary judgment submits that the 2009 Cinema Estoppel at issue here was substantially similar to the 2008 Cinema Estoppel.  In denying the motion, J. Weinsheink considered and rejected this claim, and this Court does not disturb her findings.  (DE 107, J.

9. With respect to the $650,000 to be placed in escrow, the Fifteenth Amendment, provides in relevant part:

> "If, prior to the Closing date, Seller object fails to deliver the Required Estoppels, (x) Seller shall be obligated to continue to use commercially reasonable efforts to obtain the Required Estoppels after the Closing, and (y) Escrow Holder shall retain Six Hundred Fifty Thousand and No/100 Dollars ($650,000.00) of the Excess Funds at Closing ("Estoppel Holdback"). . . . Upon Seller's delivery of the Required Estoppels to Buyer, Buyer shall instruct Escrow Holder by written notice to Escrow Holder to deliver the Estoppel Holdback to Seller. . . . and (ii) should Seller fail to deliver the Required Estoppels to Buyer . . . on March 1, 2009, Buyer and Seller agree Escrow Holder Shall Deliver the Entire Estoppel Holdback to Buyer upon written notice to Escrow Holder from Buyer , and the amount of the Estoppel Holdback shall be deemed to have been forfeited by Seller.[18]

10. On the December Closing Date, Granite and Alberta executed a Release and Termination Agreement which expressly provided that "notwithstanding anything to the contrary contained herein, any obligations of the Parties under the following agreements are expressly not released or waived" inclusive of Alberta's obligation, under Section 8.1(k) of the FPSA, to deliver tenant estoppel certificates, at or after the closing, dated within 30 days of the closing of the Town Center.[19]

11. On the December Closing Date, pursuant to the terms of the Fifteenth Amendment, Alberta and Granite, along with Land Title, also executed an escrow agreement (the "Escrow Agreement"), which provides that "Upon Alberta's delivery of the Required Estoppels to Granite, Granite shall instruct Escrow Holder by written notice to deliver the Cash Funds to Alberta. . . .[20] The Escrow Agreement also provides that the "Escrow Agent shall disburse Cash Funds in accordance with the

---

Weinsheink's Feb. 09, 2010 Order at 7–9.) Thus, as explained more fully in Part II below, to the extent that Alberta's defense to this action is that the 2009 Cinema Estoppel's reference to a cracked foundation is not material because the Cinema's 2009 is "substantially similar," to the Cinema's 2008 certificate, this Court rejects it.

[18] Pl.'s Ex. 17, the Fifteenth Amendment, § 4.1 Purchase Price at 17a-004.

[19] Pl.'s Ex. 18, Release and Termination Agreement at 005; Tr. 61 (Silva Testimony).

[20] Pl.'s Ex. 20, the Escrow Agreement, § 3.2 Disbursement of Cash Funds and Holdback at 20-003.

final order, judgment or decree of any court of competent jurisdiction which may be filed, entered, or issued."[21]

12. Before the March 1, 2009 deadline, Alberta timely delivered to Granite eighty-five (85) tenant estoppels covering for tenants that together occupy at least 75% of the total number of rentable square feet, and including an updated tenant estoppel from the Colorado Cinema Group, LLC (the "Cinema")—the only Town Center tenant occupying more than 10% of the rentable square footage of the Property (the "2009 Cinema Estoppel").[22]

13. Granite timely objected to nine (9) of these delivered tenant estoppels—among which was the 2009 Cinema Estoppel—on the grounds that said estoppels were not "[i]n accordance with Section 8.1(k)(ii) of the FPSA," and "for reasons apparent from the face of the certificates."[23] The Cinema's Estoppel is the only disputed estoppel at issue here because it is the only tenant that leases more than 10% of the rentable square footage, and with respect to the balance of the eight, Alberta has complied with the 75% threshold of delivering tenant estoppels regardless of whether they are accepted or not.[24]

14. The 2009 Cinema Estoppel included language that discloses to Granite for the first time the existence of a cracked foundation and structural defects in the portion of the Property that Cinema leases.[25]

15. Alberta was aware of Cinema's concerns as early as six-months prior to closing, and had, in fact, hired engineers and lawyers to investigate and address the issue.[26]

---

[21] Id. at §3.3 Court Order.

[22] DE 126, Final Pretrial Order, Stip at 10; Pl.'s Ex. K, letter from Alberta to Granite (providing notice of the delivery of the Required Estoppels); Pl.'s Ex. 23, the 2009 Cinema Estoppel.

[23] Pl.'s Ex. 30, email from Granite's counsel to Alberta's counsel dated Feb. 24, 2009 (objecting to nine tenant certificates; Pl.'s Ex. 34, email from Granite's counsel to Alberta's counsel dated Marc. 3, 2009 (explaining that it was rejecting estoppels for the reasons permitted by the FPSA).

[24] The "at least 75%" requirement is not at issue in present dispute. (See DE 107, J. Weinsheink's December Order at FN1.

[25] Pl.'s Ex. 23, the 2009 Cinema Estoppel.

[26] Tr. 187, 204, 222–24, 229 (Cudlip Testimony); Tr. 237 (Kralovec Testimony); Def.'s Ex. 116-004

16. Other provisions of the FPSA raised by the parties include the following:

(i)  Section 5.1 of the FPSA specified that "Buyer acknowledges, understands and
agrees . . . (iii) except as expressly set forth herein and except for those
warranties expressly set forth, or implied by law, in the Deed or other
documents, delivered to at the Closing, the Property is being sold to Buyer
on the Closing date in its then 'AS IS, WHERE IS' condition," with all
faults.[27]

(ii) Furthermore, Section 5.3(c) also specified that "Buyer's right to access the
Property and perform additional test and inspections is in no way to be
inferred or interpreted as Buyer's right to prohibited Granite from
terminating the agreement "as a result of any matter related to the condition
of the Property."[28]

(iii) Section 7.2(f) of the FPSA addressed Alberta's obligations to Granite in the
event of a "Change in Condition" providing, "Seller shall promptly notify
Buyer of any change in any condition with respect to the Property or any
portion of thereof or of any event or circumstance of which Seller has
knowledge subsequent to the date of this Agreement which (a) makes any
representation or warranty of the Seller to Buyer under this Agreement
untrue or misleading, or (b) makes any covenant or agreement of Seller
under this Agreement incapable of being performed."[29]

17. In this action, Granite contends that the 2009 Cinema Estoppel materially and
adversely diverges in from the FPSA's Required Form.  Furthermore, in its
divergence, it discloses for the first time a cracked foundation and structural

---

and Pl.'s Ex. 47-001 (email between Alberta employees discussing request of Ground Engineering
"research a sonar study of the cinema foundations," dated June 20, 2008); Pl. Ex. 42 (letter from Ground
to Alberta on foundations research, dated Sept. 8, 2008); Pl.'s Ex. 56 (Town Center requesting proposals
for engineering services related to some of the cinema's structural issue, dated Nov. 19, 2008);  Pl.'s Ex.
65 (letter from Alberta's counsel to Cinema's counsel disputing responsibility for cracked foundation,
dated Dec. 18, 2008).

