IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-CV-00799-ZLW-KLM (SJ)

GRANITE SOUTHLANDS TOWN CENTER LLC,

    Plaintiff,

v.

ALBERTA TOWN CENTER, LLC AND
LAND TITLE GUARANTEE COMPANY,

    Defendants.

**PLAINTIFF GRANITE SOUTHLANDS TOWN CENTER LLC'S REPLY TO DEFENDANT ALBERTA TOWN CENTER, LLC'S OPPOSITION TO APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

COMES NOW Plaintiff Granite Southlands Town Center LLC ("Plaintiff" or "Granite"), by and through its undersigned attorneys, hereby submitting this Reply to Defendant Alberta Town Center LLC's ("Defendant" or "Alberta") Opposition to Application for Temporary Restraining Order and Preliminary Injunction ("Opposition") (Docket #213).

## I.
## INTRODUCTION

Defendant has no substantial assets or ongoing operations, but Plaintiff anticipated Defendant would receive a substantial settlement from Callison Architecture, Inc. ("Callison") in the near future, which it did on September 1, 2011 – one day before this Court issued its Memorandum and Order declaring Plaintiff the prevailing party. Defendant proceeded to transfer the funds to a related company's bank account, for the admitted purpose of evading Plaintiff's judgment, and appears to have disbursed most of the funds the day after Plaintiff

86161469.2

requested a Temporary Restraining Order from this Court. Although he refused to testify fully, citing obligations to Callison under their settlement agreement, it appears from yesterday's testimony of Defendant's representative that virtually all of the funds from the Callison settlement have been disbursed. Plaintiff nonetheless requests a Preliminary Injunction enjoining Defendant from disbursing the remaining funds and from disbursing any additional funds it receives before a final judgment is entered in this case.

The following timeline demonstrates Defendant's willingness to wholly disregard Granite's rights and push this Court to the limits of its authority:

| Date | Event |
|---|---|
| September 1, 2011 | Alberta Receives 1st Payment from Callison Settlement |
| September 2, 2011 | Court Issues Memorandum & Order Declaring Granite Prevailing Party |
| September 6, 2011 | Alberta Receives 2nd Payment from Callison Settlement |
| September 6, 2011 | Alberta Wires Portion of Callison Settlement to a Related Company's Account (Alberta Development Partners) to Evade Granite |
| September 9, 2011 | Alberta Wires Final Portion of Callison Settlement to Alberta Development Partners' Account to Evade Granite |
| September 13, 2011 | Final Judgment Issued in Granite's Favor & Awarding Attorneys' Fees |
| September 15, 2011 | Alberta pays Jones & Keller $20,000 from the Callison Settlement |
| September 19, 2011 | Granite Files its Motion for Attorneys' Fees ($685,000) |
| September 20, 2011 | Granite Files its Motion for Temporary Restraining Order |
| September 21, 2011 | Alberta Development Partners Wires Brownstein & Hyatt an Undisclosed Amount of Money from the Callison Settlement (reportedly all but $250 of the Callison Settlement) |
| September 22, 2011 | Court Grants Granite's Temporary Restraining Order |

This timeline is supported by the October 3, 2011, deposition testimony of Alberta Town Center's designated representative Peter Cudlip, which will be presented into evidence at the hearing.

Despite the arguments made by Defendant in its Opposition, as set forth herein, Plaintiff clearly is entitled to the injunctive relief it seeks here. Granite applied for a temporary restraining order to preserve the Court's power to render a meaningful decision on the merits in this action. This Court granted Granite's application for a temporary restraining order. Without the intervention of this Court to prevent Alberta from completing its dissipation of whatever funds remain from the Callison settlement and any remaining funds it receives, Granite likely will never collect the attorneys' fees, expenses, and costs it is entitled to recover pursuant to the Final Judgment entered by this Court on September 13, 2011 (the "Final Judgment") (Docket #198), at p. 3.

