**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 09-CV-00799- SJJ-KLM

GRANITE SOUTHLANDS TOWN CENTER, LLC,

      Plaintiff

v.

ALBERTA TOWN CENTER, LLC,
LAND TITLE GUARANTEE COMPANY,

      Defendants.

---

**DEFENDANT ALBERTA TOWN CENTER, LLC'S BRIEF IN OPPOSITION TO GRANITE SOUTHLANDS TOWN CENTER LLC'S MOTION AND SUPPLEMENTAL MOTION FOR ATTORNEYS' FEES AND EXPENSES (DOCKET # 199, 223)**

---

Defendant, Alberta Town Center, LLC ("Alberta"), by and through undersigned counsel, hereby submits this Brief in Opposition to Granite Southlands Town Center LLC's ("Granite") Motion for Attorneys' Fees and Expenses ("Motion") and Granite's Supplemental Motion for Attorneys' Fees and Expenses ("Supplemental Motion"), and states the following in opposition thereto:

### I.    INTRODUCTION

Granite is entitled to only a fraction of the $674,477.98 in attorneys' fees and costs it purportedly incurred in pursuit of its single-issue declaratory judgment claim. The fees to which Granite is entitled pursuant to the Court's September 13, 2011 Judgment are limited to those awardable under the parties' Escrow Agreement. The amount of fees Granite seeks is grossly disproportionate to the work necessary to pursue Granite's claim under the Escrow Agreement. Since February 2010, the parties knew that Granite's declaratory judgment claim turned on the

{JK00320674.2 }

sole issue of whether the January 2009 tenant estoppel certificate from Colorado Cinema, LLC constituted an "Approved Tenant Estoppel Certificate" under the relevant contracts. The Escrow Claim was decided in a one-day trial to the Court during which Granite presented two witnesses in its case-in-chief and two witnesses in rebuttal. Notwithstanding the limited nature of the Escrow Claim, Granite requests $619,835.18 in attorneys' fees for at least thirty-two (32) billable Fulbright & Jaworski, L.L.P. ("Fulbright") personnel, including twenty (20) separate attorneys, plus $54,642.80 in expenses. Granite's request is unreasonable given the limited nature of the work necessary to prepare for and participate in the trial of the narrow issues in this suit.

Granite's request for fees is overreaching and seeks unreasonably high fees that it may not have actually incurred. Granite admittedly seeks $12,000 in fees for services that have not been performed. Granite's requested fees are insufficiently apportioned and based on unreasonably high rates. Similarly, Granite requests costs that are unreasonable, insufficiently apportioned and not awardable. The Court should refuse to award most—if not all—the fees and costs sought in Granite's Motion and Supplemental Motion.

## II.   ARGUMENT

### A.   Basis of Granite's Attorneys' Fees Award.

The Court's judgment entitled Granite to "reasonable and actual" attorneys' fees pursuant to the Escrow Agreement. Docket # 198 at 3. Granite's entitlement to attorneys' fees is, therefore, limited to those attorneys' fees recoverable under the Escrow Agreement, which provides in relevant part:

> The prevailing party in any dispute arising from this Agreement shall be entitled to recover from the non-prevailing party its reasonable and actual attorneys' fees and expenses….

Exhibit 1, Escrow Agreement, § 12. Accordingly, the fees and expenses to which Granite may be entitled are limited to (i) reasonable fees (ii) arising from the Escrow Agreement which (iii) were actually incurred.

### 1. Claim Arising Under the Escrow Agreement.

Granite asserted one claim arising under the Escrow Agreement – its First Claim for Relief – whereby it sought declaratory judgment that Granite, and not Alberta, was entitled to $650,000 held in escrow to secure delivery of tenant estoppel certificates after the closing ("Escrow Claim"). Granite is not entitled to attorneys' fees related to any other claim.

The Escrow Claim itself was limited to a single issue. On December 2, 2009, Alberta filed its Motion for Partial Summary Judgment [Docket # 76] with respect to Granite's Escrow Claim, conceding the relevant contracts were unambiguous. Granite agreed in its response to Alberta's motion that:

> The only issue…is whether…the [Colorado Cinema, LLC estoppel certificate] constitutes an Approved Tenant Estoppel Certificate in accordance with Sections 7.2(i) and 8.1(k)(ii) of the [Forward Purchase and Sale Agreement].

