IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-CV-00799-SJJ-KLM

GRANITE SOUTHLANDS TOWN CENTER LLC,
        Plaintiff,

v.

ALBERTA TOWN CENTER, LLC, and
LAND TITLE GUARANTEE COMPANY,
        Defendants.

---

**PLAINTIFF GRANITE SOUTHLAND TOWN CENTER, LLC'S REPLY TO DEFENDANT'S BRIEF IN OPPOSITION TO ITS MOTION AND SUPPLEMENTAL MOTION FOR ATTORNEYS' FEES AND EXPENSES (DOCKET #228)**

---

Granite Southlands Town Center LLC submits this Reply in further support of its Motion for Attorneys' Fees and Expenses ("Motion," Docket # 199) and Supplemental Motion (Docket # 223) and in response to issues raised in Alberta Town Center, LLC's Brief in Opposition (Docket # 228).[1]

## I.   SUMMARY

Alberta is challenging the necessity of Granite's fees after significantly complicating what might have been a simple declaratory judgment dispute. Testimony provided by Alberta's principal Mr. Provost is illustrative of the incredible positions taken by Alberta in this litigation, which have driven up Granite's fees. As stated in footnote 32 of the Court's Memorandum and Order (Docket # 195), "Provost's testimony that a cracked foundation would not [be] material to him as a buyer, is simply not credible." Granite files this Reply to assist the Court in

---

[1] To assist the Court in following Granite's argument, the main headings in this Reply (i.e., "A.," "B.," etc.) correspond to the same numbered headings in Alberta's Brief in Opposition

determining the reasonableness of its fees, and to respond to Alberta's Brief in Opposition. There is no dispute that Granite is entitled to its reasonable and actual attorneys' fees.  *See* Final Judgment (Docket #198).  The only dispute is over the amount.

## II.   ARGUMENT

### A.   The Parties Agree that Granite is Entitled to its Legal Fees and Expenses under the Escrow Agreement

#### 1.   Granite Only Seeks to Recover Fees Related to the Escrow Claim

Without reference to any evidence, Alberta blindly asserts that Granite seeks to recover for two claims that do not arise from the Escrow Agreement and were not the subject of trial, the "Fraud Claim" and "True-Up Claim."  That is not correct.  Granite only seeks to recover fees incurred in relation to the Escrow Claim, and the invoices it submitted in support of its Motion (Exhibit A) only relate to the Escrow Claim.  For invoices prior to August 2009, Granite's counsel redacted all entries which were unrelated to the Escrow Claim and reduced the amount of time and fees accordingly.  *See* Affidavit of Paul Trahan at ¶ 3, attached hereto as Exhibit E.[2] From August 2009 through the trial of this case, Granite's counsel issued separate invoices for services rendered in relation to the Escrow Claim, so there was no need to redact the unrelated time entries or adjust the amount of fees.  *Id.*  As a result, all of the work described in the invoices Granite submitted in support of its Motion and Supplemental Motion relates to the Escrow Claim, despite Alberta's unsupported claims to the contrary.

---

[2] Granite's Motion (Docket #199) included Exhibits A through D, with attached addenda.  Granite's Supplemental Motion (Docket # 223) supplemented certain exhibits from the Motion with revised exhibits.  For clarity, the Exhibits filed along with this Reply begin with letter "E," such that the Exhibits in Granite's Motion, Supplemental Motion, and Reply are consecutively numbered.

2.     <u>Albert Cannot Now Claim the Dispute Over the Escrow Claim Was Straightforward After Unnecessarily Complicating the Dispute</u>

Granite's Motion and Supplemental Motion only request an award of fees reasonably incurred in litigating the Escrow Claim.  Granite is not asking for anything more.  The Escrow Claim, however, was not as straightforward as Alberta suggests.  Alberta posits that after December 2009, the entire Escrow Claims dispute was limited to a single issue: "whether…the [Colorado Cinema, LLC estoppel certificate] constitute[d] an Approved Tenant Estoppel Certificate in accordance with Sections 7.2(i) and 8.1(k)(ii) of the [Forward Purchase and Sale Agreement]."  *See* Br. in Opp. at p. 3.

Alberta went to considerable efforts to complicate what might have been a simple case over the sufficiency of the Colorado Cinema's estoppel certificate.  For example, Alberta made the condition of the property and the cause of ground settlement at the Southlands Town Center an issue by continuing to insist, up through and including trial, that the cracked foundation at the Colorado Cinema was caused by aspects of design or construction for which Colorado Cinema, and not the landlord, was responsible.  This forced Granite to address issues, both in responding to Alberta's discovery and at trial, about ground settlement at other areas within the Southlands Town Center.  Those are not straightforward and simple issues to address.

