# Exhibit A

# FIFTEENTH AMENDMENT

# TO

# AMENDMENT AND AGREEMENT

# AND

# TERMINATION AGREEMENT

This FIFTEENTH AMENDMENT TO AMENDMENT AND AGREEMENT AND TERMINATION AGREEMENT (the "**Amendment**") is made and entered into effective as of December 8, 2008, by and among ALBERTA TOWN CENTER, LLC, a Colorado limited liability company ("**Alberta**"), BLACKROCK GRANITE PROPERTY FUND, L.P., a Delaware limited partnership ("**Granite**"), SOUTHLANDS POWER CENTER, LLC, a Delaware limited liability company ("**Southlands Provost**"), SOUTHLANDS TOWER LLC, a Delaware limited liability company ("**Southlands Tower**"), BANK OF AMERICA, N.A., a national banking association, successor by merger to LaSalle Bank National Association, a national banking association, as agent ("**Agent**") for itself and the other banks party to the Loan Agreement (as hereinafter defined) ("**Lender**"), Donald G. Provost, in individual residing in the State of Colorado ("**D. Provost**"), Peter M. Cudlip, an individual residing in the State of Colorado ("**Cudlip**"), and Allan G. Provost, an individual residing in the State of Colorado ("**A. Provost**"). Alberta, Granite, Southlands Provost, and Southlands Tower are sometimes collectively referred to herein as the "**Property Parties**." Alberta, Granite, and Southlands Provost are sometimes collectively referred to herein as the "**FPSA Parties**." D. Provost, Cudlip, and A. Provost are sometimes collectively referred to herein as the "**Guarantors**." Alberta, Granite, Southlands Provost, Southlands Tower, Agent, Lender, D. Provost, Cudlip, and A. Provost are sometimes collectively referred to herein as the "**Parties**".

# RECITALS

A. Alberta and Granite are parties to that certain Forward Purchase and Sale Agreement and Escrow Instructions dated as of September 29, 2005, as amended by that certain Amendment and Agreement dated as of April 30, 2007, and that certain First Amendment to Amendment and Agreement effective as of June 1, 2007, and that certain Second Amendment to Amendment and Agreement effective as of June 29, 2007, and that certain Third Amendment to Amendment and Agreement effective as of July 24, 2007, and that certain Fourth Amendment to Amendment and Agreement and Termination Agreement effective as of August 31, 2007, and that certain Fifth Amendment to Amendment and Agreement and Termination Agreement effective as of December 13, 2007, and that certain Sixth Amendment to Amendment and Agreement and Termination Agreement effective as of February 15, 2008, and that certain Seventh Amendment to Amendment and Agreement and Termination Agreement effective as of February 22, 2008, and that certain Eighth Amendment to Amendment and Agreement and Termination Agreement effective as of February 28, 2008, and that certain Ninth Amendment to Amendment and Agreement and Termination Agreement effective as of March 14, 2008, and that certain Tenth Amendment to Amendment and Agreement and Termination Agreement

Confidential                    Plaintiff Trial Exhibit No. 17 - 001                    BR0007472

effective as of March 27, 2008, and that certain Eleventh Amendment to Amendment and Agreement and Termination Agreement effective as of April 9, 2008, and that certain Twelfth Amendment to Amendment and Agreement and Termination Agreement effective as of April 25, 2008, and that certain Thirteenth Amendment to Amendment and Agreement and Termination Agreement effective as of May 8, 2009, as amended by that certain Fourteenth Amendment to Amendment and Agreement and Termination Agreement effective as of May 14, 2008 (collectively, the "**Town Center FPSA**"), wherein, among other things, Alberta has agreed to construct and sell and Granite has agreed to purchase the Project (as defined in the Town Center FPSA) subject to the terms and conditions contained therein.

B. Southlands Provost and Granite were parties to that certain Forward Purchase and Sale Agreement and Escrow Instructions (VR-2 and VR-3) dated as of January 25, 2006, as amended by that certain Fourth Amendment to Amendment and Agreement and Termination Agreement effective as of August 31, 2007, as amended by that certain Amendment effective as of January 31, 2008 (collectively, the "**Terminated VR-2/3 FPSA**"), wherein, among other things, Southlands Provost agreed to construct and sell and Granite agreed to purchase the VR-2/3 Tracts subject to the terms and conditions contained therein. Granite terminated the Terminated VR-2/3 FPSA pursuant to Granite's rights in the Terminated VR-2/3 FPSA by letter dated September 26, 2008.

C. Alberta, Granite, and Agent are parties to that certain Tri-Party Agreement dated September 29, 2005, as amended by that certain Amendment to Tri-Party Agreement dated May 14, 2008 (collectively, the "**Tri-Party Agreement**") wherein, among other things, Granite consented to Alberta's collateral assignment of all of Alberta's right, title, and interest in and to the Town Center FPSA to Agent.