[27] Pl. Ex. 1, FPSA, Article V, Inspection, §5.1.

[28] Pl.'s Ex. 1, FPSA, Article V, Inspection, §5.3(c).

[29] Pl.'s Ex. 1, FPSA, Article VII, Construction of the Buildings; Other Seller Covenants, §7.2(f) at 023.

defects, exposing Granite to potential claims by the Town Center's anchor tenant—thus depriving Granite of the very protection it had bargained for under the terms of the Fifteenth Amendment and the Escrow Agreement.

18. Alberta contends that Granite had no right to object to the estoppel because Granite was aware of the cracked foundation issue ahead of the closing which, in any event, is not a material issue because it is not an actual landlord default.[30]  Alberta also asserts that the Estoppel Holdback was not meant to protect Granite against future tenant claims in the event that Alberta failed to deliver valid or "clean" tenant estoppels.  Rather, Alberta maintains, the Estoppel Holdback's only purpose was to ensure timely delivery of the Required Estoppels, which Alberta has undisputedly done, and hence it should prevail in this action.[31]

## II.
## CONCLUSIONS OF LAW

The sole claim before this Court is for a breach of contract based on the parties' conflicting interpretations of the FPSA as it pertains to the issue of whether the 2009 Cinema Estoppel fulfilled Alberta's obligations under the FPSA.  The parties do not dispute that Colorado contract law applies.

"Under Colorado law, contracts should be interpreted consistently with the well-established principles of contractual interpretation."  Level 3 Communications, LLC v. Liebert Corp., 535 F.3d 1146, 1154 (10th Cir.) (citing Allstate Ins. Co. v. Huizar, 52 P.3d 816, 819 (Colo.2002). "A court's primary obligation is to effectuate the intent of the contracting parties according to the plain language and meaning of the contract."  Albright v. McDermond, 14 P.3d 318, 322 (Colo. 2000).   "Absent an

---

[30] Def.'s Ex. 66 (email from Cudlip to Provost stating that Granite was aware of the cracked foundation, dated Feb. 24, 2009).

[31] Tr. 28, 29, 171 (Provost Testimony).

indication the parties chose to deviate from plain meaning, the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words used.  In other words, common usage prevails, and strained constructions should be avoided."  Level 3, 535 F.3d at 1154.  As a rule, the interpretation of contract and whether it is ambiguous are both a question of law.  Pub. Serv. v. Meadow Island Ditch Co. No. 2, 132 P.3d 333, 339 (Colo. 2006).  A contract is ambiguous if it is "reasonably susceptible to more than one interpretation," and parol or extrinsic evidence is conditionally admitted to determine whether it is ambiguous. Level 3, 535 F.3d at 1155.

As an initial matter, the Court rejects Alberta's argument that Granite could not, per the parties' Closing Agreement, properly object to the 2009 Cinema Estoppel because it was "substantially similar" to the 2008 estoppel provided by the Cinema.  As noted in footnote 17, supra, Judge Weinsheink has already found that the 2008 and 2009 Cinema estoppels are not "substantially similar."  It follows then that the Closing Agreement does not control.

Here, there is no dispute that as provided for in FPSA Section 8.1(k)(ii), Granite could properly object to the 2009 Cinema Estoppel is if the estoppel:

    (1) is not the form required by Exhibit H of the FPSA or has been materially and adversely modified from that form;
    (2) indicates the continued existence of an actual material default of the landlord under the applicable lease; or
    (3) correctly indicates that the tenant's lease includes terms and provisions inconsistent with the lease delivered to Granite.

Thus, under the common sense meaning of the word **_"or"_** Granite was well within its rights to object if just one of the above conditions were met.

The purpose of the tenant estoppels was to protect Granite from potential claims from tenants. A review of Paragraphs 4–7 of Exhibit H, as noted more fully in paragraph 3 of the Court's fact findings, shows that Granite wanted tenants to warrant, in sum: (i) that the tenant had no existing claim or defense against the landlord under the existing lease; (ii) that the landlord had perform all of its obligations; (iii) that the tenant had no defense, offsets, and claims against a new landlord, and (iv) did not know of any existing default or event that could constitute default in the future.

Based upon the Court's fact findings, the Court concludes that disclosure of the Cinema's cracked foundation was both "material" and "adverse." First, there is no question that the 2009 Cinema Estoppel was modified from the Required Form in at least four (4) ways—the most significant of which being the disclosure of the Cinema's cracked foundation and structural defects, which exposes Granite to potential claims of liability by the Property's anchor tenant. The parties negotiated the Tenant Estoppel in the original FPSA and the provision survived the numerous amendments to the FPSA—indicating the importance that clean tenant estoppels played in the closing of the transaction.[32] Exposure to potential claims such as a tenant's assertion that the

---

[32] The Court specifically credited Silva's testimony that the purpose of the estoppel was to provide "some security in the event that there was a problem with some of these estoppels (Tr. 66), and found Provost's testimony that a cracked foundation would not material to him as a buyer, is simply not credible. (Tr. 181–82, 192.)

building itself is faulty deprives Granite of the very protection it bargained for in the original Tenant Estoppel, and in the subsequent Estoppel Holdback—potential tenant claims for problems that existed prior to closing.[33] See Level 3, 535 F.3d at 1154 (stating that "in construing a contract courts must also 'consider the subject matter, the object of making it, the sense in which the parties naturally understood it at the time it was made, and the purposes and objects to be accomplished thereby. . . .'" (quoting Total Petroleum, Inc. v. Farrar, 787 P.2d 164, 167 (Colo. 1990)).

Alberta contends that the 2009 Cinema Estoppel provides only notice of an incomplete investigation concerning which party is responsible for repairing cracks in the Cinema building foundation, rather than notice of an existing landlord default. Specifically, Alberta argues that under the express terms of the separate lease agreement between the Cinema and Alberta, it is the Cinema that is financially responsible for repairs to the Cinema building; Alberta thus has no obligation to repair the Cinema's cracked foundation.

The record shows, however, that there is a genuine difference of opinion between the Cinema and Alberta concerning who is ultimately liable for the Cinema's foundation problems. For example, while there is evidence in the record that Alberta believed that that the Cinema bore the duty for any structural defects, the record also

---

[33] Silva testified that the Cinema is by far the Town Center's largest tenant as it occupies 72,000 square feet of the 420,000 square feet of the Property, and its lease, which ran until 2026, generated nearly two million dollars in annual revenue for the landlord.  (Tr. 7, 14, 15, 10, 59.)

shows that the Cinema contested this position.[34]    Furthermore, notwithstanding Alberta's claims, the record also shows that Alberta nevertheless took steps to investigate the issue and retained legal counsel in connection with this dispute with the Cinema.[35]  Having already retained legal counsel in its dispute with the Cinema, the Court's must reject Alberta's position that the cracked foundation immaterial. Whatever the ultimate merits of a potential claim against Granite by the Cinema, Granite will still have to defend it.  This expenditure of resources on a tenant condition existing prior to the December Closing Date, even if Granite ultimately prevails, is precisely what the tenant estoppels provision in the FPSA intended.