If Alberta is allowed to complete its dissipation of the proceeds of the Callison settlement and other assets before the Court enters judgment for Granite's attorneys' fees, then, absent piercing the corporate veil, Alberta appears it will become judgment-proof and Granite will be unable to recover its attorneys' fees and costs from Alberta. Granite has prevailed on the underlying merits and is entitled to its attorney's fees. Granite likely will be irreparably injured by its inability to collect these fees unless the court enjoins Alberta.

In contrast, the injunction does not threaten Alberta as it has no active operations to disrupt and minimal assets to enjoin. The Court should enjoin Alberta from transferring or otherwise negotiating any remaining assets received from Alberta's settlement with Callison or otherwise.

86161469.2

## II.
## ALBERTA'S CITATIONS TO *DE BEERS* AND ITS PROGENY ARE MISLEADING AND FACTUALLY DISTINGUISHABLE FROM THE INSTANT ACTION

Alberta cites three cases for the proposition that a court may not freeze a corporation's assets to preserve those assets to satisfy a potential money judgment against the corporation. However, Alberta overlooks the critical fact that Granite is not seeking injunctive relief for a "potential money judgment," but rather already has a judgment entitling it to reasonable attorney's fees. (the "Final Judgment") (Docket #198), at p. 3. None of the three cases cited by Alberta involve judgments entitling the party seeking injunctive relief to damages. De Beers Consol. Mines, Ltd. v. United States, 325 U.S. 212, 219 (1945)(pending litigation over violations of the Sherman Act and section 73 of the Wilson Tariff Act where the court did not have jurisdiction to enter a money judgment); Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 310 (1999)(pending litigation for payment of unsecured, guaranteed notes); Home-Stake Prod. Co. v. Talon Petroleum, C.A. et al., 907 F.2d 1012, 1014 (10th Cir. 1990)(pending litigation for liability of an individual and related corporations under an alter ego theory for the debt of three defunct corporations). Granite litigated its claim for relief and has received a judgment entitling it to reasonable attorney's fees. Granite is not a simple contract creditor requesting injunctive relief for a "potential money judgment," as are the parties in the cited cases.

These authorities are further distinguished as they deal with the precarious situation of enjoining the assets of companies with *active operations*. De Beers, at 215-16(injunction sought against foreign corporations with active operations abroad); Grupo Mexicano, at 311 (injunction sought against foreign corporation with active operations but substantial doubt as to whether it

could continue as a going concern); Home-Stake, at 1015 (injunction sought against defendants with active operations including ownership of real property in the U.S.). Thus, the authorities cited by Alberta are factually dissimilar to the instant action where Alberta does not have active operations. (See Granite's Application for Temporary Restraining Order, Cudlip Depo., Ex. 1, p. 11, ln. 6-14). Therefore, these citations are inapplicable to the facts of this action.

Further, the proposition cited by Alberta in De Beers, at 222-23 applies to actions where the assets are "unrelated to the underlying litigation." In De Beers, at 220, the Court froze the assets of foreign corporations with active operations for the sole purpose of ensuring that these foreign corporations would have assets in the United States to pay for possible but uncertain contempt orders that the Court might issue in the course of the ongoing antitrust litigation. As the court in De Beers, at 219 only had the authority under the Sherman and Wilson Acts to enjoin future violations, it lacked jurisdiction to enter a money judgment against the foreign corporations under the Sherman or Wilson Act. Therefore, the foreign corporations enjoined assets did not related to the underlying litigation. Here, the injunction is to preserve assets to satisfy the judgment that Granite is entitled to for reasonable attorney's fees directly generated by the litigation of the underlying action.