Docket # 84 at ¶ 12. In its February 9, 2010 Order, the Court confirmed that the only issue that existed with respect to the Escrow Claim was whether the estoppel certificate provided by Colorado Cinema, LLC constituted an "Approved Tenant Estoppel Certificate." Docket #107 at n.1. Granite recognized that the Court's order significantly limited the factual issues for trial and argued during its opening statement that the case had already essentially been decided by the February 9, 2010 Order. *See* Trial Transcript at 24:10-19, attached in relevant part as Exhibit 2. Thus, no dispute exists that the Escrow Claim turned on the resolution of a single issue of contract interpretation and application.

The limited scope of the Escrow Claim is illustrated by the fact that the claim was decided following a one-day trial to the Court during which Granite offered two witnesses in its case-in-chief and two witnesses in rebuttal. Moreover, the Escrow Claim did not require Granite to prove any damages because the dispute was over which party was entitled to funds held in escrow. Despite the limited nature of the declaratory judgment claim, Granite requests an unreasonably high $674,477.98 in fees and costs.

### 2. Other Claims.

In addition to the Escrow Claim, two other claims were at issue and resolved before trial: (1) Granite's fraud claim[1] asserted against Alberta's principals (the "Fraud Claim"); and (2) Alberta's counterclaim related to the post-closing agreement to "true-up" operating expenses and deficits[2] (the "True-Up Claim"). Neither the Fraud Claim nor the True-Up Claim arose under the Escrow Agreement, and the Court's judgment does not entitle Granite to attorneys' fees related to either of these claims. Nonetheless, Granite requests significant fees incurred in pursuit of these claims.

### 3. Settlement Issues.

Granite attempts to justify its exorbitant attorneys' fee claim by arguing that the entire trial might have been avoided had Alberta immediately acceded to its demands and settled the case. Granite's argument cuts both ways, however. In April 20, 2010, the parties participated in a Court-ordered settlement conference. In that settlement conference, Granite demanded that Alberta concede the Escrow Claim, with each side to bear its own fees and costs. After consideration of the offer and other options, on May 27, 2010, in its confidential settlement offer

---

[1] Granite's Fraud Claim was dismissed by the Court on December 29, 2009. The Tenth Circuit reversed the District Court's Dismissal and remanded the Fraud Claim on October 19, 2011. Thus, the Fraud Claim has not been at issue in this suit for nearly two years.
[2] Alberta withdrew the True-Up Claim prior to trial.

sent to the Magistrate Judge, Alberta agreed to concede the Escrow Claim, with each party to bear its own fees and costs. This was precisely what Granite had demanded five weeks earlier. Granite, however, reneged on its offer and made additional demands that precluded settlement. Thus, contrary to Granite's position, the trial of this matter was not precipitated by Alberta's unwillingness to settle, but by Granite's change in position.

### B. Granite Requests Unreasonable Attorneys' Fees.

Granite's pursuit of the Escrow Claim involved: (1) preparing the "Original Complaint"; (2) preparing a proposed scheduling order and attending the scheduling conference; (3) drafting and reviewing disclosures and discovery; (4) attending two settlement conferences; (5) preparing a response to Alberta's summary judgment motion on the Escrow Claim; and (6) preparing for and attending the one-day trial to the Court. For these tasks, Granite seeks the unreasonable sum of $619,835.18 in attorneys' fees.

With respect to the "Original Complaint," the scheduling order and the response to Alberta's Motion for Summary Judgment, Granite seeks $62,112.67 in attorneys' fees. *See* Motion at Exh. A, 2-7; *id.* at Exh. A.1-A.2; *id.* at Exh. A.5–A.6. For the remaining tasks, including (i) disclosures and discovery, (ii) the settlement conference, and/or (iii) trial preparation and attendance, Granite seeks an additional $557,722.51 in attorneys' fees.

As described herein, none of Granite's requested fees with respect to these tasks are reasonable. The necessary document-related discovery for the Escrow Claim was *de minimus*, and Granite seeks fees for depositions unrelated to the Escrow Claim. The narrow scope and relative simplicity of one-day trial compels the conclusion that only minimal attorneys' fees were necessary for trial preparation and attendance. Some of the $557,722.51 in attorneys' fees sought are for "Future Fees" and "fees-on-fees," but Granite is entitled to neither. In sum,

Granite requests over half-a-million dollars in attorneys' fees for categories of attorney work to which Granite is not entitled.