Alberta also introduced the Colorado Cinema Lease and its two amendments into evidence at trial, along with related testimony, arguing the intricacies of the lease.  This forced Granite to respond with evidence of protracted communications between Alberta and the Cinema (prior to Granite's purchase of the Southlands Town Center and unbeknownst to Granite) about the cracked foundation and cause of ground settlement.  It also forced Granite to respond with evidence that Alberta had sought requests for proposals from various engineering firms (also

prior to Granite's purchase and unbeknownst to Granite) to assess the cause of the cracked foundation.  Alberta took the position that neither the cracked foundation nor any of this evidence was relevant.  As indicated by the excerpt from the Court's Memorandum and Order above, the Court did not find Alberta's argument credible.

Alberta also raised issues about the estoppel certificates submitted by numerous other tenants.  Alberta did not limit its arguments to the Cinema estoppel.  In the Exhibit List it submitted to the Court just prior to trial, Alberta listed the estoppel certificates for American Fidelity Assurance Company, Anny Taylor Loft, Banana Republic, Barnes & Noble, Bath & Body Works, Chicos' FAS, Chipotle, Christopher & Banks, Coldwater Creek, CJ Banks, Eddie Bauer, Family Life Counseling, Gap Kids, Gymboree, Hallmark, Hot Topic, Jos A Bank, Lane Bryant, Lenscrafters, Limited Too, Main Street Dental, McCabes Bistro, New York Co, Pac Sun, Qual Dent, Regis Corp, Select Comfort, Sports Authority, Sunglass Hut, Sweet and Sassy, Talbots, Ted's Montana Grill, The Children's Place, Tween Brands, Wetzels Pretzels, Yankee Candle, Neujahr and Gorman, and the Southlands Town Center Office Lease from DCC Architect.  *See* Exhibit F.  Alberta also questioned Granite's witnesses at length during depositions about the estoppel certificates for tenants other than the Cinema.  Alberta did not treat this case as though it was a simple dispute about a single estoppel certificate.

### 3.    The Parties Disagree Over the Subject of Settlement Negotiations

With respect to settlement discussions, suffice it to say that Alberta and Granite clearly disagree over the import and effect of positions taken before and during various settlement discussions and conferences.  For Alberta to suggest it was willing to concede the Escrow Claim,

with no strings attached, without demanding that Granite release all other claims against Alberta and its principals simply is not accurate.

**B.** <u>**Granite's Request for Fees is Reasonable**</u>

Granite has provided records that are more than sufficient for the Court to calculate a lodestar figure, which represents a presumptively reasonable fee. *See Degrado v. Jefferson Pilot Financial Ins. Co.*, No. 02-cv-01533-WYD-BNB, 2009 WL 1973501 at *6 (D. Colo., July 6, 2009) (*quoting Robinson v. City of Edmond*, 160 F.3d 1275, 1283 (10th Cir. 1998). Such records include, for each person for whom fees are claimed, a detailed description of the services rendered, the amount of time spent, the hourly rate, and the total amount claimed. *See* <u>Exhibit A</u> to Granite's Motion. Granite has not redacted a single time entry relating to work performed in relation to the Escrow Claim. Granite has given Alberta, and the Court, complete insight into the work performed and fees relating to the Escrow Claim.

**1.** <u>Each of the Seven Allegedly Unreasonable Items Criticized by Alberta Can Easily Be Explained</u>

Alberta criticizes seven items from almost 200 pages of detailed time records as support for its position that Granite's fees are unreasonable. *See* Br. in Opp. at p. 6. Each of these items, identified by bullet points in the Brief in Opposition, can easily be explained:

- Alberta argues that work performed in connection with a counter-motion for summary judgment—which is just a portion of the work performed in relation to a fee entry for $936.25—is unreasonable and therefore not recoverable.

Alberta ignores the fact that a counter-motion necessarily relates directly to the Escrow Claim and to Alberta's motion for summary judgment on the claim. Part of an effective litigation strategy is to prepare for contingencies and eventualities, which may include drafting pleadings that ultimately are not filed. The fact that Granite elected not to file this motion is of no moment.

- Similarly, Alberta claims that Granite cannot recover fees incurred in connection with preparing a privilege log because the privilege log was not delivered to Alberta.

Time entries relating to creation of a privilege log from late February 2010 are limited to roughly a dozen hours (after apportionment).  *See* <u>Exhibit A.8</u> to Granite's Motion, at pp. 6-7.  It was prudent, expedient, and reasonable for Granite to prepare a privilege log concurrently with its document production, so that the log would be available for inspection upon request.  The mere fact that Granite did not serve the privilege log on Alberta does not make the fees associated with preparing it any less reasonable.  Moreover, the bulk of time entries to which Alberta apparently refers in support of its argument relate to review of the documents for privilege, generally, not the preparation of a privilege log.  Certainly, Alberta is not suggesting it was unreasonable for Granite to review the documents for privilege prior to producing them to Alberta.  To the contrary, failure to do so would be unreasonable and a dereliction of counsel's duties to Granite as its client.