D. Lender and Alberta are parties to a Construction Loan Agreement dated as of September 29, 2005, as amended by a First Loan Modification Agreement between Agent and Alberta dated as of October 31, 2007, and a Second Loan Modification Agreement between Agent and Alberta dated as of January 31, 2008, and a Third Loan Modification Agreement between Agent and Alberta dated as of May 14, 2008 (the Construction Loan Agreement, as so amended, is referred to herein as the "**Loan Agreement**"), pursuant to which Lender agreed to extend to Alberta a loan in the maximum principal amount of $158,807,879.00 (the "**Loan**"), upon the terms and conditions set forth in the Loan Agreement. The term "**Loan Documents**" shall mean all documents entered into in connection with the Loan.

E. On the date of this Agreement, Alberta has agreed to transfer the Property (as defined in the Town Center FPSA) on the Closing Date to Granite Southlands Town Center LLC, a Delaware limited liability company and wholly-owned subsidiary of Granite ("**Granite Sub**"), pursuant to the terms of the Town Center FPSA (as amended by this Amendment).

F. The Parties wish to evidence certain agreements of the Parties in connection therewith.

Confidential     Plaintiff Trial Exhibit No. 17 - 002     BR0007473

NOW THEREFORE, for and in consideration of the foregoing recitals and the mutual agreements set forth herein, and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. The Recitals to this Amendment are incorporated herein by reference. Words and phrases having defined meanings in the Town Center FPSA shall have the same meaning in this Amendment unless expressly modified in this Amendment.

2. The Town Center FPSA is hereby amended as follows:

    (a) Section 4.1 of the Town Center FPSA is hereby amended by deleting it in its entirety and inserting in lieu thereof the following:

    "4.1  **Purchase Price.**

    Buyer agrees to pay, and Seller agrees to accept, as consideration for the conveyance of the Property to Buyer, an amount in U.S. Dollars equal to the sum of (1) Two Million One Hundred Fifty Thousand and No/100 ($2,150,000.00) ("**Excess Payment**"), plus (2) the Closing Repayment Amount (the sum of (1) and (2) being the "**Purchase Price**"). At Closing, Buyer shall deliver to Escrow Holder the Purchase Price less the Earnest Money Deposit (the Purchase Price, as reduced by the Earnest Money Deposit, is referred to herein as the "**Closing Funds**"). The term "**Closing Repayment Amount**" shall mean the lesser of (a) the amount required to repay in full the Loan (including, without limitation, principal, interest and other expenses owed by Seller under the Loan Documents as of the Closing Date), and (b) One Hundred Sixty Million and No/100 Dollars ($160,000,000.00). The Earnest Money Deposit and Closing Funds shall be applied to the Purchase Price at Closing."

    (b) Section 8.1(k)(i) of the Town Center FPSA is amended by adding the following sentence to the end of that Section:

    "Any landlord estoppel delivered pursuant to and in accordance with this Section to remedy the deficiency between the estoppels obtained and the requirement that Seller cause the delivery of Approved Tenant Estoppel Certificates from tenants occupying at least 75% of the rentable square feet in the Buildings shall be deemed an Approved Tenant Estoppel Certificate for purposes of determining whether Seller has delivered the Required Estoppels entitling Seller to disbursement of the Estoppel Holdback."

    (c) Section 8.1(k)(ii) of the Town Center FPSA is amended by deleting it in its entirety and inserting in lieu thereof the following:

    "Buyer shall be entitled to object to any Tenant Estoppel Certificate if such Tenant Estoppel Certificate (i) is not in the form required under paragraph 7.2(i) or has been materially and adversely modified from that form, or (ii) indicates the continuing existence of an actual material default of the landlord under the applicable Lease, or (iii) correctly indicates that the Lease includes terms and