The Court also rejects Alberta's arguments that other provisions of the FPSA overcome the validity of Granite's objections to the 2009 Cinema Estoppel. Specifically, Alberta contends that the disclosure of the cracked foundation was not material or adverse because:  (i) Granite had an unconditional duty to close pursuant to the FPSA's "AS IS, WHERE IS" and termination provisions—which bar Granite from terminating the deal based upon the condition of the Property; (ii) Alberta did not make

---

[34] Def.'s Exs. 49–51; Pl.'s Ex. No. 39-001 (email from the Cinema to Alberta stating that it was the Cinema's position that the cracked foundation "is the responsibility of the landlord to correct," dated Sept. 16, 2008.)

[35] Tr.  187, 204, 222–24, 229 (Cudlip Testimony); Tr. 237 (Kralovec Testimony); Def.'s Ex. 116-004 and Pl.'s Ex. 47-001 (email between Alberta employees discussing request of Ground Engineering "research a sonar study of the cinema foundations," dated June 20, 2008); Pl. Ex. 42 (letter from Ground Engineering to Alberta on its foundations research on the Property, dated Sept. 8, 2008); Pl.'s Ex. 56 (Town Center requesting proposals for engineering services related to some of the cinema's structural issue, dated Nov. 19, 2008);  Pl.'s Ex. 65, (letter from Alberta's counsel to Cinema's counsel disputing responsibility for cracked foundation, dated Dec. 18, 2008).

any representations or warranties to Granite concerning the condition of the Property; (iii) the FPSA provides Granite with a defense if a defect exists because Granite purchased from Alberta all the relevant warranties and guarantees from third-parties who participated in the construction of the Property; and (iv) finally, in any event, Granite was well aware of the cracked foundation issue.[36]

The Court finds none of these contentions persuasive. First, Alberta's reliance on As Is/Where Is and termination provisions of the FPSA is misplaced. Those provisions operate to constrain Granite from suing Alberta post-closing with respect to the condition of the Property. They do not directly bear on the operative issues here: namely, Alberta's obligation and failure to deliver updated Required Estoppels wherein tenants affirm, among other things, that there were no existing issues or potential claims/defenses against the landlord; and Granite's remedy for Alberta's failure to do so. It follows then that Court is bound to construe the As Is/Where Is and termination provisions in harmony with the controlling Fifteenth Amendment of the FPSA and the Escrow Agreement. See Pepcol Mfg. Corp. v Denver Union Corp., 687 P.2d 1310, 1313–14 (Colo. 1984) (an integrated contract in the first instance is to be interpreted in its entirety with the end view of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless); see also Level 3, 535 F.3d at 1154 (noting that is a general principle of contract interpretation that "while every relevant provision must be considered and given effect, 'a more specific provision

---

[36]Tr. 50, 162 (Provost Testimony).

controls the effect of general provisions.'") ((citing <u>E-470 Pub. Highwayu Auth. v. Jagow</u>, 30 P.3d 798, 801 (Colo. Ct. App. 2001) <u>aff'd</u>, 49 P.3d 1151 (Colo. 2002)).

Second, concerning Alberta's argument on Granite's potential remedies and the lack of actual landlord default, even assuming the warranties/guarantees Granite assumed under the FPSA would ensure a successful defense of a potential claim for the Cinema's structural problems, the time and expense of defending against a problem that existed prior to the December Closing Date is not what Granite bargained for.

Finally, concerning Alberta's claim of Granite's knowledge of the cracked foundation, the record shows that Alberta was aware of the cracked foundation at least six-months prior to the December Closing Date. While Alberta might have conveyed this information to Granite's representatives orally, there is simply no evidence in the record that Alberta ever provided Granite with notice of this issue.[37]

Accordingly, the Court finds that the 2009 Cinema Estoppel modified in "material" and "adverse" ways from the Required Form. As such, Granite was not required to accept the 2009 Cinema Estoppel, and is entitled to the funds in escrow.

---

[37] Tr. 73 (Silva Testimony); Tr. 204, 229 (Cudlip Testimony); Tr. 230–31, 236–37 (Kralovec Testimony).

## CONCLUSION

Based on the foregoing, the Court finds in favor of Granite on its breach of contract claim.  Accordingly, it is

ORDERED that the Clerk of Court shall enter judgment in favor of Plaintiff Granite Southlands Center, LLC and against Defendant Alberta Town Center, LLC.


 This ruling makes it unnecessary to discuss any other issues raised by the parties.




SO ORDERED.

DATED:         September 02, 2011              _____/s/_____
                    Brooklyn, New York                Sterling Johnson, Jr.  U.S.D.J.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
-------------------------------------------------------X
GRANITE SOUTHLANDS TOWN CENTER, LLC

                                             09 CV 799 (SJ)

            Plaintiff,

                                         <u>MEMORANDUM</u>

       - v -                               <u>AND ORDER</u>

ALBERTA TOWN CENTER and
LAND TITLE GUARANTEE COMPANY.
                    Defendants.
-------------------------------------------------------X
A P P E A R A N C E S:

FULBRIGHT & JAWARSKI LLP
370 Seventeenth St. 600 Congress Ave., Suite 2150
Denver, CO 80202
By:    Osborne J. Dykes, III
        Benjamin M. Vetter
        Windy B. McCracken

600 Congress Ave., Suite 2400
Austin, TX 78701
By:    Paul Trahan
Counsel for Plaintiff

**Attorneys for Plaintiff**

ROBINSON WATERS & O'DORISIO, P.C.
1099 18th Street, Suite 2600
Denver, CO 80202
By:    Stephen L. Waters
        Kimberly A. Bruetsch

**Attorneys for Defendant Land Title Guarantee**

JONES & Keller, P.C.
1999 Broadway, Suite 3150
By:    Stuart N. Bennett
        Kenneth B. Danielsen

**Attorney for Defendant Alberta Town Center, LLC**

JOHNSON, Senior District Judge:

**<u>ADDENDUM</u>**

The Court issues the following addendum to its Memorandum and Order dated

September 02, 2011 (Docket Entry ("DE") 195), and for the reasons stated therein.  It

is ORDERED that:

> Plaintiff Granite Southlands Center, LLC ("Plaintiff") is entitled to receive the full sum of the Estoppel Holdback at dispute in the litigation (the "Cash Funds")—to wit $650,000 in earnest money placed in escrow with Land Title Guaranty Co. (the "Escrow Agent")—plus accrued interest, and minus the sum of the registry fee.