Alberta also cites In re Qwest Communications Int'l, Inc. Sec. Litig., 243 F. Supp. 2d 1179, 1184 (D. Colo. 2003). Qwest, relies on and cites the above distinguished Grupo Mexicano in stating that a "federal court does not have authority to issue a preliminary injunction preventing a party from disposing of assets *pending adjudication* of a contract claim for damages." Id. at 1183. (emphasis added). This case is also distinguished as Granite's contract

-5-

claim against Alberta in this action is not pending adjudication, but rather has already resulted in a Final Judgment in Granite's favor entitling it to attorney's fees.  (Docket #198), at p. 3.

### III.
### ALBERTA'S ATTACK ON GRANITE'S ATTORNEYS' FEES MOTION IS MISLEADING

Alberta's Brief in Opposition states that Granite's alleged harm is "purely hypothetical" and argues that Granite's claimed fees are unreasonable.  The Brief claims in part that the "disproportionate relationship between the fees sought and the relief obtained demonstrates that the fees are unreasonable and thus not awardable."  See Br. in Opp. at p. 7 (citing Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)).  This claim is misleading; in Hensley, the Supreme Court considered whether "a partially prevailing plaintiff [could] recover an attorney's fee for legal services on an unsuccessful claim."  Hensley, 461 U.S. at 426.  The Court found that a prevailing party could recover fees for both successfully and unsuccessful claims, but that such fees should be "reasonable in relation to the results obtained."  See Hensley, 461 U.S. at 435-36.  Here, Granite was wholly successful on its Escrow Claims and does not seek to recover for any unsuccessful claims. Thus, it achieved an "excellent result" warranting a fully compensatory attorneys' fees award.  See Id. at 435.

In addition, Alberta calls attention to an anomaly in Granite's summary of its attorneys' fees in an attempt to undermine Granite's entire request for fees.  Granite regrets that its Summary of Fees and Expenses Relating to Escrow Claims contained clerical errors in the "Escrow Related Hours" column.  These errors resulted in Granite's under-reporting the number

of hours worked on the Escrow Claims by a total of 81.35 hours.[1]  As a result, the only real resulting difference is a lower average billing rate of $367.29 – still well within market norms.

Ultimately, Alberta's accusation — i.e., that the records substantiating Granite's request for fees are not "meticulous" — also is misguided.  Granite attached all of its invoices relating to the Escrow Claims and included the ***entire description of work*** for each entry.  Granite has laid it all out in excruciating detail.  In Ramos v. Lamm, the Tenth Circuit announced that "[i]n the future, district judges in this Circuit will inform lawyers that if they intend to seek attorney's fees . . . they must keep meticulous, contemporaneous time records to present to the court upon request." 713 F.2d 546, 553 (10th Cir. 1983).  The court stated that such records "must reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks . . . ." Id.  The Tenth Circuit viewed this requirement as an important safeguard against the vagaries of time records that were reconstructed long after the work had been performed. Id. at 553 n. 2.  That is exactly what Granite has done.  Granite has satisfied the requirement of presenting meticulous, contemporaneous records by filing its underlying invoices to support its attorneys' fees request as an exhibit to its Motion for Attorneys' Fees and Expenses (Docket # 199).

Alberta also suggests that taking this case to trial was unnecessary because Alberta offered to release its claim to the escrowed funds.  This assertion is incorrect.  Alberta offered to release its claim to the escrowed funds only after years of litigation, after Granite had offered to settle for this in the beginning, and, most importantly, only in exchange for a global release of

---

[1] Notably, however, any clerical errors in the "Escrow Related Hours" column do not extend to the amounts of Escrow Related Fees generated during this period, which (along with the Hours) are wholly supported by the underlying invoices submitted as Exhibit A to the Motion for Attorneys' Fees.

86161469.2

not only the Escrow Claims but all claims against Albert Town Center, all related entities, and its principals.  This court may not be aware, but Granite has outstanding fraud claims against Alberta Town Center, Alberta Development Partners, and their principals Peter Cudlip and Donald Provost that are set for trial in April 2012 in Aurora County, Colorado state court.  Those claims are valued in excess of $10.0 million and not something Granite was or is willing to release.