### 1. Examples of Granite's Unreasonable Fee Request.

Numerous examples of Granite's overreaching exist within the documents submitted in support of Granites' Motion.   Granite requests attorneys' fees for the following:

- A "Countermotion for Summary Judgment" that was never filed (Motion at Exh. A.7, 2 (1/28/10 P Trahan billing entry));

- A privilege log that was never served on Alberta (*id.* at Exh. A.8, 6-7; Bennett Aff. at ¶ 8);

- Preparation of "Voir Dire Questions," though Granite withdrew its jury demand and the trial was to the Court (Supplemental Motion at 5 (02/09/2011 invoice description));

- A request for more than $112,000 in fees purportedly incurred during February 2011 without any itemization of those fees whatsoever (Motion at Exh. A.15, 2-4 (invoice dated March 10, 2011 begins at "Page 8"));

- Unnecessary and unreasonable fees related to three attorneys' time—billing at a collective rate of $1,475.00 per hour—for trial, without any explanation why the lead attorney could not present the limited witnesses without assistance (*id.*; Bennett Aff. at ¶ 5);

- Numerous in-house conferences and meetings (*see*, e.g, Motion at Exh. A.7, 2-3; *id.* at Exh. A.8, 6-7); and

- Fees for use of a secretary at $160.00 per hour (*id.* at Exh. A.15, 4).

These fees are unreasonable, not awardable, and emblematic of the overreaching nature of Granite's Motion.

### 2. Fulbright's Records Preclude An Award Of Fees.

Fulbright's fee accounting methods preclude the Court from accurately differentiating the fees related to the Escrow Claim from those related to the Fraud Claim or the True-Up Claim. Where a party presents insufficient evidence to allow the Court to differentiate between

recoverable and non-recoverable fees, a Court cannot award any fees. *Fountain v. Mojo*, 687 P.2d 496, 501 (Colo. App. 1984).

Granite's attorneys "block-billed" their fees and did not reasonably describe the claims to which their fees related. "'Block billing' occurs when an attorney creates a single time entry reflecting the performance of numerous tasks, making it impossible to ascertain how much time was spent on each particular task…. In such circumstances, the block billing prevents the Court from determining and excising the time spent on the non-compensable tasks." *San Luis Valley Ecosystem Counsel v. U.S. Forest Serv.*, 2009 WL 792257 (D. Colo. Mar. 23, 2009) (internal quotation marks and citations omitted). Because Fulbright's records are block-billed, any reasonable apportionment of awardable fees is speculative, if not impossible. The fees that are block-billed are, therefore, not awardable.

### C. Granite Requests Improperly Apportioned Discovery-Related Fees.

Granite is not entitled to any fees concerning discovery because it has not provided the Court with any meaningful information concerning the correct apportionment of those fees.

#### 1. Granite Requests Unreasonable Document-Related Discovery Fees which did Not Arise Under the Escrow Agreement.

The Court's denial of summary judgment significantly narrowed the issues related to the Escrow Claim. Therefore, little—if any—document discovery was necessary after February 9, 2010 on the Escrow Claim. Nevertheless, Granite requests extensive fees related to discovery and "document review" after February 9, 2010.

Granite claims it incurred $165,833.73 for its "Document Review Team." S*ee* Motion at 14; *id.* at Exh. B-3, 2. Granite's Document Review Team apparently consisted of ten or more junior attorneys and two paralegals. *Id.* at 14; *id.* at Exh. B-3, 2. At least three senior attorneys also spent time reviewing the Document Review Team's work. *Id.* at Exh. A.8, 11. Granite's

Document Review Team spent 622 hours (15.55 forty-hour weeks) to review and produce approximately 15,000 pages (approximately five banker's boxes) to Alberta, or approximately 2.5 minutes billed per page produced. *Id.* at 11; *id.* at Exh. B-3, 2. Included within Granite's production were numerous duplicate copies of lengthy and nearly identical documents. These documents included multiple copies of the leases and tenant estoppel certificates from each of the ninety-plus tenants at the Southlands Town Center, despite the fact that only one tenant—Colorado Cinema, LLC—was relevant to the Escrow Claim. Additionally, Granite produced literally dozens of duplicate copies of the executed Forward Purchase and Sale Agreement and each of its sixteen amendments, as well as duplicates of the closing documents. Of the produced documents, Granite used 34 as trial exhibits.[3] Granite's use of more than a dozen professionals to review duplicate multiple-page documents was unreasonable and inefficient at best, especially given the limited scope of the Escrow Claim.