- Alberta apparently argues that Granite cannot recover actual fees incurred and billed to the client for the preparation of Voir Dire Questions where Granite elected to withdraw its jury demand.

The fact that Granite elected to withdraw its demand for a jury does not mean that Granite cannot recover the fees incurred in formulating Voir Dire Questions prepared in compliance with the Court's order.  Granite submitted the proposed Voir Dire Questions (Docket #168) as part of the Court's "Checklist for Trial."  Even so, only a nominal amount of time was spent preparing the Voir Dire Questions.  *See* <u>Exhibit A.14</u> to Granite's Motion, specifically references in entries from January 27 to 31, 2011.

- Alberta inaccurately argues that Granite seeks to recover over $112,000 in fees without any itemization of those fees.

What Alberta fails to tell the Court is that Granite filed a Notice of Errata (Docket #200) to attach certain pages that were inadvertently omitted from Exhibit A.15 to Granite's Motion in the process of breaking up Exhibit A so that it would fit within the file-size limit of the CM/ECF system. Additionally, Alberta appears to be using figures from an invoice summary that do not incorporate Granite's across-the-board 15% discount, thereby artificially inflating the amount of fees actually requested in the March 10, 2011 invoice. The work performed in connection with the $112,000 in fees is detailed in Exhibit A.15 to Granite's Motion, and the 15% discount also is reflected in Exhibit A.15, resulting in net fees of $95,429.07. This invoice reflects the substantial amount of work performed by Granite's counsel preparing for and attending trial, as well as work performed in preparing related court papers. As with Granite's other invoices, Exhibit A.15 provides a detailed, un-redacted description of all work performed.

- Alberta also blindly and improperly criticizes Granite for having three attorneys at trial.

As described more fully in Granite's Motion, each of these attorneys handled separate witnesses and discrete issues. It made sense for all three attorneys to attend trial. The total fees charged for these three Granite attorneys on the day of trial was $ 11,921.25 ($ 14,025.00 with a 15% discount), and each attorney presented at least one witness, including Associate Lucy Arnold. Alberta had two attorneys at trial, and one of them did not handle any witness or make any argument.

- From among the approximately 200 pages of Granite's detailed time records, Alberta cites two instances where Granite's counsel conducted internal conferences and meetings.

Alberta gives no explanation as to why this time and the associated fees should not be charged. Granite has represented and represents that these conferences related directly to the

Escrow Claim and were reasonable and necessary and in furtherance of Granite's claim.  The time associated with these conferences is minimal and resulted in more coordinated and efficient (less expensive) service to the client.

- Alberta also cites a single instance where it believes Granite's counsel charged $160 per hour for use of a secretary.

This is not the case.  The time entry Alberta is referring to is for time charged by Christine Andros Allen, who serves as both a legal secretary and legal assistant in Fulbright's relatively small Denver office.  When Ms. Allen performs legal assistant work she charges it as such, which is what happened here.  The subject time entries, for February 2011, indicate that Ms. Allen prepared trial subpoenas and trial documents, a task typically performed by Granite's counsel's legal assistants.  If anything, Granite's counsel's use of a legal assistant, rather than an attorney, for such tasks is indicative of billing judgment.  To Alberta's credit, Granite's invoice inaccurately lists Ms. Allen's title as "Secretary."  The fees for Ms. Allen's work in February 2011 total $336.00.

2.      Granite Has Provided Meticulous, Contemporaneous, and Apportioned
        Time Records to Substantiate its Fees Request

The Tenth Circuit has stated that prevailing counsel must provide "meticulous, contemporaneous time records." *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998).  Alberta makes a sweeping attempt to undercut all of Granite's invoices because, Alberta claims, the invoices use "block billing."  *See* Br. in Opp. at pp. 6-7.  As stated in a case cited in Alberta's Brief, *San Luis Valley Ecosystem Counsel v. U.S. Forest Service*, "[b]lock billing is not per se fatal to a fee request; it presents a problem only when some of the listed tasks in a given billing entry are compensable, while other listed tasks are not."  No. 04-cv-01071-

MSK2009,  WL 792257 at *7 (D. Colo., March 23, 2009).   Granite has gone to great efforts to ensure that time unrelated to the Escrow Claim was redacted from its invoices.  *See* <u>Exhibit B</u> to Granite's Motion at ¶¶19-20.  Thus, each allegedly block-billed time entry contains only services related to the Escrow Claim.  In other words, because each of these entries represents compensable work performed in litigating the Escrow Claim, any block-billing, to the extent it exists, is not fatal to Granite's fee request.  In fact, it probably is not accurate to refer to it as "block-billing" in the first instance.