Confidential          Plaintiff Trial Exhibit No. 17 - 003          BR0007474

provisions that are inconsistent with the applicable lease delivered to Buyer, by delivering a written notice of objections ("**Buyer Notice of Objections**") to Seller on or before the date that is 2 business days prior to the scheduled Closing Date; provided, however, Buyer may not object to (i) any Tenant Estoppel Certificate solely because the tenant refuses to make the certification in paragraph 11 of the form of Tenant Estoppel Certificate attached hereto as Exhibit H, or (ii) any Tenant Estoppel Certificate delivered to Buyer on or after the date that is thirty (30) days before the Closing Date for a tenant that is substantially similar to the Tenant Estoppel Certificate for that tenant executed in or about May 2008 and previously delivered to Buyer. Further, in no event shall the existence of a default by a tenant serve, by itself, as the basis to disqualify a Tenant Estoppel Certificate from being an Approved Tenant Estoppel Certificate, as provided below. Any Tenant Estoppel Certificate not timely and appropriately objected to by Buyer shall be an "**Approved Tenant Estoppel Certificate**;" provided, however, that any Tenant Estoppel Certificate which is not dated on or after the date that is thirty (30) days before the Closing Date shall automatically be deemed not to be an Approved Tenant Estoppel Certificate without any action required by Buyer to object to such Tenant Estoppel Certificate. If, prior to the Closing Date, Seller fails to deliver the Required Estoppels, (x) Seller shall be obligated to continue to use commercially reasonable efforts to obtain the Required Estoppels after the Closing, and (y) Escrow Holder shall retain Six Hundred Fifty Thousand and No/100 Dollars ($650,000.00) of the Excess Funds at Closing ("**Estoppel Holdback**") and shall invest the Estoppel Holdback in accordance with joint investment instructions delivered to Escrow Holder by Buyer and Seller. All interest on the Estoppel Holdback held by Escrow Holder shall accrue for the benefit of the party which ultimately receives the Estoppel Holdback. Upon Seller's delivery of the Required Estoppels to Buyer, Buyer shall instruct Escrow Holder by written notice to Escrow Holder to deliver the Estoppel Holdback to Seller; provided, however, that (i) upon Seller's delivery of the Required Estoppels to Buyer, if the AAD (as defined in Section 10 of the Fifteenth Amendment) has not been delivered to Buyer as of the date of Seller's delivery of the Required Estoppels, then $50,000 of the Estoppel Holdback plus any accrued interest on such amount (such amount of the Estoppel Holdback plus any accrued interest, if and when held back pursuant to this (i), is herein referred to as the "**AAD Holdback**") and the release of the AAD Holdback shall be governed by Section 10 of the Fifteenth Amendment); and (ii) should Seller fail to deliver the Required Estoppels to Buyer on or before 5:00 P.M. (EDT) on March 1, 2009, Buyer and Seller agree Escrow Holder shall deliver the entire Estoppel Holdback to Buyer upon written notice to Escrow Holder from Buyer, and the amount of the Estoppel Holdback shall be deemed to have been forfeited by Seller. The provisions of this Section 8.1(k)(ii) shall survive the Closing."

(d) The last sentence of Section 10.3 of the Town Center FPSA is hereby amended by deleting it in its entirety and inserting in lieu thereof the following:

"Without limiting the generality of the foregoing, it shall be a condition precedent to Buyer's obligation to proceed with the Closing and purchase the Property that

60140212.5 - 4 -

Buyer receive from Seller such releases and other instruments required in order to convey title to the Property free of any and all liens and encumbrances affecting the Property which secure an obligation to pay money (other than installments of real estate taxes or assessments not delinquent as of the Closing).

Buyer and Seller agree that Seller may leave the items specified in subparagraphs (g), (h), and (j) in the property manager's office at the Property on or prior to Closing, which shall be deemed delivery of such items."

(e) Section 10.9 of the Town Center FPSA is hereby amended by deleting "8:00" and inserting in lieu thereof "11:00".

(f) The fourth sentence of Section 14.3 of the Town Center FPSA is hereby amended by deleting "or Seller" therefrom.

(g) The second sentence of Section 14.18 of the Agreement is hereby amended by deleting "$160,000,000" and inserting in lieu thereof "the Purchase Price".

3. Sections 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, and 17 of the Fourth Amendment to Amendment and Agreement and Termination Agreement are hereby amended by deleting them in their entirety.

4. Section 5 of the Eighth Amendment to Amendment and Agreement and Termination Agreement is hereby amended by deleting it in its entirety.

5. Section 10 of the Fourteenth Amendment to Amendment and Agreement and Termination Agreement is hereby amended by deleting it in its entirety.

6. Closing Documents. Granite Sub and Alberta agree to execute the documents attached hereto as Exhibit A and to deliver the same to Escrow Holder as a part of the closing deliveries required at Closing.

7. Escrow Deposit. Alberta, Granite, and Escrow Holder are parties to that certain Escrow Agreement dated as of May 14, 2008, (the "**TI Escrow Agreement**"). Granite and Alberta agree that any amounts remaining in the Escrow (as defined in the TI Escrow Agreement) at Closing shall be the property of Granite Sub and shall, at Granite Sub's election, either be (i) credited against the amount of the Closing Funds due from Granite Sub at Closing (in which case the amounts remaining in the Escrow shall be paid to Seller at Closing), or (ii) delivered by Escrow Holder to Granite Sub at Closing.

8. Management. At Closing that certain Management Agreement by and between Seller and Southlands Shopping Center Management, LLC ("**SSCM**") dated as of an unnamed date in 2007 ("**Management Agreement**") shall be assumed by Granite Sub as of the Closing Date but only for liabilities arising after Closing. In addition, at the Closing, Seller will cause SSCM to execute and deliver to Escrow Holder an amendment to the Management Agreement in the form of Exhibit B to this Amendment, which, among other things, implements the following terms and conditions:

Confidential          Plaintiff Trial Exhibit No. 17 - 005          BR0007476

    (a)    the term of the Management Agreement shall terminate on or before June 30, 2009, provided that Granite Sub may terminate the Management Agreement earlier upon thirty (30) days written notice or immediately upon the transfer of the Property; and

    (b)    that the total fees owed SSCM by Granite Sub under the Management Agreement shall be $25,000.00 per month, prorated for any partial month.