> The Escrow Agent who has interpleaded the Cash Funds with the Court is thus obligated to deliver the Cash Funds to Granite.  The Escrow Agent, however, may file its own motion for fees and costs pursuant to the Order entered on December 7, 2010 (DE 153).

> The Escrow Agent, as a nominal defendant who is acting as the Escrow Agent for the subject funds and, pursuant to the Escrow Agreement, is merely awaiting to disburse Cash Funds in accordance with the final order, judgment or decree of any court of competent jurisdiction which may be filed, entered, or issued, is thus dismissed as a party in this case.

> Plaintiff is also entitled to recover its reasonable and actual attorney's fees, expenses and cost pursuant to paragraph 12 of the Escrow Agreement and D.C. COLO.LocalCiv.R 54.1.

> SO ORDERED.

DATED:        September 13, 2011            _____/s/_____
              Brooklyn, New York            Sterling Johnson, Jr.  U.S.D.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-CV-00799-ZLW-KLM

GRANITE SOUTHLANDS TOWN CENTER, LLC,

      Plaintiff,

v.

ALBERTA TOWN CENTER, LLC, and
LAND TITLE GUARANTEE COMPANY,

      Defendants.

_____

FINAL JUDGMENT
_____

      This Final Judgment is entered pursuant to and in accordance with Fed. R. Civ.

P. 58(a) and the orders entered Senior Judges Zita L. Weinshienk and Sterling

Johnson, Jr.

      Pursuant to and in accordance with the Order Granting Stipulated Motion for

Leave to Interplead Funds (Doc. 153) entered by Judge Weinshienk on December 7,

2010, incorporated herein by reference, it is

      ORDERED:

I.      Pursuant to and in accordance with the Order Re: Defendant Alberta

Town Center, LLC's Unopposed Motion Pursuant to Fed. R. Civ. P. 41 to Dismiss

Without Prejudice Its Counterclaims Against Plaintiff (Doc. No. 180) entered by Judge

Johnson on February 14, 2011, it is

      ORDERED that Defendant Alberta Town Center, LLC's Unopposed Motion

Pursuant to Fed. R. Civ. P. 41 to Dismiss Without Prejudice Its Counterclaims Against Plaintiff is granted.

II.     The case proceeded to a bench trial before Judge Johnson on February 14, 2011.

III.    Pursuant to and in accordance with the Memorandum and Order (Doc. 195) entered by Judge Johnson on September 2, 2011, it is

ORDERED that FINAL JUDGMENT is hereby entered in favor of Plaintiff Granite Southlands Center, LLC on its breach of contract claim and against Defendant Alberta Town Center, LLC.

IV.     Pursuant to and in accordance with the September 13, 2011 Addendum (Doc. 197) to the Court's Memorandum and Order (Doc. 195) entered by Judge Johnson on September 2, 2011, it is

ORDERED that

A.      Plaintiff Granite Southlands Center, LLC ("Plaintiff") is entitled to receive the full sum of the Estoppel Holdback at dispute in the litigation (the "Cash Funds")—to wit $650,000 in earnest money placed in escrow with Land Title Guaranty Co. (the "Escrow Agent")—plus accrued interest, and minus the sum of the registry fee.

B.      The Escrow Agent who interpleaded the Cash Funds with the Court is thus obligated to deliver the Cash Funds to Granite. The Escrow Agent, however, may file its own motion for fees and costs pursuant to the Order entered on December 7, 2010 (Doc. 153).

2

C.      The Escrow Agent, as a nominal defendant who is acting as the Escrow

Agent for the subject funds and, pursuant to the Escrow Agreement, is

merely awaiting to disburse Cash Funds in accordance with the final

order, judgment or decree of any court of competent jurisdiction which

may be filed, entered, or issued, and is thus dismissed as a party in this

case.

D.      Plaintiff is also entitled to recover its reasonable and actual attorney's

fees, expenses and costs pursuant to paragraph 12 of the Escrow

Agreement and D.C.COLO.LCivR 54.1.

DATED at Denver, Colorado this <u>13th</u> day of September, 2011.

FOR THE COURT:

GREGORY C. LANGHAM, CLERK


<u>s/ Edward P. Butler</u>
Edward P. Butler,
Deputy Clerk

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-CV-00799-ZLW-KLM (SJ)

GRANITE SOUTHLANDS TOWN CENTER LLC,
        Plaintiff,

v.

ALBERTA TOWN CENTER, LLC, and
LAND TITLE GUARANTEE COMPANY,
        Defendants.

---

### PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES

---

Pursuant to Fed. R. Civ. P. 54 and the parties' agreement, Plaintiff Granite Southlands Town Center LLC ("Granite"), as the prevailing party, files this Motion for Attorneys' Fees to recover from Defendant Alberta Town Center, LLC ("Alberta") the attorneys' fees and expenses Granite incurred in direct relation to the claims which were the subject of the February 2011 trial.[1]

## I.    SUMMARY OF MOTION

As the prevailing party, Granite is entitled to its legal fees and expenses and therefore requests an order requiring Alberta to pay legal fees and expenses in the amount of $685,925.12. This amount is limited to the fees and expenses Granite incurred in relation to the Escrow Claims, which were the claims tried to this Court in February 2011. This figure and motion to do not include fees and expenses Granite incurred in relation to other disputes and claims between the parties.

---

[1] Granite is filing a separate Bill of Costs on the Court's form pursuant to D.C.COLO.LCivR 54.1 by which Granite will request an award of its costs. Consequently, Granite's request for expenses in this motion is limited to those items not covered by the local rule on costs.

86137997.6

The following table summarizes how Granite arrived at the $685,925.12 figure for attorneys' fees and expenses:

|  | **HOURS** | **AVERAGE RATE** | **TOTAL** |
|---|---|---|---|
| **FEES ALREADY INVOICED** | 1497.90 | $385.27 | $580,403.32 |
| **EXPENSES ALREADY INVOICED** | N/A | N/A | $54,642.80 |
| **FEES NOT YET INVOICED** | 109.50 | $355.06 | $38,879.00 |
| **ESTIMATE OF FUTURE FEES** | 30.0 | $400.00 | $12,000.00 |
|  |  | **TOTAL** | **$685,925.12** |

These figures are fully supported by affidavits attesting to the reasonableness of the underlying services, rates, fees, and expenses, along with invoices that provide a detailed description of the services provided. A more detailed summary of hours worked and fees charged is provided on <u>Addendum B-1</u>, which is part of the affidavit of Paul Trahan attached hereto as <u>Exhibit B</u> ("Trahan Affidavit").