### IV.
### APPLICABLE STANDARDS FOR INJUNCTIVE RELIEF

The four prerequisites which the moving party must establish for either temporary or preliminary injunctive relief, are as follows:

> (1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.

Lundgrin v. Claytor, 619 F.2d 61, 63 (10th Cir. 1980).

### V.
### ARGUMENT AND AUTHORITY

**A.   THERE IS A SUBSTANTIAL LIKELIHOOD GRANITE WILL PREVAIL ON THE MERITS**

Alberta concedes in its opposition that "[t]he Court properly limited its award of attorney's fees to 'reasonable' fees." (Docket # 198 at 3.)  Therefore, it is undisputed that Granite is entitled to its reasonable fees and, therefore, prevailed on the merits in the underlying action. The only real question is how much.  Alberta's technical and misleading attempt to attack Granite's attorney's fees motion on the basis of a typographical error causing the columns to be offset, which yielded an underreported total of hours worked and the total fees billed, does not

alter the undisputed fact that Granite is entitled to its reasonable attorney's fees in this action. Alberta cannot seriously dispute that Granite prevailed on the merits.

**B.     GRANITE WILL SUFFER IRREPARABLE HARM IF AN INJUNCTION DOES NOT ISSUE**

Granite's premise in its moving papers is that Alberta's likely inability to pay Granite the attorney's fees it is entitled to constitutes irreparable injury. Granite cited the following 4 cases in 3 different Circuits for this proposition: Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc., 805 F.2d 351, 355 (10th Cir. 1986); Central States, Se. & Sw. Areas Pension Fund v. Admiral Merchants Motor Freight, Inc., 511 F. Supp. 38, 43 (D. Minn. 1980); Roland Machinery Co. v. Dresser Indus., Inc., 749 F.2d 380, 386 (7th Cir. 1984); Central States, Se. & Sw. Areas Pension Fund v. Jack Cole-Dixie Highway Co., 642 F.2d 1122 (8th Cir. 1981) Alberta only discusses Tri-State, apparently conceding it cannot refute the same proposition stated in the other three cases cited above. Further, Alberta cites the proposition that a Court cannot enjoin the assets of a corporation in the absence of a judgment establishing the debt, but completely fails to explain how the Tri-State Court issued that type of injunction in the absence of a judgment. As Alberta does not even argue that Tri-State has been overruled or superseded, its failure to explain how the holding of Tri-State does not do violence to the proposition from De Beers essentially concedes that Alberta's articulation of the rule from De Beers is flawed at best.

As Alberta has failed to rebut the cited proposition that a corporation's inability to pay a judgment to which the moving party is entitled constitutes irreparable injury, the only remaining question is if Alberta is able to pay the reasonable attorney's fees that Granite is entitled to under the Final Judgment. (Docket #198), at p. 3. Alberta does not deny that it had little to no assets

86161469.2

-9-

before it received the Callison settlement. Alberta affirmatively states that it has spent the proceeds of the Callison settlement to pay its outstanding debts to creditors. See Br. in Opp. at p. 12. Alberta also attaches a declaration stating that Alberta's remaining amount of the Callison settlement is insufficient to pay Alberta's vendors associated with the Callison arbitration. See Br. in Opp. at Ex. D, p. 3. Therefore, Alberta is well along the way of dissipating its assets to avoid its obligation to pay the attorney's fees it owes to Granite. Alberta suggests that a bankruptcy proceeding against Alberta presents an adequate remedy at law for Granite. However, Alberta fails to describe how instituting bankruptcy proceedings against a corporation without assets will provide Granite an adequate remedy.

Alberta's flawed claim that Granite waived its interest in the Callison settlement proceeds is irrelevant to Granite's likely irreparable injury. Granite's unrefuted argument that it will be irreparably injured by Alberta's likely inability to pay Granite the attorney's fees it is entitled to under the terms of the Final Judgment demonstrates likely irreparable injury. Whether Granite has some other interest in the Callison settlement funds apart from this litigation has no bearing on the injury Granite will likely suffer due to Alberta's threatened insolvency. In fact, in the appellate proceeding to which Alberta refers, Granite made no claim to the settlement proceeds.