Granite's overstaffing is best illustrated by Fulbright's invoice dated April 2010, reflecting work ostensibly performed in February 2010 by the following attorneys:

The following is a summary of the time dedicated and the fees charged on an average hourly rate basis to this matter by the Firm's professional staff:

| TIMEKEEPER NAME | TITLE | HOURS | RATE | FEE |
|---|---|---:|---:|---:|
| Osborne J. Dykes | Of Counsel | 1.80 | $650.00 | 1,170.00 |
| Jane Snoddy Smith | Partner | 37.90 | $595.00 | 22,550.50 |
| Marcy Hogan Greer | Partner | 5.80 | $560.00 | 3,248.00 |
| Paul Trahan | Partner | 8.50 | $535.00 | 4,547.50 |
| Jennifer Diane Sherrill | Counsel | 102.80 | $475.00 | 48,830.00 |
| Mark Thomas Oakes | Sr Associate | 1.60 | $395.00 | 632.00 |
| Bryan Wesley Patrick | Sr Associate | 91.90 | $375.00 | 34,462.50 |
| Bryan Wesley Patrick | Sr Associate | 4.40 | $355.00 | 1,562.00 |
| Benjamin Matthew Vetter | Sr Associate | 0.30 | $355.00 | 106.50 |
| Travis J. Siebeneicher | Sr Associate | 59.50 | $350.00 | 20,825.00 |
| Todd Ryan Hambidge | Associate | 19.30 | $340.00 | 6,562.00 |
| Tamsen Lee Barrett | Associate | 39.60 | $315.00 | 12,474.00 |
| Holly Kipp | Counsel | 58.90 | $270.00 | 15,903.00 |
| S. A. Hayden Briggle | Associate | 141.90 | $255.00 | 36,184.50 |
| Jerod Christopher Neas | Counsel | 111.30 | $235.00 | 26,155.50 |
| Tracy Nicole Stewart | Associate | 27.50 | $230.00 | 6,325.00 |
| Christopher Mark Weimer | Associate | 35.20 | $230.00 | 8,096.00 |
| Sparrowleaf Dilts McGregor | Associate | 13.50 | $195.00 | 2,632.50 |
| TOTAL | | 761.70 | | 252,266.50 |

---

[3] Granite used 8 exhibits which were demonstrative exhibits prepared by counsel. 17 of Granite's exhibits were the Forward Purchase and Sale Agreement its amendments.

Motion at Exh. A.8, 11. During that month, seventeen different Fulbright attorneys worked on review and production of documents, including numerous hours "preparing" "amending," "reviewing" and performing "QC review" related to a "privilege log" that was never provided to Alberta. Affidavit of Stuart N. Bennett ("Bennett Aff.") at ¶ 8. Moreover, the documents that Granite's Document Review Team continued to review and contemplate were produced to Alberta on February 22, 2010. *Id*. Nonetheless, Granite's attorneys continued to bill for review of documents after that date. Motion at Exh. A.8, 6-7.

Granite apportions its document review fees by purportedly cutting them in half. Motion at 19. This apportionment is arbitrary and not supported by the facts of the case. Even a 50% reduction results in an excessive fee in relation to the small number of documents relevant to the Escrow Claim. As of February 9, 2010, the parties had conceded that the Escrow Claim was limited in scope and involved interpretation of the unambiguous contracts. Resolution of the Escrow Claim involved a question of law and analysis of Colorado Cinema, LLC's tenant estoppel certificate. Necessary document-related discovery pertaining to the Escrow Claim was far less than Granite's estimate that it constituted half the discovery conducted. Because Granite fails to appropriately apportion its discovery-related attorneys' fees, the Court can award no discovery-related fees. *Fountain*, 687 P.2d at 501.

Granite's has not reduced its all of its document-related discovery fees in half as it claims. Time entries totaling in excess of $40,000 for document production are **not** reduced by half. *See*, *e.g.*, Motion at Exh. A.7, 8-11 (unreduced fees totaling $10,660 for JS Smith, BW Patrick, P Trahan, and CM Weimer); *id.* at Exh. A.8, 2-6 (unreduced fees claimed for JS Smith, JC Neas, BW Patrick, and P Trahan, totaling $30,121.50). Granite's attempt to collect full fees

for document production, including many hours of senior attorney time, demonstrates Granite has not reasonably apportioned its document-discovery-related fees.