Throughout its Brief in Opposition, Alberta repeatedly cites *Fountain v. Mojo*, 687 P.2d 496 (Colo. App. 1984), a 1984 case from the Colorado Court of Appeals,  for the proposition that a party cannot recover any attorneys' fees where it does not present sufficient evidence to allow the Court to differentiate between recoverable and non-recoverable fees.  *See* Br. in Opp. at pp. 7, 9, 11, 12.   The *Fountain* case, however, is hardly instructive.  The opinion provides no guidance about the form which evidence sufficient to allow apportionment of fees should take. *See Fountain*, 687 P.2d at 501.  Instead, the appellate court simply affirms a trial court's denial of a request for attorneys' fees based on the trial court's determination that "the defendant had failed to present evidence sufficient to enable it to apportion defendant's attorney fees."  *Id.* at 501.

Here, that certainly is not the case.  Granite has provided detailed descriptions of the work performed in the form of its actual un-redacted time entries, all of which relate to the Escrow Claim.  In addition, in Granite's Motion and Supplemental Motion, Granite's counsel has apportioned fees where necessary by redacting time entries unrelated to the Escrow Claim. Colorado courts and federal courts in the Tenth Circuit recognize that prevailing counsel may

apportion fees after the fact, so long as such apportionment is logical and reasonable. This is not a case where billing records fail to distinguish time spent for various claims. Granite has gone to great lengths to make such distinctions, consistent with the Colorado Supreme Court's directive.

In *American Water Development, Inc. v. City of Alamosa*, for example, the Colorado Supreme Court accepted after-the-fact segregation based on attorney estimates of time spent on a claim coupled with complete billing records, as supported by testimony regarding the methodology used to reach such an estimate. 874 P.2d 352, 384 (Colo. 1994). In *U.S. ex rel. Belt Con Construction, Inc. v. Metric Construction Co.*, the prevailing party divided its block-billed expenses into three phases and only attempted to segregate its expenses in the second phase of litigation, where prevailing and unsuccessful claims overlapped. 2007 U.S. Dist. LEXIS 97720, *26 (D.N.M., Dec. 1, 2007). The District of New Mexico deemed the prevailing party's method "logical and reasonable,"  and permitted fees for the first phase, which consisted of expenses common to all claims, because that phase "involved issues of jurisdiction and venue going to all issues in the case." *Metric* at *27. Here, Granite has provided the Court with evidence of its fees—including its un-redacted invoices for all fees it seeks to recover—and descriptions of the methodology employed in apportioning such fees. This information is more than sufficient to allow the Court to award attorneys' fees related to the Escrow Claim and to apportion such fees if it sees fit to do so.

### C.    Granite Has Reasonably Apportioned its Discovery-Related Fees

Granite has apportioned the fees it incurred in responding to Granite's discovery requests to reflect the work performed on the Escrow Claim.

1.      Granite Properly Apportioned its Discovery-Related Fees

Alberta served its Interrogatories and Requests for Production to Granite on December 11, 2009.  *See* Exhibit G.  A good portion of these requests relate to the Escrow Claim or the condition of the property, which Alberta made a part of the Escrow Claim.  *Id.*  Granite served its answers and responses to these discovery requests on January 11, 2010, and produced documents on February 22, 2010.  To ensure an adequate and accurate response to the expansive requests served by Alberta, Granite reviewed voluminous records and electronically stored information, culled from multiple custodians, in its efforts to identify potentially responsive and privileged material.  Granite incurred significant expenses in the process.[3]

Alberta attacks Granite's discovery-related fees by stating that "little—if any—document discovery was necessary after February 9, 2010 on the Escrow Claim," because "[t]he Court's denial of summary judgment significantly narrowed the issues related to the Escrow Claim."  *See* Br. in Opp. at p. 7.  Alberta's statements belie an important misunderstanding of the effect of the Court's denial of Alberta's Motion for Partial Summary Judgment.  In denying summary judgment, the Court found that disputed factual issues remained "as to whether the 2009 Certificate was 'materially and adversely modified' from the required form."  *See* Order at p. 12 (Docket # 107).  Accordingly, the Court found that Alberta was not entitled to judgment as a matter of law.  The Court made no binding determinations as to the viability of Alberta's factual defenses, the legal theories available to Alberta going forward, or the relevance of any evidence supporting either parties' claims.  In other words, although Alberta may have understood the

---

[3] Additional details about the document-review process are provided in Granite's Motion and Supplemental Motion, the addenda thereto, and the invoices for February and March 2010, attached as Exhibit A to Granite's Motion.