9. Release. The Parties agree to the execute the Release and Termination Agreement attached hereto as Exhibit C and to deliver the same to Escrow Holder prior to the Closing. Such Release will be released by Escrow Holder to the Parties only if and when the Closing occurs.

10. Assignment and Assumption of Declarant.

    (a)    Alberta and Guarantors agree, at their sole cost and expense, to use commercially reasonable efforts to cause Southlands Colorado, LLC, a Delaware limited liability company ("**SCLLC**"), to execute the Assignment and Assumption of Declarant in the form attached hereto as Exhibit D (the "**AAD**") prior to Closing. If, notwithstanding such commercially reasonable efforts by Alberta and Guarantors, SCLLC does not execute the AAD prior to Closing, Alberta and Guarantors shall, at their sole cost and expense, continue to use commercially reasonable efforts to cause SCLLC to execute the AAD after Closing. Alberta and Guarantors shall copy Buyer on all correspondences to SCLLC regarding SCLLC's execution of the AAD. If Alberta and Guarantors have not delivered the AAD signed by SCLLC to Buyer on or before 5:00 P.M. (EDT) on March 1, 2009, Buyer and Seller agree Escrow Holder shall deliver the AAD Holdback (and any interest accrued thereon) to Buyer upon written notice to Escrow Holder from Buyer, and the amount of the AAD Holdback shall be deemed to have been forfeited by Seller. The provisions of this Section 10(a) shall survive the Closing.

    (b)    In addition to the foregoing, Alberta shall execute the Assignment and Assumption of Declarant in the form attached hereto as Exhibit E and deliver the same to Escrow Holder as a part of the closing deliveries for Closing.

11. Property Expense Proration Reconciliation. Notwithstanding anything in the Town Center FPSA to the contrary, Alberta and Granite Sub shall reconcile the proration of Property expenses (including common area expenses) made at Closing for the Property (as defined in the Town Center FPSA) on or before March 31, 2009. This Section 11 will survive the Closing.

12. Counterparts. This Amendment may be executed in separate counterparts. It shall be fully executed when each party has signed and delivered to the other (by mail, overnight delivery, facsimile or e-mail) at least one counterpart, even though no one counterpart contains the signatures of all the Parties to this Amendment.

60140212.5

Confidential    Plaintiff Trial Exhibit No. 17 - 006    BR0007477

13. <u>Ratification</u>. The Parties hereto agree that the FPSAs and Tri-Party as amended or modified by this Amendment are in full force and effect and they reinstate, ratify and affirm the FPSAs and Tri-Party in all respects as so amended and modified.

14. <u>Successors and Assigns</u>. This Amendment and the FPSAs as amended and modified herein shall inure to the benefit of and be binding upon the Parties and their respective successors and permitted assigns. Whenever in this Amendment a reference is made to any entity or party, such references shall be deemed to include a reference to the successors and permitted assigns of such entity or party.

15. <u>Time of the Essence</u>. Time is of the essence with respect to the performance of all obligations under this Amendment and the FPSAs as amended and modified herein.

[Signatures on Following Pages]

60140212.5

- 7 -

[Pages omitted for brevity]

# EXHIBIT C

## RELEASE AND TERMINATION AGREEMENT

See attached.

60140212.5

Exhibit C

Confidential

Plaintiff Trial Exhibit No. 17 - 051

BR0007522

# RELEASE AND TERMINATION AGREEMENT

This Release and Termination Agreement (this "**Agreement**") is made and entered into effective as of this ___ day of December, 2008, by and among ALBERTA TOWN CENTER, LLC, a Colorado limited liability company ("**Alberta**"), BLACKROCK GRANITE PROPERTY FUND, L.P., a Delaware limited partnership ("**Granite**"), GRANITE SOUTHLANDS TOWN CENTER LLC, a Delaware limited liability company ("**Granite Sub**"), SOUTHLANDS POWER CENTER, LLC, a Delaware limited liability company ("**Southlands Provost**"), SOUTHLANDS TOWER LLC, a Delaware limited liability company ("**Southlands Tower**"), BANK OF AMERICA, N.A., a national banking association, successor by merger to LaSalle Bank National Association, a national banking association, as agent ("**Agent**") for itself and the other banks party to the Loan Agreement (as hereinafter defined) (the Agent and the other banks being collectively referred to herein as "**Lender**"), DONALD G. PROVOST, an individual residing in the State of Colorado, ("**D. Provost**"), PETER M. CUDLIP, an individual residing in the State of Colorado ("**Cudlip**"), and ALLAN G. PROVOST, an individual residing in the State of Colorado ("**A. Provost**"). Alberta, Southlands Provost, D. Provost, Cudlip, and A. Provost are sometimes collectively referred to herein as the "**Alberta Parties**". Alberta, Granite, Granite Sub, Southlands Provost, Southlands Tower, Agent, Lender, D. Provost, Cudlip, and A. Provost are sometimes collectively referred to herein as the "**Parties**".