## II.   AS PREVAILING PARTY, GRANITE IS ENTITLED TO THE ATTORNEYS' FEES AND EXPENSES INCURRED IN RELATION TO THE ESCROW CLAIMS

Pursuant to the Final Judgment issued by the Deputy Clerk of this Court on September 13, 2011, Granite prevailed in this litigation. *See* Final Judgment (Docket #198). Alberta and Granite agreed, as part of the Escrow Agreement, that the prevailing party in any dispute arising from the Escrow Agreement is entitled to recover from the non-prevailing party its reasonable

and actual attorneys' fees and expenses, including those incurred in connection with any appeal. *See* Plaintiff Trial Exhibit No. 20 (Escrow Agreement). Paragraph 12 of the Escrow Agreement reads:

> 12. <u>Attorneys' Fees</u>. The prevailing party in any dispute arising from this [Escrow] Agreement shall be entitled to recover from the non-prevailing party its reasonable and actual attorneys' fees and expenses, including any incurred in connection with any appeal.

The claims that were tried to this Court in February 2011, and on which Granite prevailed, arise from the Escrow Agreement ("Escrow Claims"). Granite, therefore, now is entitled to recover from Alberta the attorneys' fees and expenses it incurred in relation to the Escrow Claims. The only issue is what amount of attorneys' fees and expenses is proper.

## III. <u>STANDARD FOR AWARDING ATTORNEYS' FEES & EXPENSES</u>

### A. <u>Legal Standard</u>

In diversity cases, attorney fee awards are "a substantive matter controlled by state law." *Combs v. Shelter Mut. Ins. Co.*, 551 F.3d 991, 1001 (10th Cir. 2008). To determine a reasonable attorneys' fee, courts arrive at a "lodestar" figure by multiplying the hours counsel reasonable expends on litigation by a reasonable hourly rate. *E.g.*, *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998); *Dubray v. Intertribal Bison Coop.*, 192 P.3d 604, 608 (Colo. Ct. App. 2008) ("The initial estimate of a reasonable attorney fee is reached by calculating the 'lodestar' amount, which represents the number of hours reasonably expended multiplied by a reasonable hourly rate."); *see also* 10 Moore's Federal Practice § 54.190(2)(a)(i) (Matthew Bender 3d ed.). Once calculated, "[a] claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." *Degrado v. Jefferson Pilot Financial Ins. Co.*, No. 02-cv-01533-WYD-BNB, 2009 WL 1973501 at *6 (D. Colo., July 6, 2009) (*quoting Robinson v. City*

*of Edmond*, 160 F.3d 1275, 1283 (10th Cir. 1998). Additionally, an attorney fee award may include fees expended to prepare and present the motion for attorneys' fees (i.e., "fees on fees"). *See Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1205 (10th Cir. 1986).

When "reasonable" is undefined for an attorney award, Colorado courts may also determine reasonableness according to the factors listed in Rule 1.5 of the Colorado Rules of Professional Conduct [hereinafter "RPC 1.5"]. *See Deitz v. University of Denver*, 2011 U.S. Dist. LEXIS 22728, *37 (D. Colo. Feb. 22, 2011). Thus, courts may adjust the lodestar amount up or down based on the RPC factors.[2] *See Tallitsch v. Child Support Services, Inc.*, 926 P.2d 143, 146 (Colo. App. 1996) (*citing Spensieri v. Farmers Alliance Mutual Ins. Co.*, 840 P.2d 268 (Colo. App. 1990)). As noted, however, the lodestar carries a "strong presumption of reasonableness" in Colorado courts, and "many of [the Rule 1.5] factors will be reflected in the lodestar amount. . . . No adjustments should be made if the lodestar amount already reflects these considerations." *Spensieri v. Farmers Alliance Mut. Ins. Co.*, 840 P.2d 268, 271 (Colo. App. 1990).

In determining reasonableness, courts will consider whether prevailing counsel has exercised "billing judgment." *Case*, 157 F.3d at 1258. The touchstone of billing judgment is whether "the tasks sought to be charged to the adverse party would normally be billed to a paying client." *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983) *overruled in part on other*

---

[2] Colo. RPC 1.5 enumerates the factors to be considered as guides in determining the reasonableness of a fee: "(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly. (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer. (3) The fee customarily charged in the locality for similar legal services. (4) The amount involved and the results obtained. (5) The time limitations imposed by the client or by the circumstances. (6) the nature and length of the professional relationship with the client. (7) The experience, reputation, and ability of the lawyer or lawyers performing the services. (8) Whether the fee is fixed or contingent." *Mau v. E.P.H. Corp.*, 638 P.2d 777, 779 (Colo. 1981) (citing C.R.C.P. DR 2-106(b), which is now Colo. RPC 1.5).

*grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 725 (1987). All of the fees and expenses that Granite seeks in this motion have either been billed to the client or were incurred so recently that a bill has not yet been generated. All of the fees and expenses have been paid or will be paid in due course. *See*, Trahan Affidavit at ¶¶ 25 and 26.

Thus, Granite, as the prevailing party, must satisfy the federal lodestar method of determining reasonable fees, which multiplies hours reasonably expended by the reasonable hourly rate, which Granite has done here. Evidence supporting an award of Granite's attorneys' fees, consistent with the requirements of this Court and Colorado law, is attached to this motion and discussed below.

### B.     Procedural Requisites

In support of this motion, pursuant to the local rules of this Court, Granite must provide one or more affidavits, which it has done as attachments to this motion. *See* D.C.COLO.LCivR 54.3(A). *See*, Trahan Affidavit and the Affidavit of Osborne J. Dykes ("Dykes Affidavit"). The local rules also require that this motion include, for each person for whom fees are claimed, a detailed description of the services rendered, the amount of time spent, the hourly rate, and the total amount claimed. This is consistent with Tenth Circuit law, which requires that to prove reasonable hours, Granite must submit "meticulous, contemporaneous time records." *See Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998). Granite's invoices for the Escrow Claims, attached as Exhibit A, are just such meticulous and contemporaneous time records. Granite does not seek to recover fees for any of the redacted portions of the invoices.[3] Also, please refer to the Affidavit of Paul Trahan, at Exhibit B, which further describes the

---

[3] The redactions reflect Granite's counsel's segregation of fees that are unrelated to the Escrow Claims.

invoices and explains what adjustments were made to ensure the invoices only reflect fees and expenses associated with the Escrow Claims.

Mr. Trahan's affidavit, and the affidavit of Denver attorney Osborne J. Dykes, opine as to the reasonableness and necessity of the fees and expenses. Mr. Dykes' affidavit is attached as Exhibit C. Local rules also require Granite to provide a summary of relevant qualifications and experience for each person for whom fees are claimed. *See* D.C.COLO.LCivR 54.3(B). Granite provides the biographies for the individuals who provided legal services in relation to the Escrow Claims as Exhibit D to this Motion.