### C. RISK OF HARM TO GRANITE GREATLY OUTWEIGHS ANY POTENTIAL HARM TO ALBERTA

Alberta argues that because it already has dissipated the funds from the Callison Settlement that the requested injunctive relief is "moot in any respect." See Br. in Opp. at p. 12. If the injunctive relief requested is moot from Alberta's perspective, than the issuance of a preliminary injunction cannot injure Alberta. This weighs heavily in Granite's favor in balancing the equities. It also is clear that Alberta's lack of active operations, assets, or income, makes the

86161469.2

-10-

potential harm to Alberta minimal to nonexistent. On the other hand, Granite is left with the clear and present danger of obtaining a six figure judgment for attorney's fees against a judgment-proof debtor.

### D. ISSUING THE INJUNCTION IS NOT ADVERSE TO THE PUBLIC INTEREST

Alberta's arguments that the proposed injunction would be adverse to the public interest is based on the flawed premise that the injunction would somehow determine the priority of Alberta's outstanding debts. Granite seeks nothing of the sort. The injunctive relief requested is merely to preserve the status quo until Granite obtains the judgment for attorney's fees that it is entitled to. By granting the relief requested, the court would not distribute any funds from Alberta to Granite or determine any issues of priority as to Alberta's creditors. Alberta's public interest arguments demonstrate that it does not even understand the injunctive relief at issue or is attempting to obfuscate the issues. Further, if as Alberta suggests, it is in the public interest "that companies pay their creditors what is owed," then Alberta's eventual payment of the attorney's fees it owes to Granite would be in the public interest. See Br. in Opp. at p. 12.

### VI.
### CONCLUSION

For the foregoing reasons, Granite respectfully requests that this Court grant Granite's Application for a preliminary injunction, and enjoin Alberta from further dissipating the remaining proceeds of the Callison settlement or otherwise dissipating funds it receives in the future until such time as a final judgment is entered in this case.

DATED: October 4, 2011.

    Respectfully submitted,

    */s/ Paul Trahan*_____

    OSBORNE J. DYKES, III
    BENJAMIN M. VETTER
    FULBRIGHT & JAWORSKI L.L.P.
    370 Seventeenth Street, Suite 2150
    Denver, CO  80202
    (303) 801-2700 – Telephone
    (303) 801-2777 – Facsimile
    jdykes@fulbright.com
    bvetter@fulbright.com

    PAUL TRAHAN
    FULBRIGHT & JAWORSKI L.L.P.
    600 Congress Avenue, Suite 2400
    Austin, TX  78701
    (512) 474-5201 – Telephone
    (512) 536-4598 – Facsimile
    ptrahan@fulbright.com

    **COUNSEL FOR PLAINTIFF**

-13-

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of October, 2011, the foregoing was served on all counsel of record as follows:

| | |
|---|---|
| Stuart N. Bennett | sbennett@joneskeller.com |
| Steven Kabler | skabler@joneskeller.com |
| JONES & KELLER, P.C. | |
| 1999 Broadway, Suite 3150 | |
| Denver, CO 80202 | |
| *Attorneys for Alberta Town Center, LLC* | |
| ***Via e-mail and Fax*** | |
| | |
| Stephen L. Waters | swaters@rwolaw.com |
| Kimberly A. Bruetsch | kbruetsch@rwolaw.com |
| ROBINSON WATERS & O'DORISIO, P.C. | |
| 1099 18th Street, Suite 2600 | |
| Denver, CO 80202 | |
| *Attorneys for Land Title Guarantee* | |
| ***Via e-mail and Fax*** | |

                               */s/ Paul Trahan*_____