### 2. Granite Requests Inaccurately Apportioned Deposition-Related Fees.

Granite is not entitled to the full attorneys' fees it seeks with respect to depositions. Granite seeks all of its attorneys' fees related to depositions that were either entirely or largely unrelated to the Escrow Claim. First, Granite requests all fees related to the deposition of a maintenance technician, Marko Blinder. Motion at Exh. A.5, 11. Granite does not explain how the maintenance technician's deposition assisted in interpreting the relevant contracts or the Colorado Cinema's estoppel certificate or helped resolve the Escrow Claim. Mr. Blinder's deposition focused on his observation of site conditions at the Southlands. The words "escrow," "estoppel," or "estoppel certificate"—central concepts to the Escrow Claim—were not used once during the deposition. *See* Transcript of Deposition of Marko Blinder, Concordance, attached as Exhibit 3.

Second, Granite's deposition of Alberta controller Steven Zezulak was entirely related to accounting issues surrounding the True-Up Claim, which was not asserted under the Escrow Agreement. Like Mr. Blinder's observations, Alberta's accounting is unrelated to the issue of whether Colorado Cinema, LLC's estoppel certificate was an "Approved Tenant Estoppel Certificate" under the Escrow Agreement. The words "escrow," "estoppel" or "estoppel certificate" were not used during Mr. Zezulak's deposition. *See* Transcript of Deposition of Steven Zezulak, Concordance, attached as Exhibit 4. Nevertheless, Granite requests all attorneys' fees related to Mr. Zezulak's deposition. Motion at Exh. A.9, 4.

Similarly, the depositions of Michael Krier and Angela Kralovec pertained chiefly to the True-Up Claim and Granite's then-pending attempt to reassert the Fraud Claim. Bennett Aff. at

¶ 7.  The Krier and Kralovec depositions touched on escrow-related issues only in passing.  *See* Transcript of Deposition of Michael Krier, Concordance, attached as Exhibit 5 ("escrow" does not appear anywhere in 110-page deposition transcript); Transcript of Deposition of Angela Kralovec, Concordance, attached as Exhibit 6 ("escrow" appears twice in the 156-page deposition transcript).  However, Granite requests all fees related to the Krier and Kralovec depositions.  Motion at Exh. A.6, 9.  Granite's failure to reduce its claimed deposition preparation and attendance fees in relation to the small percentage of deposition time devoted to the Escrow Claim is fatal to its claim for deposition-related fees.  *Fountain*, 687 P.2d at 501.

### D.  Granite is Not Entitled to Fees Related to the True-Up Claim.

Granite's entitlement to attorneys' fees does not extend to the True-Up Claim.  The Court's judgment only provided for Granite's recovery of "reasonable and actual attorney's fees, expenses and costs pursuant to paragraph 12 of the Escrow Agreement and D.C.COLO.LCivR 54.1."  Docket # 198 at ¶ IV.D.  The True-Up Claim related to the parties' post-closing verbal discussions of their respective obligations and did not arise under the Escrow Agreement.  Nevertheless, Granite requests compensation for attorneys' fees relating to the True-Up Claim.  *See*, *e.g.*, Motion at Exh. A.1, 6-7 (OJ Dykes and P Trahan's reviews of counterclaim); *id.* at Exh. A.9, 5, 10-11 (multiple entries relating to "Escrow/True-Up"); *id.* at Exh. A.10, 2 (entry related to "Escrow/True-Up").

Granite's attorneys' fees related to the True-Up Claim are not separated from the Escrow Claim-related fees.  The True-Up Claim was at issue in this case from May 11, 2009 through February 14, 2011.  During this time, the True-Up Claim necessarily impacted disclosures, discovery requests and responses, the protective order, depositions, and settlement discussions.  The True-Up Claim therefore impacted numerous attorney billing entries during this time period,

not simply the entries which explicitly state they relate to the True-Up Claim. Granite is not entitled to any attorneys' fees incurred between May 11, 2009, and February 14, 2011 as it has not removed fees related to the True-Up Claim from its request. *Fountain*, 687 P.2d at 501.

### E. Granite's Attorneys' Hourly Rates are Unreasonably High given the Issues Before the Court.

As described above, the Escrow Claim involved a singular, narrow issue. The "'novelty and difficulty of the questions involved'" is the first factor to consider in the analysis of whether a fee is reasonable. *Mau v. E. P. H. Corp.*, 638 P.2d 777, 779 (Colo. 1981) (quoting C.R.C.P. DR 2-106(b), which is now Colo. R.P.C. 1.5). The parties acknowledged the limited scope of the Escrow Claim since at least December 2009. *See* § II.A.1, *supra*. The Court confirmed this understanding on February 9, 2010. *Id.* In light of the simplicity of the Escrow Claim, Granite requests reimbursement of unreasonably high attorney fee billing rates. This is especially true because Granite's attorneys charged hourly rates in excess of rates charged for highly complex legal work. Bennett Aff. at ¶ 3.