Court's Order to have narrowed certain issues, the Order itself had no such effect, leaving Alberta free to seek discovery and to defend against the Escrow Claim as it saw fit.

Moreover, nothing relieved Granite of its obligation to respond to Alberta's discovery, including the obligation to produce documents responsive to Alberta's discovery requests. This obligation was unaffected by the Court's denial of summary judgment, and Alberta cannot assert after the fact that its discovery requests were retroactively narrowed to apply only to claims other than the Escrow Claim.

Alberta further attacks Granite's discovery related fees in two ways. First, Alberta argues Fulbright overstaffed the Document Review Team. Second, Alberta states that a 50% reduction in fees is arbitrary and "results in an excessive fee in relation to the small number of documents relevant to the Escrow Claim." See Br. in Opp. at p. 9.

With respect to staffing for document review, by distributing document review tasks to several junior attorneys, Granite's counsel was able to ensure as speedy a document production as possible. At the same time, this distribution of tasks significantly reduced the hourly rate that Granite's counsel would have otherwise incurred in reviewing documents. In support of its criticism, Alberta points to an excerpt from an invoice (copied on page 8 of the Brief in Opposition), but fails to point out that this excerpt does not reflect any of the reductions made by Granite's counsel to the discovery-related fees.

Granite's 50% reduction of its discovery-related fees is an acceptable method of segregating fees associated with a prevailing claim from those associated with non-prevailing claims. Colorado law controls the proper segregation of attorney fees among prevailing and non-prevailing claims. *Combs v. Shelter Mut. Ins. Co.*, 551 F.3d 991, 1001 (10th Cir. 2008); *see also*

*Southwest Stainless, L.P. v. Sappington*, 2010 U.S. Dist. LEXIS 36211, *20 (applying the forum state's law to apportionment of fees in a diversity case).  Under Colorado law, "attorney fees must be carefully reviewed and allocated to avoid awarding fees for work performed on overlapping claims." *Haynes v. City of Gunnison*, 214 F. Supp. 2d 1119, 1122 (D. Colo. 2002). That said, while "[i]nterrelationship of claims or defenses may present a problem of proof for the party" seeking to recover fees, "such factor alone will not suffice to deny an award and deprive the prevailing party of an opportunity to establish a reasonable proration of attorney fees." *Alessi v.Hogue*, 689 P.2d 649, 650 (Colo. App. 1984).  When contemporaneous billing records do not distinguish time spent for various claims, the Colorado Supreme Court has accepted after-the-fact segregation based on attorney estimates of time spent on a claim coupled with complete billing records and testimony regarding the methodology used to reach such an estimate.  *See American Water Development, Inc. v. City of Alamosa*, 874 P.2d 352, 384 (Colo. 1994).  Granite has provided such estimates and testimony, and has explained its methodology in arriving at the 50% reduction of fees in its Motion, Supplemental Motion, and by affidavits attached thereto. *See e.g.*, Exhibit B to Granite's Motion (Trahan Affidavit), at ¶¶ 19-21.[4]

2.     Granite is Entitled to its Deposition-Related Fees

Alberta inaccurately claims that certain depositions did not relate to the Escrow Claims. For example, Alberta alleges that the depositions of Michael Krier and Angela Kralovec touched on the Escrow Claim only in passing, and in support notes that the word "escrow" was used only sparingly.  *See* Br. in Opp. at p. 10-11.  This selective approach ignores the fact that a good

---

[4]  Alberta argues in its Brief in Opposition, at p. 9, that Granite failed to reduce certain discovery related fees by 50%.  Granite acknowledges it failed to reduce certain discovery related time, primarily for its core team members, by 50%.  The amount in controversy is $34,000, not $40,000 (Alberta failed to account for Granite's fee discount); applying a 50% reduction to these fees would reduce Granite's requested fees by $17,000 (50% of $34,000).