## RECITALS

A.  Alberta and Granite are parties to that certain Forward Purchase and Sale Agreement and Escrow Instructions dated as of September 29, 2005, as amended by that certain Amendment and Agreement dated as of April 30, 2007, and that certain First Amendment to Amendment and Agreement effective as of June 1, 2007, and that certain Second Amendment to Amendment and Agreement effective as of June 29, 2007, and that certain Third Amendment to Amendment and Agreement effective as of July 24, 2007, and that certain Fourth Amendment to Amendment and Agreement and Termination Agreement effective as of August 31, 2007, and that certain Fifth Amendment to Amendment and Agreement and Termination Agreement effective as of December 13, 2007, and that certain Sixth Amendment to Amendment and Agreement and Termination Agreement effective as of February 15, 2008, and that certain Seventh Amendment to Amendment and Agreement and Termination Agreement effective as of February 22, 2008, and that certain Eighth Amendment to Amendment and Agreement and Termination Agreement effective as of February 28, 2008, and that certain Ninth Amendment to Amendment and Agreement and Termination Agreement effective as of March 14, 2008, and that certain Tenth Amendment to Amendment and Agreement and Termination Agreement effective as of March 27, 2008, and that certain Eleventh Amendment to Amendment and Agreement and Termination Agreement effective as of April 9, 2008, and that certain Twelfth Amendment to Amendment and Agreement and Termination Agreement effective as of April 25, 2008, and that certain Thirteenth Amendment to Amendment and Agreement and Termination Agreement effective as of May 8, 2008, and that certain Fourteenth Amendment to Amendment and Agreement and Termination Agreement effective as of May 14, 2008, and that certain Fifteenth Amendment to Amendment and Agreement and Termination Agreement effective as of December 8, 2008 (collectively, the "**Town Center FPSA**"), wherein, among other things, Alberta agreed to construct and sell and Granite agreed to purchase the Project (as defined in the

Confidential        Plaintiff Trial Exhibit No. 17 - 052        BR0007523

Town Center FPSA) subject to the terms and conditions contained therein. Granite, pursuant to Granite's rights under the Town Center FPSA, has designated Granite Sub to take title to the Property (as defined in the Town Center FPSA) upon the closing of the Town Center FPSA.

B. Southlands Provost and Granite were parties to that certain Forward Purchase and Sale Agreement and Escrow Instructions (VR-2 and VR-3) dated as of January 25, 2006, as amended by that certain Fourth Amendment to Amendment and Agreement and Termination Agreement effective as of August 31, 2007, as amended by that certain Amendment effective as of January 31, 2008 (collectively, the "**Terminated VR-2/3 FPSA**"), wherein, among other things, Southlands Provost agreed to construct and sell and Granite agreed to purchase the VR-2/3 Tracts subject to the terms and conditions contained therein. Granite terminated the Terminated VR-2/3 FPSA pursuant to Granite's rights in the Terminated VR-2/3 FPSA by letter dated September 26, 2008.

C. Alberta, Granite, and Agent are parties to that certain Tri-Party Agreement dated September 29, 2005, as amended by that certain Amendment to Tri-Party Agreement dated May 14, 2008 (collectively, the "**Tri-Party Agreement**") wherein Granite consented to Alberta's collateral assignment of all of Alberta's right, title, and interest in and to the Town Center FPSA to Agent.

D. Lender and Alberta are parties to a Construction Loan Agreement dated as of September 29, 2005, as amended by a First Loan Modification Agreement between Agent and Alberta dated as of October 31, 2007, and a Second Loan Modification Agreement between Agent and Alberta dated as of January 31, 2008, and a Third Loan Modification Agreement between Agent and Alberta dated as of May 14, 2008 (the Construction Loan Agreement, as so amended, is referred to herein as the "**Loan Agreement**"), pursuant to which Lender agreed to extend to Alberta a loan in the maximum principal amount of $158,807,879.00 (the "**Loan**"), upon the terms and conditions set forth in the Loan Agreement.

E. On the date of this Agreement, (i) Alberta has transferred the Property (as defined in the Town Center FPSA) to Granite Sub pursuant to and in accordance with the Town Center FPSA, and (ii) Alberta has agreed to use all but $2,150,000.00 of the consideration received by Alberta at the closing of the Town Center FPSA to repay Lender for all sums due Lender under the Loan.

F. In connection with the agreements of the Parties referenced in **Recital E** of this Agreement and the repayment to Lender of the full amount of the Loan, the Parties desire to evidence the termination of the Tri-Party Agreement and to evidence their respective agreements to release certain liabilities of the Parties on the terms set forth below.

NOW THEREFORE, for and in consideration of the foregoing recitals and the mutual agreements set forth herein, and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. **Incorporation**. The Recitals to this Agreement are incorporated herein by reference.