## IV.  SUMMARY OF EVIDENCE

A summary of the evidence offered in support of this motion is as follows:

| | |
|---|---|
| Exhibit A | Fulbright & Jaworski's Invoices for the Escrow Claims |
| Exhibit B | Affidavit of Paul Trahan |
| | Addendum B-1    Summary of Hours & Fees |
| | Addendum B-2    Summary of Rates, Hours & Fees for Core Team |
| | Addendum B-3    Summary of Rates, Hours & Fees for Document Review Team |
| | Addendum B-4    Summary of Expenses (with back-up) |
| | Addendum B-5    Summary of Invoices Paid & Pending |
| Exhibit C | Affidavit of Jeff Dykes |
| | Addendum C-1    Summary of Hours & Fees |
| | Addendum C-2    The Colorado Bar Association 2008 Economics of Law Practice Survey |
| Exhibit D | Biographies of Fulbright & Jaworski Attorneys |

## V.    THE LEGAL SERVICES PROVIDED TO GRANITE IN RELATION TO THE ESCROW CLAIMS WERE REASONABLE & NECESSARY

### A.    This Motion is Limited to Services Related to the Escrow Claims

The attached invoices provide a detailed accounting of the services provided and actually billed, along with a description of the associated fees.  *See* Exhibit A.  The fees Granite seeks to recover are limited to those related to the Escrow Claims. Trahan Affidavit, Exhibit B, at ¶¶ 19-21.  All remaining fees and expenses charged in connection with this lawsuit – which, at times, has involved other claims and defenses – have been segregated, and the related time entries and expense items have been subtracted from the invoice amounts. *Id.* Consequently, this motion seeks to recover attorneys' fees only for services and expenses related directly to the Escrow Claims, as reflected on the attached invoices.  *See id.*

### B.    The Legal Services Provided Were Reasonable and Necessary

As detailed in the attached invoices attached to Granite's Motion for Attorneys' Fees, the services Fulbright & Jaworski L.L.P. ("Fulbright") provided and actually billed to Granite in relation to the Escrow Claims can be described generally as follows:

- investigating claims;
- preparing and filing pleadings and motions;
- preparing a settlement statement;
- extensive discovery and massive document review, including privilege review;
- responding to dispositive motions;
- pre-trial settlement conferences;
- pre-trial motions and trial preparation;
- presenting this matter for trial; and
- post-trial issues, including preparing claims for attorneys' fees.

*See* Trahan Affidavit at Exhibit B.

Attached as <u>Addendum B-1</u> to the Trahan Affidavit is a breakdown of fees and expenses incurred by month with a description of the associated legal services. A detailed description of the legal services provided is set out in the invoices, which are attached as <u>Exhibit A</u> to this motion. A condensed overview of the hours worked and legal services provided is set forth in the following table:

| Invoice Date | Escrow Related Hours | Escrow Related Fees | General Description of Work |
|---|---|---|---|
| 04/14/2009 | 2.50 | $1,147.50 | Initial investigation of claims, assess and prepare demands to Land Title |
| 05/11/2009 | 41.15 | $16,939.65 | Pursue Settlement, Continued investigation, research claims, prepare complaint, confer with opposing counsel |
| 06/12/2009 | 16.35 | $6,234.33 | Research remedies, confer with Land Title, prepare report to client, review answer & counterclaims, prepare summary of agreements and timeline |
| 07/09/2009 | 18.95 | $7,564.58 | Confer with opposing counsel, address scheduling issues, legal research, prepare settlement statement for magistrate |
| 08/12/2009 | 19.65 | $7,132.99 | Initial disclosures, Pretrial Order, Settlement Statement, Confer with Land Title, Scheduling Hearing, Assess Defendants' Disclosures, Confer on Disclosures |
| 09/09/2009 | 1.80 | $663.00 | Assess Status & Discovery |
| 09/09/2009 | 0.80 | $406.30 | Protective Order, Confer with Opposing Counsel |
| 10/08/2009 | 38.40 | $10,110.75 | Protective Order Assessment, Motion, Discussions & Hearing, Settlement Assessment, Document Production |
| 11/11/2009 | 5.70 | $1,742.92 | Assess Status & Discovery |

| Invoice Date | Escrow Related Hours | Escrow Related Fees | General Description of Work |
|---|---|---|---|
| 12/11/2009 | 0.60 | $181.08 | Prepare Discovery |
| 01/12/2010 | 84.50 | $29,259.98 | Assess & Respond to Alberta Summary Judgment, Interview Witnesses, Review Discovery Requests, Confer w/ Opposing Counsel re: Discovery Disputes, Prepare Summary Judgment Response w/ Evidence |
| 02/12/2010 | 251.20 | $102,722.08 | Review of Granite Documents for Production to Alberta, Review Alberta documents, Prepare for and Take Depositions, Settlement Discussions, Prepare for and Defend Depositions, Discovery Disputes, Interpleader Issues, Surreply to Summary Judgment, Mass Document Review & Production |
| 03/08/2010 | 407.70 | $125,307.39 | Continue Mass Document Review in Response to Alberta Discovery, Privilege Review of Documents, Take Depositions, Confer re: Discovery Disputes |
| 04/09/2010 | 64.65 | $25,346.79 | Take Multiple Depositions, Respond to Discovery Disputes, Prepare Multiple Witnesses for Depositions, |
| 05/10/2010 | 118.55 | $52,810.71 | Prepare for & Attend Settlement Conference, Prepare & Defend Depositions, Address Interpleader Issues |
| 06/09/2010 | 5.70 | $2,495.17 | Address Escrow Issues, Settlement Assessment |
| 07/12/2010 | 13.90 | $5,880.30 | Address Pretrial Order, Settlement, Escrow Funds Issues |
| 08/09/2010 | 20.80 | $32,228.17 | Address Pretrial Order, Exhibit & Witness Lists, Review Settlement Issues, Settlement Memo |
| 09/09/2010 | 12.40 | $63.75 | Assess Alberta's Motion to Expedite |
| 10/13/2010 | 12.40 | $5,655.90 | Prepare for & Attend Settlement Conference |

| Invoice Date | Escrow Related Hours | Escrow Related Fees | General Description of Work |
|---|---|---|---|
| 11/12/2010 | 6.90 | $2,425.05 | Assess Settlement, Trial Logistics |
| 12/14/2010 | 10.90 | $1,290.30 | Review issues relating to Interpleader of Funds, Trial Logistics |
| 01/12/2011 | 13.50 | $6,248.35 | Trial Prep, Status Conference, Pretrial Matters, Motion in Limine |
| 02/09/2011 | 212.10 | $15,615.35 | Pretrial Motions, Amended Complaint, Prepare Exhibits, Settlement Discussions, Damages Statement, Voir Dire Questions |
| 03/10/2011 | 17.00 | $95,429.07 | Prepare for and Attend Trial, Review Pretrial Submissions, Exhibit Objections, Witness Outlines, Witness Preparation, Findings of Fact & Conclusions of Law, Written Closing |
| 04/12/2011 | 79.60 | $8,815.94 | Research Attorneys' Fees & Post-trial Issues |
| 05/13/2011 | 10.60 | $12,536.22 | Post-trial Issues including Review of Transcript, Revising Proposed Findings of Fact and Conclusions of Law |
| 05/13/2011 | 1.20 | $418.20 | Review issues relating to Attorneys' Fees claim |
| 06/13/2011 | 2.50 | $1,312.50 | Address Post-Trial Issues |
| 06/13/2011 | 5.90 | $2,419.00 | Review invoices in anticipation of Claim for Attorneys' Fees to delete unrelated fees |
| Fees Not Yet Invoiced (for July, August & September 2011) | | $38,879.00 | Assess Court's Ruling in favor of Granite, Begin Preparation of Atty. Fees Request w/ supporting evidence & Confer w/ Land Title |
| Estimate of Future Fees | | $12,000.00 | Pursue Atty. Fees & Collection of Judgment & Address Post-trial issues (not appeal, which will be addressed separately) |