Granite requests attorneys' fees for at least twenty different attorneys on this matter alone. The hourly rates for these attorneys range from a low of $195.00 to a high of $650.00 per hour. In support of its position, Granite attorney Osborne Dykes executed an affidavit in which he asserts that "none of the hourly rates billed by Fulbright's attorneys exceed the ranges of rates for similar-sized firms reported in The Colorado Bar Association 2008 Economics of Law Practice Survey." Motion at 16; *id.* at Exh. C, ¶ 8. Notwithstanding Mr. Dykes' Affidavit, the rates charged by Granite's partner-level attorneys <u>consistently exceed</u> the rates set forth in the referenced survey. A review of the rates charged by Fulbright attorneys and staff demonstrates the unreasonableness of the fees sought.

First, Granite's lead attorney, Paul Trahan, charged $575.00 per hour. Motion at Exh. A.17, 8. Mr. Trahan graduated from law school in 1997 and has been practicing law for approximately 14 years. *Id.* at Exh. D, 2. The Colorado Bar Association 2008 Economics of Law Practice Survey ("2008 Survey") lists the 95th percentile for hourly rates for attorneys with 11 to 15 years in practice as $390. *Id.* at Exh. C-2, 33. Mr. Trahan's hourly rate is not commensurate with his experience and is nearly 150% of the 95th percentile rate for similarly experienced attorneys.

Similarly, the other attorneys and staff employed by Granite charged rates which consistently exceeded the 95th percentile in Denver. Mr. Dykes' hourly rate of $650 exceeds the 2008 Survey's top-end "Of Counsel" hourly rate of $595. Motion at Exh. A.3, 6; *id.* at Exh. C-2, 28. Fulbright attorney Jane Snoddy Smith—who is neither a litigator nor an attorney of record in this case—charges an hourly rate of $595, exceeding the 95th percentile for similarly situated partners by $54 per hour. *Id.* at Exh. A.3, 6.; *id.* at Exh. C-2, 28; *id.* at Exh. C, 4. Granite requests compensation for paralegals at the hourly rate of $205 and $220 per hour. *Id.* at Exh. A.3, 6; *id.* at Exh. A.5, 3. Both of these rates exceed the 2008 Survey's 95th percentile hourly rate of $173 for paralegals with 10+ years of experience. *Id.* at Exh. C-2, 29. Finally, Granite requests compensation for "Practice Support," "Project Assistant," "Secretary" and "PSG Client Services" at $250, $150, $160, and $170 per hour respectively. *Id.* at Exh. A.5, 3. Granite has made no effort to meet its burden to demonstrate that these rates are reasonable or that the services provided were necessary.

F.  **Granite Requests Fees it has Not Actually Incurred.**

1.  **Granite Requests Fees Incurred by a Different Entity.**

Granite has not provided any evidence that Granite Southlands Town Center, LLC actually incurred any of the claimed attorneys' fees.  The fees Granite may recover under the Escrow Agreement are limited to fees actually incurred by the parties to the Agreement.  Nothing in the Escrow Agreement permits Granite to recover fees incurred by another entity.    The bills submitted in support of the Motion are addressed to "BlackRock Realty Advisors, Inc." and/or "BlackRock Realty Inc." (collectively, "BlackRock").  *See* Motion at Exhs. A-A.17. The fees and costs requested in the Motion cannot be awarded because BlackRock was neither a party to the Escrow Agreement nor the prevailing party in the litigation.  Unless and until Granite demonstrates that it actually incurred the fees and costs sought, Granite is not entitled to fees or costs under the Escrow Agreement.

2.  **Granite is Not Entitled to "Future Fees".**

Although the Court's judgment limited Granite's recovery to "reasonable and actual" attorneys' fees, Granite requests payment for fees that it has not incurred.  Docket # 198 at 3. Granite seeks $12,000 for "Estimate of Future Fees."  Granite expects "Attorneys at Fulbright…to spend approximately 130 more [hours] through the conclusion of this litigation." Motion at 14.  Granite has made no effort to explain how it will incur 130 hours of attorney time on this case.  As future fees are not "actual" and have not been incurred, Granite is not entitled to recover these amounts.