portion of their depositions related to the Escrow Claim and that many other words related to the Escrow Claim were used numerous times during these depositions, including such words as "certificate," "Cinema," "estoppel," "form," "DCC," "Qual Dent," and "Chicos."  Alberta also fails to note that it used several other estoppel certificates (that is, certificates for tenants other than the Cinema) in these depositions.  For Mr. Krier's deposition, Alberta's counsel questioned him extensively about estoppel certificates from the following tenants, which also were attached as exhibits to the deposition:  American Family Insurance; Family Life Counseling; Main Street Dental; QualDent LLC; and, Chico's FAS, Inc.  To suggest Mr. Krier's deposition was not focused on the escrow dispute is not accurate.  Questions by Alberta's counsel relating to the true-up dispute, which Alberta dismissed just before trial of the Escrow Claim, are limited to pages 75 to 96 of Mr. Krier's deposition, a complete copy of which is attached to this reply as Exhibit H.  So, of the 106 pages of Mr. Krier's deposition, only 21 pages relate to the true-up dispute, or about 20%.  Alberta's counsel did not begin questioning Angela Kralovec about the true-up issue until page 57 of her deposition, attached as Exhibit I.  All of the preceding questions related to the Escrow Claim.  Questions about the true-up claims continue from page 57 to page 95, when they shift to other issues relating primarily to the Escrow Claim.  So, 38 of the 153 pages of Ms. Kralovec's deposition relate to the true-up dispute, or about 25%.  If the Court were to discount Granite's attorneys' fee claim by 25% of the fees associated with defending Mr. Krier's and Ms. Kralovec's depositions, the fees discount would amount to approximately $1,203.75.  The total fees charged for defending the two depositions was $4,815.  *See* Exhibit A.6 to Granite's Motion, p. 3, Paul Trahan's time entry for January 15, 2010.

Similarly, Alberta questions how Granite's deposition of Alberta's maintenance technician, Marko Blinder, or controller, Steven Zezulak, could relate to the Escrow Claim.  At the time of the depositions, in late 2009 and early 2010, the scope of the Escrow Claim itself, along with the knowledge that each deposition witness had of pertinent facts, was unclear. Eliciting each witness's testimony to determine the extent and scope of knowledge was a necessary and reasonable part of litigating the Escrow Claim.  Moreover,  by insisting that the Cinema's cracked foundation was not the result of settlement at the Southlands Town Center generally and, consequently, was the Cinema's responsibility, Alberta made the condition of the property an issue.  Mr. Blinder worked in maintenance for the Southlands Town Center and was familiar with issues relating to the condition of the property.  His deposition was relevant and necessary for the Escrow Claim, and the time entry about which Alberta complains regarding Mr. Blinder's deposition totals $306.00.  *See* Exhibit A.5 to Granite's Motion at p. 11 (Paul Trahan's time entry for December 7, 2009).   Mr. Zezulak was the chief financial person for Alberta and its related entities, identified by Alberta in its disclosures, with significant history on the project, and his deposition was necessary for general background.  Granite acknowledges that most of the information ultimately gathered from Mr. Zezulak in his deposition related to the true-up, but Granite would have needed to take his deposition in any event.

## D.      Granite Does Not Seek to Recover Fees Related to the True-up Claim

Granite does not seek to recover fees and expenses incurred in litigating the True-Up Claim, as Alberta claims.  Prior to August 2009, Granite went through and redacted all descriptions of work unrelated to the Escrow Claim and adjusted time downward accordingly. From August 2009 through trial, Granite's counsel maintained separate invoices for each claim

at issue.   Consequently, the descriptions for work and related fees presented to the Court in support of its Motion only related to the Escrow Claim.   And, all narratives relating to the Escrow Claims are provided in their entirety, without redaction, in order to provide this Court with as much information as possible about the nature of the work performed.   Alberta takes issue with fewer than a half-dozen narratives, alleging they relate to the True-Up Claim but not the Escrow Claim.   Among the disputed entries are Paul Trahan and Jeff Dykes' review of Alberta's Answer and Counterclaims.   Apparently, Alberta believes that Granite's counsel's review of responsive pleadings is unrelated to the Escrow Claim.   Simply because Alberta's Answer asserted a Counterclaim for true-up expenses does not mean that it was unreasonable for Granite's counsel to review Alberta's responsive pleadings in litigating its Escrow Claim.   In support of this attack on Granite's claim, Alberta cites <u>Exhibit A.1</u> to Granite's Motion, at pages 6-7, <u>Exhibit A.9</u>, at pages 5, 10-11, and <u>Exhibit A.10</u>, at page 2.   In total, the amount of fees reflected in these time entries, after the 15% discount, is approximately $12,000.00.

Additionally, Alberta's assertion that Granite is not entitled to *any* of its attorneys' fees incurred while both the True-Up Claim and Escrow Claim were at issue (i.e., between May 11, 2009 and February 14, 2011) is unsupported by the law and the evidence.   Colorado law requires that "attorney fees must be carefully reviewed and allocated to avoid awarding fees for work performed on overlapping claims."   *Haynes v. City of Gunnison*, 214 F. Supp. 2d 1119, 1122 (D. Colo. 2002).   Such allocation is precisely what Granite has done here.   Prevailing parties should "identify any particular entries that relate[] to" the relevant claim.   *Id.* at 1123.   An identification of particular entries related to the Escrow Claim is what Granite has done by redacting unrelated time entries, including entries describing work performed on the True-Up Claim.