60134876.7  
Release & Termination Agreement

- 2 -

Confidential     Plaintiff Trial Exhibit No. 17 - 053     BR0007524

2. **Termination of Tri-Party Agreement.** Subject to Section 9, Alberta, Granite, and Agent agree that (i) the Tri-Party Agreement shall be terminated and of no further force or effect effective as of the closing of the Town Center FPSA, and (ii) effective as of the closing of the Town Center FPSA, none of the Parties shall have any further rights or obligations to any of the Parties or to any other person or entity pursuant to the Tri-Party Agreement.

3. **Release of Granite Parties.** Subject to Sections 5 and 9 of this Agreement, Agent, Lender, and the Alberta Parties (collectively, the "**Non-Granite Parties**") hereby RELEASE, ACQUIT, and FOREVER DISCHARGE Granite, Granite Sub, BlackRock Granite Property Fund, Inc., BlackRock Granite Property Fund, LLC, Southlands Tower, Metropolitan Life Insurance Company of New York, BlackRock Realty Advisors, Inc., and each of their respective direct or indirect owners, and all of their respective members, partners, shareholders, directors, officers, employees, agents, successors, assigns, attorneys and representatives (collectively, the "**Granite Parties**") from any and all Claims (defined below) that the Non-Granite Parties may have against the Granite Parties arising directly or indirectly, proximately or remotely, out of or relating to (collectively, "**Non-Granite Matters**"):

(i) the Town Center FPSA;

(ii) the Terminated VR-2/3 FPSA;

(iii) the Tri-Party Agreement;

(iv) the Loan;

(v) any written or oral agreement between any of the Non-Granite Parties and any of the Granite Parties, including, but not limited to any alleged joint venture, partnership, or other similar agreement;

(vi) any of the documents, instruments or other transactions, whether or not executed or entered into by any of the Parties, relating to any of the foregoing matters described in subclauses (i)-(v); and

(vii) any costs and expenses relating to any of the matters described in subclauses (i)-(vi), including, without limitation, legal expenses.

Subject to Sections 5 and 9 of this Agreement, the Non-Granite Parties also RELEASE, ACQUIT, and FOREVER DISCHARGE the Property from any and all Claims of the Non-Granite Parties, at law or at equity, whether past or present, now or held, owned or possessed by any of the Non-Granite Parties, whether based upon contract, common law or statutory right, known or unknown with respect to the Non-Granite Matters. Subject to Sections 5 and 9 of this Agreement, the Non-Granite Parties understand and agree that the Non-Granite Parties are correctly described in this Agreement; that each signatory for the Non-Granite Parties is fully authorized and legally competent to execute this Agreement and is a duly authorized representative of the Non-Granite Parties; that the Agreement is fully and forever binding on the Non-Granite Parties and their successors, assigns and owners; that no promise or representation of any kind has been made to the Non-Granite Parties or by anyone acting for the Granite Parties, except as is expressly stated in this Agreement; that the Non-Granite Parties have not assigned,

60134876.7
Release & Termination Agreement

- 3 -

Confidential　　　　Plaintiff Trial Exhibit No. 17 - 054　　　　BR0007525

pledged, or in any manner sold or transferred any right, title, interest or claim that arises out of or relates to the Non-Granite Matters; that the release in this Section 3 is a full, final, and complete release of the Granite Parties with respect to the Non-Granite Matters; that this release may be pleaded by any of the Granite Parties as an absolute and final bar to any or all Claims which may hereafter be filed or prosecuted by any of the Non-Granite Parties or anyone claiming by, through or under any of the Non-Granite Parties in respect of any of the Non-Granite Matters; that there are no Claims pending in any adjudicative proceedings by the Non-Granite Parties against the Granite Parties; that no recovery on account of the Non-Granite Matters may hereafter be had by anyone whom so ever claiming by, through or under the Non-Granite Parties; and that the consideration given for this release is no admission of liability and that none of the Non-Granite Parties nor those claiming by, through, or under any of them will ever claim that it is.

4.  **Release of Alberta Parties**. Subject to Sections 5 and 9 of this Agreement, Granite, Granite Sub, and Southlands Tower hereby RELEASE, ACQUIT, and FOREVER DISCHARGE the Alberta Parties and each of their respective direct or indirect owners, and all of their respective members, partners, shareholders, directors, officers, employees, agents, successors, assigns, attorneys and representatives from any and all Claims against any of them arising directly or indirectly, proximately or remotely out of or relating to (collectively, "**Granite Matters**"):

(i) the Town Center FPSA;

(ii) the Terminated VR-2/3 FPSA;

(iii) the Tri-Party Agreement;

(iv) the Loan;

(v) any written or oral agreement between any of the Alberta Parties and any of Granite, Granite Sub, and Southlands Tower, including, but not limited to any alleged joint venture, partnership, or other similar agreement between any of the Alberta Parties and any of the Granite Parties;

(vi) any of the documents, instruments or other transactions, whether or not executed or entered into by any of the Parties, relating to any of the foregoing matters described in subclauses (i)-(v); and

(vii) any costs and expenses relating to any of the matters described in subclauses (i)-(vi), including, without limitation, legal expenses.