Importantly, as part of this process and before Granite filed suit, Granite reached out to Alberta's counsel to discuss the possibility of settlement. *See*, Trahan Affidavit at ¶ 24. Granite's counsel also facilitated direct settlement discussions between the parties. *Id.* Granite did not file the lawsuit on the Escrow Claims until settlement discussions failed. *Id.*

Of particular note, responding to Alberta's expansive document requests required extraordinary effort and the addition of additional (less expensive) members to the team. In order to properly respond to Alberta's document requests, Granite was required to collect over 200,000 documents from at least 20 sources. *See*, Trahan Affidavit at ¶ 10. The review of these documents for responsiveness and privilege was time-consuming and expensive. *Id.* As a result of its efforts, Granite produced over 15,000 pages of documents to Alberta. *Id.* This aspect of the case alone generated attorneys' fees of $165,833.73. *See* Addendum B-3 to Trahan Affidavit. As explained in further detail in the Trahan Affidavit, to account for the fact that at the time of document review the case involved Alberta's counterclaims in addition to the Escrow Claims, Granite reduced the amount for purposes of this motion by 50%, or to $82,916.86 (i.e., 50% of $165,833.73).

Because the factors identified in the Colorado Rules of Professional Conduct already are reflected in the lodestar amount discussed above, there is no need to go through each specific factor. *See Spensieri v. Farmers Alliance Mut. Ins. Co.*, 804 P.2d 268, 271 (Colo. App. 1990) ("No adjustments should be made if the lodestar amount already reflects these considerations."); *see also Burlington v. Dague*, 505 U.S. 557, 562 (1992) ("There is a "strong presumption" that the lodestar represents the "reasonable fee."). Nonetheless, these factors support Granite's claim for attorneys' fees, as described more fully in the Trahan Affidavit.

C.     **Granite's Various Attorneys Served in Separate and Distinct Roles**

Granite assembled a team for the actual trial that consisted of Paul Trahan, Jeff Dykes, and Lucy Arnold. Partner Paul Trahan, as the attorney on the team with the most knowledge of the underlying facts, took the lead. Mr. Trahan prepared and presented Granite witness Christopher Silva and questioned Alberta witness Peter Cudlip. Retired Partner Jeff Dykes provided support from Fulbright's Denver office and from a Colorado law perspective. Mr. Dykes prepared and presented Granite witness Angela Kralovec and cross-examined Alberta witness Donald Provost. Associate Lucy Arnold conducted much of the legal research and coordinated the preparation and assembly of evidence for trial. Mrs. Arnold also prepared for and questioned Land Title's witness at trial. This same team performed the post-trial work in terms of briefing and preparing the Proposed Findings of Fact and Conclusions of Law and related papers.

Ultimately, Granite's trial team prevailed in the litigation, recovering the entire amount in dispute with respect to the Escrow Claims. It is unfortunate that Granite's attempts to settle the dispute before filing this lawsuit were not successful, and it is unfortunate that Granite was forced to expend the amount of time and money it took to prevail in this action. The fact that the amount in dispute was less that Granite's ultimate legal fees and expenses is of no moment. The parties agreed that the prevailing party would receive its reasonable and actual attorneys' fees and expenses – irrespective of the relationship between the amount sought and the amount in dispute. Granite is firmly within its rights in requesting the full amount of its fees and expenses, irrespective of whether the amount exceeds the ultimate amount in controversy. If Alberta had acknowledged Granite's right to receive the escrow funds in the beginning, this lawsuit could

have been entirely avoided. Colorado courts have recognized that the amount of attorneys' fees awarded can exceed the amount of damages. *See John Deere Co. v. Catalano*, 525 P.2d 1153, 1157 (Colo. 1974) (finding an attorneys' fee award is not unreasonable because it exceeds the amount of the underlying deficiency judgment); *Mau v. E.P.H. Corporation*, 638 P.2d 777, 780 (Colo. 1982) ("The amount recovered is only one factor to be considered in fashioning an appropriate fee award.").

In addition to the trial team, there were a number of Fulbright attorneys who provided services to Granite in relation to the Escrow Claims. Each of them was an important member of the team, and their roles and responsibilities were distinct. Involving multiple attorneys in the case was necessary given the amount of work required, and doing so resulted in greater efficiencies in the handling of the case which, in turn, translated into reduced fees. For example, less experienced attorneys reviewed the documents responsive to Alberta's multitude of document requests, and more experienced attorneys handled the trial and motions practice. As described in more detail in the Trahan Affidavit, Granite also relied on real estate specialists and attorneys in Austin, Texas – who work with Granite on a regular basis and know its business best, to manage and handle the more substantive and fact-intensive aspects of the case. *See* Trahan Affidavit at ¶¶ 1-10, 13 and 15.

The following table provides a general breakdown of the roles Granite's attorneys at Fulbright served in relation to the Escrow Claims:

| ATTORNEY NAMES | PRACTICE AREA/LOCATION | RESPONSIBILITIES |
|---|---|---|
| Paul Trahan, Jeff Dykes, Lucy Arnold, Ben Vetter | Litigation/Denver and Austin | Written Discovery, Depositions, Pre-trial, Trial, Motions Practice |
| Jane Smith, Bryan Patrick | Real Estate/Austin | Investigation, Real Estate Expertise, Knowledge of Property and Agreements |
| Marcy Greer, Sara Wolf, David Diamond | Appellate & Litigation/Austin | Legal Research & Briefing, Support of Motions Practice |
| Document Review Team[4] | Junior Associates under the supervision of Counsel Jennifer Sherrill/mostly Austin at an average rate of $266.40 per hour | Document Review |

## VI.    THE AMOUNT OF ATTORNEYS' FEES IS REASONABLE

### A.    The Hours Claimed Are Reasonable

Granite's counsel has expended a reasonable number of hours in litigating the Escrow Claims.  Attorneys at Fulbright have spent over 1,600 hours to date on these Claims and are expected to spend approximately 130 more through the conclusion of this litigation.  *See* Trahan Affidavit at ¶¶ 2 and 3.  Fulbright's invoices contain meticulous, contemporaneous time records evidencing the services provided during these hours.  *See* Exhibit A.  Additionally, Fulbright has demonstrated billing judgment by providing a 15% discount since April 2009 on all fees to

---

[4] *See* Addendum B-3 to Trahan Affidavit.