### G.     Granite is Not Entitled to "Fees-on-Fees".

Granite requests attorneys' fees related to litigating the attorneys' fees issue ("fees-on-fees") in an amount which appears to exceed $50,000.[4]  The appropriate amount of fees-on-fees to be awarded—if any—must await the Court's determination of Granite's overall success in pursuing its Motion.  *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163 n. 10 (1990) ("fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation").  As there are serious problems with Granite's Motion such that the Court should refuse to award what Granite requests, the Court should find that Granite will not be able to recover its requested fees-on-fees.

Furthermore, Granite is not entitled to fees-on-fees because the fees sought are excessive. The records supporting the Motion were kept in Fulbright's "ordinary course of its business," and "the legal issues associated with a request for legal fees are neither novel nor complicated…."  *Prison Legal News v. Executive Office For U.S. Attorneys*, 2010 WL 3170824 (D. Colo. Aug. 10, 2010) (finding fees-on-fees request to be "excessive").  As $50,000 in fees is not "reasonably necessary to obtaining a reasonable fee award," Granite's requested fees-on-fees are not awardable.  *Barnes Found. v. Twp. of Lower Merion*, 2006 WL 2037464 (E.D. Pa. July 18, 2006).

### H.     Granite Requests Costs which are Neither Reasonable Nor Attributable to the Escrow Claim.

Granite attributes the bulk of its claimed costs—$43,337.32—to Fulbright's in-house data management fees.  Motion at Exh. B, ¶ 22; Supplemental Motion at Exh. B, ¶ 24.  These costs

---

[4] *See* Motion at 10 (4/12/11 invoice related to "Attorneys' Fees…Issues" and claimed $8,815, all of which related to legal research concerning attorneys' fees (*see* Motion at Exh. A.15, 7); 5/13/11 invoice claimed $418.20 concerning review of "issues relating to Attorneys' Fees claim"; 6/13/11 invoice claimed $2,419 for review of "invoices in anticipation of Claim for Attorneys' Fees"; undated and unsubmitted invoice claims $38,879 for "Preparation of Atty. Fees Request w/ supporting evidence").

{JK00320674.2 }                                                        15

stem from Granite's decision to maintain 17 gigabytes of data in an expensive and unnecessary format.  As discussed above, however, the need for discovery in relation to the Escrow Claim was *de minimus*.  Because most of the discovery was unrelated to the Escrow Claim, Fulbright's in-house data management fees are not properly awardable under the Escrow Agreement.

Furthermore, Granite's claimed data management fees are insufficiently documented.  A hand-scrawled legend stating "Back up for 'per gigabyte' charges" appears on a document internally generated by Granite's attorneys entitled "Fulbright & Jaworski, L.L.P. Practice Support Services Overview."  Motion at Exh. B-4, 3.  While this document contains certain per gigabyte billing rates, Granite makes no effort to demonstrate the reasonableness of these rates.  Granite furthermore makes no effort to explain why, if their data management structure was supposedly so crucial, it was unnecessary to maintain during September, October, and November of 2010.  *See* Motion at Exh. B-4, 2 (showing no data management charges for these months).

Granite's incursion of data management costs was not due to any request by Alberta to keep the documents available in an online format after initial production.  Bennett Aff. at ¶ 8.  Alberta downloaded Granite's production from Granite's online discovery site on February 22, 2010, after which Granite could have stored its documents on several DVDs to avoid thousands of dollars in data management costs.  Given that Granite submitted merely 21 documents for exhibits at trial, Granite's claimed costs related to data management are unreasonable and not awardable.

Granite requests several other costs that are not reasonable for award, including the following:

- Costs for depositions unrelated to the Escrow Claim (*see* § II.B.1.b., *supra*) but not apportioned between the Escrow Claim and other claims;

{JK00320674.2 }    16

- Costs for legal research unrelated to the Escrow Claim (Motion at Exh. A.1, 5-11 (unapportioned costs, but invoice redactions indicate non-awardable attorney tasks));

- Costs Granite has been awarded in its Bill of Costs (*compare* Motion at Exh. B.4, 62 *with* Granite's Bill of Costs [Docket # 211-1] at 32; costs awarded at Docket # 227);

- Costs incurred by Granite's counsel during stays at the luxurious Brown Palace Hotel[5] at the rate of $288.00 per night (*id.* at Exh. B-4, 16-17); and

- Costs applied to Fulbright's client development budget (*id.* at Exh. B-4, 20-21 ("Client Dev." written on receipts)).[6]

These costs are unreasonable, not awardable, and emblematic of the overreaching nature of Granite's Motion.