**E.** **Granite's Attorneys' Hourly Rates are Reasonable**

As a preliminary matter, Alberta's discussion of Granite's counsels' hourly rates fails to account for the across-the-board 15% discount on all fees incurred by Granite, and fails to use reasonable comparators.  With a 15% discount, the attorneys' hourly rates of Granite's counsel fall within the range of rates described in The Colorado Bar Association 2008 Economics of Law Practice Survey ("2008 Survey").  *See* Exhibits C-2 and C-1 to Granite's Motion.  For example, the $650 rate charged by Mr. Dykes drops to $552.50 when a 15% discount is applied; this rate is less than the $595.00 rate charged by the 95th percentile of attorneys designated as "Of Counsel." *See* Br. in Opp. at p. 13.  Additionally, Mr. Trahan's rate of $575.00 drops to $488.75 after a 15% discount.  Alberta quotes $390.00 as the 95th percentile rate charged by attorneys with commensurate years of practice, but in so doing fails to account for Mr. Trahan's position as partner and for the size of the firm in which he works. The chart on page 28 of the 2008 Survey provides a better basis for comparison because it accounts for the size of the firm and an attorney's position within the firm.  Mr. Trahan's effective hourly rate of $488.75 is within the range of the 75th–95th percentile for partners in firms with thirty or more partners.

 In further criticism of Granite's counsels' rates, Alberta attempts to characterize the Escrow Claim as part of a narrow, simple dispute presenting neither novel nor difficult questions of law.  *See* Br. in Opp. at p. 12 (*citing Mau v. E.P.H. Corp.*, 638 P.2d 777, 779 (Colo. 1981). The construction and interpretation of the FPSA and its amendments presented both novel and complex questions of law.  The Order denying Alberta's Motion for Partial Summary Judgment provides evidence of some of the difficult questions of construction presented by the Escrow

Claim.  *See* Docket # 107.  Alberta's facile characterization of the issue is inaccurate.  As explained above, Alberta also went to great lengths to complicate the dispute.

Additionally, the novelty and complexity of legal issues alone form an insufficient basis for determining the reasonableness of hourly rates.  Among other factors, the Court should consider the nature and length of the professional relationship between Granite and its counsel.  *See Mau*, 638 P.2d at 779 (*citing* enumerated factors of reasonableness in C.R.C.P. DR 2-106(b), which is now Colo. RPC 1.5).  Here, counsel for Granite was involved in negotiating the FPSA and relevant provisions and documents at issue. It stands to reason that clients litigating claims related to a contract would pay higher hourly rates to obtain counsel from the same firm that prepared the contract, with transactional lawyers possessing an intimate understanding and knowledge of the very documents and issues involved the litigation.

F.   **Granite Seeks Only its Reasonable and Actual Attorneys' Fees**

   1.   Alberta is Well-Aware of the Relationship Between Granite Southlands Town Center, LLC and BlackRock Realty Advisors, Inc.

Alberta objects that Granite has not provided evidence that it actually incurred legal expenses in litigating the Escrow Claim, citing the fact that Granite's counsel's invoices are addressed to another entity, BlackRock Realty Advisors, Inc.  Prior to this litigation, the parties hereto negotiated more than a dozen iterations of the FPSA.  BlackRock Realty Advisors, Inc. was involved in each of these iterations and Alberta knows full well the nature of the relationship between that entity and the Plaintiff.  BlackRock Realty has always signed documents as the "investment manager" of Granite.  In fact, this is reflected in the signature block to the Escrow Agreement on which Granite's fee request is based.  There can be no doubt that Alberta is aware that invoices sent to BlackRock relate to fees incurred by Granite in this dispute.

Nonetheless, attached hereto is an Affidavit of Angela Kralovec that makes clear the relationship of the parties and establishes that Granite incurred the legal fees it seeks to recover here. *See* Exhibit J. The legal fees and expenses reflected in the invoices were incurred and paid by Granite. *Id.* As investment manager, BlackRock Realty received all of these legal invoices, reviewed and approved them as appropriate expenses of Granite, and caused Granite's Parent to write checks in payment of the invoices. *Id.* The Southlands Legal Invoices then were charged to Granite as an expense of the Southlands Town Center. So, although the invoices are directed to BlackRock Realty, as with other expenses for the Southlands Town Center, the Southlands Legal Invoices were paid by Granite's Parent then charged to Granite. *Id.*

2.     Future Fees

At the time of preparing its Motion, Granite estimated its future fees related to the preparation and presentation of the Motion to be $12,000. *See* Exhibit E at ¶ 4. At present, Granite has a more accurate picture of the extent of such fees. *Id.* Between September 19, 2011 and October 31, 2011, Granite incurred more than the $12,000 it estimated as future fees. These amounts have been actually incurred and billed to the client. *Id.* Of these additional fees, Granite seeks only to recover the $12,000 originally estimated in its Motion.