Subject to Sections 5 and 9 of this Agreement, the Granite Parties also RELEASE, ACQUIT, and FOREVER DISCHARGE the Property from any and all Claims of the Granite Parties, at law or at equity, whether past or present, now or held, owned or possessed by any of the Granite Parties, whether based upon contract, common law or statutory right, known or unknown with respect to the Granite Matters. Subject to Sections 5 and 9, the Granite Parties understand and agree that the Granite Parties are correctly described in this Agreement; that each signatory for the Granite Parties is fully authorized and legally competent to execute this Agreement and is a duly

authorized representative of the Granite Parties; that the Agreement is fully and forever binding on the Granite Parties and their successors, assigns and owners; that no promise or representation of any kind has been made to the Granite Parties or by anyone acting for the Alberta Parties, except as is expressly stated in this Agreement; that the Granite Parties have not assigned, pledged, or in any manner sold or transferred any right, title, interest or claim that arises out of or relates to the Granite Matters; that the release in this Section 4 is a full, final, and complete release of the Alberta Parties with respect to the Granite Matters; that this release may be pleaded by any of the Alberta Parties as an absolute and final bar to any or all Claims which may hereafter be filed or prosecuted by any of the Granite Parties or anyone claiming by, through or under any of the Granite Parties in respect of any of the Granite Matters; that there are no Claims pending in any adjudicative proceedings by the Granite Parties against the Alberta Parties; that no recovery on account of the Granite Matters may hereafter be had by anyone whom so ever claiming by, through or under the Granite Parties; and that the consideration given for this release is no admission of liability and that none of the Granite Parties nor those claiming by, through, or under any of them will ever claim that it is.

5. **No Release of Certain Obligations**. Notwithstanding anything to the contrary contained herein, any obligations of the Parties under the following agreements are expressly not released, cancelled, or waived:

(i) any terms or provisions of the Town Center FPSA which are expressly stated to survive the closing of the Town Center FPSA (including, without limitation, any obligation to "true-up" proration items);

(ii) the Special Warranty Deed made by Alberta, as grantor, conveying title to the Property (as defined in the Town Center FPSA) to Granite Sub, as grantee;

(iii) the Certification of Non-Foreign Status made by Alberta in connection with the closing of the Town Center FPSA;

(iv) the Bill of Sale and Assignment by and between Alberta and Granite Sub executed in connection with the closing of the Town Center FPSA;

(v) the Assignment and Assumption of Lease by and between Alberta and Granite Sub executed in connection with the closing of the Town Center FPSA;

(vi) the Assignment and Assumption of Contracts executed in connection with the closing of the Town Center FPSA;

(vii) the landlord estoppel certificates, if any, executed by Alberta pursuant to Section 8.1(k) of the Town Center FPSA and delivered to Granite Sub at or after the closing of the Town Center FPSA;

(viii) the Assignment and Assumption of Declarant by and between Alberta and Granite Sub executed in connection with the closing of the Town Center FPSA; [OPEN]

Confidential                    Plaintiff Trial Exhibit No. 17 - 056                    BR0007527

(ix) the Assignment and Assumption of Declarant by and between Southlands Colorado, LLC, and Granite Sub executed in connection with the closing of the Town Center FPSA; and [OPEN]

(x) that certain Management Agreement dated as of an undated date in 2007 by and between Southlands Shopping Center Management, LLC, and Granite Sub (as successor-in-interest to Alberta), as amended.

6.  **Release of Agent and Lender.** Subject to Section 9 of this Agreement, Granite, Granite Sub, and Southlands Tower (on behalf of themselves and the other Granite Parties) and the Alberta Parties (collectively, the "**Non-Lender Parties**") hereby RELEASE, ACQUIT, and FOREVER DISCHARGE Agent and Lender and each of their respective direct or indirect owners, and all of their respective members, partners, shareholders, directors, officers, employees, agents, successors, assigns, attorneys and representatives (collectively, the "**Lender Parties**") from any and all Claims against any of them arising directly or indirectly, proximately or remotely out of or relating to (collectively, "**Loan Matters**"):

(i) the Town Center FPSA;

(ii) the Terminated VR-2/3 FPSA;

(iii) the Tri-Party Agreement;

(iv) the Loan;

(v) any alleged joint venture, partnership, or other similar agreement among any of the Non-Granite Parties, any of the Granite Parties, and Agent and Lender;

(vi) any of the documents, instruments or other transactions, whether or not executed or entered into by any of the Parties, relating to any of the foregoing matters described in subclauses (i)-(v); and

(vii) any costs and expenses relating to any of the matters described in subclauses (i)-(vi), including, without limitation, legal expenses.