Granite. *See* Trahan Affidavit at ¶¶ 4 and 16. Moreover, Granite seeks to recover only those fees for which it has been actually billed, as reflected in Fulbright's invoices, indicating that Granite's counsel does not seek to recover amounts from an adversary that would not properly be billed to a client. *See Hensley v. Eckerhart*, 461 U.S. 424, 434, (1983) ("Hours that are not properly billed to one's client also are not properly billed to one's adversary . . ."). Finally, attempting to err on the side of being conservative (from Alberta's perspective), hours and fees incurred in responding to Alberta's document requests have been reduced by 50%, even though much of the time written-off likely relates to the Escrow Claims. *See* Trahan Affidavit at ¶ 13(b).

### B. The Hourly Rates Claimed are Reasonable

Courts determine the lodestar reasonable rate by looking to the "prevailing market rate in the relevant community." *Wirtz v. Kansas Farm Bureau Services, Inc.*, 355 F. Supp. 2d 1190, 1200 (D. Kan. 2005) (*quoting Blum v. Stenson*, 465 U.S. 886, 895 (1984)). "Regarding the hourly rates charged, the Court should base its award on market evidence of attorney billing rates for similar litigation." *Casey v. Williams Production RMT Co.*, 599 F.Supp.2d 1253, 1255 (D. Colo., 2009). In addition, when hiring out-of-town counsel is reasonable under the circumstances, courts have found that the prevailing rates of another locality may be considered along with the local district's rates. *See, e.g.*, *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 769 (7th Cir. 1982) (finding that where out-of-town counsel was required, trial court erred as a matter of law in limiting the hourly rates to local rates); *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995).

Because the attorneys with the most knowledge of Granite's business and the facts underlying the Escrow Claims are located in Austin, Texas, it was reasonable for Granite to engage Fulbright's out-of-town attorneys to litigate the Escrow Claims. *See* Trahan Affidavit at ¶ 15. In so doing, Granite obtained the benefit of attorneys who could serve in separate and distinct roles, and who brought skills and familiarity that were well-suited to this lawsuit. *Id.* Granite further avoided the need to educate a new group of attorneys about its business and, more particularly, the property, transaction, and agreements at issue regarding the Escrow Claims. *Id.* Paul Trahan attests that the hourly rates charged by the Austin attorneys were in line with rates charged by other attorneys in the Austin area with similar experience, education, and for matters of this nature. *Id* at ¶¶ 16, 17 and 18. Further support for the reasonableness of hourly rates is provide by the biography of each timekeeper, which serve as indicia of experience and skill. *See* Exhibit D.

Even so, the rates charged to Granite are reasonable when compared to rates charged for similar services by attorneys with similar skill and experience in Denver, Colorado. *See* Dykes Affidavit at Exhibit C. Mr. Dykes attests to the reasonableness of the rates, stating that none of the hourly rates billed by Fulbright's attorneys exceed the ranges of rates for similar-sized firms reported in The Colorado Bar Association 2008 Economics of Law Practice Survey. *See* Dykes Affidavit and Addendum C-2.

Granite also refers to Addendum B-5 to the Trahan Affidavit as further evidence of the reasonableness of the fees Granite incurred in relation to the Escrow Claims. This summary was prepared by Fulbright's accounting department at Mr. Trahan's request. *See* Trahan Affidavit at ¶¶ 25 and 26. Fulbright has billed Granite for all of the fees and expenditures incurred in the

course of its representation in this litigation through June 2011.  *Id.*  As to the Escrow Claims, Granite has paid $528,237.13 of the amounts invoiced by Fulbright.  *See Id.* and <u>Addendum B-5</u>. Based on the timing of Granite's past payments in relation to this lawsuit and other matters, Granite will pay the remaining $106,808.99 in full.  *Id.*

### C.    <u>The Expenses Claimed are Reasonable</u>

Expenses that are normally itemized and billed in addition to the hourly rate – but not taxable as part of a Bill of Costs under 28 U.S.C. §1920 – may also be included in fee allowances.  *See* Fed. R. Civ. P. 54(d)(2)*, Ramos,*  713 F.2d at 559; *Case*, 157 F.3d at 1258.  A summary of legal expenses is attached as <u>Addendum B-4</u> to the Trahan Affidavit.  These recoverable expenses include Westlaw fees, faxes, copies, FedEx expenses, postage charges, fees paid to investigative services, attorney travel costs, paralegal fees, and long-distance phone calls, among others.  *See Ramos*, 713 F.2d at 559; *Case*, 157 F.3d at 1258.  Here, Granite seeks to recover for such costs, including long-distance telephone costs, facsimile costs, Westlaw and Lexis fees, delivery and messenger services, travel expenses, and data management fees.  Such fees are not absorbed as part of Fulbright's overhead and are routinely billed to private clients, as evidenced by the invoices attached as <u>Exhibit A</u>.  *See also* Trahan Affidavit at ¶¶ 22 and 23.

## VII.   <u>CONCLUSION</u>

Granite's counsel has gone through a careful review and assessment of the actual legal fees it has charged, or will soon invoice, Granite to ensure that the fees requested here relate only to the Escrow Claims.  The hours worked and the rates charged are reasonable and were necessary for this matter.  Granite respectfully requests that the Court award Granite legal fees and expenses in the amount of $685,925.12 and enter the appropriate order requiring Alberta to

pay this amount to Granite. Granite also asks for all other and further relief to which it is entitled and specifically reserves its right to secure attorneys' fees and expenses for any appeal.

Respectfully submitted,

_/s/ Paul Trahan_
OSBORNE J. DYKES, III
BENJAMIN M. VETTER
FULBRIGHT & JAWORSKI L.L.P.
370 Seventeenth Street, Suite 2150
Denver, CO 80202
(303) 801-2700 – Telephone
(303) 801-2777 – Facsimile
jdykes@fulbright.com
bvetter@fulbright.com

PAUL TRAHAN
FULBRIGHT & JAWORSKI L.L.P.
600 Congress Avenue, Suite 2400
Austin, TX 78701
(512) 474-5201 – Telephone
(512) 536-4598 – Facsimile
ptrahan@fulbright.com

**COUNSEL FOR PLAINTIFF**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on the 19th day of September, 2011, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system which will send notification of such

filing to attorneys for plaintiffs at the following e-mail addresses:

Stephen L. Waters                          swaters@rwolaw.com
Kimberly A. Bruetsch                       kbruetsch@rwolaw.com
ROBINSON WATERS & O'DORISIO, P.C.
1099 18th Street, Suite 2600
Denver, CO 80202
*Attorneys for Land Title Guarantee*

Stuart N. Bennett                          sbennett@joneskeller.com
JONES & KELLER, P.C.
1999 Broadway, Suite 3150
Denver, CO 80202
*Attorneys for Alberta Town Center, LLC*


                                    */s/ Paul Trahan*
                                    Paul Trahan