### I. At Most, Granite Is Entitled To Very Limited Fees.

Because of the above reasons, if Granite is entitled to any fees at all, those fees must be quite limited. Alberta will not undertake Granite's burden to "'prove and establish the reasonableness of each dollar, each hour, above zero.'" *Jane L.*, 61 F.3d at 1510 (*quoting Mares*, 801 F.2d at 1210). In light of the foregoing, Granite can only meet its burden regarding very limited aspects of this litigation.

Awardable fees are limited to reasonable fees, apportioned to the Escrow Claim, and incurred in relation to the following: (1) preparing the "Original Complaint"; (2) preparing a proposed scheduling order and attending the scheduling conference; (3) drafting and reviewing disclosures and discovery; (4) attending two settlement conferences; (5) preparing a response to

---

[5] *See* www.brownpalace.com (attached as Exhibit 7, last accessed October 24, 2011, referring to Brown Palace Hotel as "the finest in modern luxury accommodations" and "the peak of high-end luxury"). "[R]equest for reimbursement of …luxury hotel accommodations is unreasonable," especially where, as here, "Plaintiffs offer no sufficient explanation for why…luxury hotel accommodations were necessary and/or reasonable." *HRPT Properties Trust v. Lingle*, 775 F. Supp. 2d 1225, 1242 (D. Haw. 2011).

[6] As Granite's attorneys presumably do not bill client development expenses to the clients they are trying to develop, these costs were not in fact "routinely billed to private clients" by Granite's law firm. Motion at 17. A client development budget is exactly the sort of law firm expense that is "absorbed as part of Fulbright's overhead," and is therefore not awardable. Motion at 17; *Harvey v. Farmers Ins. Exch.*, 983 P.2d 34, 42 (Colo. App. 1998), aff'd sub nom. *Slack v. Farmers Ins. Exch.*, 5 P.3d 280 (Colo. 2000).

Alberta's summary judgment motion on the Escrow Claim; and (6) preparation for and attendance at an extremely limited one-day trial to the Court on a claim which did not require Granite to prove its damages. Fulbright's devotion of a small army of billable personnel to a declaratory judgment action in which its client's total potential recovery could not exceed $650,000 is unreasonable. Reasonable fees and costs related to these tasks should not total more than $75,000. Bennett Aff. at ¶ 6. Alberta's estimate of these fees does not relieve Granite of its burden to prove their entitlement thereto. As described above, the remainder of Granite's claimed fees are not awardable for various reasons, chief among them being that they are insufficiently apportioned from the Fraud Claim and True-Up Claim.

### III. CONCLUSION

For the foregoing reasons, the Court should deny Granite's Motion and Supplemental Motion in their entirety. In the alternative, the Court should only award fees and costs concerning which Granite has shown are properly awardable. As this Brief in Opposition to Granite's Motion and Supplemental Motion demonstrates, those amounts will be significantly less than what Granite has requested.

DATED: October 26, 2011.

Respectfully submitted,

*s/ Steven R. Kabler*
Steven R. Kabler
**JONES & KELLER, P.C.**
1999 Broadway, Suite 3150
Denver, CO 80202
Telephone: (303) 573-1600
Fax: (303) 573-8133
E-mail: skabler@joneskeller.com
Attorneys for Defendant Alberta Town Center, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | | |
|---|---|---|
| *Attorneys for Plaintiff Granite Southlands Town Center, LLC* | jdykes@fulbright.com<br>bvetter@fulbright.com | Osborne J. Dykes, III<br>Benjamin M. Vetter<br>Fulbright & Jaworski LLP<br>370 – 17th Street, Suite 2150<br>Denver, CO   80202 |
| *Attorneys for Plaintiff Granite Southlands Town Center, LLC* | ptrahan@fulbright.com | Paul Trahan<br>Fulbright & Jaworski LLP<br>600 Congress Avenue, Suite 2400<br>Austin, TX  78701 |
| *Defendant Land Title Guarantee Company* | kbruetsch@rwolaw.com | Kimberly A. Bruetsch<br>Robinson, Waters & O'Dorisio PC<br>1099 – 18th Street, 26th Floor<br>Denver, CO   80202 |

And I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner indicated by the non-participant's name:    NONE

> *s/   Steven R. Kabler*
> Steven R. Kabler
> Attorneys for Defendant Alberta Town Center, LLC
> JONES & KELLER, P.C.
> 1999 Broadway, Suite 3150
> Denver, CO 80202
> Telephone:     303-573-1600
> Fax:               303-573-8133
> E-mail:skabler@joneskeller.com