G.     **Granite May Recover Fees Expended to Prepare and Present its Fee Request**

An attorneys' fee award may include fees expended to prepare and present the motion for attorneys' fees ("fees on fees"). *See Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1205 (10th Cir. 1986). The prevailing party may recover fees on fees for all aspects of the fee litigation, including any successful appeal on the question of fees. *See* Moore's § 54.190[2][a][iii]; *see*

*also Mares* at 1205 (noting that party should have been compensated for preparing supporting affidavits as well as the fee application itself).

      **H.**    **In-House Data Management Fees are Recoverable and Attributable to the Escrow Claim**

In-house data management fees are among the types of expenses that are normally itemized and billed in addition to the hourly rate, but are not taxable as part of a Bill of Costs under 28 U.S.C. §1920. Such expenses may also be included in fee allowances. *See* Fed. R. Civ. P. 54(d)(2), *Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir. 1983) *overruled in part on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 725 (1987). Granite maintained the data management structure continuously. The fact that Granite did not seek to recover its data management fees for September, October, and November 2010 should not be interpreted to mean that Granite ceased storage of this information in its data management system, as Alberta claims. Instead, certain fees incurred for data management were billed to Granite in invoices not otherwise submitted to the Court; without such documentation before the Court to substantiate that the data management fees were actually incurred and billed, Granite chose only to seek recovery of those fees indicated in paid invoices.

      **I.**    **Granite is Entitled to Recover All Reasonable Fees**

Granite is entitled to recover the full amount of its reasonable fees and expenses incurred in litigating the Escrow Claim. Both Alberta and Granite knew of the risks involved in litigating the Escrow Claim through trial, including the risk that the prevailing party would incur significant legal fees and expenses. Alberta's counsel's self-serving affidavit testimony to the contrary, which posits that Granite's fees should not exceed $75,000, is neither proper nor credible evidence of the reasonableness of Granite's fees.

It is worthy to note that Lindquist & Vennum, the firm which represented Alberta prior to its current firm, filed a $285,851.66 lien[5] in this action for its *unpaid* fees through August 1, 2010.  This is in addition to the $23,441.15 lien for *unpaid* fees filed by Starrs Mihm LLP, the firm that represented Alberta before Lindquist & Vennum.  This represents over $300,000 in *unpaid* fees incurred by Alberta before its current firm took over the case with over six months to go before trial.  Granite assumes there were additional *paid* fees, and this does not include the fees charged by Alberta's current firm, which tried the case.  These figures demonstrate that this was not the simple case Alberta's counsel makes it out to be.

### III.      CONCLUSION

Granite respectfully requests that the Court grant its Motion for Attorneys' Fees and Expenses and Supplemental Motion for Attorneys' Fees and Expenses in all respects and grant all other and further relief to which Granite is entitled.

---

[5]  Which it might have recovered had Alberta prevailed on the Escrow Claim.

Respectfully submitted,

*/s/ Paul Trahan*

OSBORNE J. DYKES, III
BENJAMIN M. VETTER
FULBRIGHT & JAWORSKI L.L.P.
370 Seventeenth Street, Suite 2150
Denver, CO  80202
(303) 801-2700 – Telephone
(303) 801-2777 – Facsimile
jdykes@fulbright.com
bvetter@fulbright.com

PAUL TRAHAN
FULBRIGHT & JAWORSKI L.L.P.
600 Congress Avenue, Suite 2400
Austin, TX  78701
(512) 474-5201 – Telephone
(512) 536-4598 – Facsimile
ptrahan@fulbright.com
**COUNSEL FOR PLAINTIFF**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on the 16th day of November 2011, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system which will send notification of such

filing to attorneys for plaintiffs at the following e-mail addresses:

Stephen L. Waters                         swaters@rwolaw.com
Kimberly A. Bruetsch                      kbruetsch@rwolaw.com
ROBINSON WATERS & O'DORISIO, P.C.
1099 18th Street, Suite 2600
Denver, CO 80202
*Attorneys for Land Title Guarantee*

Stuart N. Bennett                         sbennett@joneskeller.com
Steven R. Kabler                          skabler@joneskeller.com
JONES & KELLER, P.C.
1999 Broadway, Suite 3150
Denver, CO 80202
*Attorneys for Alberta Town Center, LLC*

*/s/ Paul Trahan*
Paul Trahan