Subject to Section 9, the Non-Lender Parties understand and agree that the Non-Lender Parties are correctly described in this Agreement; that each signatory for the Non-Lender Parties is fully authorized and legally competent to execute this Agreement and is a duly authorized representative of the Non-Lender Parties; that the Agreement is fully and forever binding on the Non-Lender Parties and their successors, assigns and owners; that no promise or representation of any kind has been made to the Non-Lender Parties or by anyone acting for Agent or Lender, except as is expressly stated in this Agreement; that the Non-Lender Parties have not assigned, pledged, or in any manner sold or transferred any right, title, interest or claim that arises out of or relates to the Loan Matters; that the release in this Section 6 is a full, final, and complete release of the Loan Matters; that this release may be pleaded by Agent or Lender Parties as an absolute and final bar to any or all Claims which may hereafter be filed or prosecuted by any of the Non-Lender Parties or anyone claiming by, through or under any of the Non-Lender Parties in respect of any of the Loan Matters; that there are no pending Claims by the Non-Lender Parties against

the Lender Parties; that no recovery on account of the Loan Matters may hereafter be had by anyone whom so ever claiming by, through or under the Non-Lender Parties; and that the consideration given for this release is no admission of liability and that none of the Non-Lender Parties nor those claiming by, through, or under any of them will ever claim that it is.

7. **Definition of Claims**. The term "**Claims**" as used herein means all existing future, known, and unknown claims, demands and causes of action for all existing, future, known and unknown damages and remedies that arise out of or relate to the Non-Granite Matters, the Granite Matters, or the Loan Matters (as applicable) or that have been brought or could have been brought by the Parties in any court, tribunal or forum, in this or any other jurisdiction, in these United States or anywhere else. Under this definition, "**Claims**" includes, but is not limited to, all claims, demands, and causes of action of any nature, whether in contract or in tort, or arising under or by virtue of any statute or regulation, for past, present, future, known, and unknown injuries, property damage, and all other losses and damages of any kind, including, but not limited to, the following: all actual damages, property or economic damage, all penalties of any kind, any tax liabilities or other penalties, damage to business reputation, lost profits or good will, consequential damages, damages ensuing from loss of credit, prejudgment and postjudgment interest, and costs and attorneys' fees. This definition further includes, but is not limited to, all elements of damages, all remedies, and all claims, demands, and causes of action that are now recognized by law or that may be created or recognized in the future by any manner, including, without limitation, by statute, regulation, or judicial decision.

8. **No Joint Venture**. The Alberta Parties acknowledge and agree that no agreement exists amongst any of them with any of the Granite Parties that would cause the Alberta Parties to be construed for any purpose to be a partner, joint venturer, agent, or associate of any of the Granite Parties. The Alberta Parties hereby waive any claim as against any of the Granite Parties that any of the Granite Parties is a partner, joint venturer, agent, or associate of any of the Alberta Parties or any other party affiliated with or owned or controlled directly or indirectly by any of the Alberta Parties pursuant to any agreement, whether written or oral, in existence as of the date hereof or claimed or alleged to be in existence as of the date hereof by any of the Alberta Parties or any other party affiliated with or owned or controlled directly or indirectly by any of the Alberta Parties. Granite, Granite Sub, and Southlands Tower acknowledge and agree that no agreement exists amongst any of them with any of the Alberta Parties that would cause Granite, Granite Sub, or Southlands Tower to be construed for any purpose to be a partner, joint venturer, agent, or associate of any of the Alberta Parties. Granite, Granite Sub, and Southlands Tower hereby waive any claim as against any of the Alberta Parties that Granite, Granite Sub, or Southlands Tower is a partner, joint venturer, agent, or associate of any of the Alberta Parties or any other party affiliated with or owned or controlled directly or indirectly by any of the Alberta Parties pursuant to any agreement, whether written or oral, in existence as of the date hereof or claimed or alleged to be in existence as of the date hereof by Granite, Granite Sub, or Southlands Tower or any of the other Granite Parties.

9. **Conditions to Agent's Consent**. Notwithstanding anything to the contrary contained herein, the consent and agreement of Agent to the matters set forth in this Agreement (and accordingly the effectiveness of this Agreement) are expressly conditioned upon: (a) the repayment in full of all principal and interest due under the Loan and all other sums owed by Alberta under the Loan (which repayment in full shall be conclusively deemed to have occurred

upon Lender's release of the lien on the Property securing repayment of the Loan); and (b) the Granite Parties' and the Alberta Parties' release of Agent and Lender as set forth in Section 6 of this Agreement.

10. **Governing Law**. This Agreement shall be governed by the laws of the State of Colorado, exclusive of choice of law rules.

11. **Successors and Assigns**. The provisions of this Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

12. **Counterparts**. This Agreement shall be fully executed when each party has signed and delivered to the other (by mail, overnight delivery, facsimile or e-mail) at least one counterpart, even though no one counterpart contains the signatures of all the parties to this Agreement.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]